**JENNER & BLOCK LLP**
Kenneth K. Lee (Cal. Bar No. 264296)
klee@jenner.com
Alexander M. Smith (Cal. Bar No. 295187)
asmith@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Telephone:   (213) 239-5100
Facsimile:    (213) 239-5199

Attorneys for Defendant
Mondelēz Global LLC
(incorrectly sued as Mondelēz International, Inc.)

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK MCMORROW and MARCO OHLIN, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>MONDELĒZ INTERNATIONAL, INC.,<br><br>Defendant. | Case No. 3:17-cv-2327 BEN JLB<br><br>The Honorable Roger T. Benitez<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**<br><br>Hearing Date:  January 16, 2018<br>Hearing Time: 10:30 a.m.<br>Courtroom:     5A |

# **<u>TABLE OF CONTENTS</u>**

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 5

    I.    Plaintiffs Have Not Plausibly Alleged That the Labeling of the belVita Products Is Likely to Deceive a Reasonable Consumer. ...................................... 6

        A.    Absent any misrepresentation or material omission, Plaintiffs have not alleged that added sugar renders accurate "steady energy" claims false. ........................................................................ 6

        B.    The challenged statements constitute non-actionable puffery. ............... 9

        C.    At worst, the challenged statements are ambiguous and are clarified by other statements on the front of the packaging. ................. 12

    II.    Plaintiffs Have Not Plausibly Alleged That the belVita Products Contain "Excessive" Amounts of Added Sugar. .................................................. 14

    III.    Plaintiffs' Claims Are Preempted Because Federal Law Does Not Treat Added Sugar as a "Disqualifying" Nutrient. ............................................. 17

    IV.    Plaintiffs Fail to State a Plausible Breach of Express Warranty Claim. ......... 22

    V.    Plaintiffs Fail to State a Plausible Breach of Implied Warranty Claim. .......... 23

CONCLUSION ........................................................................................................ 24

1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS CLASS ACTION COMPLAINT
Case No. 3:17-cv-2327 BEN JLB

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abramson v. Marriott Ownership Resorts, Inc.*,
    155 F. Supp. 3d 1056 (C.D. Cal. 2016) ............................................................ 9

*Ackerman v. Coca-Cola Co.*,
    No. 09-0395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010) ............................ 20, 21, 22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................ 5, 7, 17

*Birdsong v. Apple, Inc.*,
    590 F.3d 955 (9th Cir. 2009) ......................................................................... 23

*Blue Buffalo Co. v. Nestlé Purina Petcare Co.*,
    No. 15-384, 2015 WL 3645262 (E.D. Mo. June 10, 2015).............................. 11

*Bohac v. Gen. Mills, Inc.*,
    No. 12-5280, 2014 WL 1266848 (N.D. Cal. Mar. 26, 2014) .......................... 24

*Chacanaca v. Quaker Oats Co.*,
    752 F. Supp. 2d 1111 (N.D. Cal. 2010)...................................................... 21, 22

*Consumer Advocates v. Echostar Satellite Corp.*,
    113 Cal. App. 4th 1351 (2003) ...................................................................... 23

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*,
    911 F.2d 242 (9th Cir. 1990) ......................................................................... 10

*Delacruz v. Cytosport, Inc.*,
    No. 11-3532, 2012 WL 1215243 (N.D. Cal. Apr. 11, 2012) ........................... 8

*Demetriades v. Yelp!, Inc.*,
    228 Cal. App. 4th 294 (2014) ........................................................................ 10

*Fraker v. KFC Corp.*,
    No. 06-1284, 2007 WL 1296571 (S.D. Cal. Apr. 30, 2007) .......................... 10

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ................................................................... 9, 11, 12

*Gedalia v. Whole Foods Mkt. Servs., Inc.*,
   53 F. Supp. 3d 943 (S.D. Tex. 2014) ................................................................ 10

*Gilchrist v. Joshua*,
   No. 17-494, 2017 WL 2123640 (S.D. Cal. May 16, 2017) ............................... 5

*Gitson v. Trader Joe's Co.*,
   No. 13-1333, 2013 WL 5513711 (N.D. Cal. Oct. 4, 2013) ............................ 14

*Goldman v. Bayer AG*,
   No. 17-647, 2017 WL 3168525 (N.D. Cal. July 26, 2017) ........................... 14

*Hadley v. Kellogg Sales Co.*,
   No. 16-4955, 2017 WL 3453391 (N.D. Cal. 2017) ............................... 9, 21, 22

*Hairston v. South Beach Beverage Co.*,
   No. 12-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ..................... 11, 12

*Henderson v. Gruma Corp.*,
   No. 10-04173, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ...................... 8, 9

*Hill v. Roll Int'l Corp.*,
   195 Cal. App. 4th 1295 (2011) ..................................................................... 6

*In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*,
   No. 16-5802, 2017 WL 3642076 (N.D. Ill. Aug. 24, 2017) ..................... 13, 14

*In re Clorox Consumer Litig.*,
   894 F. Supp. 2d 1224 (N.D. Cal. 2012) ..................................................... 9, 10

*In re Pepsico, Inc., Bottled Water Mktg. & Sales Practices Litig.*,
   588 F. Supp. 2d 527 (S.D.N.Y. 2008) ......................................................... 20

*Krommenhock v. Post Foods, LLC*,
   255 F. Supp. 3d 938 (N.D. Cal. 2017) ................................................ 9, 21, 22

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003) ..................................................................... 6

*McKinnis v. Kellogg USA*,
   No. 07-2611, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) ....................... 23

*Mills v. Giant of Md., LLC*,
   441 F. Supp. 2d 104 (D.D.C. 2006) ........................................................... 19

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS CLASS ACTION COMPLAINT
Case No. 3:17-cv-2327 BEN JLB

*Newcal Indus., Inc. v. Ikon Office Solutions*,
   513 F.3d 1038 (9th Cir. 2008) ............................................................... 10

*Oestreicher v. Alienware Corp.*,
   544 F. Supp. 2d 964 (N.D. Cal. 2008) ................................................... 23

*Peviani v. Hostess Brands, Inc.*,
   750 F. Supp. 2d 1111 (C.D. Cal. 2010) ................................................. 20

*Red v. Gen. Mills, Inc.*,
   No. 215-02232, 2015 WL 9484398 (C.D. Cal. Dec. 29, 2015) .................... 23

*Red v. Kraft Foods, Inc.*,
   No. 10-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ..................... 7, 8

*Reid v. Johnson & Johnson*,
   780 F.3d 952 (9th Cir. 2015) ................................................................. 14

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997) ................................................................. 9

*Spector v. Mondelēz Int'l*,
   No. 15-4298, 2017 WL 4283711 (N.D. Ill. Sept. 27, 2017) ......................... 3

*Stuart v. Cadbury Adams USA, LLC*,
   458 F. App'x 689 (9th Cir. 2011) ............................................................. 5

*Turek v. Gen. Mills, Inc.*,
   662 F.3d 423 (7th Cir. 2011) ................................................................. 20

*Tylka v. Gerber Prods. Co.*,
   No. 96-1647, 1999 WL 495126 (N.D. Ill. June 29, 1999) ......................... 11

*Videtto v. Kellogg USA*,
   No. 08-01324, 2009 WL 1439086 (E.D. Cal. May 21, 2009) ...................... 5

*Viggiano v. Hansen Natural Corp.*,
   944 F. Supp. 2d 877 (C.D. Cal. 2013) ................................................... 23

*Williams v. Beechnut Nutrition Corp.*,
   185 Cal. App. 3d 135 (1986) ................................................................. 22

*Workman v. Plum, Inc.*,
   141 F. Supp. 3d 1032 (N.D. Cal. 2015) ............................................. 12, 13

**STATUTES**

Cal. Com. Code § 2313 ................................................................................ 22

Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ...................................... 19

Nutrition Labeling and Education Act, 21 U.S.C. § 343 ...................................... 19

**OTHER AUTHORITIES**

21 C.F.R. § 100.1 ................................................................................ 20

21 C.F.R. § 101.13 ................................................................................ 18

21 C.F.R. § 101.14 ................................................................................ 18

21 C.F.R. § 101.65 ................................................................................ 5, 19, 20

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS CLASS ACTION COMPLAINT
Case No. 3:17-cv-2327 BEN JLB

**INTRODUCTION**

Mondēlez Global LLC's[1] belVita breakfast biscuits contain an abundance of whole grains and feature carbohydrates that slowly release over a sustained period of time. Accordingly, the packaging of the belVita breakfast biscuits includes true statements such as "4 Hours of Nutritious Steady Energy" and "Nutritious Morning Energy."  Knowing that a federal district court recently held that the above claims were substantiated and could not be the basis for a consumer fraud class action, Plaintiffs attempt to pursue a novel — and implausible — theory that these true statements are somehow rendered false because the belVita biscuits allegedly contain "excessive" and "toxic" amounts of sugar.  But Plaintiffs cannot, and do not, allege that the amount of sugars in belVita biscuits was hidden from consumers.  As the images featured in Plaintiffs' own complaint clearly show, the amount of sugar is prominently disclosed on the *front of the packaging* of belVita cookies, as well as in the well-known Nutrition Facts panel.

This Court should dismiss this meritless lawsuit for the following reasons:

<u>First</u>, Plaintiffs' claims fail because they have not alleged that the labeling of the belVita products will likely deceive a reasonable consumer.  Plaintiffs have neither identified any affirmative misrepresentation nor a material omission that plausibly supports their claim of deception.  They cannot point to any affirmative misrepresentation because the challenged statements do not represent that the belVita biscuits are low in sugar. Instead, they either truthfully characterize the belVita products (for instance, by calling attention to the presence of slowly digestible carbohydrates) or are puffery (*e.g.*, "Power Up People").  Nor can Plaintiffs point to any material omission because the amount of added sugar in the products is fully disclosed on the packaging, both on the front as well as in the Nutrition Facts panel.

---

[1] Plaintiffs incorrectly name Mondelēz International, Inc. ("MDLZ"), a global holding company, as the Defendant, although Mondelēz Global LLC ("Mondelēz Global") is the operating company that sold and distributed the products at issue in the United States.

1   To the extent Plaintiffs claim that they were subjectively confused by the challenged
2   statements, numerous federal courts have held that merely ambiguous labeling statements
3   are not actionable if other information on the package would clarify that ambiguity.  If
4   Plaintiffs somehow thought that the phrase "4 Hours of Nutritious Steady Energy" meant
5   that the belVita biscuits had little or no sugar, such a misimpression would be dispelled by
6   other information on the packaging, including both the prominent disclosure on the front of
7   each package listing the exact amount of sugar in each serving and the Nutrition Facts panel.

8   <u>Second</u>, in any event, Plaintiffs have failed to plausibly allege that the belVita
9   products even contain "excessive" added sugar.  The FDA recently issued dietary guidance
10   that expressly permits consumption of up to 50 grams of added sugars per day (*i.e.*, 16.66
11   grams in each of three daily meals).  But according to Plaintiffs, the belVita products
12   challenged in this lawsuit contain an average of only 10.7 grams of added sugar — less than
13   a *quarter* of the amount  allowed by the FDA.  Put another way, Plaintiffs' allegation that
14   the belVita products contain "excessive" sugar defies the FDA's recent Daily Reference
15   Value (DRV) guidance for added sugar.

16   <u>Third</u>, Plaintiffs' lawsuit is preempted by federal law. FDA regulations provide that
17   only four nutrients — total fat, saturated fat, cholesterol, and sodium — warrant
18   disqualifying a product from bearing health or nutrient content claims.  Plaintiffs' lawsuit
19   seeks to add a fifth nutrient to that list — added sugar — even though the FDA has
20   repeatedly declined to do so.  Numerous courts, including two courts in other "excessive
21   sugar" cases brought by Plaintiffs' counsel, have held that claims targeting otherwise lawful
22   and authorized claims solely on the basis of a product's added sugar content are preempted
23   because they seek to circumvent federal law and impose labeling requirements in addition
24   to those imposed by FDA regulations.

25   <u>Finally</u>, Plaintiffs' tag-along breach of warranty claims cannot withstand dismissal
26   for various reasons.

27
28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS CLASS ACTION COMPLAINT
Case No. 3:17-cv-2327 BEN JLB

# **BACKGROUND**

On November 16, 2017, Plaintiffs filed this putative class action lawsuit, challenging the labeling of twenty varieties of the belVita line of breakfast biscuits that are made by Mondelēz Global under their Nabisco brand.  The belVita products, which contain whole grains and other slowly digestible carbohydrates, bear various statements designed to highlight the fact that the products maintain steady energy levels and avoid the fluctuations associated with high-glycemic breakfast foods.   For instance, the belVita "Crunchy" Biscuits advertise that they provide "nutritious sustained energy" or "nutritious steady energy," while others tout the fact that they contain "slow-release carbs from wholesome grains."   Compl. ¶ 126.   They also encourage consumers to "power up" and to "enjoy belVita Breakfast Biscuits as part of a balanced breakfast with a serving of low-fat dairy and fruit."  *Id.*

Plaintiffs do not dispute that the products contain slowly digestible carbohydrates and accordingly provide "nutritious steady energy."   Indeed, a federal court recently dismissed for the second time a complaint that challenged such phrases as misleading.  *See Spector v. Mondelēz Int'l, Inc.*, No. 15-4298, 2017 WL 4283711 (N.D. Ill. Sept. 27, 2017). There, the court held that the plaintiff had not identified any false statements and that Mondelēz Global had scientific studies to substantiate the challenged claims.  *Id.* at *6-10.

Faced with that ruling, Plaintiffs in this case try to navigate around it by alleging that the labeling of the belVita products is still false and misleading because the products contain "excessive" levels of added sugar.  Over half of the complaint is dedicated to describing the alleged dangers of consuming "excessive" added sugar, principally by summarizing largely irrelevant studies and statistics that supposedly establish a connection between diets high in added sugar and various negative health outcomes.  Compl. ¶¶ 11-106.  The complaint then displays labels for the belVita products and lists a variety of statements that Plaintiffs characterize as false and misleading.  *See id.* ¶¶ 123-42.

Notably, none of those challenged statements represent that the belVita products are

low in sugar; in fact, none of the statements challenged in the complaint even *mention* sugar. *See id.* ¶¶ 126, 131, 136, 141 (listing statements challenged in this lawsuit).  Moreoever, as images of the packaging in Plaintiffs' complaint demonstrate, the left-hand corner of the *front* of the packaging prominently discloses the amount of sugar in the product per serving:



*Id.* ¶ 130.  Other varieties of belVita products similarly feature a disclosure in the front of the packaging listing the amount of sugar per serving, as confirmed by the images in Plaintiffs' complaint.  *See id.* ¶¶ 125, 130, 135, 140.

Furthermore, the Nutrition Facts panel on the packaging also discloses the amount of sugar in the product per serving:

1
2
3
4
5
6
7
8
9



10    Request for Judicial Notice ("RJN") Ex. A.

11                                    **ARGUMENT**

12         To survive a motion to dismiss, a complaint must "'contain sufficient factual matter,

13    accepted as true, to state a claim to relief that is plausible on its face.'"  *Gilchrist v. Joshua*,

14    No. 17-494, 2017 WL 2123640, at *1 (S.D. Cal. May 16, 2017) (quoting *Ashcroft v. Iqbal*,

15    556 U.S. 662, 678 (2009)).  Facts indicating the "'mere *possibility* of misconduct' . . . fall

16    short of meeting this plausibility standard."  *Id*. at *2 (quoting *Iqbal*, 556 U.S. at 678)

17    (emphasis added).  Rather, the pleader must "allege more by way of factual content to

18    'nudg[e] his claim'" of unlawful action "'across the line from conceivable to plausible.'"

19    *Iqbal*, 556 U.S. at 683.

20         Moreover, "[d]etermining whether a complaint states a plausible claim for relief . . .

21    requires the reviewing court to draw on its judicial experience and *common sense*."  *Id.* at

22    679 (emphasis added).  In light of that guidance from the Supreme Court, courts have

23    regularly dismissed lawsuits where common sense belies the allegations in the complaint.

24    *See, e.g., Stuart v. Cadbury Adams USA, LLC*, 458 F. App'x 689, 690 (9th Cir. 2011)

25    (affirming dismissal of false advertising lawsuit that "def[ied] common sense"); *Videtto v.*

26    *Kellogg USA*, No. 08-01324, 2009 WL 1439086, at *4 (E.D. Cal. May 21, 2009)

27    (dismissing complaint where allegations in false advertising claim would require the court

28

to "ignore . . . common sense").

## I.   Plaintiffs Have Not Plausibly Alleged That the Labeling of the belVita Products Is Likely to Deceive a Reasonable Consumer.

To demonstrate that a statement is "likely to deceive a reasonable consumer" under California law, a plaintiff must show "that it is probable that a *significant portion of the general consuming public or of targeted consumers*, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003) (emphasis added).  It is not enough to show the "mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner."  *Id.*  As one California appellate court put it, "the standard is not a least sophisticated consumer," but rather a reasonable one.  *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011) (citation omitted).

### A.   Absent any misrepresentation or material omission, Plaintiffs have not alleged added sugar renders accurate "steady energy" claims false.

Plaintiffs cannot point to any affirmative misrepresentation or material omission to support a plausible claim of deception.  They cannot point to any affirmative misrepresentation because Plaintiffs cannot and do not dispute that belVita products have whole grains and provide "sustained energy" through "slow-release carbs." *See, e.g.,* Compl. ¶ 126 (challenging claims that the belVita products provide "NUTRITIOUS SUSTAINED ENERGY," contain "slow-release carbs from wholesome grains," and "release energy regularly and continuously to fuel your body throughout the morning"). Nor can they point to any material omission here because the packaging for belVita biscuits discloses the precise amount of sugar on the front of the packaging, as well as in the Nutrition Facts panel.

Instead of pointing to any affirmative misrepresentation or material omission, Plaintiffs advance an implausible theory that the allegedly "excessive" amounts of added sugar in these products (which is fully disclosed on the packaging) somehow renders

accurate statements about whole grains and slow-release carbohydrates (which have nothing to do with sugar) misleading.  Put another way, Plaintiffs claim that consumers will be misled to believe that the belVita products do *not* contain "excessive added sugar" simply because they are advertised as containing slow-release carbohydrates.

Common sense — which the Supreme Court has directed courts to apply at the pleading stage to weed out implausible theories of relief — dictates that a statement touting the presence of slow-release carbohydrates is not rendered inaccurate merely by the presence of added sugar (or any other ingredient).  *See Iqbal*, 556 U.S. at 679 (noting that a court must "draw on . . . common sense" in determining whether a plaintiff has stated a plausible claim).  The absurdity of Plaintiffs' position is highlighted by this hypothetical: suppose that a car manufacturer advertised that one of its trucks had 450 horsepower, could tow six tons of cargo, and could hold 3,000 pounds in its bed.  A prospective consumer could not plausibly claim that these statements were misleading simply because the truck only got fifteen miles per gallon of fuel.  But that is exactly like the theory Plaintiffs advance here.  In other words, they claim that a company cannot make factually true claims (that the belVita products provide "steady energy" or that they contain "slow-release carbs") simply because the belVita products contain allegedly "excessive" amounts of added sugar (which have nothing to do with "slow release carbs" or "steady energy").

Numerous federal courts have dismissed similar lawsuits challenging factually true statements about a food product's ingredients or nutrient content, even if those foods contained other supposedly "bad" ingredients:

- In *Red v. Kraft Foods, Inc.*, No. 10-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012), the plaintiffs challenged the phrase "Made with Real Vegetables" on the defendant's cracker products.  Though the plaintiffs conceded that the products were in fact made with vegetables, they nonetheless alleged that the packaging was misleading because it "'suggest[ed] the product [was] *healthy*.'"  *Id.* at *3 (quoting the complaint).  The court dismissed the plaintiffs' claims, finding that "[t]he fact

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

remains that the product is a box of crackers, and a reasonable consumer will be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables." *Id.* Because the case "d[id] not concern affirmative misrepresentation," the court held "no factfinder could find that the challenged packaging is likely to deceive a reasonable consumer." *Id.* at *4.

- In *Delacruz v. Cytosport, Inc.*, the plaintiff challenged the statements "25g Protein for Healthy, Sustained Energy" and "0g Trans Fat" on the defendant's protein bars. No. 11-3532, 2012 WL 1215243, at *2, 7 (N.D. Cal. Apr. 11, 2012). The plaintiff asserted that these claims were misleading because the bars actually contained "11 grams of total fat (one third of the total caloric content), 8 grams of saturated fat and almost no vitamins and minerals," and "unhealthy ingredients like fractionated palm kernel oil, and partially hydrogenated palm oil," which the WHO allegedly linked to "increased risk of cardiovascular disease." *Id.* at *2. The court found these claims implausible as a matter of law, since "Plaintiff does not claim that the bars do not contain twenty-five grams of protein" or that the fats in the bars "are trans fats." *Id.* at *7. In other words, the court dismissed these claims because the challenged statements accurately described the specific ingredients in the defendant's product, irrespective of the *other* ingredients that product may have contained.

- In *Henderson v. Gruma Corp.*, the plaintiff claimed that a dip labeled "With Garden Vegetables" was mislabeled because it suggested that there were more vegetables in the dip than there actually were. No. 10-04173, 2011 WL 1362188, at *12 (C.D. Cal. Apr. 11, 2011). The court dismissed the complaint, ruling that the dip "in fact contain[s] vegetables that can be grown in a garden," and that the "labeling statement does not claim a specific *amount* of vegetables in the product, but rather speaks to their presence in the product, which is not misleading [as a matter of law]." *Id.*

Here, as in all the cases cited above, statements such as "Nutritious Steady Energy" and "slow-release carbs from wholesome grains" are not deceptive as a matter of law

because they are factually accurate and merely indicate what they say — that the belVita products contain slow-release carbohydrates that provide steady energy.

In short, the presence of added sugar in the belVita products does not have anything to do with the accuracy of the challenged statements.  Statements touting the presence of "slow-release carbs" merely "speak[] to the [ingredients] presen[t] in the product, which is not misleading." *Id.* at *12.  Importantly, the factually true statements challenged here have *nothing* to do with added sugar content.  Mondelēz Global has never claimed that the belVita products were "low sugar" or "reduced sugar," and the names of those products (including "Cinnamon Brown Sugar" and "Strawberry Yogurt Crème," among others) suggest otherwise.  And Mondelēz Global never hid the amount of added sugar in *any* of the belVita products; indeed, the only reason Plaintiffs know how much sugar is in each product is because that information is disclosed on the front of the package and in the Nutrition Facts panel.  *See* Compl. ¶¶ 125, 130, 135, 140.[2]

## B.    The challenged statements constitute non-actionable puffery.

Other statements challenged by Plaintiffs are equally non-actionable because they are mere puffery.  "Puffery is 'exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely.'"  *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1233 (N.D. Cal. 2012) (citing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997)).  Under California law, "[a]dvertisements that amount to 'mere' puffery are not actionable[.]"  *Abramson v. Marriott Ownership Resorts, Inc.*, 155 F. Supp. 3d 1056, 1066 (C.D. Cal. 2016) (citations omitted).

---

[2] Plaintiffs will likely rely on the (non-binding) district court opinions in *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938 (N.D. Cal. 2017) or *Hadley v. Kellogg Sales Co.*, No. 16-4955, 2017 WL 3453391 (N.D. Cal. Aug. 10, 2017), but those decisions are distinguishable because they involved different labeling claims, different packaging, and different products with different nutritional profiles.  The Ninth Circuit has held each specific advertisement must be viewed "as a whole" to determine whether it is false, and here (as explained above) the packaging "as a whole" is not deceptive.  *See Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995).

9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS CLASS ACTION COMPLAINT
Case No. 3:17-cv-2327 BEN JLB

In determining what constitutes puffery, courts in California have held that "a statement that is quantifiable" or that "makes a claim as to the 'specific or absolute characteristics' of a product'" may amount to an actionable misrepresentation, but "a general, subjective claim about a product is non-actionable puffery." *Demetriades v. Yelp!, Inc.*, 228 Cal. App. 4th 294, 311 (2014) (quoting *Newcal Indus., Inc. v. Ikon Office Solutions*, 513 F.3d 1038, 1053 (9th Cir. 2008)). In other words, a statement is non-actionable puffery if it cannot be measured or verified by reference to any objective standard. *Id.*; *see also Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (holding that "general assertions of superiority" are not actionable).  "Determining whether an alleged misrepresentation constitutes puffery is a question of law appropriate for resolution on a . . . motion to dismiss." *Clorox*, 894 F. Supp. 2d at 1233 (citing *Newcal Indus., Inc.*, 513 F.3d at 1053).

Here, the statements Plaintiffs challenge are classic examples of "healthy-sounding terms on food labels" that constitute "non-actionable puffery."  *Gedalia v. Whole Foods Mkt. Servs., Inc.*, 53 F. Supp. 3d 943, 954 (S.D. Tex. 2014) (applying California law).  For example. Plaintiffs allege that it is misleading to characterize the belVita products as a "delicious, wholesome breakfast," to encourage consumers to "[e]njoy belVita Soft Baked Breakfast Biscuits as part of a balanced breakfast," or to use phrases like "POWER UP, PEOPLE."  Compl. ¶¶ 126, 131.  But unlike a claim that a product contains "no artificial color" or "fewer than 100 calories," there is no objective way to determine whether the belVita products are "delicious," "wholesome," or "part of a balanced breakfast."  These "general, subjective claim[s]" make no assertions "as to the 'specific or absolute characteristics'" of the belVita products, and thus cannot support a claim for relief. *Demetriades*, 228 Cal. App. 4th at 311 (quoting *Newcal*, 513 F.3d at 1053).

For that reason, numerous federal courts in California and elsewhere have repeatedly dismissed claims premised on similar statements, including "nutritious" and "wholesome," after characterizing such statements as non-actionable puffery.  *See, e.g., Fraker v. KFC*

1   *Corp.*, No. 06-1284, 2007 WL 1296571, at *3 (S.D. Cal. Apr. 30, 2007) (holding "highest

2   quality ingredients" and "[people] can enjoy 'fast food' as part of a sensible balanced diet"

3   were puffery); *Blue Buffalo Co. v. Nestlé Purina Petcare Co.*, No. 15-384, 2015 WL

4   3645262, at *10 (E.D. Mo. June 10, 2015) (holding that "'100% Complete & Balanced

5   Nutrition' is mere puffery . . . because whether something is complete or balanced nutrition

6   is merely an opinion about quality and is not capable of being proven true or false"); *Tylka

7   v. Gerber Prods. Co.*, No. 96-1647, 1999 WL 495126, at *8-9 (N.D. Ill. June 29, 1999)

8   (holding "optimum nutrition" and "most wholesome nutritious safe foods" were puffery).

9           Furthermore, Plaintiffs cannot take the words "nutritious" and "wholesome" out of

10  context to claim deception.  *See Freeman*, 68 F.3d at 290 (affirming dismissal of false

11  advertising lawsuit and noting that courts must evaluate the packaging "as a whole" instead

12  of considering specific terms in isolation).  As the packaging reveals, the words "nutritious"

13  or "wholesome" were not used in isolation to claim that the belVita cookies were the most

14  healthful products that one could eat; rather, they were used in the context of touting a

15  particular attribute.  For example, the term "nutritious" is used in the context of "Nutritious

16  Sustained Energy — 18g Whole Grain."  *See* Compl. ¶ 125.  In other words, the term

17  "nutritious" is referring to the 18 grams of whole grain, which undoubtedly are nutritious.

18          In keeping with the Ninth Circuit's admonition that the challenged label must be

19  viewed "as a whole," courts have rejected lawsuits that pluck one word out of context to

20  claim deception.  *Hairston v. South Beach Beverage Co.* is illustrative.  There, the plaintiff

21  challenged the labeling of SoBe Lifewater beverages because, among other things, the

22  labels included the phrase "all natural," which was used in close proximity to statements on

23  the label about the presence of vitamins and fruit flavors.  No. 12-1429, 2012 WL 1893818,

24  at *1 (C.D. Cal. May 18, 2012).  After holding that other challenged representations

25  (including the use of the common fruit and vitamin names) were not actionable, the court

26  held that the plaintiff could not state a claim based on the phrase "all natural."  *Id.* at *4.

27  "[O]nce the . . . statements regarding fruit names and vitamin labeling are removed," the

28

court reasoned, "Plaintiff's claim is based on a single out-of-context phrase found in one component of Lifewater's label." *Id.* Because "Lifewater does not use the 'all natural' language in a vacuum," the court concluded, "it will be impossible for Plaintiff to allege how the 'all natural' language is deceptive without relying on the . . . statements regarding fruit names and vitamins." *Id.*

Here, as in *Hairston*, Plaintiffs cannot hitch their case to terms like "nutritious" and "wholesome" in a "vacuum." Even if Plaintiffs could establish that "nutritious" or "wholesome" were potentially misleading when used alone (which they cannot), the terms here are being used to refer to the fact that "whole grains" are nutritious (which is in fact true) and cannot be taken out of context to suggest deception.

### C. At worst, the challenged statements are ambiguous and are clarified by other statements on the front of the packaging.

As explained above, Plaintiffs' allegations are woefully insufficient to establish that the labeling of the belVita products conveyed to consumers that they were low in sugar or were otherwise healthy. At best, Plaintiffs can only claim that phrases like "balanced breakfast" and "nutritious steady energy" are ambiguous, and that they subjectively believed that they suggested that the belVita products had no or little sugar in them. But as many courts have held, representations that are merely ambiguous are not actionable where other aspects of the packaging are sufficient to clarify the allegedly ambiguous statements. *See Freeman*, 68 F.3d at 290 (affirming dismissal of false advertising claim where "[a]ny ambiguity that [the plaintiff] would read into any particular statement is dispelled by the [advertisement] as a whole").

For instance, in *Workman v. Plum, Inc.*, the plaintiffs alleged that statements touting certain ingredients in the defendant's fruit purees, including pumpkin, pomegranate, quinoa, and Greek yogurt, were misleading because those were not the predominant ingredients in the product. 141 F. Supp. 3d 1032, 1033-34 (N.D. Cal. 2015). The court dismissed this lawsuit because "the labels contain no affirmative misrepresentations" and "all of the items

pictured are actually present in the product."  *Id.* at 1035.  In so holding, the court emphasized that "[e]very reasonable shopper knows that the devil is in the details" and that "[a]ny potential ambiguity could be resolved by the back panel of the products, which listed all ingredients in order of predominance, as required by the FDA."  *Id.*  Absent any "affirmative misrepresentations" on the labeling of the fruit purees, the court concluded that the plaintiff had not stated a plausible claim of deception.  *Id.* at 1036.

Likewise, in *In re 100% Grated Parmesan Cheese Marketing & Sales Practices Litigation*, the court dismissed a series of lawsuits alleging that the phrase "100% Grated Parmesan Cheese" was misleading because the products actually contained small quantities of cellulose powder and potassium sorbate.  No. 16-5802, 2017 WL 3642076, at *1 (N.D. Ill. Aug. 24, 2017).  After surveying the applicable law (including *Workman*), the court distinguished between labels involving affirmative misrepresentations and those involving merely ambiguous statements:

> Where a plaintiff contends that certain aspects of a product's packaging are misleading in isolation, but an ingredient label or other disclaimer would dispel any confusion, the crucial issue is whether the misleading content is ambiguous; if so, context can cure the ambiguity and defeat the claim . . . In other words, while a reasonable consumer, lulled into a false sense of security by an unavoidable interpretation of an allegedly deceptive statement, may rely on it without further investigation . . . consumers who interpret ambiguous statements in an unnatural or debatable manner do so unreasonably if an ingredient label would set them straight.

*Id.* at *5-6.  The court then held that the phrase "100% Grated Parmesan Cheese" was ambiguous because, while it "might be interpreted as saying that the product is 100% cheese and nothing else, it also might be an assertion that 100% of the cheese is parmesan cheese, or that the parmesan cheese is 100% grated."  *Id.* at *6.  Given the ambiguity of the allegedly misleading label, the court dismissed the complaint because the plaintiffs' claims were "doomed by the readily accessible ingredient panels on the products that disclose the

presence of non-cheese ingredients." *Id.*; *see also, e.g.*, *Red*, 2012 WL 5504011 at *3-4 (holding that "Made with Real Vegetables" was not an "affirmative misrepresentation" and was not actionable simply because consumers might "assume things about the product[] *other than* what the statement actually says"); *Goldman v. Bayer AG*, No. 17-647, 2017 WL 3168525, at *7 (N.D. Cal. July 26, 2017) (dismissing lawsuit challenging labeling of Bayer vitamin gummies because the brand name "One a Day" was ambiguous and "[a] reasonable consumer would simply need [to] turn the bottle" to ascertain the correct serving size).

Here, as in *Workman*, *Grated Parmesan*, *Red*, and *Goldman*, Plaintiffs' claim fails because they have not identified any affirmative misrepresentations on the labels of the belVita products whatsoever.  To the extent the statements they challenge were ambiguous at all, Plaintiffs could have readily resolved that ambiguity by looking at the *front* of the package, which displays the amount of sugar in the belVita products  *See Gitson v. Trader Joe's Co.*, No. 13-1333, 2013 WL 5513711, at *7 (N.D. Cal. Oct. 4, 2013) (holding that no reasonable consumer could be deceived into thinking that Trader Joe's "Organic Soy Milk" contained cow's milk where "[t]he packaging states, on its front and back, that Organic Soy Milk is 'LACTOSE & DAIRY FREE,' and, on its side, that it is 'an alternative to dairy milk'").  Furthermore, Plaintiffs could have confirmed the amount of added sugar present in each one of the belVita products by reviewing the Nutrition Facts panel, which is a "familiar and ubiquitous" feature "found on most food packages" and which would have clarified any alleged ambiguity found elsewhere on the packaging.  *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015).   In the absence of any affirmative misrepresentation, Plaintiffs cannot plausibly allege that vague, arguably ambiguous statements like "nutritious steady energy" are likely to deceive a reasonable consumer.

## II.   Plaintiffs Have Not Plausibly Alleged That the belVita Products Contain "Excessive" Amounts of Added Sugar.

Plaintiffs' claims fail for another independent reason: Their claim of deception is entirely predicated on the assertion that "[e]xcessive consumption of added sugar is toxic

---

to the human body" (Compl. ¶¶ 1-2), but Plaintiffs have not plausibly alleged that the amount of added sugar in the belVita products is in fact "excessive." In fact, the amount of added sugar in belVita products is well below the recommended limits recently set by the FDA, undermining Plaintiffs' claims of "excessive" sugar content.

In 2016, the FDA established a Daily Reference Value ("DRV") for added sugars of 10% of total daily calories, or *50 grams* of added sugar per day assuming a 2,000 calorie diet. RJN Ex. B at 33820. Plaintiffs' own allegations confirm that the amount of added sugar is consistent with the FDA's DRV for added sugar. According to Plaintiffs, the belVita products contain between 8 and 14 grams of added sugar per serving, or an average of 10.7 grams of added sugar per serving. *See* Compl. ¶¶ 124, 129, 134, 139. In other words, the average belVita product contains *less than a quarter* of the FDA's recommended daily intake of added sugar. And since breakfast is only one of the three meals that a person typically eats each day, Plaintiffs' conclusory allegation that the belVita products contain "excessive" sugar is implausible. In sum, because the amount of added sugar in the belVita products is consistent with and well below the FDA's Daily Reference Value limit for added sugars, Plaintiffs cannot plausibly allege that they contain "excessive" sugar.

Plaintiffs largely ignore the FDA's recent guidance, and instead claim that the American Heart Association ("AHA") has adopted more stringent recommendations than the FDA in recommending that consumers "restrict[] added sugar to 5% of calories." Compl. ¶ 107. As a threshold matter, the FDA rejected the purported 5% of calories position purportedly adopted by the AHA. In its final rulemaking, the FDA expressly rejected further limitations to the added sugars DRV:

> We disagree that the DRV for added sugars should be lower than 10 percent of calories or that there is adequate evidence at this time to set a DRV for added sugars of less than 5 percent of calories, [as] those recommendations are not consistent with those of U.S. consensus reports.

RJN Ex. B at 33849. A private organization's purported position cannot trump the U.S. government's guidance.

More importantly, the AHA does *not* in fact endorse a rigid 5% cap on consumption of added sugars per day, despite Plaintiffs' claims. *See* RJN Ex C.  Rather, the AHA has adopted a flexible and pragmatic recommendation that individuals consume no more than a certain number of "discretionary calories" (which may be "divided between solid fats and added sugars") per day depending on their individual energy needs (which in turn depend on age, gender, and activity level). *Id.* at Table 3.  And while the AHA has recommended that added sugars comprise no more than half of each person's discretionary calorie allotment that does not translate to a 5% cap on added sugars; to the contrary, the AHA suggestions provide that a person who requires 1800 calories per day can consume up to 5.5% of his or her calories (half of the 11% discretionary calorie allowance) from added sugar, while a person who requires 2400 calories per day can consume up to 7.5% of his or her calories (half of the 15% discretionary calorie allowance) from added sugar. *Id.*

Plaintiffs also ignore the AHA's recognition that "[t]he form in which added sugars are consumed" is a relevant factor in determining whether that food is healthy. *Id.* at 1016. Specifically, the AHA is primarily concerned with sugary *beverages*, since "[t]otal energy intake may be greater with fluid calorie intake than with calorie intake from solid foods" due to "the weak satiety signals evoked from energy-containing beverages." *Id.* at 1015. Conversely, the AHA has recognized potential benefits from consuming certain foods containing added sugars, stating that while "[s]oft drinks, sugar, and sweets are more likely to have a negative impact on diet quality, [] dairy foods, milk drinks, and presweetened cereals may have a positive impact." *Id.* at 1016.  The AHA further stated that "*when sugars are added to otherwise nutrient-rich foods, such as . . . sugar-sweetened cereals, the quality of children's and adolescents' diets improves.*" *Id.* at 1012 (emphasis added).  The AHA has also emphasized that "the relationship of the intake of sugars with fiber intake" is a relevant dietary consideration and that foods high in fiber are "associated with decreasing energy intake, which translates into weight loss." *Id.* at 1016.

Plaintiffs also argue that the World Health Organization ("WHO") has recommended

1
that "no more than 10% of an adult's calories — and ideally less than 5% — should come

2
from added sugar."  Compl. ¶ 108.  Plaintiffs' assertion is also similarly misleading, as they

3
rely on a *draft* document issued by the WHO in 2014, which was superseded by a final

4
document issued in 2015.[3]  The WHO's 2015 document mirrors the FDA's determination

5
in providing a "strong recommendation" that sugar intake be reduced to "less than 10% of

6
total energy intake," and provides only a "conditional recommendation" that consumers

7
reduce added sugar intake "below 5% of total energy intake."  RJN Ex. E at 16.  The WHO

8
explains that its conditional recommendation, which reflects "less certainty 'about the

9
balance between the benefits and harms or disadvantages of implementing a

10
recommendation,'" "is based on very low quality evidence."  *Id.*

11
    In sum, the FDA has rejected exactly what Plaintiffs propose here — to limit added

12
sugar to 5% of daily caloric intake.  Instead, the FDA established a Daily Reference Value

13
of 50 grams of added sugar.  RJN Ex. B.  In so doing, the FDA emphasized that the

14
healthiness of a food with added sugars "must be viewed in the context of the day's total

15
dietary intake" and cautioned against "erroneously think[ing] a food, which can be part of

16
a healthy dietary pattern, is not 'healthful' because it contains some amount of added

17
sugars."  *Id.* at 33761.  Accordingly, Plaintiffs' factual predicate that the amount of sugars

18
is "excessive" does not pass muster under the *Iqbal/Twombly* plausibility requirement.

19
20
**III.    Plaintiffs' Claims Are Preempted Because Federal Law Does Not Treat Added Sugar as a "Disqualifying" Nutrient.**

21
    The gravamen of Plaintiffs' lawsuit is that phrases like "nutritious steady energy" are

22
misleading because they suggest that the belVita products are low in added sugar.  In other

23
words, their theory is that a company cannot make any "positive" statements about a product

24
(even if truthful) if it has a "negative" (*i.e.*, sugar) in it.  In addition to being implausible, it

25

26
[3] *See* Compl. ¶ 108 n. 90 (citing March 4, 2014 guidelines); RJN Ex. D at 3 (announcing

27
the release of final WHO guidelines in March 2015 and noting that "[i]n March 2014, WHO opened a public consultation on the *then draft* sugars guideline to seek inputs from all

28
stakeholders" (emphasis added)).

defies and conflicts with FDA's regulatory framework: FDA has repeatedly rejected attempts to limit what a food label can say *solely* because of the sugar content in a product.

Generally, the FDA allows food labels to make a "nutrient content" claim (which refers to the amount of nutrients in a food product) or a "health" claim (which refers to a food product's potential impact on health).[4]   The FDA, however, has set limits on such statements if the food product also contains a "disqualifying" nutrient that the FDA deems to be generally unhealthy when consumed in excessive amounts.  The FDA has only established four "disqualifying" nutrients — total fat, saturated fat, cholesterol, and sodium.  After extensive analysis, the FDA declared that these four ingredients pose a potential health risk if consumed in excessive amounts and thus are "disqualifying nutrients" such that their presence may preclude the use of "nutrient content" and "health" claims on the packaging.[5]

Notably, the FDA has expressly *rejected* repeated calls that sugar be deemed a "disqualifying" nutrient that would prohibit "health" and "nutrient content" claims because there is insufficient science to support it.  In 1993, after an extensive notice-and-comment procedure, the FDA declined to identify sugar as a "disqualifying nutrient" for health claim

---

[4] A "nutrient content claim" is an implicit or explicit statement about the amount of a nutrient in a product (*e.g.*, "contains 100 calories").  21 C.F.R. § 101.13(b)(1) (express nutrient content claim); 21 C.F.R. § 101.13(b)(2) (implied nutrient content claim).  In contrast, a "health claim . . . characterizes the relationship of any substance to a disease or health-related condition" (*e.g.*, "oat bran can reduce cholesterol").  21 C.F.R. § 101.14(a)(1). Plaintiffs appear to suggest that the statements on belVita products are health claims.  *See, e.g.,* Compl. ¶¶ 153, 156 (referring to "health and nutrition" claims).  For purposes of this motion, Mondēlez Global assumes that the challenged statements are health claims or nutrient content claims.

[5] *See* 21 C.F.R. § 101.14(a)(4) (defining "disqualifying nutrient levels" as "the levels of total fat, saturated fat, cholesterol, or sodium in a food above which the food will be disqualified from making a health claim."); 21 C.F.R. § 101.13(h)(2) (setting disclosure requirements if total fat, saturated fat, cholesterol, or sodium exceeds certain levels); 21 C.F.R. §§ 101.65(d)(2)(i) & (ii) (setting levels of total fat, saturated fat, cholesterol, and sodium precluding implied nutrient content claims involving the term "healthy").

purposes. *See* RJN Ex. F at 2491 (setting forth final rule). The FDA reasoned that it "would not be appropriate to limit health claims on foods on the basis of added sugars," because there was "no sound basis" as a scientific matter for doing so. *Id.*

One year later, the FDA reached the same conclusion with respect to nutrient content claims. After a notice-and-comment procedure in which the FDA expressly debated the appropriate levels of sugar and calories, the FDA found no support for the position that consumers would necessarily expect a product presented as "healthy" to be low in calories or sugar. RJN Ex. G at 24244. The FDA has maintained this position despite subsequent attempts to add sugar as a disqualifying ingredient for purposes of nutrient content and health claims. *See*, *e.g.*, RJN Ex. H (summarizing a petition by the Center for Science and the Public Interest). In other words, the FDA has repeatedly rejected what Plaintiffs propose here — to limit what a food label can say *solely* because of the sugar content in a product.

In light of this regulatory framework established by the FDA and Congress, Plaintiffs' claims are preempted because they attempt to impose labeling requirements on Mondelēz Global in addition to those set forth by federal law.

The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA"), establishes a comprehensive and uniform federal scheme of food regulation to ensure that food is safe and labeled in a manner that does not mislead consumers. In 1990, Congress amended the FDCA through the passage of the Nutrition Labeling and Education Act ("NLEA") to "clarify and to strengthen the Food and Drug Administration's legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods." RJN Ex. F. Among other things, the NLEA sets forth specific requirements for health-related claims on food labels. *See* 21 U.S.C. § 343(r). Further, the NLEA includes a broad express preemption provision directing that "no State or political subdivision of a State may directly or indirectly establish . . . any requirement for . . . labeling of food . . . that is not identical to the requirement[s]" set forth in the statute. 21 U.S.C. § 343-1(a) (emphasis added); see also *Mills v. Giant of Md., LLC*, 441 F. Supp.

1  2d 104, 106-09 (D.D.C. 2006) (noting expansive scope of NLEA preemption clause).

2      As the FDA has explained, "'[n]ot identical to' does not refer to the specific words

3  in the requirement but instead means that the State requirement directly or indirectly

4  imposes obligations or contains provisions" that are "not imposed by or contained in" or

5  that "[d]iffer from those specifically imposed by or contained in" the statute or its

6  implementing regulations.  21 C.F.R. § 100.1(c)(4); *see also Turek v. Gen. Mills, Inc.,* 662

7  F.3d 423, 427 (7th Cir. 2011) ("Even if the disclaimers that the plaintiff wants added would

8  be consistent with the requirements imposed by the Food, Drug, and Cosmetic Act,

9  consistency is not the test [for preemption]; identity is.").  In other words, states cannot

10 impose their own unique labeling standards that go "beyond, or [are] different from" the

11 federal labeling standards that Congress has established.  *In re Pepsico, Inc., Bottled Water*

12 *Mktg. & Sales Practices Litig.*, 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008).  As a result, state

13 "[c]onsumer protection laws, such as the UCL, FAL, and [CLRA] are . . . preempted if they

14 seek to impose requirements that contravene the requirements set forth by federal law."

15 *Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1118 (C.D. Cal. 2010).

16     In short, Plaintiffs' lawsuit is preempted because it attempts to impose a requirement

17 the FDA has specifically declined to impose — namely, to treat added sugar as a

18 disqualifying nutrient.  *Ackerman v. Coca-Cola Co.*, No. 09-0395, 2010 WL 2925955

19 (E.D.N.Y. July 21, 2010), is directly on point.  There, the plaintiffs asserted claims under

20 California and New Jersey consumer protection law challenging numerous statements on

21 the Vitaminwater beverage label, including "this combination of zinc and fortifying

22 vitamins can . . . keep you healthy as a horse" and "specially formulated to support optimal

23 metabolic function."  *Id.* at *5.  Among other theories, the plaintiffs alleged that the

24 Vitaminwater labels were misleading because they "ma[de] health claims or implied

25 nutrient-content claims despite the high amount of sugar in the product."  *Id.* at *7.  The

26 defendants moved to dismiss, arguing that the plaintiffs' claims were preempted by the

27 NLEA.  The court agreed, noting that "[i]n 1993, the FDA issued a final rule regulating the

28

nutrients that could be considered 'disqualifying' for health-claim purposes, and identified only four such nutrients: total fat, saturated fat, cholesterol, or sodium.'" *Id.* at *8. Moreover, "[t]he FDA received several comments . . . proposing that sugar be included as a disqualifying nutrient," but "rejected these comments." *Id.* The court therefore concluded that "the presence of sugar is not a disqualifying nutrient which would prohibit the defendants from 'touting the purported benefits' . . . of other ingredients in their beverage, whether through health claims or express or implied claims of nutrient content . . . ." *Id.*

Likewise, in *Chacanaca v. Quaker Oats Co.*, the court dismissed a lawsuit challenging the statements "made with whole grain oats" and "no high fructose corn syrup" on the theory that "the presence of hydrogenated vegetable oil [i.e. trans fat] makes these claims, to the extent they suggest Chewy Bars are nutritionally helpful, misleading." 752 F. Supp. 2d 1111, 1122 (N.D. Cal. 2010). Citing *Ackerman*, the court reasoned that "the presence of trans fats alone is not a 'disqualifying' nutrient which would prevent Quaker Oats from emphasizing whatever other health benefits are available from the Bars' other ingredients or because it lacks certain ingredients." *Id.* Accordingly, the court held that "plaintiffs' state law claim is inconsistent with subsection (r) [of the NLEA] and its regulations to the extent it depends on the presence of trans fats to render the content claims misleading. . . . Essentially, plaintiffs' claim asks this Court to *ascribe* disqualifying status to trans fats where the Agency has at least so far declined to do so." *Id.*

Indeed, in just the last seven months, two federal courts faced with other "excessive sugar" lawsuits brought by Plaintiffs' counsel have cited *Ackerman* and *Chacanaca* in holding that federal law preempts efforts to treat added sugar as a "disqualifying" nutrient. *See Krommenhock*, 255 F. Supp. 3d at 956 ("The FDA has identified disqualifying nutrients, including total fat, saturated fat, cholesterol, and sodium. Sugar is not one of them."); *Hadley*, 2017 WL 3453391 at *13 ("[T]he FDA has expressly decided to *not* set such disqualifying levels for sugar or added sugar. Therefore, Plaintiff's theory that health claims or implied nutrient content claims are misleading because of a certain amount of

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS CLASS ACTION COMPLAINT
Case No. 3:17-cv-2327 BEN JLB

added sugar in a product would essentially 'ascribe disqualifying status' to added sugar.").

Here, the crux of Plaintiffs' lawsuit is that the labels of the belVita products falsely "state, suggest, or imply that the Products are healthy" because they contain allegedly "excessive" amounts of added sugar.  Compl. ¶ 148.  Indeed, Plaintiffs even characterize the statements challenged in this case as "claims regarding the 'health and nutrition' qualities of the [belVita] Products."  *Id.* ¶¶ 153, 156. But this theory — namely, that otherwise accurate and lawful statements about the nutritional benefits of consuming slow-release carbohydrates are misleading solely by virtue of their added sugar content — is inconsistent with the FDA's decision *not* to ascribe "disqualifying" status to added sugar, and it is precisely the sort of claim that *Ackerman*, *Chacanaca*, *Krommenhock*, and *Hadley* make clear is preempted.  Accordingly, because Plaintiffs' theory of relief would require the Court to impose labeling requirements in addition to those imposed by federal law, this Court should dismiss their lawsuit.

## IV.  Plaintiffs Fail to State a Plausible Breach of Express Warranty Claim.

In California, an express warranty is an "affirmation of fact or promise made by the seller to the buyer" that constitutes "part of the basis of the bargain."  Cal. Com. Code § 2313(1)(a).  "In order to plead a cause of action for breach of express warranty, one must allege the exact terms of the warranty, plaintiff's reasonable thereon, and a breach of that warranty which proximately causes plaintiff injury."  *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986).  Here, Plaintiffs simply allege that Mondelēz Global "made affirmations of fact or promises, or descriptions of goods, listed in paragraphs 126, 131, 136, and 141."  Compl. ¶ 212.  But that one-sentence allegation is woefully insufficient to describe the "exact terms" of any alleged express warranty, as required by California law. *See Williams*, 185 Cal. App. 3d at 142.

Moreover, the statements Plaintiffs challenge in this lawsuit cannot support a breach of warranty claim because they are either non-actionable puffery or are truthful statements. Under California law, "[g]eneralized, vague, and unspecified assertions constitute 'mere

puffery' upon which a reasonable consumer could not rely, and hence are not actionable"
as warranties.  *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008)
(citation omitted).  Here, as in *Oestreicher*, aspirational exhortations like "POWER UP,
PEOPLE" or characterizations of the belVita products as a "nutritious, convenient breakfast
choice" are plainly "[g]eneralized, vague, and unspecified assertions" and not
"[a]ffirmation[s] of fact or promise[s]."  For that reason, numerous courts have dismissed
similar breach of warranty claims premised on puffery statements.  *See, e.g.*, *Consumer
Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1361 (2003) (holding that
broadcaster's assertion of "crystal clear" video quality was puffery and was not actionable
as a warranty).

Likewise, even if statements like "nutritious steady energy" or "slow-release carbs"
are not puffery, they cannot support a breach-of-warranty claim because they accurately
reflect that the products contain whole grains and other slowly digestible carbohydrates.
Courts have routinely dismissed breach of express warranty claims in similar labeling cases
where the challenged packaging truthfully represents the product's contents.  *See, e.g.*,
*Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 893-94 (C.D. Cal. 2013)
(dismissing express warranty claim premised on term "all natural flavors" because this
phrase "accurately describes the product"); *McKinnis v. Kellogg USA*, No. 07-2611, 2007
WL 4766060, at *5 (C.D. Cal. Sept. 19, 2007) (dismissing express warranty claim when
defendant accurately represented that its cereal contained "natural fruit flavors").  This
Court should likewise dismiss Plaintiffs' breach of express warranty claim.

## V.   Plaintiffs Fail to State a Plausible Breach of Implied Warranty Claim.

Under California law, the implied warranty of merchantability "provides the
consumer with only a *minimum level of protection* against product defects; it does not
guarantee a perfect product."  *Red v. Gen. Mills, Inc.*, No. 215-02232, 2015 WL 9484398,
at *6 (C.D. Cal. Dec. 29, 2015) (emphasis added).  This warranty is breached only where
the product lacks "the most basic degree of fitness for ordinary use."  *Birdsong v. Apple,*

1     *Inc.*, 590 F.3d 955, 958 (9th Cir. 2009) (citation and internal quotation marks omitted).

2         Courts have routinely rejected claims for breach of the implied warranty of

3 merchantability in food cases where, as here, the plaintiff claims not that the defendant's

4 food products were inedible, but rather that they failed to live up to consumer expectations.

5 *See, e.g., Viggiano*, 944 F. Supp. 2d at 896 (rejecting implied warranty of merchantability

6 claim where the plaintiff "does not allege any facts suggesting that the soda is not

7 merchantable or fit for use as a diet soft drink; he has not, for example, alleged that the

8 beverage was not drinkable, that it was contaminated or contained foreign objects"); *Bohac*

9 *v. Gen. Mills, Inc.*, No. 12-5280, 2014 WL 1266848, at *10 (N.D. Cal. Mar. 26, 2014)

10 (dismissing implied warranty of merchantability claims because plaintiff did not allege that

11 the granola bars "were not edible or contaminated.").  Plaintiffs do not allege that the

12 products are inedible or otherwise unfit for consumption; instead, they simply allege that

13 the products are not healthy and "did not conform to promises and affirmations made on

14 the container or label of the goods."  Compl. ¶¶ 219-20.  Accordingly, this Court should

15 dismiss Plaintiffs' claim for breach of the implied warranty of merchantability.

16 **CONCLUSION**

17         For the foregoing reasons, this Court should dismiss Plaintiffs' complaint with

18 prejudice.

19

20 DATED:  December 12, 2017       JENNER & BLOCK LLP

21                        By:  s/ Kenneth K. Lee

22                          Attorney for Mondelēz Global LLC

23                          (incorrectly sued as Mondelēz

24                          International, Inc.)

25                          E-mail: klee@jenner.com

26

27

28