**JENNER & BLOCK LLP**
Kenneth K. Lee (Cal. Bar No. 264296)
klee@jenner.com
Alexander M. Smith (Cal. Bar No. 295187)
asmith@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Telephone:   (213) 239-5100
Facsimile:    (213) 239-5199

Attorneys for Defendant
Mondelēz Global LLC
(incorrectly sued as Mondelēz International, Inc.)

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK MCMORROW, MARCO OHLIN, and MELODY DIGREGORIO, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>MONDELĒZ INTERNATIONAL, INC.,<br><br>Defendant. | Case No. 3:17-cv-2327 BEN JLB<br><br>The Honorable Roger T. Benitez<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Hearing Date:  February 12, 2018<br>Hearing Time: 10:30 a.m.<br>Courtroom:     5A |

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 3

ARGUMENT .................................................................................................... 5

I.     Plaintiffs Have Not Plausibly Alleged That the Labeling of the belVita
Products Is Likely to Deceive a Reasonable Consumer. ............................... 6

     A.     Absent any misrepresentation or material omission, Plaintiffs
have not alleged that sugar renders accurate "steady energy"
claims false. ...................................................................................... 6

     B.     The challenged statements constitute non-actionable puffery. ........... 10

     C.     At worst, the challenged statements are ambiguous and are
clarified by other statements on the front of the packaging. ............... 12

II.     Plaintiffs Have Not Plausibly Alleged That the belVita Products
Contain "Excessive" Amounts of Added Sugar. ......................................... 16

III.     Plaintiffs' State LawClaims Are Preempted Because Federal Law
Does Not Treat Added Sugar as a "Disqualifying" Nutrient. ...................... 19

IV.     Plaintiffs Fail to State a Plausible Breach of Express Warranty Claim. ....... 23

V.     Plaintiffs Fail to State a Plausible Breach of Implied Warranty Claim. ....... 24

CONCLUSION ............................................................................................... 25

i

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 3:17-cv-2327 BEN JLB

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abramson v. Marriott Ownership Resorts, Inc.,*
    155 F. Supp. 3d 1056 (C.D. Cal. 2016) ......................................................... 10

*Ackerman v. Coca-Cola Co.,*
    No. 09-0395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010) ............................ 21, 22, 23

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ....................................................................................... 5, 7

*Belfiore v. Procter & Gamble Co.,*
    311 F.R.D. 29 (E.D.N.Y. 2015) ...................................................................... 13

*Birdsong v. Apple, Inc.,*
    590 F.3d 955 (9th Cir. 2009) .......................................................................... 25

*Blue Buffalo Co. v. Nestlé Purina Petcare Co.,*
    No. 15-384, 2015 WL 3645262 (E.D. Mo. June 10, 2015) ............................ 11

*Bobo v. Optimum Nutrition, Inc.,*
    No. 14-2408, 2015 WL 13102417 (S.D. Cal. Sept. 11, 2015) ....................... 2, 5, 13, 14

*Bohac v. Gen. Mills, Inc.,*
    No. 12-5280, 2014 WL 1266848 (N.D. Cal. Mar. 26, 2014) ......................... 25

*Cardinal Health 301, Inc. v. Tyco Elecs. Corp.,*
    169 Cal. App. 4th 116 (2008) ........................................................................ 23

*Chacanaca v. Quaker Oats Co.,*
    752 F. Supp. 2d 1111 (N.D. Cal. 2010) ......................................................... 22

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.,*
    911 F.2d 242 (9th Cir. 1990) .......................................................................... 10

*Cortina v. Goya Foods, Inc.,*
    94 F. Supp. 3d 1174 (S.D. Cal. 2015) ............................................................ 24

*Delacruz v. Cytosport, Inc.,*
    No. 11-3532, 2012 WL 1215243 (N.D. Cal. Apr. 11, 2012) ......................... 8

ii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 3:17-cv-2327 BEN JLB

*Demetriades v. Yelp, Inc.*,
  228 Cal. App. 4th 294 (2014) ................................................................. 10, 11

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013) .................................................................. 6, 13

*Fraker v. KFC Corp.*,
  No. 06-1284, 2007 WL 1296571 (S.D. Cal. Apr. 30, 2007) ......................... 11

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) ............................................................. 9, 11, 13

*Gedalia v. Whole Foods Mkt. Servs., Inc.*,
  53 F. Supp. 3d 943 (S.D. Tex. 2014) ........................................................ 10

*Gilchrist v. Joshua*,
  No. 17-494, 2017 WL 2123640 (S.D. Cal. May 16, 2017) ............................. 5

*Gitson v. Trader Joe's Co.*,
  No. 13-1333, 2013 WL 5513711 (N.D. Cal. Oct. 4, 2013) ........................... 16

*Goldman v. Bayer AG*,
  No. 17-647, 2017 WL 3168525 (N.D. Cal. July 26, 2017) ........................... 15

*Haag v. Hyundai Motor Am.*,
  969 F. Supp. 2d 313 (W.D.N.Y. 2013) ...................................................... 25

*Hadley v. Kellogg Sales Co.*,
  No. 16-4955, 2017 WL 3453391 (N.D. Cal. Aug. 10, 2017) ...................... 9, 23

*Hairston v. S. Beach Beverage Co.*,
  No. 12-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ......................... 12

*Henderson v. Gruma Corp.*,
  No. 10-04173, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ......................... 9

*Hill v. Roll Int'l Corp.*,
  195 Cal. App. 4th 1295 (2011) ................................................................. 6

*In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*,
  No. 16-5802, 2017 WL 3642076 (N.D. Ill. Aug. 24, 2017) ......................... 15

*In re Clorox Consumer Litig.*,
  894 F. Supp. 2d 1224 (N.D. Cal. 2012) .................................................... 10

iii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 3:17-cv-2327 BEN JLB

*In re Pepsico, Inc., Bottled Water Mktg. & Sales Practices Litig.*,
   588 F. Supp. 2d 527 (S.D.N.Y. 2008) ..........................................................21

*Krommenhock v. Post Foods, LLC*,
   255 F. Supp. 3d 938 (N.D. Cal. 2017) ................................................... 9, 23

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003) ..................................................................... 6

*McKinnis v. Kellogg USA*,
   No. 07-2611, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007)......................24

*Mills v. Giant of Md., LLC*,
   441 F. Supp. 2d 104 (D.D.C. 2006)..............................................................21

*Newcal Indus., Inc. v. Ikon Office Solutions*,
   513 F.3d 1038 (9th Cir. 2008) ............................................................. 10, 11

*Paulino v. Conopco, Inc.*,
   No. 14-5145, 2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) .......................23

*Pelman v. McDonald's Corp.*,
   237 F. Supp. 2d 512 (S.D.N.Y. 2003) .........................................................10

*Peviani v. Hostess Brands, Inc.*,
   750 F. Supp. 2d 1111 (C.D. Cal. 2010) .......................................................21

*Quinn v. Walgreen Co.*,
   958 F. Supp. 2d 533 (S.D.N.Y. 2013) .........................................................24

*Red v. Gen. Mills, Inc.*,
   No. 215-02232, 2015 WL 9484398 (C.D. Cal. Dec. 29, 2015) ...................24

*Red v. Kraft Foods, Inc.*,
   No. 10-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ......................... 8

*Reid v. Johnson & Johnson*,
   780 F.3d 952 (9th Cir. 2015) ......................................................................14

*Silva v. Smucker Natural Foods, Inc.*,
   No. 14-6154, 2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015).......................25

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997) ....................................................................10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 3:17-cv-2327 BEN JLB

*Spector v. Mondelēz Int'l, Inc.*,
   No. 15-4298, 2017 WL 4283711 (N.D. Ill. Sept. 27, 2017).............................3

*Stokely-Van Camp, Inc. v. Coca-Cola Co.*,
   646 F. Supp. 2d 510 (S.D.N.Y. 2009) ...........................................................10

*Stuart v. Cadbury Adams USA, LLC*,
   458 F. App'x 689 (9th Cir. 2011) ....................................................................6

*Turek v. Gen. Mills, Inc.*,
   662 F.3d 423 (7th Cir. 2011) .........................................................................21

*Tylka v. Gerber Prods. Co.*,
   No. 96-1647, 1999 WL 495126 (N.D. Ill. June 29, 1999) .............................11

*Videtto v. Kellogg USA*,
   No. 08-01324, 2009 WL 1439086 (E.D. Cal. May 21, 2009)..........................6

*Viggiano v. Hansen Natural Corp.*,
   944 F. Supp. 2d 877 (C.D. Cal. 2013) ......................................................24, 25

*Williams v. Beechnut Nutrition Corp.*,
   185 Cal. App. 3d 135 (1986) ....................................................................23, 24

*Workman v. Plum, Inc.*,
   141 F. Supp. 3d 1032 (N.D. Cal. 2015).....................................................14, 15

**STATUTORY AND REGULATORY PROVISIONS**

21 C.F.R. § 100.1 ................................................................................................21

21 C.F.R. § 101.13 ..............................................................................................19

21 C.F.R. § 101.14 ..............................................................................................19

21 C.F.R. § 101.65 ..............................................................................................20

Cal. Com. Code § 2313 .......................................................................................23

Federal Food, Drug, & Cosmetic Act, 21 U.S.C. § 301 *et seq.*...............20, 21, 22

N.Y. U.C.C. § 2-313(1)(a) ..................................................................................23

N.Y. U.C.C. § 2-607(3)(a) ..................................................................................23

1

## **INTRODUCTION**

2    Mondelēz Global LLC's[1] belVita breakfast biscuits contain an abundance of whole
3 grains and feature carbohydrates that digest slowly and release energy over a sustained
4 period of time.  Accordingly, the packaging of the belVita breakfast biscuits includes true
5 statements such as "4 Hours of Nutritious Steady Energy" and "Nutritious Morning
6 Energy."  Knowing that a federal district court recently held that these statements were
7 substantiated and could not sustain a consumer fraud claim, Plaintiffs attempt to pursue a
8 novel — and implausible — theory that these true statements are somehow rendered false
9 because the belVita biscuits allegedly contain "excessive" and "toxic" amounts of sugar.
10 But Plaintiffs cannot, and do not, allege that the amount of sugar in belVita biscuits was
11 hidden from consumers.  As the images featured in Plaintiffs' First Amended Complaint
12 ("FAC") clearly show, the amount of sugar is prominently disclosed on the *front of the*
13 *packaging* of belVita biscuits, as well as in the well-known Nutrition Facts panel.

14    This Court should dismiss this meritless lawsuit because the First Amended
15 Complaint does nothing to cure the fatal deficiencies in Plaintiffs' original complaint:

16    First, Plaintiffs' statutory consumer fraud claims under New York and California law
17 all fail for a common reason: Plaintiffs have not alleged that the labeling of the belVita
18 products is likely to deceive a reasonable consumer.  Plaintiffs have identified neither any
19 affirmative misrepresentation nor a material omission that plausibly supports their claim of
20 deception.  They cannot point to any affirmative misrepresentation because the challenged
21 statements do not represent that the belVita biscuits are low in sugar.  Instead, they either
22 truthfully characterize the belVita products (for instance, by calling attention to the presence
23 of slowly digestible carbohydrates) or are puffery (*e.g.*, "Power Up People").  Nor can
24 Plaintiffs point to any material omission because the amount of sugar in the products is fully
25 disclosed on the packaging, both on the front as well as in the Nutrition Facts panel.

26

27 [1] Plaintiffs incorrectly name Mondelēz International, Inc. ("MDLZ"), a global holding
28 company, as the Defendant, even though Mondelēz Global LLC ("Mondelēz Global") is
the operating company that sold and distributed the products at issue in the United States.

1    Plaintiffs essentially claim that they were subjectively confused by the challenged

2    statements, but numerous federal courts have held that merely ambiguous labeling

3    statements are not actionable if other information on the package would clarify that

4    ambiguity.  So if Plaintiffs somehow thought that "4 Hours of Nutritious Steady Energy"

5    meant that the belVita biscuits had little or no sugar, such a misimpression would be

6    dispelled by the prominent disclosure on the front of each package listing the exact amount

7    of sugar and the Nutrition Facts panel.  Indeed, this Court relied on Ninth Circuit precedent

8    in recently dismissing a similar false advertising case and holding that a "plaintiff cannot

9    pursue a claim based on a statement that can only be misleading when the information

10   surrounding it" — such as "the front and back of the label, the nutrition panel, and the

11   ingredient list" — "is ignored."  *Bobo v. Optimum Nutrition, Inc.,* No. 14-2408, 2015 WL

12   13102417, at *4 (S.D. Cal. Sept. 11, 2015) (Benitez, J.).

13       Second, in any event, Plaintiffs have failed to allege with plausibility that the belVita

14   products even contain "excessive" sugar.  The FDA recently issued dietary guidance that

15   expressly permits consumption of up to 50 grams of added sugars per day (*i.e.*, 16.66 grams

16   in each of three daily meals).  But according to Plaintiffs, the belVita products challenged

17   in this lawsuit contain an average of only 10.7 grams of added sugar — less than a *quarter*

18   of the amount  allowed by the FDA.  Put another way, Plaintiffs' allegation that the belVita

19   products contain "excessive" sugar defies the FDA's recent Daily Reference Value (DRV)

20   guidance for added sugar.

21       Third, Plaintiffs' lawsuit is preempted by federal law.  FDA regulations provide that

22   only four nutrients (total fat, saturated fat, cholesterol, and sodium) warrant disqualifying a

23   product from bearing health or nutrient content claims.  Plaintiffs' lawsuit seeks to add a

24   fifth nutrient to that list — sugar — even though the FDA has repeatedly declined to do so.

25   Numerous courts, including two courts in other "excessive sugar" cases brought by

26   Plaintiffs' counsel, have held that claims targeting otherwise lawful and authorized claims

27   solely on the basis of a product's sugar content are preempted.

28

1

## BACKGROUND

2       This putative class action lawsuit challenges the labeling of twenty varieties of the
3   belVita line of breakfast biscuits, which are manufactured and sold by Mondelēz Global
4   under its Nabisco brand.  Although Plaintiffs' FAC differs from their initial Complaint in a
5   few respects, it largely reiterates the same basic — and flawed — theory of deception.

6       The belVita products, which contain whole grains and other slowly digestible
7   carbohydrates, bear various statements designed to highlight the fact that the products
8   maintain steady energy levels and avoid the fluctuations associated with high-glycemic
9   breakfast foods.  For instance, the belVita "Soft Baked" Biscuits advertise that they provide
10  "4 hours of nutritious steady energy."  FAC ¶ 133.  Likewise, the belVita "Crunchy"
11  Biscuits tout the fact that they contain "slow-release carbs from wholesome grains."  *Id.* ¶
12  128. They also encourage consumers to "power up" and to "enjoy belVita Breakfast
13  Biscuits as part of a balanced breakfast with a serving of low-fat dairy and fruit."  *Id.*

14      Plaintiffs do not dispute that the products contain slowly digestible carbohydrates
15  and accordingly provide "nutritious steady energy."  Indeed, a federal court recently
16  dismissed for the second time a complaint that challenged such phrases as misleading.  *See*
17  *Spector v. Mondelēz Int'l, Inc.*, No. 15-4298, 2017 WL 4283711 (N.D. Ill. Sept. 27, 2017).
18  There, the court held that the plaintiff had not identified any false statements and that
19  Mondelēz Global had scientific studies to substantiate the challenged claims.  *Id.* at *6-10.

20      Faced with that ruling, Plaintiffs in this case try to navigate around it by alleging that
21  the labeling of the belVita products is still false and misleading because the products contain
22  "excessive" levels of sugar.  Over half of Plaintiffs' FAC is dedicated to describing the
23  alleged dangers of consuming "excessive" sugar, principally by summarizing irrelevant
24  studies and statistics that supposedly establish a connection between diets high in sugar and
25  various negative health outcomes.  FAC ¶¶ 13-111.  The FAC then displays labels for the
26  belVita products and lists a variety of statements that Plaintiffs characterize as false and
27  misleading.  *See id.* ¶¶ 125-44.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 3:17-cv-2327 BEN JLB

Notably, none of those challenged statements represent that the belVita products are low in sugar; in fact, none of the statements challenged in the FAC even *mention* sugar.  *See id.* ¶¶ 128, 133, 138, 143 (listing statements challenged in this lawsuit).[2]  Moreover, as images of the packaging in Plaintiffs' FAC demonstrate, the left-hand corner of the *front* of the packaging prominently discloses the amount of sugar in the product per serving:



*Id.* ¶ 132 (sugar disclosure highlighted).  Other varieties of belVita products similarly feature a disclosure in the front of the packaging listing the amount of sugar per serving, as confirmed by the images in Plaintiffs' FAC.  *See id.* ¶¶ 127, 132, 137, 142.

Furthermore, the Nutrition Facts panel on the packaging also discloses the amount of sugar in the product per serving:

---

[2]  Indeed, some of the product flavors, such as "Cinnamon Brown Sugar," expressly *emphasize* the presence of sugar in the belVita biscuits.

Request for Judicial Notice ("RJN") Ex. A (sugar disclosure highlighted).[3]

## ARGUMENT

To survive a motion to dismiss, a complaint must "'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Gilchrist v. Joshua*, No. 17-494, 2017 WL 2123640, at *1 (S.D. Cal. May 16, 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Facts indicating the "'mere *possibility* of misconduct' . . . fall short of meeting this plausibility standard." *Id.* at *2 (quoting *Iqbal*) (emphasis added). Rather, the pleader must "allege more by way of factual content to 'nudg[e] his claim'" of unlawful action "'across the line from conceivable to plausible.'" *Iqbal*, 556 U.S. at 683.

Moreover, "[d]etermining whether a complaint states a plausible claim for relief . . . requires the reviewing court to draw on its judicial experience and *common sense*." *Id.* at

---

[3] Plaintiffs challenge over 20 belVita products, (*see* FAC ¶¶ 125, 130, 135, 140), but they appear to have bought only a subset of them (*see id.* ¶¶ 155, 158, 161).  As this Court recently ruled in *Bobo*, Plaintiffs lack Article III standing to challenge products they did *not* buy, which include: Golden Oat Crunchy Biscuits, Chocolate Crunchy Biscuits, Toasted Coconut Crunchy Biscuits, Cranberry Orange Crunchy Biscuits, Apple Cinnamon Crunchy Biscuits, Pumpkin Spice Crunchy Biscuits, Banana Bread Soft Baked Biscuits, Cinnamon Soft Baked Biscuits, "Honey & Chocolate" Soft Baked Biscuits, Mixed Berry Bites, Chocolate Bites, Vanilla Yogurt Crème Sandwiches, Strawberry Yogurt Crème Sandwiches, Peanut Butter Sandwiches, and Dark Chocolate Crème Sandwiches.  *See Bobo*, 2015 WL 13102417, at *3 (holding that "[a] plaintiff should not be able to 'expand the scope of his or her claims to include a product not purchased" and citing various cases).

679 (emphasis added).  In light of that guidance from the Supreme Court, courts have regularly dismissed lawsuits where common sense belies the allegations in the complaint. *See, e.g., Stuart v. Cadbury Adams USA, LLC*, 458 F. App'x 689, 690 (9th Cir. 2011) (affirming dismissal of false advertising lawsuit that "def[ied] common sense"); *Videtto v. Kellogg USA*, No. 08-01324, 2009 WL 1439086, at *4 (E.D. Cal. May 21, 2009) (dismissing complaint where allegations in false advertising claim would require the court to "ignore . . . common sense").

## I.   Plaintiffs Have Not Plausibly Alleged That the Labeling of the belVita Products Is Likely to Deceive a Reasonable Consumer.

"To prevail on . . . consumer fraud claims under New York and California law," a plaintiff "must establish that [Mondelēz Global's] allegedly deceptive advertisements were likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (citations omitted); *accord Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003) (holding that a plaintiff must establish that "it is *probable* that a *significant portion* of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled" to state a claim under California's UCL) (emphasis added).  It is not enough to allege the "mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie*, 105 Cal. App. 4th at 508.  As one California appellate court put it, "the standard is not a least sophisticated consumer," but rather a reasonable one. *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011).

### A.   Absent any misrepresentation or material omission, Plaintiffs have not alleged that sugar renders accurate "steady energy" claims false.

As in their initial complaint, Plaintiffs cannot identify in their FAC any affirmative misrepresentation or material omission that supports a plausible claim of deception. Plaintiffs cannot point to any affirmative misrepresentation because they cannot (and do not) dispute that belVita products have whole grains and provide "sustained energy"

through "slow-release carbs."  *See, e.g.,* FAC ¶ 128 (challenging claims that the belVita products provide "NUTRITIOUS SUSTAINED ENERGY," contain "slow-release carbs from wholesome grains," and "release energy regularly and continuously to fuel your body throughout the morning").  Nor can they point to any material omission here because the packaging for belVita biscuits discloses the precise amount of sugar on the front of the packaging, as well as in the Nutrition Facts panel.  *See id.* ¶¶ 127, 132, 137, 142.

Instead of pointing to any affirmative misrepresentation or material omission, Plaintiffs advance an implausible theory that their subjective view of the allegedly "excessive" amounts of sugar in these products (which is fully disclosed on the packaging) somehow renders accurate statements about whole grains and slow-release carbohydrates (which have nothing to do with sugar) misleading.  Put another way, Plaintiffs claim that consumers will be misled to believe that the belVita products do *not* contain "excessive sugar" simply because they are advertised as containing slow-release carbohydrates.

Common sense — which the Supreme Court has directed courts to apply at the pleading stage to weed out implausible theories of relief — dictates that a statement touting the presence of slow-release carbohydrates is not rendered inaccurate merely by the presence of sugar (or any other ingredient).  *See Iqbal*, 556 U.S. at 679 (noting that a court must "draw on . . . common sense" in determining whether a plaintiff has stated a plausible claim).  The absurdity of Plaintiffs' position is highlighted by this hypothetical: Suppose that a car manufacturer advertised that one of its trucks was a top-performing car because it had 450 horsepower, could tow six tons of cargo, and could hold 3,000 pounds in its bed. A prospective consumer could not plausibly claim that these statements were misleading simply because the truck only got fifteen miles per gallon of fuel.  But that is exactly like the theory Plaintiffs advance here.  In other words, Plaintiffs claim that a company cannot make factually true claims (that the belVita products provide "steady energy" or that they contain "slow-release carbs") simply because the belVita products contain allegedly "excessive" amounts of sugar (which have nothing to do with "slow release carbs" or

7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 3:17-cv-2327 BEN JLB

1   "steady energy" and in any event were fully disclosed).

2       Numerous federal courts have dismissed similar lawsuits challenging factually true

3   statements about a food product's ingredients or nutrient content, even if those foods

4   contained other supposedly "bad" ingredients:

5   • In *Red v. Kraft Foods, Inc.*, No. 10-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25,

6       2012), the plaintiffs challenged the phrase "Made with Real Vegetables" on the

7       defendant's cracker products.  Though the plaintiffs conceded that the products were

8       in fact made with vegetables, they nonetheless alleged that the packaging was

9       misleading because it "'suggest[ed] the product [was] *healthy*.'"  *Id.* at *3 (quoting

10      the complaint).  The court dismissed the plaintiffs' claims, finding that "[t]he fact

11      remains that the product is a box of crackers, and a reasonable consumer will be

12      familiar with the fact of life that a cracker is not composed of primarily fresh

13      vegetables."  *Id.*  Because the case "d[id] not concern affirmative misrepresentation,"

14      the court held "no factfinder could find that the challenged packaging is likely to

15      deceive a reasonable consumer."  *Id.* at *4.

16  • In *Delacruz v. Cytosport, Inc.*, the plaintiff challenged the statements "25g Protein

17      for Healthy, Sustained Energy" and "0g Trans Fat" on the defendant's protein bars.

18      No. 11-3532, 2012 WL 1215243, at *2, 7 (N.D. Cal. Apr. 11, 2012).  The plaintiff

19      asserted that these claims were misleading because the bars actually contained "11

20      grams of total fat (one third of the total caloric content), 8 grams of saturated fat and

21      almost no vitamins and minerals," and "unhealthy ingredients like fractionated palm

22      kernel oil, and partially hydrogenated palm oil."  The court found these claims

23      implausible as a matter of law, since "Plaintiff does not claim that the bars do not

24      contain twenty-five grams of protein" or that the fats in the bars "are trans fats."  *Id.*

25      at *7.  In other words, the court dismissed these claims because the challenged

26      statements accurately described the specific ingredients in the defendant's product,

27      irrespective of the *other* ingredients that product may have contained.

28

8

- In *Henderson v. Gruma Corp.*, the plaintiff claimed that a dip labeled "With Garden Vegetables" was mislabeled because it suggested that there were more vegetables in the dip than there actually were. No. 10-04173, 2011 WL 1362188, at *12 (C.D. Cal. Apr. 11, 2011). The court dismissed the complaint, ruling that the dip "in fact contain[s] vegetables that can be grown in a garden," and that the "labeling statement does not claim a specific *amount* of vegetables in the product, but rather speaks to their presence in the product, which is not misleading [as a matter of law]." *Id.*

Here, as in all the cases cited above, statements such as "Nutritious Steady Energy" and "slow-release carbs from wholesome grains" are not deceptive as a matter of law because they are factually accurate and merely indicate what they say — that the belVita products contain slow-release carbohydrates that provide steady energy.

In short, the presence of sugar in the belVita products does not have anything to do with the accuracy of the challenged statements. Statements touting the presence of "slow-release carbs" merely "speak[] to the [ingredients] presen[t] in the product, which is not misleading." *Id.* at *12. Importantly, the factually true statements challenged here have *nothing* to do with sugar content. Mondelēz Global has never claimed that the belVita products were "low sugar" or "reduced sugar." And Mondelēz Global never hid the amount of sugar; indeed, the only reason Plaintiffs know the sugar content is because that information is disclosed on the front of the package and in the Nutrition Facts panel. *See* FAC ¶¶ 127, 132, 137, 142.[4]

---

[4] Plaintiffs will likely rely on *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938 (N.D. Cal. 2017) or *Hadley v. Kellogg Sales Co.*, No. 16-4955, 2017 WL 3453391 (N.D. Cal. Aug. 10, 2017), but those non-binding cases are distinguishable because they involved different labeling claims, different packaging, and different products with different nutritional profiles. The Ninth Circuit has held each specific advertisement must be viewed "as a whole" to determine whether it is false, and here the packaging "as a whole" is not deceptive. *See Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995).

**B.      The challenged statements constitute non-actionable puffery.**

Other statements challenged by Plaintiffs are equally non-actionable because they are mere puffery.  "Puffery is 'exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely.'"  *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1233 (N.D. Cal. 2012) (citing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997)).  Under both California and New York law, "[a]dvertisements that amount to 'mere' puffery are not actionable[.]"  *Abramson v. Marriott Ownership Resorts, Inc.*, 155 F. Supp. 3d 1056, 1066 (C.D. Cal. 2016) (citations omitted); *accord Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 528 (S.D.N.Y. 2003) (same).

In determining what constitutes puffery, courts have held that "a statement that is quantifiable" or that "makes a claim as to the 'specific or absolute characteristics' of a product'" may amount to an actionable misrepresentation, but "a general, subjective claim about a product is non-actionable puffery."  *Demetriades v. Yelp, Inc.*, 228 Cal. App. 4th 294, 311 (2014) (quoting *Newcal Indus., Inc. v. Ikon Office Solutions*, 513 F.3d 1038, 1053 (9th Cir. 2008)); *see also Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510, 526 (S.D.N.Y. 2009) (noting that statements that are "subjective" and "cannot be proven true or false" constitute puffery).  In other words, a statement is non-actionable puffery if it cannot be measured or verified by reference to any objective standard.  *Demetriades*, 228 Cal. App. 4th at 311; *see also Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) ("general assertions of superiority" are not actionable).  "Determining whether an alleged misrepresentation constitutes puffery is a question of law appropriate for resolution on a . . . motion to dismiss."  *Clorox*, 894 F. Supp. 2d at 1233.

Here, the statements Plaintiffs challenge are classic examples of "healthy-sounding terms on food labels" that constitute "non-actionable puffery."  *Gedalia v. Whole Foods Mkt. Servs., Inc.*, 53 F. Supp. 3d 943, 954 (S.D. Tex. 2014) (applying California law).  For example. Plaintiffs allege that it is misleading to characterize the belVita products as a "delicious, wholesome breakfast," to encourage consumers to "[e]njoy belVita Soft Baked

Breakfast Biscuits as part of a balanced breakfast," or to use phrases like "POWER UP, PEOPLE." FAC ¶ 128. But unlike a claim that a product contains "no artificial color" or "fewer than 100 calories," there is no objective way to determine whether the belVita products are "delicious," "wholesome," or "part of a balanced breakfast." These "general, subjective claim[s]" make no assertions "as to the 'specific or absolute characteristics'" of the belVita products, and thus cannot support a claim for relief. *Demetriades*, 228 Cal. App. 4th at 311 (quoting *Newcal*, 513 F.3d at 1053).

For that reason, numerous federal courts in California and elsewhere have repeatedly dismissed claims premised on similar statements, including "nutritious" and "wholesome," after characterizing such statements as non-actionable puffery. *See, e.g., Fraker v. KFC Corp.*, No. 06-1284, 2007 WL 1296571, at *3 (S.D. Cal. Apr. 30, 2007) (holding "highest quality ingredients" and "[people] can enjoy 'fast food' as part of a sensible balanced diet" were puffery); *Blue Buffalo Co. v. Nestlé Purina Petcare Co.*, No. 15-384, 2015 WL 3645262, at *10 (E.D. Mo. June 10, 2015) (holding that "'100% Complete & Balanced Nutrition' is mere puffery . . . because whether something is complete or balanced nutrition is merely an opinion about quality and is not capable of being proven true or false"); *Tylka v. Gerber Prods. Co.*, No. 96-1647, 1999 WL 495126, at *8-9 (N.D. Ill. June 29, 1999) (holding "optimum nutrition" and "most wholesome nutritious safe foods" were puffery).

Furthermore, Plaintiffs cannot take the words "nutritious" and "wholesome" out of context to claim deception. *See Freeman*, 68 F.3d at 290 (affirming dismissal of false advertising lawsuit and noting that courts must evaluate the packaging "as a whole" instead of considering specific terms in isolation). As the packaging reveals, the words "nutritious" or "wholesome" were not used in isolation to claim that the belVita biscuits were the most healthful products that one could eat; rather, they were used in the context of touting a particular attribute. For example, the term "nutritious" is used in the context of "Nutritious Sustained Energy — 18g Whole Grain." *See* FAC ¶ 127. In other words, the term "nutritious" is referring to the 18 grams of whole grain, which undoubtedly are nutritious.

In keeping with the Ninth Circuit's admonition that the challenged label must be viewed "as a whole," courts have rejected lawsuits that pluck one word out of context to claim deception. *Hairston v. South Beach Beverage Co.* is illustrative. There, the plaintiff challenged the labeling of SoBe Lifewater beverages because, among other things, the labels included the phrase "all natural," which was used in close proximity to statements on the label about the presence of vitamins and fruit flavors. No. 12-1429, 2012 WL 1893818, at *1 (C.D. Cal. May 18, 2012). After holding that other challenged representations (including the use of the common fruit and vitamin names) were not actionable, the court held that the plaintiff could not state a claim based on the phrase "all natural." *Id.* at *4. "[O]nce the . . . statements regarding fruit names and vitamin labeling are removed," the court reasoned, "Plaintiff's claim is based on a single out-of-context phrase found in one component of Lifewater's label." *Id.* Because "Lifewater does not use the 'all natural' language in a vacuum," the court concluded, "it will be impossible for Plaintiff to allege how the 'all natural' language is deceptive without relying on the . . . statements regarding fruit names and vitamins." *Id.*

Here, as in *Hairston*, Plaintiffs cannot hitch their case to terms like "nutritious" and "wholesome" in a "vacuum." Even if Plaintiffs could establish that "nutritious" or "wholesome" were potentially misleading when used alone (which they cannot), the terms here are being used to refer to the fact that "whole grains" are nutritious (which is in fact true) and cannot be taken out of context to suggest deception.

## C. At worst, the challenged statements are ambiguous and are clarified by other statements on the front of the packaging.

As explained above, Plaintiffs' allegations are woefully insufficient to establish that the labeling of the belVita products conveyed to consumers that they were low in sugar or were otherwise healthy. At best, Plaintiffs can only claim that phrases like "balanced breakfast" and "nutritious steady energy" are ambiguous, and that they somehow subjectively believed that they suggested that the belVita products had no or little sugar in

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 3:17-cv-2327 BEN JLB

them. But as the Ninth Circuit emphasized in *Freeman*, courts must view the packaging "as a whole," and labeling statements that are merely ambiguous are not actionable where other aspects of the packaging are sufficient to clarify the allegedly ambiguous statements. 68 F.3d at 290 (affirming dismissal where "[a]ny ambiguity that [the plaintiff] would read into any particular statement is dispelled by the [advertisement] as a whole"); *see also Fink*, 714 F.3d at 742 (noting that "context is crucial" in assessing whether an advertisement is misleading); *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015) ("Courts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole. The entire mosaic is viewed rather than each tile separately").

In *Bobo v. Optimum Nutrition, Inc.*, this Court relied on the Ninth Circuit's decision in *Freeman* in dismissing a false advertising claim where the packaging "as a whole" dispelled any claim of deception. 2015 WL 13102417 at *5. There, the plaintiff claimed that the term "100% Whey," which appeared on the container of a protein powder, was misleading because it suggested that the product was made *only* from whey protein, even though it had other supposedly unhealthy ingredients. *Id.* at *1-2. Relying on *Freeman*, this Court held that "[a] plaintiff cannot pursue a claim based on a statement that can only be misleading *when the information surrounding it is ignored*." *Id.* at *4 (emphasis added). This Court elaborated further:

> Here, "100% WHEY" can only be read to mean the entire contents of the container is protein, *if information on the front and back of the label is ignored.* The front label indicates that the product is "Naturally & Artificially Flavored" and this particular product is "DOUBLE RICH CHOCOLATE" flavored. The front of the package also includes the statement that "100% OF THE PROTEIN FROM WHEY." . . . Ignoring legible and clear statements on the front of the label that dispel that the product is entirely protein is viewing the product in an unreasonable manner. . . . *A consumer would have to ignore numerous statements on the front and back of the label, the nutrition panel, and the ingredient list to believe the contents are entirely protein.* While a reasonable consumer may not inspect the finest of print to clarify a misleading statement,

> *a reasonable consumer . . . cannot look at only one statement to the exclusion*
> *of everything else and claim he has been misled.*

*Id.* at *4-5 (emphasis added).

Here, as in *Bobo,* Plaintiffs' claim fails because they have not identified any affirmative misrepresentations on the labels of the belVita products whatsoever.  Even assuming for argument's sake that statements such as "four hours of nutritious steady energy" are ambiguous and somehow may be read to suggest that the product has no or small amounts of sugar, Plaintiffs could have readily resolved that ambiguity by looking at the *front* of the package, which displays the amount of sugar in the belVita products. Furthermore, Plaintiffs could have confirmed the amount of sugar present in each one of the belVita products by reviewing the Nutrition Facts panel or ingredient list, which are "familiar and ubiquitous" features "found on most food packages" and which would have clarified any alleged ambiguity found elsewhere on the packaging.  *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015).  As this Court held in *Bobo*, Plaintiffs here cannot "look at only one statement to the exclusion of everything else and claim [they have] been misled," especially when they could have looked at "numerous statements on the front and back of the label, the nutrition panel, and the ingredient list" that show the precise sugar content in beVita snacks.  *Bobo*, 2015 WL 13102417 at *5.

This Court's ruling in *Bobo* is consistent with other similar rulings made by other courts across the country.  For instance, in *Workman v. Plum, Inc.*, the plaintiffs alleged that statements touting certain ingredients in the defendant's fruit purees, including pumpkin, pomegranate, quinoa, and Greek yogurt, were misleading because those were not the predominant ingredients in the product.  141 F. Supp. 3d 1032, 1033-34 (N.D. Cal. 2015). The court dismissed this lawsuit because "the labels contain no affirmative misrepresentations" and "all of the items pictured are actually present in the product."  *Id.* at 1035.  In so holding, the court emphasized that "[e]very reasonable shopper knows that the devil is in the details" and that "[a]ny potential ambiguity could be resolved by the back

panel of the products, which listed all ingredients in order of predominance, as required by the FDA." *Id.*  Absent any "affirmative misrepresentations" on the labeling of the fruit purees, the court concluded that the plaintiff had not stated a plausible claim of deception. *Id.* at 1036.

Likewise, in *In re 100% Grated Parmesan Cheese Marketing & Sales Practices Litigation*, the court dismissed a series of lawsuits alleging that the phrase "100% Grated Parmesan Cheese" was misleading because the products actually contained small quantities of cellulose powder and potassium sorbate.  No. 16-5802, 2017 WL 3642076, at *1 (N.D. Ill. Aug. 24, 2017).  After surveying the applicable law (including *Workman*), the court distinguished between labels involving affirmative misrepresentations and those involving merely ambiguous statements:

> Where a plaintiff contends that certain aspects of a product's packaging are misleading in isolation, but an ingredient label or other disclaimer would dispel any confusion, the crucial issue is whether the misleading content is ambiguous; if so, context can cure the ambiguity and defeat the claim . . . In other words, while a reasonable consumer, lulled into a false sense of security by an unavoidable interpretation of an allegedly deceptive statement, may rely on it without further investigation . . . *consumers who interpret ambiguous statements in an unnatural or debatable manner do so unreasonably if an ingredient label would set them straight.*

*Id.* at *5-6 (emphasis added).  The court then held that the phrase "100% Grated Parmesan Cheese" was ambiguous because, while it "might be interpreted as saying that the product is 100% cheese and nothing else, it also might be an assertion that 100% of the cheese is parmesan cheese, or that the parmesan cheese is 100% grated."  *Id.* at *6.  Given the ambiguity of the allegedly misleading label, the court dismissed the complaint because the plaintiffs' claims were "doomed by the readily accessible ingredient panels on the products that disclose the presence of non-cheese ingredients."  *Id.*[5]

---

[5] *See also Goldman v. Bayer AG*, No. 17-647, 2017 WL 3168525, at *7 (N.D. Cal. July 26, 2017) (dismissing lawsuit challenging Bayer vitamin gummies, where plaintiff argued that statements "One a Day" and "70 gummies" falsely suggested that it provided 70 days'

1
2

## II.    Plaintiffs Have Not Plausibly Alleged That the belVita Products Contain "Excessive" Amounts of Added Sugar.

3

Plaintiffs' claims fail for another independent reason: Their claim of deception is
4
entirely predicated on the assertion that "[e]xcessive consumption of added sugar is toxic
5
to the human body" (FAC ¶ 1), but Plaintiffs have not plausibly alleged that the amount of
6
added sugar in the belVita products is in fact "excessive."  In fact, the amount of sugar in
7
belVita products is well below the recommended limits recently set by the FDA,
8
undermining Plaintiffs' claims of "excessive" sugar content.

9
In 2016, the FDA established a Daily Reference Value ("DRV") for added sugars of
10
10% of total daily calories, or *50 grams* of added sugar per day assuming a 2,000 calorie
11
diet.  RJN Ex. B at 33820.  Plaintiffs' own allegations confirm that the amount of added
12
sugar is consistent with the FDA's DRV for added sugar. According to Plaintiffs, the
13
belVita products contain between 8 and 14 grams of added sugar per serving, or an average
14
of 10.7 grams of added sugar per serving.  *See* FAC ¶¶ 126, 131, 136, 141.  In other words,
15
the average belVita product contains *less than a quarter* of the FDA's recommended daily
16
intake of added sugar.  And since breakfast is only one of the three meals that a person
17
typically eats each day, Plaintiffs' conclusory allegation that the belVita products contain
18
"excessive" sugar is implausible. In sum, because the amount of added sugar in the belVita
19
products is consistent with and well below the FDA's Daily Reference Value limit for added
20
sugars, Plaintiffs cannot plausibly allege that they contain "excessive" sugar.

21
Plaintiffs largely ignore the FDA's recent guidance, and instead claim that the
22
American Heart Association ("AHA") has adopted more stringent recommendations than
23
the FDA in recommending that consumers "restrict[] added sugar to 5% of calories."  FAC

24

---

25
worth, because "[a] reasonable consumer would simply need [to] turn the bottle" to
ascertain the correct serving size of two gummies per day and therefore 30 days of serving);
26
*Gitson v. Trader Joe's Co.*, No. 13-1333, 2013 WL 5513711, at *7 (N.D. Cal. Oct. 4, 2013)
27
(holding that no reasonable consumer would believe "Organic Soy Milk" contained cow's
milk where "[t]he packaging states, on its front and back, that Organic Soy Milk is
28
'LACTOSE & DAIRY FREE,' and, on its side, that it is 'an alternative to dairy milk'").

¶ 109.   As a threshold matter, the FDA rejected the purported 5% of calories position purportedly adopted by the AHA.  In its final rulemaking, the FDA expressly rejected further limitations to the added sugars DRV:

> We disagree that the DRV for added sugars should be lower than 10 percent of calories or that there is adequate evidence at this time to set a DRV for added sugars of less than 5 percent of calories, [as] those recommendations are not consistent with those of U.S. consensus reports.

RJN Ex. B at 33849. A private organization's purported position cannot trump the U.S. government's guidance.

More importantly, the AHA does *not* in fact endorse a rigid 5% cap on consumption of added sugars per day, despite Plaintiffs' claims.  *See* RJN Ex C.  Rather, the AHA has adopted a flexible and pragmatic recommendation that individuals consume no more than a certain number of "discretionary calories" (which may be "divided between solid fats and added sugars") per day depending on their individual energy needs (which in turn depend on age, gender, and activity level).  *Id.* at Table 3.  And while the AHA has recommended that added sugars comprise no more than half of each person's discretionary calorie allotment that does not translate to a 5% cap on added sugars; to the contrary, the AHA suggestions provide that a person who requires 1800 calories per day can consume up to 5.5% of his or her calories (half of the 11% discretionary calorie allowance) from added sugar, while a person who requires 2400 calories per day can consume up to 7.5% of his or her calories (half of the 15% discretionary calorie allowance) from added sugar.  *Id.*

Plaintiffs also ignore the AHA's recognition that "[t]he form in which added sugars are consumed" is a relevant factor in determining whether that food is healthy.  *Id.* at 1016. Specifically, the AHA is primarily concerned with sugary *beverages*, since "[t]otal energy intake may be greater with fluid calorie intake than with calorie intake from solid foods" due to "the weak satiety signals evoked from energy-containing beverages."  *Id.* at 1015. Conversely, the AHA has recognized potential benefits from consuming certain foods containing added sugars, stating that while "[s]oft drinks, sugar, and sweets are more likely

1  to have a negative impact on diet quality, [] dairy foods, milk drinks, and presweetened

2  cereals may have a positive impact." *Id.* at 1016.  The AHA further stated that "*when sugars*

3  *are added to otherwise nutrient-rich foods, such as . . . sugar-sweetened cereals, the quality*

4  *of children's and adolescents' diets improves.*"  *Id.* at 1012 (emphasis added).  The AHA

5  has also emphasized that "the relationship of the intake of sugars with fiber intake" is a

6  relevant dietary consideration and that foods high in fiber are "associated with decreasing

7  energy intake, which translates into weight loss."  *Id.* at 1016.

8      Plaintiffs also argue that the World Health Organization ("WHO") has recommended

9  that "no more than 10% of an adult's calories — and ideally less than 5% — should come

10  from added sugar."  FAC ¶ 110.  Plaintiffs' assertion is also similarly misleading, as they

11  rely on a *draft* document issued by the WHO in 2014, which was superseded by a final

12  document issued in 2015.[6]  The WHO's 2015 document mirrors the FDA's determination

13  in providing a "strong recommendation" that sugar intake be reduced to "less than 10% of

14  total energy intake," and provides only a "conditional recommendation" that consumers

15  reduce added sugar intake "below 5% of total energy intake."  RJN Ex. E at 16.  The WHO

16  explains that its conditional recommendation, which reflects "less certainty 'about the

17  balance between the benefits and harms or disadvantages of implementing a

18  recommendation,'" "is based on very low quality evidence."  *Id.*

19      In sum, the FDA has rejected exactly what Plaintiffs propose here — to limit added

20  sugar to 5% of daily caloric intake.  Instead, the FDA established a Daily Reference Value

21  of 50 grams of added sugar.  RJN Ex. B.  In so doing, the FDA emphasized that the

22  healthiness of a food with added sugars "must be viewed in the context of the day's total

23  dietary intake" and cautioned against "erroneously think[ing] a food, which can be part of

24  a healthy dietary pattern, is not 'healthful' because it contains some amount of added

25

26  [6] *See* FAC ¶ 110 n. 90 (citing March 4, 2014 guidelines); RJN Ex. D at 3 (announcing the

27  release of final WHO guidelines in March 2015 and noting that "[i]n March 2014, WHO

28  opened a public consultation on the *then draft* sugars guideline to seek inputs from all
stakeholders" (emphasis added)).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 3:17-cv-2327 BEN JLB

sugars." *Id.* at 33761. Accordingly, Plaintiffs' factual predicate that the amount of sugars is "excessive" does not pass muster under the *Iqbal/Twombly* plausibility requirement.

### III. Plaintiffs' State Law Claims Are Preempted Because Federal Law Does Not Treat Added Sugar as a "Disqualifying" Nutrient.

The gravamen of Plaintiffs' lawsuit is that phrases like "nutritious steady energy" are misleading because they suggest that the belVita products are low in sugar. Their theory is that a company cannot make any "positive" statements about a product (even if truthful) if it has a "negative" (*i.e.*, sugar) in it. In addition to being implausible, this theory defies and conflicts with the FDA's regulatory framework. Indeed, the FDA has repeatedly rejected attempts to limit what a food label can say *solely* because of sugar content.

Generally, the FDA allows food labels to make a "nutrient content" claim (which refers to the amount of nutrients in a food product) or a "health" claim (which refers to the product's potential impact on health).[7] The FDA, however, has set limits on such statements if the food product also contains a "disqualifying" nutrient that the FDA deems to be generally unhealthy when consumed in excessive amounts. The FDA has only established four "disqualifying" nutrients — total fat, saturated fat, cholesterol, and sodium. After extensive analysis, the FDA declared that these four ingredients pose a potential health risk if consumed in excessive amounts and thus are "disqualifying nutrients," such that their presence may preclude the use of "nutrient content" and "health" claims on the packaging.[8]

---

[7] A "nutrient content claim" is an implicit or explicit statement about the amount of a nutrient in a product (*e.g.*, "contains 100 calories"). 21 C.F.R. § 101.13(b)(1) (express nutrient content claim); 21 C.F.R. § 101.13(b)(2) (implied nutrient content claim). In contrast, a "health claim . . . characterizes the relationship of any substance to a disease or health-related condition" (*e.g.*, "oat bran can reduce cholesterol"). 21 C.F.R. § 101.14(a)(1). Plaintiffs appear to suggest that the statements on belVita products are health claims. *See, e.g.,* FAC ¶¶ 179, 181(referring to "health and wellness" claims). For purposes of this motion, Mondēlez Global assumes that the challenged statements are health claims or nutrient content claims.

[8] *See* 21 C.F.R. § 101.14(a)(4) (defining "disqualifying nutrient levels" as "the levels of total fat, saturated fat, cholesterol, or sodium in a food above which the food will be disqualified from making a health claim."); 21 C.F.R. § 101.13(h)(2) (setting disclosure

19

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 3:17-cv-2327 BEN JLB

Notably, the FDA has expressly *rejected* repeated calls that sugar be deemed a "disqualifying" nutrient that would prohibit "health" and "nutrient content" claims because there is insufficient science to support it.  In 1993, after an extensive notice-and-comment procedure, the FDA declined to identify sugar as a "disqualifying nutrient" for health claim purposes. *See* RJN Ex. F at 2491 (setting forth final rule).  The FDA reasoned that it "would not be appropriate to limit health claims on foods on the basis of added sugars," because there was "no sound basis" as a scientific matter for doing so. *Id.*

One year later, the FDA reached the same conclusion with respect to nutrient content claims.  After a notice-and-comment procedure in which the FDA expressly debated the appropriate levels of sugar and calories, the FDA found no support for the position that consumers would necessarily expect a product presented as "healthy" to be low in calories or sugar.  RJN Ex. G at 24244.  The FDA has maintained this position despite subsequent attempts to add sugar as a disqualifying ingredient for purposes of nutrient content and health claims. *See*, *e.g.*, RJN Ex. H (summarizing a petition by the Center for Science and the Public Interest).  In other words, the FDA has repeatedly rejected what Plaintiffs propose here — to limit what a food label can say *solely* because of the sugar content in a product.

In light of this regulatory framework established by the FDA and Congress, Plaintiffs' claims are preempted because they attempt to impose labeling requirements on Mondelēz Global in addition to those set forth by federal law.

The Federal Food, Drug, & Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA"), establishes a comprehensive and uniform federal scheme of food regulation to ensure that food is safe and labeled in a manner that does not mislead consumers.  In 1990, Congress amended the FDCA through the passage of the Nutrition Labeling and Education Act ("NLEA") to "clarify and to strengthen the Food and Drug Administration's legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims

---

requirements if total fat, saturated fat, cholesterol, or sodium exceeds certain levels); 21 C.F.R. §§ 101.65(d)(2)(i) & (ii) (setting levels of total fat, saturated fat, cholesterol, and sodium precluding implied nutrient content claims involving the term "healthy").

may be made about nutrients in foods."  RJN Ex. F.  Among other things, the NLEA sets forth specific requirements for health-related claims on food labels.  *See* 21 U.S.C. § 343(r).  Further, the NLEA includes a broad express preemption provision directing that "no State or political subdivision of a State may directly or indirectly establish . . . any requirement for . . . labeling of food . . . that is not identical to the requirement[s]" set forth in the statute.  21 U.S.C. § 343-1(a) (emphasis added); see also *Mills v. Giant of Md., LLC*, 441 F. Supp. 2d 104, 106-09 (D.D.C. 2006) (noting expansive scope of NLEA preemption clause).

As the FDA has explained, "'[n]ot identical to' does not refer to the specific words in the requirement but instead means that the State requirement directly or indirectly imposes obligations or contains provisions" that are "not imposed by or contained in" or that "[d]iffer from those specifically imposed by or contained in" the statute or its implementing regulations.  21 C.F.R. § 100.1(c)(4); *see also Turek v. Gen. Mills, Inc.,* 662 F.3d 423, 427 (7th Cir. 2011) ("Even if the disclaimers that the plaintiff wants added would be consistent with the requirements imposed by the Food, Drug, and Cosmetic Act, consistency is not the test [for preemption]; identity is.").  In other words, states cannot impose their own unique labeling standards that go "beyond, or [are] different from" the federal labeling standards that Congress has established.  *In re Pepsico, Inc., Bottled Water Mktg. & Sales Practices Litig.*, 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008).  As a result, state "[c]onsumer protection laws, such as the UCL, FAL, and [CLRA] are . . . preempted if they seek to impose requirements that contravene the requirements set forth by federal law." *Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1118 (C.D. Cal. 2010).

In short, Plaintiffs' lawsuit is preempted because it attempts to impose a requirement the FDA has specifically declined to impose — namely, to treat added sugar as a disqualifying nutrient.  *Ackerman v. Coca-Cola Co.*, No. 09-0395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010), is directly on point.  There, the plaintiffs asserted claims under California and New Jersey consumer protection law challenging numerous statements on the Vitaminwater beverage label, including "this combination of zinc and fortifying

vitamins can . . . keep you healthy as a horse" and "specially formulated to support optimal metabolic function." *Id.* at *5.  Among other theories, the plaintiffs alleged that the Vitaminwater labels were misleading because they "ma[de] health claims or implied nutrient-content claims despite the high amount of sugar in the product." *Id.* at *7.  The defendants moved to dismiss, arguing that the plaintiffs' claims were preempted by the NLEA.  The court agreed, noting that "[i]n 1993, the FDA issued a final rule regulating the nutrients that could be considered 'disqualifying' for health-claim purposes, and identified only four such nutrients: total fat, saturated fat, cholesterol, or sodium.'" *Id.* at *8. Moreover, "[t]he FDA received several comments . . . proposing that sugar be included as a disqualifying nutrient," but "rejected these comments." *Id.*  The court therefore concluded that "the presence of sugar is not a disqualifying nutrient which would prohibit the defendants from 'touting the purported benefits' . . . of other ingredients in their beverage, whether through health claims or express or implied claims of nutrient content . . . ." *Id.*

Likewise, in *Chacanaca v. Quaker Oats Co.*, the court dismissed a lawsuit challenging the statements "made with whole grain oats" and "no high fructose corn syrup" on the theory that "the presence of hydrogenated vegetable oil [i.e. trans fat] makes these claims, to the extent they suggest Chewy Bars are nutritionally helpful, misleading." 752 F. Supp. 2d 1111, 1122 (N.D. Cal. 2010).  Citing *Ackerman*, the court reasoned that "the presence of trans fats alone is not a 'disqualifying' nutrient which would prevent Quaker Oats from emphasizing whatever other health benefits are available from the Bars' other ingredients or because it lacks certain ingredients." *Id.*  Accordingly, the court held that "plaintiffs' state law claim is inconsistent with subsection (r) [of the NLEA] and its regulations to the extent it depends on the presence of trans fats to render the content claims misleading. . . .  Essentially, plaintiffs' claim asks this Court to *ascribe* disqualifying status to trans fats where the Agency has at least so far declined to do so." *Id.*

Indeed, in just the last seven months, two federal courts faced with other "excessive sugar" lawsuits brought by Plaintiffs' counsel have cited *Ackerman* and *Chacanaca* in

1 holding that federal law preempts efforts to treat added sugar as a "disqualifying" nutrient.

2 *See Krommenhock*, 255 F. Supp. 3d at 956 ("The FDA has identified disqualifying

3 nutrients, including total fat, saturated fat, cholesterol, and sodium. Sugar is not one of

4 them."); *Hadley*, 2017 WL 3453391 at *13 ("[T]he FDA has expressly decided to *not* set

5 such disqualifying levels for sugar or added sugar. Therefore, Plaintiff's theory that health

6 claims or implied nutrient content claims are misleading because of a certain amount of

7 added sugar in a product would essentially 'ascribe disqualifying status' to added sugar.").

8     Here, the crux of Plaintiffs' lawsuit is that the labels of the belVita products falsely

9 "state, suggest, or imply that the Products are healthy" because they contain allegedly

10 "excessive" amounts of added sugar. FAC ¶ 152. Indeed, Plaintiffs even characterize the

11 statements challenged in this case as "claims regarding the 'health and nutrition' properties

12 of the [belVita] Products." *Id.* ¶¶ 229, 253. But this theory — *i.e.*, that otherwise accurate

13 and lawful statements about the nutritional benefits of slow-release carbohydrates are

14 misleading solely by virtue of a product's added sugar content — conflicts with the FDA's

15 decision *not* to ascribe "disqualifying" status to added sugar, and it is precisely the sort of

16 claim that *Ackerman*, *Chacanaca*, *Krommenhock*, and *Hadley* make clear is preempted.

17 **IV.  Plaintiffs Fail to State a Plausible Breach of Express Warranty Claim.**

18     Under both California and New York law, an express warranty is an "affirmation of

19 fact or promise made by the seller to the buyer" that constitutes "part of the basis of the

20 bargain." Cal. Com. Code § 2313(1)(a); N.Y. U.C.C. § 2-313(1)(a). "[O]ne must allege

21 the exact terms of the warranty, plaintiff's reasonable thereon, and a breach of that warranty

22 which proximately causes plaintiff injury."[9] *Williams v. Beechnut Nutrition Corp.*, 185 Cal.

23

24 [9] Additionally, California and New York law both require that a plaintiff must provide a
defendant with notice of an alleged breach of warranty prior to bringing suit. *Paulino v.

25 Conopco, Inc.*, No. 14-5145, 2015 WL 4895234, at *1 (E.D.N.Y. Aug. 17, 2015) ("New
York law requires that a 'buyer must within a reasonable time after he discovers or should

26 have discovered any breach notify the seller of breach or be barred from any remedy.'")

27 (quoting N.Y. U.C.C. § 2-607(3)(a)); *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 169
Cal. App. 4th 116, 135 (2008) ("To recover on a breach of warranty claim, '[t]he buyer

28 must, within a reasonable time after he or she discovers or should have discovered any

1   App. 3d 135, 142 (1986).

2       Plaintiffs allege that Mondelēz Global "made an affirmation of fact or promise that

3   the products were 'healthy,' as well as related affirmations of fact, promises, and

4   descriptions . . . ." *Id.* ¶ 248.  But as the FAC makes clear, not a single one of the challenged

5   statements includes the term "healthy."  *See id.* ¶¶ 128, 133, 138, 143.  And Plaintiffs'

6   opaque reference to "related affirmations of fact, promises, and descriptions" is woefully

7   insufficient to describe the "exact terms" of any alleged express warranty, as required by

8   both California and New York law.  *See Williams*, 185 Cal. App. 3d at 142; *Becker*, 2015

9   WL 5472311 at *7.

10      Moreover, the statements Plaintiffs challenge in this lawsuit cannot support a breach

11  of warranty claim because they are either non-actionable puffery or are truthful statements

12  that accurately reflect the fact that the products contain whole grains and other slowly

13  digestible carbohydrates.   Courts have routinely dismissed breach of express warranty

14  claims in similar labeling cases where the challenged packaging truthfully represents the

15  product's contents.  *See, e.g., Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 893-

16  94 (C.D. Cal. 2013) (dismissing warranty claim premised on term "all natural flavors"

17  because this phrase "accurately describes the product"); *McKinnis v. Kellogg USA*, No. 07-

18  2611, 2007 WL 4766060, at *5 (C.D. Cal. Sept. 19, 2007) (same).

19  **V.     Plaintiffs Fail to State a Plausible Breach of Implied Warranty Claim.**

20      Under both California and New York law, the implied warranty of merchantability

21  "provides the consumer with only a *minimum level of protection* against product defects; it

22  does not guarantee a perfect product."  *Red v. Gen. Mills, Inc.*, No. 215-02232, 2015 WL

23  9484398, at *6 (C.D. Cal. Dec. 29, 2015) (emphasis added).  This warranty is breached only

24  ───────────────────────

25  breach, notify the seller of any breach or be barred from any remedy.'") (quoting Cal. Com.
    Code § 2607(3)(A)).  Plaintiffs do not allege that they did so, which bars them from bringing

26  an express warranty claim.  *See Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y.

27  2013) (dismissing express warranty claim for failure to allege timely notice); *Cortina v.
    Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1196 (S.D. Cal. 2015) (dismissing breach of express

28  warranty claim because "Plaintiffs did not provide pre-suit notice of an alleged breach").

1  where the product lacks "the most basic degree of fitness for ordinary use."  *Birdsong v.*

2  *Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009); *accord Haag v. Hyundai Motor Am.*, 969 F.

3  Supp. 2d 313, 317 (W.D.N.Y. 2013) (holding that a plaintiff cannot state a claim for breach

4  of the implied warranty of merchantability if the products "satisfy a minimum level of

5  quality, even if they fail to perform exactly as the buyer expected")

6  Courts have routinely rejected claims for breach of the implied warranty of

7  merchantability in food cases where, as here, the plaintiff claims not that the defendant's

8  food products were inedible, but rather that they failed to live up to consumer expectations.[10]

9  Here, Plaintiffs do not allege that the products are inedible or otherwise unfit for

10  consumption; instead, they simply allege that the products are not healthy and "did not

11  conform to promises and affirmations made on the container or label of the goods."  FAC

12  ¶¶ 232, 256.  That is plainly insufficient to state a claim for breach of implied warranty.

13  ## **CONCLUSION**

14  This Court should dismiss Plaintiffs' First Amended Complaint with prejudice.

15

16  DATED:  January 12, 2018               JENNER & BLOCK LLP

17

18                                   By:   s/  Kenneth K. Lee
                                           Attorney for Mondelēz Global LLC
19                                         (incorrectly sued as Mondelēz
                                           International, Inc.)
20                                         E-mail: klee@jenner.com

21

22

---

23  [10] *See, e.g., Viggiano,* 944 F. Supp. 2d at 896 (rejecting warranty claim where the plaintiff "does not allege any facts suggesting that the soda is not merchantable or fit for use as a

24  diet soft drink; he has not, for example, alleged that the beverage was not drinkable, that it was contaminated or contained foreign objects"); *Bohac v. Gen. Mills, Inc.*, No. 12-5280,

25  2014 WL 1266848, at *10 (N.D. Cal. Mar. 26, 2014) (dismissing claim because plaintiff did not allege that the granola bars "were not edible or contaminated"); *Silva v. Smucker*

26  *Natural Foods, Inc.*, No. 14-6154, 2015 WL 5360022, at *11 (E.D.N.Y. Sept. 14, 2015)

27  (dismissing implied warranty of merchantability claim when the plaintiff made "no

28  allegation that Natural Brew [root beer] is unfit for human consumption").