**THE LAW OFFICE OF
JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555
**THE LAW OFFICE OF
PAUL K. JOSEPH, PC**
PAUL K. JOSEPH (SBN 287057)
*paul@pauljosephlaw.com*
4125 W. Pt. Loma Blvd. No. 206
San Diego, California 92110
Phone: (619) 767-0356
Fax: (619) 331-2943
***Counsel for Plaintiffs and the Proposed Class***

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Patrick McMorrow, Marco Ohlin and Melody DiGregorio, on behalf of themselves, all others similarly situated, and the general public, <br><br> Plaintiffs, <br><br> v. <br><br> MONDELEZ INTERNATIONAL, INC, <br> Defendant. | Case No: 3:17-cv-02327-BEN-JLB <br><br> Judge: Hon. Roger T. Benitez <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................ ii

INTRODUCTION ............................................................................. 1

FACTS ............................................................................................ 2

    I.    Scientific Evidence Establishes that Consuming Added Sugar in Excess of 5% of Calories is Unhealthy, as it Greatly Increases Risk of Chronic Diseases ................................................................................. 2

    II.   Mondelez Markets and Labels the belVita Products with Claims Intended to Convince Consumers that the Products are Healthy ...................... 3

    III.  The Challenged Health and Wellness Claims are Misleading Given the Products' Added Sugar Content and Caused Plaintiffs' Injury ................ 4

LEGAL STANDARDS ..................................................................... 5

ARGUMENT .................................................................................... 5

    I.    Plaintiffs Plausibly Allege the Challenged Health and Wellness Claims are Likely to Deceive the Reasonable Consumer in Light of the Products' Added Sugar ......................................................................... 5

          A.    Based on Extensive Citations to Scientific Evidence, Plaintiffs Plausibly Allege the Amount of Added Sugar in the BelVita Products is Unhealthy ........................................................ 6

          B.    Plaintiffs Have Alleged Deceptive Misrepresentations and Omissions .................................................................. 10

          C.    None of the Challenged Labeling Claims Should be Dismissed as Puffery ...................................................................... 16

    II.   Plaintiffs' Claims are Not Expressly Preempted ............................ 19

          A.    In Seeking to Invalidate Plaintiffs' Claims, Mondelez Bears a "Considerable Burden" of Overcoming the Strong Presumption Against Preemption ........................................................ 19

          B.    Mondelez Has Not Met its Burden of Establishing that Preemption Applies ...................................................... 21

    III.  Plaintiffs State Claims for Breach of Express Warranty ................. 23

    IV.  Plaintiffs State Claims for Breach of Implied Warranty ................. 24

CONCLUSION ................................................................................ 24

CERTIFICATE OF SERVICE ......................................................... 26

# **TABLE OF AUTHORITIES**

**Cases**

*Ackerman v. Coca Cola*,
  2010 U.S. Dist. LEXIS 73156 (E.D.N.Y. July 21, 2010)..................................21

*Adkins v. Nestle Purina Petcare Co.*,
  973 F. Supp. 2d 905 (N.D. Ill. 2013) ..............................................................17

*Allen v. ConAgra Foods, Inc.*,
  2013 U.S. Dist. LEXIS 125607 (N.D. Cal. 2013) ............................................23

*Allen v. Hylands, Inc.*,
  2012 U.S. Dist. LEXIS 61606 (C.D. Cal. May 2, 2012) ............................18, 24

*Ang v. Bimbo Bakeries USA, Inc.*,
  2014 U.S. Dist. LEXIS 34443 (N.D. Cal. Mar. 13, 2014)..................................6

*Ashcroft v. Iqbal*,
  129 S.Ct. 1937 (2009) ........................................................................................5

*Bates v. Dow Agrosciences, LLC*,
  544 U.S. 431 (2005) .........................................................................................19

*Bietsch v. Sergeant's Pet Care Prods., Inc.*,
  2016 U.S. Dist. LEXIS 32928 (N.D. Ill. Mar. 15, 2016 ...................................18

*Blue Buffalo Co. Ltd. v. Nestle Purina Petcare Co.*,
  2015 U.S. Dist. LEXIS (E.D. Mo. June 10, 2015)............................................18

*Bobo v. Optimum Nutrition, Inc.*,
  2015 U.S. Dist. LEXIS 187233 (S.D. Cal. Sep. 11, 2015) ...............................15

*Boswell v. Costco Wholesale Corp.*,
  2016 U.S. Dist. LEXIS 73926 (C.D. Cal. June 6, 2016) ......................10, 14, 15

*Bronson v. Johnson & Johnson, Inc.*,
  2013 U.S. Dist. LEXIS 54029 (N.D. Cal. Apr. 16, 2013) .................................24

*Bruesewitz v. Wyeth LLC*,
  562 U.S. 223 (2011).........................................................................................21

ii

*Bruton v. Gerber Prods. Co.*,
 2014 U.S. Dist. LEXIS 5493 (N.D. Cal. Jan. 15, 2014) .....................................17

*Burton v. Hodgson Mill, Inc.*,
 2017 U.S. Dist. LEXIS 53160 (S.D. Ill. Apr. 6, 2017) .....................................13

*Cipollone v. Liggett Group, Inc.*,
 505 U.S. 504 (1992) .....................................19

*Cook, Perkiss, & Liehe, Inc., v. N. Cal. Collection Serv.*,
 911 F.2d 242 (9th Cir. 1990) .....................................16

*Doyle v. Ill. Cent. R.R. Co.*,
 2009 U.S. Dist. LEXIS 8852 (E.D. Cal. Jan. 29, 2009) .....................................5

*Fraker v. KFC Corp.*,
 2007 U.S. Dist. LEXIS 32041 (S.D. Cal. Apr. 30, 2007) .....................................18

*Freeman v. Time, Inc.*,
 68 F.3d 285 (9th Cir. 1995) .....................................5

*Gilligan v. Jamco Dev. Corp.*,
 108 F.3d 246 (9th Cir. 1997) .....................................5

*Gustavson v. Wrigley Sales Co.*,
 961 F. Supp. 2d 1100 (N.D. Cal. 2013) .....................................19

*Haber v Stadium, Inc.*,
 2010 N.Y. Misc. LEXIS 1841 (N.Y. Sup. Ct. 2010) .....................................24

*Hadley v. Kellogg Sales Co.*,
 2017 U.S. Dist. LEXIS 128061 (N.D. Cal. 2017) ..................................... passim

*Hairston v. S. Beach Bev. Co.*,
 2012 U.S. Dist. LEXIS 74279 (C.D. Cal. May 18, 2012) .....................................16

*Ham v. Hain Celestial Group, Inc.*,
 70 F. Supp. 3d 1188 (N.D. Cal. 2014) .....................................24

iii

*Haskell v. Time, Inc.*,
  857 F. Supp. 1392 (E.D. Cal. 1994) ...................................................................6

*Hauter v. Zogarts*,
  14 Cal. 3d 104 (1975)..........................................................................................24

*Hazlin v. Botanical Labs., Inc.*,
  2013 U.S. Dist. LEXIS 143663 (S.D. Cal. Aug. 8, 2013) ................................10

*Hunter v. Nature's Way Prods., LLC*,
  2016 U.S. Dist. LEXIS 107092 (S.D. Cal. Aug. 12, 2016) ..............................14

*In re Farm Raised Salmon Cases*,
  42 Cal. 4th 1077 (2008) ....................................................................................19

*In re Ferrero Litig.*,
  794 F. Supp. 2d 1107 (S.D. Cal. 2011) ..................................................... passim

*In re Quaker Oats Labeling Litig.*,
  2012 U.S. Dist. LEXIS 42777 (N.D. Cal. Mar. 28, 2012)................................21

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales & Prods. Liab. Litig.*,
  754 F. Supp. 2d 1145 (C.D. Cal. 2010) ............................................................18

*In re: 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*,
  2017 U.S. Dist. LEXIS 135523 (N.D. Ill. Aug. 24, 2017) ..............................15

*Johns v. Bayer Corp.*,
  2010 U.S. Dist. LEXIS 62804 (S.D. Cal. June 24, 2010)................................16

*Johnson v. Triple Leaf Tea*,
  2014 U.S. Dist. LEXIS 134111 (N.D. Cal. 2014) ...........................................13

*Jones v. Nutiva, Inc.*,
  2016 U.S. Dist. LEXIS 129898 (N.D. Cal. Sep. 22, 2016) .......................11, 24

*Krommenhock v. Post Foods, LLC*,
  255 F. Supp. 3d 938 (N.D. Cal. 2017) ...................................................... passim

*Larsen v. Trader Joe's Co.*,
  917 F. Supp. 2d 1019 (N.D. Cal. 2013) ............................................................22

iv

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996) ...........................................................................................19

*Mohamed v. Jeppesen Dataplan, Inc.*,
  579 F.3d 943 (9th Cir. 2009)...............................................................................5

*Mullins v. Premier Nutrition Corp.*,
  178 F. Supp. 3d 867 (N.D. Cal. 2016) ...............................................................16

*Newcal Indus., Inc. v. Ikon Office Solution*,
  513 F.3d 1038 (9th Cir. 2008)............................................................................17

*Red v. Kraft Foods, Inc.*,
  754 F. Supp. 2d 1137 (C.D. Cal. 2010) .............................................................22

*Siracusano v. Matrixx Initiatives, Inc.*,
  585 F.3d 1167 (9th Cir. 2009).............................................................................5

*Stengel v. Medtronic Inc.*,
  704 F.3d 1224 (9th Cir. 2013).............................................................................19

*Tomasino v. Estee Lauder Cos.*,
  2015 U.S. Dist. LEXIS 38918 (E.D.N.Y. Mar. 26, 2015)..................................10

*Trazo v. Nestle USA, Inc.*,
  2013 WL 4083218 (N.D. Cal. Aug. 9, 2013) .....................................................21

*Tylka v. Gerber Prods. Co.*,
  1999 U.S. Dist. LEXIS 10718 (N.D. Ill. July 1, 1999).......................................18

*United States v. Redwood City*,
  640 F.2d 963 (9th Cir. 1981)................................................................................5

*Workman v. Plum Inc.*,
  141 F. Supp. 3d 1032 (N.D. Cal. 2015) .......................................................15, 16

*Wyeth v. Levine*,
  555 U.S. 555 (2009)............................................................................................19

*Yeksigian v. Nappi*,
  900 F.2d 101 (7th Cir. 1990)................................................................................5

*Yumul v. Smart Balance, Inc.*,
  733 F. Supp. 2d 1117 (C.D. Cal. 2010) ........................................................6, 16

*Zeisel v. Diamond Foods, Inc.*,
  2010 U.S. Dist. LEXIS 141941 (N.D. Cal. Sept. 3, 2010) ...............................23

**Statutes**

21 U.S.C. § 343(a)(1)................................................................................22, 23

21 U.S.C. § 343-1............................................................................................22

21 U.S.C. § 343-1 note (1)..............................................................................20

21 U.S.C. § 343-1(a)........................................................................................20

21 U.S.C. §§ 301 *et seq*..................................................................................20

Cal. Com. Code §§ 2314(2) (f).......................................................................24

Cal. Health & Safety Code § 110660..............................................................22

UCC § 2-314(2)(f)...........................................................................................24

**Treatises**

81 Fed. Reg. 33,742 (May 27, 2016) ..........................................................9, 10

**Regulations**

21 C.F.R. § 101.9 ............................................................................................19

21 C.F.R. § 101.13(b).....................................................................................22

21 C.F.R. § 101.14(a)(1).................................................................................22

21 C.F.R. §§ 101.13-101.14............................................................................20

21 C.F.R. §§101.54-101.83.............................................................................20

# **INTRODUCTION**

When Mondelez introduced the belVita Products, its stated goal was to appeal to consumers interested in health and wellness. Its primary avenue for making this appeal was through the labeling of the Products, where it claimed, *inter alia*, that it "worked closely with nutritionists to design a new kind of breakfast biscuit" that is "nutritious," "wholesome," and "part of a balanced breakfast." These claims achieved Mondelez's express goal of convincing consumers, including Plaintiffs, that the Products are healthy. But far from being healthy, the Products are loaded with added sugar, contributing up to 24% of their calories, which is nearly five times the amount shown to overload the liver, greatly increasing risk of cardiovascular disease, diabetes, liver disease, and other morbidity.

That Plaintiffs plausibly allege that Mondelez's labeling claims are misleading to the reasonable consumer is evident. Indeed, two similar cases brought by Plaintiffs' counsel— relying on the same science, and involving similar high-sugar breakfast cereals and bars bearing wellness claims[1]—confirm that labeling statements suggesting products are healthy or wholesome are plausibly misleading when the products contain high levels of added sugar.

Unable to meaningfully contest the logic of these cases or meaningfully challenge Plaintiffs' detailed allegations, Mondelez's motion instead largely ignores these cases, attacks strawman theories Plaintiffs do not advance, and otherwise disputes the merits of Plaintiffs' allegations, which is improper on a motion to dismiss.

First, Mondelez asserts the belVita Products do not contain excessive added sugar because a single serving is less than the FDA's recently adopted Daily Recommended Value (DRV) of 10% of calories or 50 grams per day. But *Hadley* and *Krommenhock* soundly rejected this argument, explaining that the FDA's DRV does not set a controlling standard, and that the *scientific studies* relied upon by Plaintiffs plausibly support their allegations that consuming sugar in excess of 5% of calories is harmful, such that it is plausible that

---

[1]*Hadley v. Kellogg Sales Co*., 2017 U.S. Dist. LEXIS 128061 (N.D. Cal. 2017) ["*Hadley II*"]; *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938 (N.D. Cal. 2017).

advertising as healthy products with sugar in excess of that percentage is misleading.

Second, Mondelez's arguments that no reasonable consumer would be deceived rests on its mischaracterization that "[t]he gravamen of Plaintiffs' lawsuit is that [the challenged claims] are misleading because they suggest that the belVita products are low in sugar." Plaintiffs do not allege the challenged claims lead consumers to believe anything about the Products' sugar content, but instead that the Products "are healthy and will not detriment health." While it is the Products' excessive added sugar content that renders the health message misleading, Plaintiffs allege the challenged claims are misleading despite the disclose of total sugar because average consumers are unaware of the extent to which consuming high amounts of added sugar harms health or what amounts harm health.

Third, while Mondelez asserts that the challenged claims are puffery, as it well knows, health-related claims on food products are not so outrageous as to preclude reliance.

Fourth, Mondelez raises the affirmative defense of preemption but fails to establish, or even argue, that the regulations it asserts preempt Plaintiffs' claims apply. Because Mondelez merely "assumes" that the challenged claims are regulated nutrient content or health claims—which they are not—it has failed to carry its considerable burden of overcoming the strong presumption against preemption that applies.

Finally, Mondelez provides no reason to dismiss Plaintiffs' breach of warranty claims. Instead it simply regurgitates its invalid puffery argument and asserts Plaintiffs failed to allege the Products are not fit for their ordinary purpose, when Plaintiffs allege the Products are not merchantable because they do not conform to the promises made on their packaging.

Accordingly, the Court should deny Mondelez's motion to dismiss.

## FACTS

## I.   Scientific Evidence Establishes that Consuming Added Sugar in Excess of 5% of Calories is Unhealthy, as it Greatly Increases Risk of Chronic Diseases

"Excessive consumption of added sugar is toxic to the human body." (Dkt. No. 13, First Am. Compl. ("FAC") ¶ 1.) Extensive scientific evidence demonstrates that "sugar—any amount above approximately 5% of daily caloric intake—greatly increases the risk of

2

cardiovascular disease, diabetes, liver disease, and a wide variety of other chronic diseases." (*Id.*; *see also id.* ¶¶ 13-111 (discussing in detail the body's physiological responses to sugar consumption and the links between those responses and chronic disease).)

Five percent is key "[b]ecause the liver has some capacity to process sugar," and 5% of daily calories "appear[s] to be a 'safe' threshold of daily added sugar consumption, small enough not to overload the liver[.]" (*Id.* ¶ 30.) Above this threshold, risk of chronic diseases greatly increases. For example, scientific evidence shows "those who consumed between 10% - 24.9% of their calories from added sugars had a 30% greater risk of cardiovascular disease (CVD) mortality than those who consumed 5% or less of their calories from added sugar," while "those who consumed 25% or more . . . had an average 275% greater risk of CVD mortality" (*id.* ¶ 67; *see also id.* ¶ 68 ("when compared to those who consumed approximately 8% of calories from added sugar, participants who consumed approximately 17% - 21% . . . had a 38% higher risk of CVD mortality, while the relative risk was more than double for those who consumed 21% or more of calories from added sugar")).

## II.   Mondelez Markets and Labels the belVita Products with Claims Intended to Convince Consumers that the Products are Healthy

Mondelez is "one of the world's largest snack companies." (*Id.* ¶ 112.) In 2012, it introduced the "belVita line of breakfast products" (*id.* ¶ 113), which currently includes four varieties: belVita "Crunchy" Biscuits, belVita "Soft Baked" Biscuits, belVita "Bites," and belVita "Sandwiches" (*id.*). Each variety is available in several flavors.

"According to Mondelez, one of the primary objectives of the belVita Products was 'to make the biscuit category relevant to people who have health and wellness in mind' and '[l]everag[e] consumer snacking trends around health and nutrition.'" (*Id.* ¶ 115 (citation omitted).) As its Executive Vice President put it, consumers "are increasingly interested in health and nutrition for themselves and for their families" and Mondelez is "tapping into this trend and [is] determined to become the global leader in well-being snacks." (*Id.* ¶ 116 (citation omitted).) For this reason, Mondelez crafted a marketing campaign for the belVita Products intended to convince consumers they are healthy, through key labeling messages.

3

(*Id.* ¶ 117-118. *See also id.* ¶¶ 128, 133, 138, 143 (listing the misleading health and wellness labeling claims for each product).) For example, the crunchy biscuits label emphasized that Mondelez "worked closely with nutritionists to design a new kind of breakfast biscuit" that provides "[e]nergy that is nutritious and sustained." (*Id.* ¶ 128.) The Products' labels also repeatedly claim that the Products provide "NUTRITIOUS STEADY ENERGY" and claim that they are "a nutritious, convenient breakfast choice," are "wholesome" and are "part of a balanced breakfast." (*Id.* ¶¶ 128, 133, 138, 143.)

Just as Mondelez intended, "[t]hese [labeling] claims convey a message that the Products are healthy and will not detriment health." (*Id.* ¶¶ 128, 134, 139, 144.)

## III.   The Challenged Health and Wellness Claims are Misleading Given the Products' Added Sugar Content and Caused Plaintiffs' Injury

This message that the belVita Products are healthy is "misleading because the Products are actually *unhealthy* and increase the risk of serious diseases." (*Id.* (emphasis added).) "[A]ll of the belVita Breakfast Products contain high levels of added sugar, between 16 and 24 percent of calories, such that their regular consumption is likely to contribute to excess added sugar consumption and, thereby, increased risk for and contraction of chronic diseases." (*Id.* ¶ 124.) A single serving of the belVita Product contains between 8g and 14g of added sugar per serving, which is up to 37% of the American Heart Associations (AHA) Recommended Daily Intake of added sugars for men, 56% for women, and 117% for children (*id.* ¶¶ 126, 131, 136, 141 & App. 1).

"When purchasing the belVita Products, [] Plaintiffs were seeking products that were healthy to consume" (*id.* ¶ 164), and read and relied on the misleading labeling "claims regarding the health and wellness qualities of the Products" (*id.* ¶¶ 157, 160, 163). Like the average consumer "Plaintiffs were unaware of the extent to which consuming high amounts of added sugar, in any form, adversely affects blood cholesterol levels and increases risk of CHD, stroke, and other morbidity, or what amount of sugar might have such an effect." (*Id.* ¶ 166. *See also id.* ¶ 167.) But Plaintiffs were injured because "they did not receive what they paid for when purchasing the belVita Products (*id.* ¶ 175), because "the Products are not

4

healthy but instead their consumption increases the risk of serious diseases" (*id.* ¶ 165; *see also id.* ¶¶ 168-174).

## LEGAL STANDARDS

Dismissal is proper under Rule 12(b)(6) only in "extraordinary" cases. *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). Federal pleading requirements are "extremely liberal," requiring only "a short and plain statement of the claim," so as to "minimize disputes over pleading technicalities." *Doyle v. Ill. Cent. R.R. Co.*, 2009 U.S. Dist. LEXIS 8852, at *9-10 (E.D. Cal. Jan. 29, 2009). Courts hear such motions with "a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248-49 (9th Cir. 1997).

"[D]efendants have the burden on a motion to dismiss to establish the legal insufficiency of the complaint." *Yeksigian v. Nappi*, 900 F.2d 101, 104 (7th Cir. 1990). A plaintiff's claim should not be dismissed where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). In deciding a motion to dismiss, courts should draw "all reasonable inferences from the complaint in [plaintiffs'] favor," *Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 949 (9th Cir. 2009), and "accept the plaintiffs' allegations as true and construe them in the light most favorable to the plaintiffs." *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1177 (9th Cir. 2009).

## ARGUMENT

**I.    Plaintiffs Plausibly Allege the Challenged Health and Wellness Claims are Likely to Deceive the Reasonable Consumer in Light of the Products' Added Sugar**

The UCL, FAL, and CLRA "prohibit not only advertising which is false, but also advertising which although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (alterations omitted). This objective, "reasonable consumer" test requires only that a plaintiff "show that 'members of the public are likely to be deceived.'" *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (quotation omitted). At the pleading

5

stage, the focus is on whether a plaintiff alleging deceptive advertising might *possibly* show a reasonable consumer is likely to be deceived. *See Williams*, 552 F.3d at 939 (even just "potential deception" defeats a motion to dismiss). "California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on a motion to dismiss." *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1125 (C.D. Cal. 2010) (quoting *Williams*, 552 F.3d at 938). Only where an "alleged misrepresentation, in context, is such that no reasonable consumer could be misled," may the claim be dismissed. *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994).[2]

A. **Based on Extensive Citations to Scientific Evidence, Plaintiffs Plausibly Allege the Amount of Added Sugar in the BelVita Products is Unhealthy**

Between 16 and 24% of calories in each belVita Product come from added sugar. (FAC ¶ 124.) Plaintiffs allege that "[e]xperimentally sound, peer-reviewed studies and meta-analyses convincingly show that consuming excessive added sugar—any amount above approximately 5% of daily caloric intake—greatly increases the risk of cardiovascular disease, diabetes, liver disease, and a wide variety of other chronic diseases." (*Id.* ¶ 1.) In

---

[2] Mondelez asserts that "Plaintiff challenges over 20 belVita products" but "bought only a subset of them" to assert that Plaintiffs lack standing to challenge products they did not purchase. (Mot. at 5 n.3.) But Plaintiffs only challenge four belVita Products ("Crunchy," "Soft Baked," "Bites," and "Sandwiches," (FAC ¶¶ 114)) each of which Plaintiffs have purchased (*id.* ¶¶ 155, 158, 161). That Plaintiffs have not purchased every *flavor* of each Product should not prevent them from challenging those flavors as "[t]he labels of the "Crunchy" [Soft Baked, Bites, and Sandwich] Products are substantially similar for each flavor" (FAC ¶¶ 127, 132, 137, 142) and Plaintiffs' theory of deception is identical regardless of flavor. *See Krommenhock*, 255 F. Supp. 3d at 968-69 ("plaintiffs have standing to sue over 'unpurchased products' when the label statements challenged are very similar to the statements on the labels of the unpurchased products and there are no material differences between the products that would significantly alter the reasonable consumer analysis." (citing *Ang v. Bimbo Bakeries USA, Inc.*, 2014 U.S. Dist. LEXIS 34443, at *8 (N.D. Cal. Mar. 13, 2014) ("the best approach is one which focuses on whether the type of claim and consumer injury is substantially similar as between the purchased and unpurchased products. That determination necessarily focuses on whether the resolution of the asserted claims will be identical between the purchased and unpurchased products.").

support of this allegation, Plaintiffs cite to *dozens* of peer-reviewed studies and meta-analyses. (*Id.* ¶¶ 24-108.) For example, scientific evidence shows "those who consumed between 10% - 24.9% of their calories from added sugars had a 30% greater risk of cardiovascular disease (CVD) mortality than those who consumed 5% or less of their calories from added sugar." (*Id.* ¶ 67.)

As the courts in *Hadley* and *Krommenhock* recently held—*based on the same studies*—"plaintiffs have plausibly alleged that added sugar created health risks such that [Defendant's] 'health' claims were misleading," *Krommenhock*, 255 F. Supp. 3d at 947 ("relevant studies supporting plaintiffs' theory (at least in part) have been alleged, and determining the full extent of that support is not appropriate on a motion to dismiss"). As *Hadley II* explained:

> The Court finds that Plaintiff has adequately alleged that Defendant's products are unhealthy due to excess added sugar for the purposes of the instant motion to dismiss. . . . Plaintiff provides scientific studies that link added sugar to cardiovascular disease, metabolic syndrome, and diabetes. At least one cardiovascular study states that "mortality increased exponentially with increasing [the] usual percentage of calories from added sugar." *Id.* ¶ 64; . . . Moreover, Plaintiff alleges that Defendant's products are composed of 18% to 40% added sugar by calorie or 9 to 16 grams of added sugar per serving. Thus, at the very least, Plaintiff has alleged that eating Defendant's products would require the individual to eat lower sugar foods throughout the rest of the day to maintain a daily percentage of added sugar intake that is below the two thresholds for added sugar mentioned in the instant suit, the 5% AHA recommendation and the FDA's 10% DRV.

2017 U.S. Dist. LEXIS 128061, at *22-23. *See id.*, at *23 (citing *In re Ferrero Litig.*, 794 F. Supp. 2d 1107 (S.D. Cal. 2011) ("holding that the plaintiff adequately alleged that Nutella was unhealthy because the plaintiff alleged that even though a single serving constituted only 30% to 50% of the DRV for fat it 'creat[ed] the high probability that the child w[ould] therefore exceed his or her recommended daily allowance' of fat.")).

Despite that its counsel is also defense counsel in *Hadley*, Mondelez ignores these decisions, which are directly on point, and reasserts the same flawed arguments these courts rejected. (Mot. at 16-19.) Mondelez argues "Plaintiffs have not plausibly alleged that the amount of added sugar in the belVita Products is in fact 'excessive'" (Mot. at 16) and

7

therefore unhealthy. But its argument is based on the faulty premise that the FDA's "Daily Reference Value ("DRV") for added sugars of 10% of total daily calories, or 50 grams of added sugar per day" (Mot. at 16)[3] is a controlling standard, and that the 5% recommendations of the AHA and WHO "cannot trump the U.S. government's guidance" (*id.* at 17:7-8).

But both *Krommenhock* and *Hadley II* rejected that the FDA guidance sets a controlling standard. In rejecting the argument that "Plaintiff seeks to enforce the AHA's 5% recommendation for daily added sugar consumption and give it the 'force of law' in place of the FDA's 10% DRV," Judge Koh explained "the Court need not adopt a 5% 'standard' for added sugar to find Plaintiff's allegations to be adequate" because "[w]hile AHA and FDA recommendations may be relevant to the issues in this case, the case is not about whether 5% or 10% of calories from added sugar is a more reasonable threshold for a daily sugar consumption limit, but whether it is misleading for [Defendant] to label foods with the challenged health and wellness claims when 20%-40% of their calories come from added sugar." *Hadley II*, 2017 U.S. Dist. LEXIS 128061, at *25-26.  Thus, both the FDA and the AHA provide "relevant evidence, but does not carry the force of law." *Id.*, at *26.

> *The FDA's rulemaking on the 10% DRV did not establish that added sugar in the amounts in Defendant's products was healthy*. In its rulemaking, the FDA stated that "[w]e disagree that the DRV for added sugars should be lower than 10 percent of calories or that there is adequate evidence at this time to set a DRV for

---

[3] Mondelez is misguided in arguing that Plaintiffs' claims are implausible because the "belVita products contain between 8 and 14 grams of added sugar per serving, or an average of 10.7 grams" (Mot. at 16), which is less than the FDA's 50-gram DRV. Whatever the contribution one serving of the challenged Products makes to the FDA's added sugar DRV, based on the facts and science alleged in the FAC, it is plausible a factfinder could find it deceptive to label the Products with wellness claims, since their added sugar contributes 16% - 24% of their calories. *See Hadley II*, 2017 U.S. Dist. LEXIS 128061, at *29-30 ("Defendant cites to no statute, regulation, or FDA statement that explicitly states that liability cannot be imposed for characterizing a product as healthy just because a single serving of the product contains less added sugar than the FDA-established DRV."); *Krommenhock*, 255 F. Supp. 3d at 945 n.5 ("Plaintiffs define 'high-sugar cereals' as 'those that contribute significantly more than 5 percent of calories from sugar, and thus whose regular consumption is likely to contribute to increased risk of illness.'").

added sugars of less than 5 percent of calories." 81 Fed. Reg. at 33849. *This decision was not necessarily based on the healthiness of consuming less than 10% of one's daily calories as added sugar.* Instead, the FDA stated: "A DRV of 10 percent of total calories provides a value that is <u>more realistic considering current consumption of added sugars</u> in the United States as well added sugars in the food supply." Id. (emphasis added). Thus, the FDA's decision to create a 10% DRV was not necessarily based on healthiness, but was based on realistic goals for American consumer consumption of added sugar. Accordingly, *the FDA's 10% DRV need not be adopted as the definitive threshold for what amount of added sugar in a product is or is not healthy.*

Id., at *26-28 (italicized emphasis added) (record citations omitted). *See also Krommenhock*, 255 F. Supp. 3d at 953-54 ("That plaintiffs rely in part (and not exclusively) on the AHA 5 percent recommendation to provide a plausible scientific basis for their allegations that consuming excess amounts of added sugars creates significant health risks does not mean those claims are preempted because the FDA chose not to set its DRV at 5 percent . . . .").

Accordingly, Plaintiffs have alleged sufficient scientific evidence to support their allegations that the belVita health and wellness labeling claims are misleading given the Products' added sugar content of between 16% and 25% of calories.

Mondelez's assertions that "the AHA does not in fact endorse a rigid 5% cap" (Mot. at 17:9-20), the "AHA is primarily concerned with sugary *beverages*" (*id.* at 17:21-18:7), or that the WHO "has recommended that "no more than 10% of an adult's calories — and ideally less than 5%" (*id.* at 18:8-18)—all contest the scientific merits of Plaintiffs' claims—a factual question inappropriate for resolution on a motion to dismiss.[4] *See Hadley II*, 2017 U.S. Dist.

---

[4] Mondelez overstates and mischaracterizes what the FDA has actually determined regarding added sugars. (Mot. at 16:9-17:7.) As the FDA explained, "[w]hile the WHO and other health organizations have recommended that individuals should consume 5 percent or less of total calories from added sugar, those recommendations are not consistent with those of U.S. consensus reports," 81 Fed. Reg. 33,742, 33,849 (May 27, 2016), "showing that Americans, on average, are consuming 13.4 percent of calories from added sugars," *id.*, "and from 15% to 17% in children 9 and older," *id.* Thus, "[a] DRV of 10 percent of total calories" was "*more realistic* considering current consumption of added sugars in the United States as well as added sugars in the food supply." *Id.* (emphasis added). The FDA nevertheless acknowledged

LEXIS 128061, at *26 ("what exactly the AHA recommendation means in the instant suit is subject to dispute. . . .The Court need not resolve the parties' factual dispute because such resolution is not appropriate on a motion to dismiss."); *Hazlin v. Botanical Labs., Inc.*, 2013 U.S. Dist. LEXIS 143663, at *11-12 (S.D. Cal. Aug. 8, 2013) ("[Arguments that] the studies cited in the [operative complaint] do not support Plaintiffs' allegation . . . invite the Court to weigh the evidence cited in support of Plaintiffs claims . . . However, the Court does not weigh evidence in deciding a motion to dismiss."). *See also Tomasino v. Estee Lauder Cos.*, 2015 U.S. Dist. LEXIS 38918, at *12-13 (E.D.N.Y. Mar. 26, 2015) (Plaintiff "not obligated in her complaint to definitively prove all of [her] claims by reference to unassailable scientific fact. Rather, she is only required to state a claim that is plausible on its face."); *Boswell v. Costco Wholesale Corp.*, 2016 U.S. Dist. LEXIS 73926, at *26-27 (C.D. Cal. June 6, 2016) ("Plaintiffs have adduced *some factual support* for the proposition that coconut oil *might* have a deleterious effect on an individual's health. . . . That is all that is required at this stage." (emphasis added)).

Accordingly, "the Court cannot conclude on the instant motion to dismiss that a reasonable consumer would not find Defendant's products to be unhealthy based on the amount of added sugar in those products." *Hadley II*, 2017 U.S. Dist. LEXIS 128061, at *25.

## B. Plaintiffs Have Alleged Deceptive Misrepresentations and Omissions

A primary objective of the belVita Products was to appeal to "people who have health and wellness in mind." (FAC ¶ 115.) Mondelez thus labeled the Products with the claim that Mondelez "worked closely with nutritionists to design a new kind of breakfast biscuit" that provides "NUTRITIOUS STEADY ENERGY," and claims that the Products are a "wholesome," "nutritious, convenient breakfast choice," and "part of a balanced breakfast." (*Id.* ¶¶ 128, 133, 138, 143.) Plaintiffs allege that these "claims convey a message that the

___

that the 50-gram DRV is too high for children, *id.*, but declined to create a separate one because it "could clutter the label," among other things. *See id.* In sum, the FDA's decision-making was based on an amalgamation of scientific, political, and practical considerations, not just the science.

*McMorrow et al. v. Mondelez International Inc.*, 3:17-cv-02327-BEN-JLB
OPPOSITION TO MOTION TO DISMISS

Products are healthy and will not detriment health, which is misleading because the Products are actually unhealthy and increase the risk of serious diseases." (*Id.* ¶ 129.)

Where, as here, a plaintiff plausibly alleges challenged claims convey a health message, such allegations are sufficient to state a claim under the reasonable consumer standard. *See Jones v. Nutiva, Inc.*, 2016 U.S. Dist. LEXIS 129898, at *18-19 (N.D. Cal. Sep. 22, 2016) (plaintiff stated claim where he alleged statements, including, "Nurture Vitality," "Organic Superfood," "100% less cholesterol than butter," "Coconut is one of the world's most nourishing foods," and "A nutritious substitute in baking," "read together, led plaintiff to believe that Defendant's coconut oil was "healthy" and would not harm health); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1125-26 (N.D. Cal. 2010) ["*Quaker Oats I*"] ("wholesome" could arguably mislead a reasonable consumer where product contained harmful amounts of trans fat); *In re Ferrero Litig.*, 794 F. Supp. 2d at 1115 ("tasty yet balanced breakfast" actionable misrepresentation where product alleged to "contain[] dangerous levels of fat and sugar").

Thus, contrary to Mondelez's assertion (Mot. at 6:24-25), "plaintiffs have alleged affirmative misrepresentations . . . that the challenged products are healthy, which they assert is false or misleading given the added sugar content." *Krommenhock*, 255 F. Supp. 3d at 970 ("Plaintiffs have adequately alleged their FAL, CLRA, and UCL claims based on fraudulent or misleading health and wellness claims" on the labeling of high-sugar breakfast products.).

Because Mondelez cannot reasonably argue that its representations that the Products were developed by nutritionists to be "nutritious" and "wholesome" could not mislead reasonable consumers to believe the Products are *healthy*, it instead attacks a strawman theory Plaintiffs do not advance: "[t]he gravamen of Plaintiffs' lawsuit is that phrases like "nutritious steady energy" are misleading because they *suggest that the belVita products are low in sugar*" (Mot. at 19:5-6 (emphasis added)).[5] But as Judge Koh noted, when presented with the

---

[5] (*See also id.* at 2:4-5 ("Plaintiffs somehow thought that '4 Hours of Nutritious Steady Energy' meant that the belVita biscuits had little or no sugar."), at 12 ("Plaintiffs can only

same argument by the same defense counsel in *Hadley*:

> Plaintiff's added sugar-based FAL, CLRA, and UCL fraudulent prong causes of action are based on the following logical steps: (1) Defendant's labeling indicates that Defendant's cereals and cereal bars are healthy, (2) Defendant's cereals and cereal bars contain excessive added sugar, (3) excessive added sugar is unhealthy, and therefore (4) Defendant's statements that its cereal and cereal bars are healthy are false or misleading.

*Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1090 (N.D. Cal. 2017) ["*Hadley I*"].

It is that the challenged claims convey that the belVita Products—*as a whole*—are healthy that distinguishes this case from the cases relied upon by Mondelez, which it describes as involving "statements about a food *product's ingredients or nutrient content*" (Mot. at 8-9 (emphasis added) (citing *Red*, *Delacruz*, and *Henderson*)).

While Mondelez repeatedly mischaracterizes the challenged claims as relating only to energy and slow release carbs,[6] they are not so narrow in nature, but rather emphasize the purported healthfulness of the *entire Products* by claiming they were developed by a nutritionist to be "nutritious," and "wholesome" and "part of a balanced breakfast." While

---

claim that phrases like 'balanced breakfast' and 'nutritious steady energy' are ambiguous, and that they somehow subjectively believed that they suggested that the belVita products had no or little sugar in them."), at 4:1-2 ("none of those challenged statements represent that the belVita products are low in sugar; in fact, none of the statements challenged in the FAC even *mention* sugar"), at 1:20-21 ("They cannot point to any affirmative misrepresentation because the challenged statements do not represent that the belVita biscuits are low in sugar."); at 14:5-8 ("Even assuming for argument's sake that statements such as 'four hours of nutritious steady energy' are ambiguous and somehow may be read to suggest that the product has no or small amounts of sugar . . . ."), at 7:11-13 ("Plaintiffs claim that consumers will be misled to believe that the belVita products do *not* contain 'excessive sugar' simply because they are advertised as containing slow-release carbohydrates.").)

[6] (Mot. at 3 (the Products "bear various statements designed to highlight the fact that the products maintain steady energy levels"), at 7:10 (arguing challenged claims are "accurate statements about whole grains and slow-release carbohydrates"), at 7:15-16 (characterizing challenged claims as "touting the presence of slow-release carbohydrates"), at 9:10-12 (asserting challenged claims "merely indicate what they say — that the belVita products contain slow-release carbohydrates that provide steady energy")).

12

Mondelez may challenge what the reasonable interpretation of the claims is at a later point in the litigation, at this stage such a determination is inappropriate as the Court must draw all reasonable inferences from the complaint in Plaintiffs' favor. *See Johnson v. Triple Leaf Tea*, 2014 U.S. Dist. LEXIS 134111, at \*32 (N.D. Cal. 2014) ("to the extent defendant argues that reasonable consumers are not likely to interpret the challenged statements in the manner alleged by plaintiff, the Court declines to make such a finding at the pleading stage."); *Burton v. Hodgson Mill, Inc.*, 2017 U.S. Dist. LEXIS 53160, 2017 WL 1282882, at \*6 (S.D. Ill. Apr. 6, 2017) ("This Court finds that the crux of this issue is a reasonable person's interpretation of the various labels and representations on a given product—thus, this question is best left for the jury.").

To the extent Mondelez asserts limited aspects of the challenged claims are literally true, such as providing energy (Mot. at 7), this does not defeat Plaintiffs' claims because the UCL, FAL, and CLRA "prohibit 'not only advertising which is false, but also advertising which although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *See Williams*, 552 F.3d at 938.

Mondelez is also wrong that "Plaintiffs [can't] point to any material omission because the amount of sugar in the products is fully disclosed on the packaging" (Mot. at 1; *id.* at 7). Again, this argument attacks a strawman, not Plaintiffs' actual theory. Plaintiffs theory is that, in light of the challenged health and wellness claims, Mondelez failed to disclose that the added sugar in the Products is sufficiently high for their regular consumption to have detrimental health effects, and what those effects are. (FAC ¶¶ 153, 124.) Such allegations are sufficient to state a claim for a material omission:

> [I]f Plaintiff has adequately alleged that Defendant's products are represented to be healthy, but added sugar causes Defendant's products to be unhealthy, the omission of that latter fact would give rise to an actionable omission claim.

*Hadley II*, 2017 U.S. Dist. LEXIS 128061, at \*91 n.4. *Cf. Krommenhock*, 255 F. Supp. 3d at 954 ("Treating plaintiffs' claims as akin to an omissions by material misstatement claim, plaintiffs are not arguing that Post must disclose the added sugar content. Instead, they allege

that Post cannot continue to use those voluntary health and wellness statements because they are misleading in light of the added sugar content.").

Likewise, because Plaintiffs allege the challenged claims led consumers to believe the Products were healthy, rather than contained a low amount of added sugar, that the *total* sugar is shown in the nutrition facts box (and on the front of the label on *some* packages[7]) does not render Plaintiffs' claims implausible:

> The fact that for some of the products, the sugar content is also shown on the front panel in a banner at the top of the box, may undercut the strength of plaintiffs' claims as to those particular boxes, but it is premature to make that determination at this juncture.

*Krommenhock*, 255 F. Supp. 3d at 964 n.32.

Plaintiffs "are not arguing the label deceived them of the true [sugar] content; rather, 'they allege [the Product's] labeling claims mislead [sic] them into believing the product was healthy *notwithstanding* its [sugar] content." *See Boswell v. Costco Wholesale Corp.*, 2016 U.S. Dist. LEXIS 73926, at *23 (C.D. Cal. June 6, 2016) (emphasis in original) (that the product listed saturated fat content did not render claims that product was healthy non-misleading as a matter of law). *See also Hunter v. Nature's Way Prods., LLC*, 2016 U.S. Dist. LEXIS 107092, at *19 (S.D. Cal. Aug. 12, 2016) ("Representations made on the label of the coconut oil products may be misleading and deceptive even though the representations do not directly contradict the ingredients listed on the label.").

Plaintiffs further allege the "reasonable consumer is unaware of the extent to which consuming high amounts of added sugar, in any form, adversely affects blood cholesterol

---

[7] Contrary to what Mondelez implies, that the amount of sugar was not disclosed on all versions of the Products' packaging. (*See* FAC ¶ 127.) Further, Plaintiffs allege that *added* sugar, not all sugar, is unhealthy because unlike sugar in fruit that is "encased in the fruit's fiber, which slows the sugar's uptake" (*id.* ¶ 29), added sugars are rapidly digested and more likely to overwhelm the liver. Because knowing the amount of total sugar does not inform a consumer of the amount of added sugar, the disclosure cannot cure the misrepresentations even for an unusually well-informed consumer who might know what amount of added sugar is unhealthy.

levels and increases risk of CHD, stroke, and other morbidity, or what amount of sugar might have such an effect." (FAC ¶ 167.) Thus, disclosing the amount of total sugar *does not cure the misrepresentation* that the Products are healthy. Because the reasonable consumer does not know what levels of added sugar consumption is unhealthy or what harmful effects excessive consumption causes, reasonable consumers may read the challenged claims as well as the sugar content and still be led to believe the Products are healthy. *See Boswell*, 2016 U.S. Dist. LEXIS 73926, at *23 (rejecting argument that "Plaintiffs could not have reasonably relied on the label given the disclosure of the saturated fat content" because it is "premised on the notion that disclosure of the saturated fat content on the label necessarily means a reasonable consumer could not have been deceived. The Court disagrees.").

Disclosing the amount of total sugar does not cure the health and wellness misrepresentations but rather simply implies that the sugar contained in the Products is healthy. This distinguishes this case from those relied upon by Mondelez in which statements about *how much* of a *particular ingredient* the products contained were held not to be misleading given other statements that *directly clarified* how much of those ingredients were present. *Compare Bobo v. Optimum Nutrition, Inc*., 2015 U.S. Dist. LEXIS 187233, at *10 (S.D. Cal. Sep. 11, 2015) ("'100% WHEY' can only be read to mean the entire contents of the container is protein, *if information on the front and back of the label is ignored*."); *Workman v. Plum Inc*., 141 F. Supp. 3d 1032, 1033 (N.D. Cal. 2015) (listing ingredients "pumpkin, pomegranate, quinoa, and yogurt" on front of package could not mislead reasonable consumer to believe those were the product's predominant ingredients because the product "listed all ingredients in order of predominance"); *In re: 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 2017 U.S. Dist. LEXIS 135523, at *11 (N.D. Ill. Aug. 24, 2017) ("100% Grated Parmesan Cheese" claim not misleading where product also "disclose[d] the presence of non-cheese ingredients"); *and Hairston v. S. Beach Bev. Co*.,

2012 U.S. Dist. LEXIS 74279, at *13 (C.D. Cal. May 18, 2012)[8] ("no reasonable consumer would read the 'all natural' language as modifying the 'with vitamins' language and believe that the added vitamins are supposed to be 'all natural vitamins.' Moreover, to the extent there is any ambiguity, it is clarified by the detailed information contained in the ingredient list."); *with Krommenhock*, 255 F. Supp. 3d at 964 & n.32 (rejecting defendant's premise that "it did not make any affirmative misrepresentations on its labels," and argument that "consumers are expected to look at the Nutrition Fact Panel," and distinguishing *Workman*). Thus, that the total sugar was disclosed does not defeat Plaintiffs' claims because when there are "disclaimers and qualifying language, determining whether a reasonable consumer would be deceived is inappropriate at [the motion to dismiss] stage." *Johns v. Bayer Corp.*, 2010 U.S. Dist. LEXIS 62804, at *12 (S.D. Cal. June 24, 2010). *See also Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867 (N.D. Cal. 2016) ("courts cannot hold as a matter of law that disclaimers vitiate claims for misleading representations").

In sum, despite its numerous contentions that no reasonable consumer would be deceived, at most Mondelez raises "a question of fact not appropriate for decision on [a motion to dismiss]," *Williams*, 552 F.3d at 938. *See also Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1125 (C.D. Cal. 2010) ("whether a business practice is deceptive will usually be a question of fact not appropriate for decision on a motion to dismiss" (quoting *Williams*, 552 F.3d at 938)).

## C.  None of the Challenged Labeling Claims Should be Dismissed as Puffery

Mondelez asserts that the phrases "delicious,[9] wholesome breakfast," "part of a balanced breakfast," and "nutritious," constitute puffery (Mot. at 10-11), but none of these claims are so "outrageous" or "exaggerated as to preclude reliance by consumers," *Cook, Perkiss, & Liehe, Inc., v. N. Cal. Collection Serv.*, 911 F.2d 242, 246 (9th Cir. 1990)

---

[8] Mondelez cites *Hairston* in support of its puffery argument (Mot. at 12), but the case does not discuss puffery.

[9] Mondelez asserts that the term "delicious" constitutes puffery (Mot. at 11:4), but Plaintiffs do not allege that term is misleading, therefore its argument is irrelevant.

(quotation omitted); *see also Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008) ("A statement is considered puffery if the claim is extremely unlikely to induce consumer reliance."). Instead, a reasonable consumer could plausibly rely on claims that a food product is "nutritious," "wholesome," and "part of a balanced breakfast" to mean that the Products are healthy and will not harm their health:

> Based on the fact that the terms "nutritious," "essential nutrients," and "wholesome" might cause a reasonable consumer to think that a product is healthy, the Court cannot conclude as a matter of law that no reasonable consumer would rely on these statements." * * * Similarly, the statement "balanced breakfast" carries health implications that prevent the Court from finding such a statement to be puffery.

*Hadley II*, 2017 U.S. Dist. LEXIS 128061, at *73; *Adkins v. Nestle Purina Petcare Co.*, 973 F. Supp. 2d 905, 919 (N.D. Ill. 2013) ("Plaintiffs are correct that 'wholesome' at the very least conveys the safety of the treats to the consumer, and therefore cannot be puffery.").

Given that Mondelez positioned the belVita Products to appeal to consumers "interested in health and nutrition" (FAC ¶¶ 115-16), and used these claims to make that appeal, its assertion that these claims cannot induce reliance deserves short shrift. Rather, claims on food products concerning the health properties are among the *most* reliance-inducing claims, since "consumers rely on health-related claims on food products in making purchasing decisions," *Bruton v. Gerber Prods. Co.*, 2014 U.S. Dist. LEXIS 5493, at *42 (N.D. Cal. Jan. 15, 2014).

It is also not puffery to advertise foods as "nutritious," "wholesome," or "balanced," because these claims are "sufficiently specific and unequivocal," *see In re Ferrero Litig.*, 794 F. Supp. 2d at 1117-18 ("nutritious" and "healthy and balanced breakfast" claims actionable). In fact, Plaintiffs "provide an alleged 'method of measuring [] healthiness.' Plaintiff[s] allege[] that the quantity of added sugar in Defendant's products causes Defendant's products to be unhealthy, and backs that assertion up with various scientific studies that show the health effects of added sugar." *Hadley II*, 2017 U.S. Dist. LEXIS 128061, at *74.

While these statements "may require a certain amount of contextualization to evaluate

17

. . . this does not render them insusceptible to verification." *Allen v. Hylands, Inc.*, 2012 U.S. Dist. LEXIS 61606, at *11 (C.D. Cal. May 2, 2012). Thus, Mondelez is wrong that there is "no objective way to determine" whether the challenged claims are misleading. (Mot. at 11:3.) *See Williams*, 552 F.3d at 939 n.3 (though "nutritiousness can be difficult to measure," statement that food was "nutritious" "contributes [ ] to the deceptive context of the packaging as a whole," so that the court "decline[d] to . . . dismiss[ ] the statement as puffery"); *Quaker Oats I*, 752 F. Supp. 2d at 1125-26 ("wholesome" claim on food containing trans fat "arguably *could* mislead a reasonable consumer," and thus was not puffery).

Mondelez asserts that numerous courts have "repeatedly dismissed claims premised on similar statements, including "nutritious" and "wholesome,"' as puffery. (Mot. at 11.) But the cases Mondelez relies upon are distinguishable. *See Blue Buffalo Co. Ltd. v. Nestle Purina Petcare Co.*, 2015 U.S. Dist. LEXIS, at *24 (E.D. Mo. June 10, 2015) (where plaintiff alleged phrase "100% Complete & Balanced Nutrition" was misleading because the product was "made with *inferior ingredients*," court found the phrase constituted puffery because the term "complete" implied superiority and "whether something is complete or balanced nutrition is merely an opinion about *quality* and is not capable of being proven true or false" (emphasis added)); *Fraker v. KFC Corp.*, 2007 U.S. Dist. LEXIS 32041, at *7-8 (S.D. Cal. Apr. 30, 2007) (general statements on Website (not the label of a particular product) that "all foods can fit into a balanced" and "You can enjoy 'fast food' as part of a sensible balanced diet," which were not tied to any specific product, but rather were about diet generally were puffery). *See also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1177 (C.D. Cal. 2010) (distinguishing *Fraker*) Likewise, in *Tylka v. Gerber Prods. Co.*, 1999 U.S. Dist. LEXIS 10718 (N.D. Ill. July 1, 1999), "[i]t was surely the idea that there were no more nutritious, safe, or wholesome products available *anywhere* else around the globe that rose to the level of unbelievable exaggeration." *Quaker Oats I*, 752 F. Supp. 2d at 1125 (distinguishing *Tylka*); *see also Bietsch v. Sergeant's Pet Care Prods., Inc.*, 2016 U.S. Dist. LEXIS 32928, at *11 (N.D. Ill. Mar. 15, 2016 (same).

18

## II.   Plaintiffs' Claims are Not Expressly Preempted

### A.   In Seeking to Invalidate Plaintiffs' Claims, Mondelez Bears a "Considerable Burden" of Overcoming the Strong Presumption Against Preemption

There are two "cornerstones" of preemption jurisprudence:

First, the purpose of Congress is the ultimate touchstone in every pre-emption case. . . . Second, in all pre-emption cases, and particularly in those in which Congress has legislated in a field which the States have traditionally occupied, [courts] start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.

*Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (internal quotations, citations and alterations omitted); *c.f. Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) ("Congress does not cavalierly pre-empt state-law causes of action."). This presumption demands that courts give preemption statutes "narrow reading[s]." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 518 (1992). Where there are "plausible alternative reading[s]" of an express preemption provision, courts "have a ***duty*** to accept the reading that disfavors pre-emption." *Bates v. Dow Agrosciences, LLC*, 544 U.S. 431, 449 (2005) (emphasis added).

The strong presumption against preemption "applies with particular force when Congress has legislated in a field traditionally occupied by the States." *Altria Group*, 555 U.S. at 77 (citation omitted). "[C]onsumer protection laws . . . are within the states' historic police powers and therefore are subject to the presumption against preemption. Laws regulating the proper marketing of food, including the prevention of deceptive sales practices, are likewise within states' historic police powers." *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1088 (2008) ["*Salmon Cases*"] (internal quotations, citation and alterations omitted). As a result, "[t]he presumption against preemption in this case is a strong one," *see Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1117 (N.D. Cal. 2013), and Mondelez "bear[s] the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law," *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1227 (9th Cir. 2013) (citation and quotations omitted).

The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.* ("FDCA"), empowers the FDA to protect public health by ensuring that "foods are safe, wholesome, sanitary, and properly labeled," *id.* § 393(b)(2)(A). The Act prohibits the distribution and sale of misbranded foods. *Id.* §§ 331(a)-(c), (g), (k). Foods are misbranded when they meet one of the definitions for misbranding under § 343, including where their labels are "false or misleading in any particular," *id.* § 343(a)(1), or where they make nutrient content or health claims in violation of the Act and its implementing regulations. *See id.* § 343(r); 21 C.F.R. §§ 101.13-101.14, 21 C.F.R. §§101.54-101.83.[10] While the NLEA, which modified the FDCA, preempts states from imposing "any requirement for . . . labeling of food . . . that is not identical to the requirement[s]" set forth in the statute, 21 U.S.C. § 343-1(a), it also contains a savings clause which states that the NLEA "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under [21 U.S.C. § 343-1(a)] of the [FDCA]." Pub. L. No. 101-535, § 6(c)(1), 104 Stat. 2353, 2364 (1990), 21 U.S.C. § 343-1 note (1). "Where a requirement imposed by state law effectively parallels or mirrors the relevant sections of the NLEA, courts have repeatedly refused to find preemption." *Quaker Oats I*, 752 F. Supp. 2d at 1118.

> This means that plaintiffs' claims need not fail on preemption grounds if the requirements they seek to impose are either identical to those imposed by the FDCA and the NLEA amendments *or do not involve claims or labeling information of the sort described in sections 343(r) and 343(q)*. . . . That is, if the statements at issue are nutrient content claims as contemplated by subsection (r), plaintiffs' deception claims may only go forward if they can show that the statements would also be "misbranded" under the terms of the Act. *If the statements are not nutrient claims, then the NLEA's express preemption provision would not in the ordinary circumstance come into play.*

*Id.* at 1119 (emphasis added). Therefore, "plaintiffs can avoid preemption if they show either that the labeling material they challenge does not constitute a 'nutrient content claim' or

---

[10] Cal. Health & Safety Code §§ 109875 *et seq.* and N.Y. Comp. Codes R. & Regs. tit. 1, § 259.1, incorporate federal food labeling laws and regulations into state law.

'health claim,' or, if it does, that the product effectively is 'misbranded.'" *In re Quaker Oats Labeling Litig.*, 2012 U.S. Dist. LEXIS 42777, at *7 (N.D. Cal. Mar. 28, 2012) ["*Quaker Oats II*"].

### B. Mondelez Has Not Met its Burden of Establishing that Preemption Applies

"[P]reemption is an affirmative defense, not an element of Plaintiffs' claims," and thus Mondelez "bears the burden of establishing that preemption applies." *See Trazo v. Nestle USA, Inc.*, 2013 WL 4083218, at *6 (N.D. Cal. Aug. 9, 2013). While Mondelez spends pages arguing that sugar is not a disqualifying nutrient for making nutrient content or health claims, it fails to establish that any of the challenged claims *are* nutrient content or health claims in the first instance (Mot. at 19-23)—such that preemption might apply. *See Quaker Oats I*, 752 F. Supp. 2d at 1118 ("[i]f the statements are not nutrient claims [or health claims], then the NLEA's express preemption provision would not in the ordinary circumstance come into play"); *Ackerman v. Coca Cola*, 2010 U.S. Dist. LEXIS 73156, at *21 (E.D.N.Y. July 21, 2010) ("plaintiffs may escape [the NLEA's] preemptive force . . . if the requirements plaintiffs seek to impose are not with respect to [health and nutrient content] claims of the sort described in Section 343(r)(1)"). Rather than carrying its burden with respect to this crucial element of its defense—showing the "preemptive" regulations apply—Mondelez instead states: "For purposes of this motion, Mondēlez Global assumes that the challenged statements are health claims or nutrient content claims." (Mot. at 19 n.7.) Mondelez's considerable burden is not to "assume" but *demonstrate* that preemption applies.

To illustrate why Plaintiffs' claims should not be dismissed as preempted absent a far more robust showing from Mondelez, consider the challenged labeling claims: "4 HOURS OF NUTRITIOUS STEADY ENERGY" and "We worked closely with nutritionists to design belVita Breakfast Biscuits, which are specifically baked to release energy regularly and continuously to fuel your body throughout the morning." While Mondelez states that "Plaintiffs appear to suggest that the statements on belVita products are health claims" (Mot. at 19 n.7 (citing FAC ¶¶ 179, 181 (referring to "health and wellness" claims))), Mondelez is attempting to leverage Plaintiffs' *colloquial* use of the phrase "health and wellness" claims

21

to misconstrue Plaintiffs' allegations to mean the challenged claims constitute "health claims" as statutorily defined by 21 C.F.R. § 101.14(a)(1). Plaintiffs make no such allegation. (FAC ¶¶ 151-53.) More importantly, these claims do not constitute health claims under § 101.14(a)(1), which, *inter alia*, must "characterize[] the relationship of any substance to a disease or health-related condition." But these claims do not make any reference to a "disease or health-related condition."

Likewise, these claims are not nutrient content claims because they do not "expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling under 101.9," 21 C.F.R. § 101.13(b). Neither of these claims refer to *any* nutrient (much less a nutrient required by § 101.9),[11] nor do they characterize the *level* of any nutrient.

Because these and the other challenged claims "do[] not plainly fall under the regulation on which [Defendant] relies, there is no basis to conclude at this juncture that [they are] *preempted.*" *Quaker Oats II*, 2012 U.S. Dist. LEXIS 42777, at *13. *See also Red v. Kraft Foods, Inc.*, 754 F. Supp. 2d 1137, 1142 (C.D. Cal. 2010) (where challenged claims are neither health nor nutrient content claims, "they are not subject to the 'disqualifying nutrient' levels" and "there [is] no obvious argument for express preemption").

Contrary to Mondelez's assumption, Plaintiffs' claims are not preempted because they seek to impose *identical* requirements to provisions of the FDCA and Sherman Law that prohibit "false or misleading" labeling. *See* 21 U.S.C. § 343(a)(1); Cal. Health & Safety Code § 110660; *accord Larsen v. Trader Joe's Co.*, 917 F. Supp. 2d 1019, 1023 (N.D. Cal. 2013) ("the FDCA and California law contain *identical* prohibitions on false or misleading labeling" (citations omitted)). Congress carefully chose to exclude § 343(a) from the NLEA, *see* 21 U.S.C. § 343-1, intentionally leaving a place for state law to concurrently regulate behavior that violates both state false advertising laws and the FDCA because the labeling is "false and

---

[11] *See id.* §§ 101.9(c)(1)-(8) (prescribing nutrition labeling requirements for "the following nutrients": Calories, Fat, Cholesterol, Sodium, Fluoride, Carbohydrate, Dietary Fiber, Soluble Fiber, Insoluble Fiber, Total Sugars, Added Sugars, Sugar Alcohol, Protein, and Vitamins and minerals).

misleading in any particular." 21 U.S.C. § 343(a)(1). Thus, "claims premised upon allegations that a label is 'false or misleading in any particular' do not fall within the scope of Section 343-1(a)," so that "[b]ased on the plain language of Section 343-1(a) . . . . to the extent [plaintiff's claims] allege [defendant's] labels are false or misleading, they are not expressly preempted by the NLEA," *Zeisel v. Diamond Foods, Inc.*, 2010 U.S. Dist. LEXIS 141941 at *7 (N.D. Cal. Sept. 3, 2010).

## III.   Plaintiffs State Claims for Breach of Express Warranty

Mondelez challenges Plaintiffs' breach of express warranty claims on the basis that "not a single one of the challenged statements includes the term 'healthy'" and "Plaintiffs' opaque reference to 'related affirmations of fact, promises, and descriptions' is woefully insufficient to describe the 'exact terms' of any alleged express warranty" (Mot. at 24 (citing FAC ¶ 248)). But this argument, which only cites to Ms. DiGregorio's express warranty claims under New York law, ignores that she "incorporates the allegations elsewhere in the Complaint" including those that "Mondelez made affirmations of fact or promises, or description of goods, listed in paragraphs 128, 133, 138, 143." (FAC ¶ 224.) Thus, there is no ambiguity as to the "exact terms" of the warranties any of the Plaintiffs challenge.

Further, that the challenged claims in paragraphs 128, 133, 138, 143 convey that the Products are healthy without using that exact term does not defeat Plaintiffs' breach of warranty claims. *See In re Ferrero Litig.*, 794 F. Supp. 2d at 1118 (allegations that defendant warranted a product to be "a healthy and balanced breakfast" and breached this warranty because the product was not a "healthy" nor "nutritious" was sufficient to state breach of warranty claims); *Allen v. ConAgra Foods, Inc.*, 2013 U.S. Dist. LEXIS 125607, at *37-38 (N.D. Cal. 2013) ("Courts in this district have previously found that plaintiffs stated express warranty claims based on allegedly misleading food labeling.").

Mondelez reasserts its puffery argument (Mot. at 24), but it fails again because statements such as "nutritious," and "healthy and balanced breakfast," are "sufficiently specific and unequivocal to constitute an affirmative of fact or promise," *In re Ferrero Litig.*, 794 F. Supp. 2d at 1117. *See also Allen v. Hylands, Inc.*, 2012 U.S. Dist. LEXIS 61606 at *8

23

(C.D. Cal. May 2, 2012) ("[c]ourts liberally construe sellers' affirmations of quality in favor of injured consumers."). Thus, Mondelez's motion should be "denied for the same reasons as the consumer protection and misrepresentation-based claims addressed above." *Ham v. Hain Celestial Group, Inc.*, 70 F. Supp. 3d 1188, 1195 (N.D. Cal. 2014).

## IV.   Plaintiffs State Claims for Breach of Implied Warranty

Mondelez asserts that the Products are fit for their ordinary purpose (Mot. at 24-25), but, plaintiffs' implied warranty claim stems from the product's failure to "conform to promises and affirmations made on the container or label," (FAC. ¶¶ 232, 255), not a minimum level of quality. In California both California and New York, merchantability not only means a product is fit for its ordinary purpose, but also that a product "[conforms] to the promises or affirmations of fact made on the container or label," *In re Ferrero Litig.*, 794 F. Supp. 2d at 1118 (quoting *Hauter v. Zogarts*, 14 Cal. 3d 104, 118 (1975) (citing Cal. Com. Code §§ 2314(2) (f))); *See also Haber v Stadium, Inc.,* 2010 N.Y. Misc. LEXIS 1841, *7-8 (N.Y. Sup. Ct. 2010) (same for N.Y. UCC § 2-314(2)(f)). Because Plaintiffs here "bring [their] claim under a different definition of merchantability," the Court should "decline[] to dismiss Plaintiff[s'] claim[s] for breach of the implied warranty of merchantability," *In re Ferrero Litig.*, 794 F. Supp. 2d at 1118. *See also Jones*, 2016 U.S. Dist. LEXIS 129898, at *25. Because Mondelez only challenges a theory Plaintiffs do not advance, it has presented no valid challenge to Plaintiffs' implied warranty claims which should go forward. *See Bronson v. Johnson & Johnson, Inc.*, 2013 U.S. Dist. LEXIS 54029, at *35 (N.D. Cal. Apr. 16, 2013) ("Where plaintiffs challenge food labels that are not preempted by Federal law and are otherwise allowed, courts refrain from dismissing implied warranty claims.").

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court DENY Mondelez's Motion to Dismiss in full.

Dated: January 29, 2018          Respectfully submitted,

                                 /s/ Paul K. Joseph
                                 **THE LAW OFFICE OF PAUL K. JOSEPH, PC**

24

PAUL K. JOSEPH
*paul@pauljosephlaw.com*
4125 W. Point Loma Blvd. No. 206
San Diego, California 92110
Phone: (619) 767-0356
Fax: (619) 331-2943
**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555
***Attorneys for Plaintiff and the Proposed Class***

*McMorrow et al. v. Mondelez International Inc.*, 3:17-cv-02327-BEN-JLB
OPPOSITION TO MOTION TO DISMISS

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2018, I served the foregoing **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** on counsel of record for all parties in this action, by notice of electronic filing, which was automatically generated by the Court's CM/ECF system at the time the document was filed with the Court.

Dated: January 29, 2018                                        /s/ Paul K. Joseph
                                                                              Paul K. Joseph