1

2

3

4

5

6

7

8

9

10              **UNITED STATES DISTRICT COURT**

11              **SOUTHERN DISTRICT OF CALIFORNIA**

12

13  PATRICK MCMORROW, MARCO            Case No. 17-cv-02327-BAS-JLB
    OHLIN, and MELODY
14  DIGREGORIO, individually and on    **ORDER GRANTING IN PART**
    behalf of themselves and all others **AND DENYING IN PART**
15  similarly situated,                 **DEFENDANT'S MOTION TO**
                                        **DISMISS**
16                          Plaintiffs,

17          v.                          **[ECF No. 13]**

18  MONDELEZ INTERNATIONAL,
    INC.,
19
                            Defendant.
20

21

22          Plaintiffs Patrick McMorrow, Marco Ohlin, and Melody DiGregorio bring this

23  putative class action lawsuit against Defendant Mondelez International, Inc. alleging

24  that Defendant breached warranties and violated other California and New York

25  consumer protection laws related to Defendant's products. (First Amended

26  Complaint ("FAC"), ECF No. 13.) Plaintiffs claim that Defendant's belVita branded

27  breakfast products are designed to appeal to health conscious consumers and that

28  such advertising is deceptive and misleading because these products contain "high

levels of added sugar," which Plaintiffs argue is unhealthy. Defendant now moves to dismiss the FAC. (ECF No. 15.)

The Court finds this motion suitable for determination on the papers and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss. (ECF No. 15.)

## I.    BACKGROUND

### A.    Factual and Procedural Background

Plaintiffs' claims arise from their purchases of the belVita branded breakfast products (the "Products"). (FAC ¶ 3.) The Products include the following in various flavors: belVita "Crunchy" Biscuits, belVita "Soft Baked" Biscuits, belVita "Bites," and belVita "Sandwiches." (FAC ¶ 113, at App'x 1.) Plaintiff Patrick McMorrow alleges he began purchasing the Products in 2012 in California. (*Id.* ¶ 155.) Plaintiff Marco Ohlin alleges he began purchasing the Products in the summer 2015 in California. (*Id.* ¶ 158.) Plaintiff Melody DiGregorio alleges she began purchasing the Products around 2013 in New York. (*Id.* ¶ 161.) Plaintiffs claim that the Products were specifically marketed to consumers with health and wellness in mind. (*Id.* ¶ 2.) Plaintiffs allege that they believed the advertisements regarding the health and wellness qualities of the Products. (*Id.* ¶¶ 157, 160, 163.) Further, Plaintiffs claim Defendant's labeling statements are deceptive because they are incompatible with the alleged health dangers of excessive sugar consumption to which the Products contribute. (*Id.*)

On June 16, 2017, Plaintiffs initiated this action and filed the FAC on September 7, 2017. In the FAC, Plaintiffs assert claims for: (1) breach of implied warranty of merchantability; (2) breach of express warranty; (3) violations of the California's Unfair Competition Law, Business & Professions Code §§ 17200, *et seq.*, ("UCL"), the California False Advertising Act §§ 17500, *et seq.* ("FAL"), and

California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"); and (4) violations of New York's Unfair and Deceptive Business Acts Law (N.Y. Gen. Bus. L. § 349) and False Advertising Law (N.Y. Gen. Bus. L. § 350).

The FAC alleges the following material facts:

1.     Defendant, one of the world's largest snack companies, introduced the Products in 2012. (FAC ¶ 112.) The Products retail for $3.00 to $5.00 per box. (*Id.* ¶ 155.)

2.     Defendant created a "multiplatform marketing campaign" for the Products aimed at "targeting consumers interested in health and nutrition." (FAC ¶ 117.) The labels make various statements, such as "Nutritious Sustained Energy," "We worked closely with nutritionists to design belVita Breakfast Biscuits," "wholesome grains," and "part of a balanced breakfast." (*Id.* ¶ 128, at App'x 1.) These statements are false, misleading, and reasonably likely to deceive the public because the Products contain excessive sugar. (*Id.* ¶ 164-68.)

3.     The Products contain "high levels of added sugar" because the added sugar amounts to sixteen to twenty-four percent of the Products' total calories. (FAC ¶ 124.) Thus, the regular consumption of the Products "is likely to contribute to excess added sugar consumption" and, thereby, increase the "risk for and contraction of chronic diseases." (*Id.*) These diseases include, but are not limited to, cardiovascular disease, type 2 diabetes, obesity, liver disease, chronic kidney disease, and Alzheimer's. (*Id.* ¶¶ 44-45, 48, 67, 72, 74,104.)

4.     Plaintiffs were "exposed to, read, and relied upon" Defendant's statements on the labels that were intended to appeal to "consumers . . . 'interested in health and nutrition.'" (FAC ¶ 154.) Plaintiffs would not have purchased the Products if they knew the labeling claims were false and that the Products "were not as healthful as represented but actually harm health." (*Id.* ¶ 169.)

Plaintiffs challenge many of Defendant's advertising and labeling statements found on the Products. Because these various statements include similar marketing language with similar allegedly misleading effects, the Court has categorized the statements into three groups for the purpose of this analysis.

The first category encompasses Defendant's "fiber" claims. These claims relate to whole grains and "slow-release carbs" and imply the presence of fiber. These claims include the following phrases: "a nutritious, convenient breakfast choice that contains slow-release carbs from wholesome grains to help fuel your body for 4 hours" and "Baked with hearty whole grains, belVita Soft Baked Breakfast biscuits are delicious, nutritious, and give you satisfying morning energy to start your day off right." (*See* FAC at App'x 1.)

The second category includes Defendant's "nutritious" claims. All of the statements that include the terms "nutritious," "nutritionists," or "wholesome" (without a reference to whole grains) make up this category. These phrases include: "Nutritious Steady Energy," "Nutritious Sustained Energy," "Nutritious Steady Energy All Morning," "4 Hours of Nutritious Steady Energy," "Nutritious Morning Energy," "a nutritious, convenient breakfast choice," "nutritious, convenient on-the-go breakfast choice," "nutritious," "We worked closely with nutritionists to design a new kind of breakfast biscuit with energy for the morning. Energy that is nutritious and sustained," and "We all need energy to start the morning. We also need a delicious, wholesome breakfast." (*See* FAC at App'x 1.)

The third category includes Defendant's general advertising statements. This category includes the following phrases: "Power up People," "Enjoy belVita Breakfast Biscuits as part of a balanced breakfast with a serving of low-fat dairy and fruit," "specifically baked to release energy regularly and continuously to fuel your body throughout the morning," and "satisfying morning energy to start your day off right." (*See* FAC at App'x 1.)

Plaintiffs seek to represent a multi-state class consisting of all consumers who purchased the Products in California and New York. (FAC ¶ 183.) Plaintiffs seek monetary and injunctive relief. (*Id.* ¶ 259.)

## II.    LEGAL STANDARD

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must plead sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Federal Rule of Civil Procedure 9(b) states that when alleging fraud, a party must "state with particularity the circumstances constituting fraud or mistake." Rule 9(b) requires the allegations to state the "who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1124 (9th Cir. 2009). A party alleging fraud must "set forth *more* than the neutral facts necessary to identify the transaction." *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1548 (9th Cir. 1994) (emphasis in original), superseded by statute on other grounds. When a party does not comply with these requirements, a court must dismiss for failure to state a claim. *Zucco Partners, LLC v. Digimarc Corp*., 552 F.3d 981, 1008 (9th Cir. 2009).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). The court must "accept factual allegations in the complaint as true and construe the pleadings in favor of the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a

claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "However, conclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss." *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 834 (9th Cir. 2012). "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990).).

## III.    REQUEST FOR JUDICIAL NOTICE

Federal Rule of Evidence 201 allows a court to take judicial notice of certain evidence and facts that are not subject to reasonable dispute if they are (1) "generally known within the trial court's territorial jurisdiction" or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). For example, a court may take judicial notice of "matters of public record." *Id.*; *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). But a court may not take judicial notice of a fact that is "subject to reasonable dispute." Fed. R. Evid. 201(b). Therefore, while the court may take notice of the existence of documents in some cases, it does not necessarily take notice of the facts within those documents. *See Rezentes v. Sears, Roebuck & Co.*, 729 F. Supp. 2d 1197, 1206 (D. Haw. 2010).

Defendant submits multiple requests for judicial notice. The Court will take judicial notice of the Federal Drug Administration's regulations because the Court must judicially notice federal regulations and the contents of the Federal Register. *See* 44 U.S.C. § 1507; *see also Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n*, 366 F.3d 692, 702 n. 5 (9th Cir. 2004); *Adams v. United States*, No. 03-0049-E-BLW, 2009 WL 2590205, at *2 (D. Idaho Aug. 16, 2009). The Court finds that incorporating the nutrition fact label (Exhibit A) and the other reports

17cv2327

(Exhibits C and E) into the FAC by reference is more appropriate here than taking judicial notice of the documents. *See* Fed. R. Civ. P. 10(c); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("[A document] may be incorporated by reference . . . if the plaintiff refers extensively to the document or if the document forms the basis of the plaintiff's claim"); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) ("We hold that documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."). Because Plaintiffs reference the nutrition label (*see* ECF No. 13-1 at 9) and use the reports (*see* ECF No. 13 at 6 n.10, 39 n.90) to support the basis of their arguments in the FAC, and because neither party contests the authenticity of these documents, the Court will incorporate the requested documents into the FAC by reference. Lastly, the Court denies as moot Defendant's request regarding the press release in Exhibit D as the Court does not rely on it for the purposes of this Order.

## IV. DISCUSSION

### A. Standing to Bring Suit for Non-Purchased Products

In a footnote, Defendant argues that Plaintiffs lack standing to pursue all of their claims because Plaintiffs did not individually purchase all of the Products at issue. (Mot. at 5 n.3.)

A plaintiff has standing for claims relating to products that he or she did not purchase if the "products are the same kind, . . . comprised of largely the same ingredients, and . . . bear[] the same alleged mislabeling." *See Hunter v. Nature's Way Prods., LLC*, No. 16-cv-532-WQH-BLM, 2016 WL 4262188, at *14 (S.D. Cal. Aug. 12, 2016) (quoting *Wilson v. Frito-Lay N. Am.*, 961 F. Supp. 2d 1134, 1140–41 (N.D. Cal. 2013)). In other words, a plaintiff has standing when the products and alleged misrepresentations are substantially similar. *See id.*; *see also Vasic v.*

*Patenthealth, L.L.C.*, 171 F. Supp. 3d 1034, 1044 (S.D. Cal. 2016) (finding that products that share the same primary active ingredients are substantially similar for purposes of standing to assert claims); *cf. Dysthe v. Basic Research LLC*, No. 09-8013 AG (SSx), 2011 WL 5868307, at *4–5 (C.D. Cal. June 13, 2011) (finding plaintiffs lacked standing for claims involving products with "significant differences" from the products they purchased).

Here, Plaintiffs allege that each of the Products contain excessive added sugar and include the same or similar false and misleading advertising statements. (FAC ¶ 2-4, 193-258, at App'x 1.) Because the Products and alleged misrepresentations are sufficiently similar, the Court finds that Plaintiffs have standing to assert claims for the various Products.

Accordingly, the Court **DENIES** Defendant's request to dismiss Plaintiff's claims relating to the Products they did not directly purchase.

## B.     Preemption Under Federal Law

Defendant seeks to dismiss all of Plaintiffs' claims because they are expressly preempted by federal law. Defendant argues the claims are preempted because federal law does not treat added sugar as a "disqualifying" nutrient for nutrient content or health claims.

### i.       Background of Regulatory Scheme and Legal Standards

"Federal preemption occurs when: (1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010) (internal quotations omitted). "Express preemption exists when a statute explicitly addresses preemption." *See Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015).

Relevant to this case is the regulatory scheme relating to food branding and labeling. The Federal Food, Drug, and Cosmetic Act ("FDCA") was enacted in 1983 and prohibits the misbranding of food. *See* 21 U.S.C. §§ 301 *et seq.* The Food and Drug Administration ("FDA") enforces the FDCA and develops regulations governing the labeling of food products. *See Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1030 (N.D. Cal. 2009). Congress amended the FDCA in 1990 through the passage of the Nutritional Labeling and Education Act (''NLEA''). Nutritional Labeling and Education Act of 1990, Pub. L. No. 101-535, 104 Stat. 2353 (1990); *see also* H.R. Rep. No. 101-538 (1990), reprinted in 1990 U.S.C.C.A.N. 3336, 3337. The purpose of the NLEA was to ''clarify and to strengthen [FDA's] authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about the nutrients in foods.'' *Nat'l Council for Improved Health v. Shalala*, 122 F.3d 878, 880 (10th Cir. 1997) (quoting H.R. Rep. No. 101-538, at 7). The NLEA made several significant changes to the FDCA. *See Ackerman v. Coca-Cola Co.*, No. CV-09-0395(JG)(RML), 2010 WL 2925955, at *3 (E.D.N.Y. 2010). "It expanded the coverage of nutrition labeling requirements; it changed the form and substance of ingredient labeling on packages; it imposed limitations on health claims; [and] it standardized the definitions of all nutrient content claims." *Id.*; *see Lilly v. ConAgra Foods, Inc.*, 743 F.3d 662, 664 (9th Cir. 2014).

The NLEA also included an express preemption provision for claims appearing on food labels. *See Ackerman*, 2010 WL 2925955, at *3 (citing to 21 U.S.C. § 343-1(a)(5), or section 403A). This express preemption provision includes the type of claims—which could also be described as statements—in 21 U.S.C. § 343(r)(1). "Section 343(r)(1) of the NLEA describes claims in the labeling of food that expressly or by implication, characterize the level of any nutrient or characterize the relationship of any nutrient to a disease or health related condition." *Id.* (cleaned up) (quoting 21 U.S.C. § 343(r)(1)). Therefore, pursuant to the

– 9 –

preemption provision for food labeling, the FDA regulates three types of claims relevant in this case: express nutrient content claims,[1] implied nutrient content claims, and health claims. *See Chacanaca v. Quaker Oats*, Co., 752 F. Supp. 2d 1111, 1117 (N.D. Cal. 2010) (citing 21 U.S.C.A. § 343(q), (r) and 21 C.F.R. §§ 101.13, 101.14).

An express nutrient claim is a statement about the level or range of the nutrient in the food product, like "low sodium" or "contains 100 calories." *See* 21 C.F.R. § 101.13(b)(1). Food product labels may include an express nutrient claim provided that it "does not in any way implicitly characterize the level of the nutrient in the food and it is not false or misleading in any respect (e.g., '100 calories' or '5 grams of fat'), in which case no disclaimer is required." 21 C.F.R. § 101.13(i)(3).

An implied nutrient content claim "[d]escribes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (e.g., 'high in oat bran')." 21 C.F.R. § 101.13(b)(2)(i)-(ii); *Ackerman*, 2010 WL 2925955, at *3 (providing the example "as much fiber as an apple"). An implied nutrient content claim might also make "a 'general nutritional claim,' (a subcategory of an implied nutrient claim) consisting of an express or implied claim that the *nutrient content* of a food may help consumers maintain healthy dietary practices." *Ackerman*, 2010 WL 2925955, at *3 (emphasis added).

The "general rule is that 'nutrient content claims' are not permitted on food labels, subject to certain exceptions." *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938, 952-3 (N.D. Cal. 2017) (citing *Reid v. Johnson & Johnson,* 780 F.3d 952, 959-60 (9th Cir. 2015). "Among the nutrient content claims authorized by the FDA are 'statements about the amount or percentage of a nutrient that are consistent

---

[1] Both 21 U.S.C. § 343(r)(1)(A) and (B) refer to nutrients as the types of nutrients required by section 343(q), which provides regulations for nutritional labeling panels. These nutrients include: calories, total fat, saturated fat, cholesterol, sodium, total carbohydrates, complex carbohydrates, sugars, dietary fiber, total protein, and any vitamins and minerals. 21 U.S.C. § 343(q)(1)(C), (D), (E), (2).

with the labeling regulations (e.g. less than 3 g. of fat per serving) . . . or statements that do not characterize the level of nutrient and are not false and misleading.'" *Id.*

A health claim is "any claim . . . that expressly or by implication . . . characterizes the relationship of any substance to a disease or health-related condition." 21 C.F.R. § 101.14(a)(1). An express health claim are those "references, written statements (e.g., a brand name including a term such as 'heart'), symbols (e.g., a heart symbol), or vignettes" that expressly characterize the relationship. *Id.* An implied health claim are "those statements, symbols, vignettes, or other forms of communication that suggest, within the context in which they are presented, that a relationship exists between the presence or level of a substance in the food and a disease or health-related condition." *Id.*

Statements that do not involve the above health or nutrient content claims (or nutritional labeling information under section 343(q)) are not preempted by the FDA. *See id.* at 1118 (discussing 21 U.S.C.A. § 343(q) and (r)); *see also* 21 C.F.R. § 101.65 ("Certain label statements about the nature of a product are not nutrient content claims unless such statements are made in a context that would make them an implied [nutrient content claim] under § 101.13(b)(2)."). As the FDA explained:

> When a term such as "Wholesome" or "Nutritious" is used in a context that does not render it an implied claim (e.g., "Nutritious foods, prepared fresh daily" or "Made with wholesome ingredients"), it is not subject to the claims requirements. On the other hand, FDA may consider the term to be used in a nutritional context if it appears in association with an explicit or implicit claim or statement about a nutrient. In statements such as "Nutritious, contains 3 grams of fiber," "Best choice, contains 200 mg sodium," or "Good for you, contains 5 grams of fat," the terms are implied nutrient content claims and the foods bearing the claims must meet the requirements for a claim defined by FDA for the nutrient that is the subject of the claim.

FDA, *Guidance for Industry: A Labeling Guide for Restaurants and Other Retail Establishments Selling Away-From-Home Foods*, 2008 WL 2155726, at *10 (April 2008) ["FDA Labeling Guide"].

17cv2327

## ii. FDA Regulations Regarding Sugar

Claims that a product is "healthy" or "nutritious" will also be preempted if the claim refers to a "disqualifying nutrient"—either positively or negatively—because these nutrients have already been deemed by the FDA to be inherently unhealthy at certain levels and are currently regulated. *See, e.g.*, 21 C.F.R. § 101.14(a)(4) ("Disqualifying nutrient levels means the levels of total fat, saturated fat, cholesterol, or sodium in a food above which the food will be disqualified from making a health claim."). For example, the FDA prohibits implied nutrient content claims where the product contains a "disqualifying nutrient" that exceeds an amount established by regulations. 21 C.F.R. §§ 101.65(d)(2)(i), (ii) (limiting the use of "healthy" and related terms for implied nutrient content claims to foods that meet certain "conditions for fat, saturated fat, cholesterol, and other nutrients"); *see also Chacanaca*, 752 F. Supp. 2d at 1122.

The FDA has identified total fat, saturated fat, cholesterol, and sodium as disqualifying nutrients. *See* 21 C.F.R. §§ 101.13(h)(1), 101.14(a)(4). Sugar is not one of these disqualifying nutrients. *Krommenhock*, 255 F. Supp. 3d at 956.

In early 2012, the FDA began its rule-making process to evaluate and amend the nutrition labeling regulations for conventional food products. *Krommenhock*, 255 F. Supp. 3d at 944. In May 2016, the FDA issued a final rule which, among other things, established a recommended daily sugar intake value. 81 Fed. Reg. 33742 (May 27, 2016). The final rule became effective on July 26, 2016. *Id.*

The final rule establishes a Daily Recommended Value ("DRV") of ten percent of total calories from added sugar, despite the American Heart Association's ("AHA") recommendation that the maximum amount be five percent. 81 Fed. Reg. 33742 at 33849. Responding to the AHA's recommendation, the FDA stated "[w]e disagree that the DRV for added sugars should be lower than 10 percent of calories or that there is adequate evidence at this time to set a DRV for added sugars of less than 5 percent calories," and noted that the ten percent figure "is more realistic

considering current consumption of added sugars in the United States." *Id.* at 33845. The FDA also declined to convey that the DRV of ten percent "is a maximum amount rather than a recommended amount," noting that "such language would not be appropriate because we do not require this information for other nutrients with DRVs." *Id.* at 33829.

Based on the FDA's express decision to not recognize sugar as a disqualifying nutrient, various district courts have now adopted the finding that "any claim under state law solely premised on the notion that [a product's] high sugar content made its health or implied nutrient content claims misleading is preempted." *Ackerman*, 2010 WL 2925955, at *8; *Krommenhock*, 255 F. Supp. 3d at 956; *see Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1077–78 (N.D. Cal. 2017) (rejecting "Plaintiff's theory that health claims or implied nutrient content claims are misleading because of a certain amount of added sugar in a product" because to hold otherwise "would essentially 'ascribe disqualifying status' to added sugar"). This Court agrees, and likewise adopts this finding.

### iii.    Preemption Analysis

Both parties agree that sugar is not a disqualifying nutrient, and the FDA has rejected treating it as such. Therefore, to the extent Plaintiffs' claims rely on the argument that Defendant's nutrient content or health claims are misleading because of the Products' added sugar content, these claims are preempted by the FDA's express decision to not set a disqualifying level for sugar.

Because Plaintiffs premise their claims on the theory that the Products' added sugar content makes the Products unhealthy, the Court must now determine which of Defendant's statements qualify as express nutrient content, implied nutrient content, or health claims. If Defendant's statements are any of these type of claims, then Plaintiffs' claims relating to these statements are preempted. Conversely, if the challenged statements are general, unregulated health and wellness claims—i.e. not

one of the three types of claims relevant to the preemption analysis here—Plaintiffs may proceed with their claims based on these statements. *See Krommenhock*, 255 F. Supp. 3d at 954 (finding some of the plaintiffs' claims were not preempted, reasoning that the plaintiffs were alleging that the defendant could not make "voluntary health and wellness statements" that were "misleading in light of the added sugar content" and that "[t]he FDA did not consider those issues and arguments in its rulemaking"); *Hadley*, 273 F. Supp. 3d at 1084–85, 1097 (analyzing non-regulated statements for state law claims, including statements involving the term "healthy," when a plaintiff alleged that the quantity of added sugar in the defendant's products made the defendant's products unhealthy).

It is clear that Defendant's advertising statements do not make any express nutrient claims because the statements do not include any explicit language as to the amount or content of a nutrient. *See* 21 C.F.R. § 101.13(b)(1) (providing examples of "low sodium" or "contains 100 calories"). Furthermore, the advertising statements do not appear to implicate a health claim. A statement is a health claim only if it relates to a health related condition. General claims of health and wellness are not health claims. *See* 21 C.F.R. § 101.14(a)(1) (stating that a health claims is "any claim . . . that expressly or by implication . . . characterizes the relationship of any substance to a disease or health-related condition"). None of the statements at issue relate to a health-related condition.

Looking closely at the regulations for an implied nutrient content claim, such a claim must either suggest (1) a nutrient is absent or present in a food "in a certain amount (e.g. 'high in oat bran')" or (2) a food helps "maintain[] healthy dietary practices" and is made along with "an explicit claim or statement about the nutrient (e.g. 'healthy, contains 3 grams (g) of fat')." 21 C.F.R. § 101.13(b)(2)(i), (ii). The FDA also issued guidance expanding on this regulation. *See* FDA Labeling Guide at *10 (discussing that the terms such as "nutritious," "wholesome," "best choice," or "good for you" are implied nutrient content claims when used "in association" with

– 14 –

statements about a nutrient, and thus require FDA compliance). Claims based on such statements are accordingly preempted. *See Hadley*, 273 F. Supp. 3d at 1077–78.

Applying this framework to Defendant's statements, one of Defendant's fiber statements constitutes a preempted implied nutrient content claim. *See Hadley*, 273 F. Supp. 3d at 1077–78; *see also Krommenhock*, 255 F. Supp. 3d at 955–56. First, using the terms "wholesome grains" and "slow-release carbs" implies the presence of fiber, a nutrient. *See Hadley*, 273 F. Supp. 3d at 1077–78 (finding similar implications regarding fiber through statements about whole grains). Second, the Court considers whether Defendant's fiber statements suggest their Products contain a certain amount of fiber or contain an explicit claim or statement about fiber. 21 C.F.R. § 101.13(b)(2)(i), (ii). Defendant's claim "a nutritious, convenient breakfast choice that contains slow-release carbs from wholesome grains to help fuel your body for 4 hours" implies that the Products contain a high enough amount of fiber from whole grains to last four hours. Thus, this statement suggests the Products include a high amount of fiber, and is an implied nutrient content claim. *See* 21 C.F.R. § 101.13(b)(2)(i) (providing the example of "high in oat bran"). Accordingly, Plaintiff's claims relying on this statement are preempted, and the Court dismisses these claims.

Defendant's other fiber claim is not as explicit. It states the Products are "[b]aked with hearty whole grains, belVita Soft Baked Breakfast biscuits are delicious, nutritious, and give you satisfying morning energy to start your day off right." This claim does not imply a high or low content of fiber, nor does it contain an explicit claim about fiber. *See* 21 C.F.R. § 101.13(b)(2)(i), (ii); *Hadley*, 273 F. Supp. at 1077 (citing 59 Fed. Reg. 24232, 24244 (May 10, 1994) (explaining that the advertising statement must "explicitly or implicitly suggests that the food has a particular nutrient profile"). This vague statement also does not fit with the examples provided by the FDA. *See id.*; FDA Label Guide ("'Nutritious, contains 3 grams of fiber,' 'Best choice, contains 200 mg sodium,' or 'Good for you, contains 5 grams of

fat' . . . ."). Instead, it is more akin to the statements the FDA recognized are not implied nutrient content claims. *See, e.g.*, FDA Label Guide ("Made with wholesome ingredients"). Plaintiffs' claims relating to this fiber statement is not preempted. Additionally, Plaintiffs' "nutritious" claims and general advertising statements do not suggest that a nutrient is absent or present in the Products and, therefore, are not implied nutrient content claims subject to preemption.

### C.      Whether Plaintiffs Allege the Products Contain Excessive Sugar

Defendant next argues that the Plaintiffs have not plausibly alleged that the Products contain "excessive" amounts of sugar because the amount of sugar in the products is "well below the recommended limits recently set by the FDA." (Mot. at 16.) At the Motion to Dismiss stage, however, the Court must "accept factual allegations in the Complaint as true." *Manzarek,* 519 F.3d at 1031.

The factual allegations in the FAC include the claim that "[e]xperimentally sound, peer-review studies and analyses convincingly show that consuming excessive added sugar—any amount above approximately 5% of daily caloric intake—greatly increases the risk of cardiovascular disease, diabetes, liver disease and a wide variety of other chronic diseases." (FAC ¶ 1.) The FAC details the reason plaintiffs allege these amounts of sugar are dangerous and the various peer-reviewed studies and reports they rely on to support their argument that consuming sugar beyond the five percent standard greatly increases health risks. (*See, e.g.*, FAC ¶ 20 n.10, ¶ 110 n.90; *see* ECF No. 16 (delineating Defendant's requests to the Court to incorporate many of these studies into the Complaint).); *see also Nat'l Council Against Health Fraud, Inc. v. King Bio Pharms., Inc.*, 107 Cal. App. 4th 1336, 1348 (Cal. Ct. App. 2003) ("The falsity of . . . advertising claims may be established by testing, scientific literature, or anecdotal evidence.").

At this stage of the proceedings, the Court need not determine whether the AHA's or the World Health Organization's recommendation is the correct standard.

*See Hadley*, 273 F. Supp. 3d at 1067 ("[O]n the instant motion to dismiss, the Court need not adopt a 5% 'standard' for added sugar to find Plaintiff's allegations to be adequate."). Instead, the Court finds that Plaintiffs have adequately alleged that Defendant's Products contained "excessive" sugar under their theories of the case. *See id.*; *Iqbal*, 556 U.S. at 678; *Kearns*, 567 F.3d at 1124. The Court denies Defendant's request to dismiss Plaintiffs' claims on this ground.

### D. Whether Defendant's Statements are Likely to Deceive

Defendant next claims that Plaintiffs fail to allege that Defendant's labeling is likely to deceive a reasonable consumer. Defendant argues: (1) the "steady energy" statements are not actually false, (2) the remaining statements are non-actionable puffery, and (3) the statements are ambiguous and are clarified by other statements. (Mot. at 6-16.)

At the motion to dismiss stage, for the claims under California law, a plaintiff must allege that "members of the public are likely to be deceived." *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995). For the New York claims, a plaintiff must similarly show that a deceptive business practice is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Stutman v. Chemical Bank*, 709 N.Y.S. 2d 892, 896 (N.Y. 2000); *Leider v. Ralfe*, 387 F. Supp. 2d 283, 292 (S.D.N.Y 2005) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 623 N.Y.S. 2d 529, 533 (N.Y. 1995)). Courts "have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate" for a motion to dismiss. *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Ackerman*, 2010 WL 2925955, at *17 (declining to find, as a matter of law, that statements could not have deceived a reasonable consumer).

17cv2327

### i. Whether "Sustained Energy" Claims are False

Similar to its argument above regarding "excessive" sugar, Defendant argues that none of its claims is likely to deceive a consumer because its "sustained energy" claims are true. (Mot. at 6-9 ("Plaintiffs cannot identify in their FAC any affirmative misrepresentation or material omission that supports a plausible claim of deception.").)

Contrary to Defendant's characterization, Plaintiffs allege that the use of certain terms and phrases, like "Nutritious Sustained Energy," are a part of a deceptive labeling practice intended to mislead consumers into believing that the Products are healthy. According to Plaintiffs' theory, these statements are deceptive because consumers do not interpret "healthy" or "nutritious" products as containing "excessive" amounts of sugar, which Plaintiffs allege the Products contain. As discussed above, the Court finds that Plaintiffs sufficiently alleged its argument that "excessive" sugar creates health risks. *See King Bio Pharms., Inc.*, 107 Cal. App. 4th at 1348. Thus, taking Plaintiffs' allegations as true and drawing all reasonable inferences in favor of Plaintiffs, Plaintiffs' allegations illustrate a plausible basis that Defendant's statement could deceive a reasonable consumer with certain expectations of health that do not include the amount of sugar in the Products. *See Williams*, 552 F.3d at 938; *see also Delacruz v. Cytosport, Inc.*, No. 11-3532, 2012 WL 1215243 (N.D. Cal. Apr. 11, 2012) (finding claim of "healthy fats" along with "nutritious snack" was likely to deceive a customer, despite other factually accurate claims relating to protein and trans fat). Additionally, even though Defendant focuses on "steady energy" or "sustained energy" as being factually true, the Court finds that these statements cannot be considered without the immediately preceding term, "nutritious," which Plaintiffs specifically argue is deceptive.

Moreover, Defendant's argument that the front label and nutritional panel disclose the Products' sugar content—and thus makes the label as a whole not deceptive—fails. The Ninth Circuit explicitly rejected this argument. *See Williams*,

552 F.3d at 939. In *Williams*, the defendant argued that, despite its advertising statement on the front of the package describing the product as made with "fruit juice and other all natural ingredients[,]" consumers should look to the nutritional panel to determine the products' actual ingredients. *Id.* The Ninth Circuit disagreed, stating "reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Id.* As the Court explained, "[w]e do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception." *Id.*; *see also Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 464 (E.D.N.Y. 2013) ("At this early stage of the litigation, it cannot be determined whether a disclaimer on the back of [the] products . . . eliminates the possibility of a reasonable consumer being misled . . . ."); *Ackerman*, 2010 WL 2925955, at *16 ("[T]he presence of a nutritional panel, though relevant, does not as a matter of law extinguish the possibility that reasonable consumers could be misled by [a product's] labeling and marketing."). Thus, the mandated disclosure of the amount of sugar on the front label and nutritional panel does not diminish the legal impact of Defendant's misleading advertisements.

Accordingly, the Court finds that Plaintiffs sufficiently plead that the statements relating to "steady energy" are either false or misleading, and are likely to deceive a reasonable consumer.

### ii.  Whether Statements are Non-Actionable Puffery

Under California and New York law, advertisements that "amount to 'mere' puffery are not actionable[.]" *Abramson v. Marriott Ownership Resorts, Inc.*, 155 F. Supp. 3d 1056, 1066 (C.D. Cal. 2016); *Verizon Directories Corp. v. Yellow Book USA Inc.*, 309 F. Supp. 2d. 401, 405–06 (E.D.N.Y. 2004) (collecting cases) (finding puffery is not actionable under sections 349 and 350). Puffery includes "generalized,

vague and unspecific assertions . . . upon which a reasonable consumer could not rely." *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1005 (9th Cir. 2003) (citing *Cook, Perkiss, & Liehe, Inc. v. Northern Cal. Collection Serv. Inc.*, 911 F.2d 242 (9th Cir. 1990)); *Leonard v. Abbott Labs., Inc.*, No. 10-CV-4676 ADS WDW, 2012 WL 764199, at *21 (E.D.N.Y. Mar. 5, 2012) (citing *Lacoff v. Buena Vista Publishing, Inc.*, 705 N.Y.S. 2d 183, 191 (N.Y. Sup. Ct. 2000)) ("If an alleged misrepresentation would not deceive a reasonable person because it is vague or amounts to mere puffery or opinion, then a claim under the consumer protection statutes *may* be dismissed, as a matter of law, on a motion to dismiss." (emphasis in original)).

The Court first addresses Defendant's nutritious statements.[2] Though statements involving the term "nutritious" can constitute puffery, *Cook, Perkiss, & Liehe, Inc.*, 911 F.2d at 246, the Court does not find that to be the case here. *See Williams*, 552 F.3d at 939; *see also Ackerman*, 2010 WL 2925955, at *16. Defendant's nutritious statements are more akin to alleged factual misrepresentations than general assertions of superiority. *Cf. Cook, Perkiss, & Liehe, Inc.*, 911 F.2d at 246 (determining that statements like "we're the low cost commercial collection experts" constituted non-actionable puffery because they were "general assertions of superiority" rather than "factual misrepresentations"); *see Chacanaca*, 52 F. Supp. 2d at 1125–26 (rejecting a defendant's argument that statements including the term "wholesome" were non-actionable puffery). Each use of the term "nutritious" (or similar) is followed by a claim that the Products provide sustained energy or are a nutritious breakfast choice. (*See, e.g.*, FAC at App'x 1 ("Nutritious Sustained Energy" and "a nutritious, convenient on-the-go breakfast choice").) Even more

---

[2] For the purposes of this section, the Court also considers the remaining fiber statement because it also includes the term "nutritious" and is similar to the nutritious statements in effect. (FAC at App'x 1 ("Baked with hearty whole grains, belVita Soft Baked Breakfast biscuits are delicious, nutritious, and give you satisfying morning energy to start your day off right.")

specific are Defendant's statements that nutritionists were consulted when creating the Products. (*Id.* ("We worked closely with nutritionists to design a new kind of breakfast biscuit with energy for the morning. Energy that is nutritious and sustained.").) Moreover, Plaintiffs allege that the nutritious statements speak to the Products' overall healthiness, which is misleading or false because the Products are not "healthy" due to the amount of sugar they contain. Though "nutritiousness can be difficult to measure concretely," the Court finds that, like in *Williams*, these statements do contribute to the context of the alleged deceptive labeling practices as a whole, and are not non-actionable puffery. *Williams*, 552 F.3d at 939 n.3.

However, the Court finds that Defendant's general advertising statements are puffery. *See Abramson*, 155 F. Supp. 3d at 1066; *see also Glen Holly Entm't, Inc.*, 343 F.3d at 1005; *Cook, Perkiss, & Liehe, Inc.*, 911 F.2d 242. "Power Up People," "delicious," "part of a balanced breakfast," "specifically baked to release energy regularly and continuously to fuel your body throughout the morning," and "satisfying morning energy" involve unspecified assertions that cannot be measured concretely. *See Williams*, 552 F3d at 939. There are no means of measuring "power up," "delicious," "satisfying," or "part of a balanced breakfast." The terms are general and vague, such that no reasonable consumer could rely on them. *See Lavie*, 105 Cal. App. 4th at 508.

Plaintiffs point to a district court case that found that statements like "an example of a healthy and balanced breakfast" were "sufficiently specific and unequivocal to constitute an affirmation of fact or promise." *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1118 (S.D. Cal. 2011); (Opp'n at 17.) The Court agrees that Defendant's statements regarding a "delicious, wholesome breakfast" are not puffery, but finds that these statements are distinguishable from the "part of a balanced breakfast" statements. First, in *Ferrero*, the term "healthy" was used in the statements, thus further specifying and characterizing the assertion to imply healthiness. The same reasoning applied here because the earlier statement included

the term "wholesome." (*See* FAC at App'x 1 ("We all need energy to start the morning. We also need a delicious, wholesome breakfast").) However, "part of a balanced breakfast" does not include these modifying terms to imply healthiness or wholesomeness. Second, the statement that the Product is "part of a balanced breakfast" implies the Products will be eaten with other items. The phrase "part of" is immeasurable because it is dependent on the other components of the consumer's breakfast. Thus, the statement cannot be sufficiently specific or absolute because it is based on the consumer's additional actions.

Accordingly, the Court does not find that Plaintiffs' claims based on the nutritious statements are non-actionable puffery, but finds Defendant's general advertising statements are puffery. The Court therefore grants Defendant's motion to dismiss Plaintiffs' claims relating to the general advertising statements on these grounds.

### iii. Whether Statements are Ambiguous, But Clarified

Defendant further argues that its remaining statements are not likely to deceive a consumer because, if the statements are, at best, ambiguous, the statements are clarified by the Products' mandatory sugar content labeling that appears on the front of the packaging and nutrition panel. (Mot. at 12-15.) In other words, Defendant contends that a consumer can easily know exactly how much sugar is in each product and would not be deceived, despite whatever ambiguous statement Defendant makes. (*Id.*) Defendant relies on *Freeman v. Time, Inc.* 68 F.3d 285, 290 (9th Cir. 1995) and to *Bobo v. Optimum Nutrition Inc.*, No. 14cv2408-BEN(KSC), 2015 WL 13102417 at \*4 (S.D. Cal. 2015) arguing that merely ambiguous statements are not actionable when considered along with other aspects of the packaging.

Defendant's reliance on these cases is misplaced. In *Freeman*, the court addressed a promotional advertisement containing small-print, qualifying language for the promotion itself. The court found that the qualifying language was not

unreadable and such language appeared immediately next to the promotional statements it qualified. *Freeman,* 68 F.3d at 289. Based on these factors, the court found the advertising statements could not be "ambiguous" and, therefore, misleading. *Id.* In *Bobo*, a label reading "100% Whey" also included statements that the product was "Naturally and Artificially Flavored" and "Double Chocolate Rich" flavored, as well as clarification that "100% of the Protein is from Whey." *Bobo,* at *4.

*Freeman* and *Bobo* are both distinguishable because the statements alleged in this case are not immediately qualified or clarified by other statements on the packaging. Moreover, as discussed above, the Ninth Circuit made it clear that "reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Williams*, 552 F.3d at 939; *Ackerman*, 2010 WL 2925955, at *16 ("[T]he presence of a nutritional panel, though relevant, does not as a matter of law extinguish the possibility that reasonable consumers could be misled by [a product's] labeling and marketing."). Accordingly, while keeping in mind that the Court considers the advertising statements in context of the overall advertisement, it also does not find that the Products' mandated content disclosures cure any ambiguities of the health and nutrition claims that Plaintiffs are challenging. *Cf. Hairston v. South Beach Beverage Co.*, No. 12-1429, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012) (finding that "all natural" advertising statements were clarified by other advertising statements about fruit names and vitamins appearing on a fruit drink's packaging).

### E.     Breach of Warranty Claims

Finally, Defendant disputes that Plaintiffs properly allege their breach of warranty claims (Mot. at 23-24), and also states that Plaintiffs' claims fail for a lack of notice. (Reply at 10.) To quickly revisit preemption, breach of warranty claims are

not found to impose additional requirements under state law because the manufacturer voluntarily takes on the obligation to honor a specific warranty, and thus such an obligation is imposed by the manufacturer upon themselves, not by state law. *Ackerman*, 2010 WL 2925955, at \*24 (citing *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 518 (1992)). Thus, the warranty claims are not preempted. *Id.*

Plaintiffs make two breach of express warranty claims that involve the same underlying allegations. These causes of action arise under California Commercial Code § 2313 and New York U.C.C. § 2-313(1)(a). Under California law, "to plead a cause of action for breach of express warranty, one must allege the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff injury." *Williams v. Beechnut Nutrition Corp.*, 229 Cal. Rptr. 605, 608 (Ct. App. 1986); *see* Cal. Com. Code § 2313. Section 2313(1)(a) states that an express warranty is "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Under New York law, "[t]o prevail on a claim of breach of express warranty, a plaintiff must show 'an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon.'" *Factory Assocs. & Exporters, Inc. v. Lehigh Safety Shoes Co. LLC*, 382 Fed. App'x. 110, 111-12 (2d Cir. 2010) (quoting *Schimmenti v. Ply Gem Indus., Inc.*, 549 N.Y.S. 2d 152, 154 (2d Dep't 1989)).

Under New York and California law, a product label or advertisement can create an express warranty. *See Simmons v. Washing Equip. Techs.*, 857 N.Y.S. 2d 412, 413 (4th Dep't 2008) (stating that the defendant's product label created an express warranty). A representation on a product label does not, however, create an express warranty if it "is of such a general nature that a reasonable consumer would not rely on it as a statement of fact regarding" the product. *Simmons v. Washing Equip. Techs.*, 912 N.Y.S. 2d 360, 361 (4th Dep't 2010).

Plaintiffs also allege breaches of implied warranties of merchantability under California Commercial Code § 2314 and New York U.C.C. § 2-314. Section 2314 states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." *See Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 896 (C.D. Cal. 2013) ("Unless specific disclaimer methods are employed, an implied warranty of merchantability arises and accompanies every retail sale of consumer goods."). California Civil Code section 1794 permits a consumer to recover when she "is damaged by a failure to comply with any obligation under this chapter or under an implied or express warranty or service contract may bring an action for the recovery of damages and other legal and equitable relief." To allege a breach of implied warranty of merchantability, a plaintiff must show that the product "did not possess even the most basic degree of fitness for ordinary use." *Mocek v. Alfa Leisure, Inc.*, 7 Cal. Rptr. 3d 546, 549 (Cal. Ct. App. 2003); *see Denny v. Ford Motor Co.*, 87 N.Y.S. 2d 248, 258 (N.Y. 1995) (holding that, if the seller is a merchant, there is an implied contract that the goods will be of merchantable quality). Under both California and New York law, a plaintiff may allege a breach of implied warranty of merchantability if a product fails to "[c]onform to promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f); N.Y. U.C.C. § 2-314(2)(f).

Plaintiffs do not sufficiently plead their warranty claims. Plaintiffs only allege that Defendant "made an affirmation of fact or promise that the products were 'healthy, as well as related affirmations of facts, promises, and descriptions.'" (FAC ¶ 238.) Plaintiffs never specify what terms actually appearing on Defendant's labels form the alleged express warranties. (*Id.*); *Hadley*, 273 F. Supp. 3d at 1092 ("[T]he plaintiff must identify a specific and unequivocal written statement about the product that constitutes an explicit guarantee." (internal quotations and citations omitted)). Plaintiffs' inclusion of the general phrase "related affirmations of facts, promises, and descriptions" does not cure this lack of specificity because "[s]uch conclusory

language fails to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Ackerman*, 2010 WL 2925955, at \*24 (citing *Twombly*, 550 U.S. at 555) (addressing both California and New York express warranty claims). Therefore, Plaintiffs fail to sufficiently plead their claims for breach of express warranty. *Id.*; *see, e.g.*, *Lake v. Kardjian*, 874 N.Y.S. 2d 751, 755 (N.Y. Sup. Ct. 2008) ("Plaintiff has not identified any specific statements by [the defendant] which would constitute an express warranty, and has thereby failed to establish the existence of a claim which would escape federal preemption and survive this motion to dismiss."); *cf. Hadley*, 273 F. Supp. 3d at 1092 (finding that, following a previous dismissal, the plaintiff sufficiently amended the complaint to allege the specific statements underlying the express warranty claims).

Plaintiffs also fail to state their implied warranty of merchantability claims. Both parties agree that the Products are fit for their ordinary purpose, but Plaintiffs base their claims on the Products' failure to "[c]onform to promises or affirmations of fact made" on the labeling. Cal. Com. Code § 2314(2)(f); N.Y. U.C.C. § 2-314(2)(f); (*see* Opp'n at 24.) "When an implied warranty of merchantability cause of action is based solely on whether the product in dispute conforms to the promises or affirmations of fact on the packaging of the product, the implied warranty of merchantability claim rises and falls with express warranty claims brought for the same product." *Hadley*, 273 F. Supp. 3d at 1096 (internal quotations and alterations omitted). Accordingly, because the Court found that Plaintiffs have not sufficiently pled their express breach of warranty claims, the Court likewise finds that Plaintiffs fail to plead their implied breach of merchantability claims.

Lastly, in one line in the Reply,[3] Defendant states that "Plaintiffs concede that they did not provide pre-suit notice of the breach of warranty, which is a precondition

---

[3] As a general matter, a "district court need not consider arguments raised for the first time in a reply brief." *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). Nonetheless, because notice of breach of warranty must be alleged, the Court addresses this issue.

of bringing a breach-of-warranty claim." *Id.* Under both California and New York law, a plaintiff is required to notify the seller of the breach of warranty within a reasonable time after discovery of it. *See* Cal. Com. Code § 2607(3)(A); *see also* New York U.C.C. § 2-607. To avoid dismissal, "[a] buyer must plead that notice of the alleged breach was provided to the seller within a reasonable time after discovery of the breach." *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1142 (N.D. Cal. 2010). Defendant states that Plaintiffs concede that they did not provide pre-suit notice of the breach of warranty, but does not provide a citation in the record of this concession. Nevertheless, upon review of the FAC, Plaintiffs failed to allege that they provided notice to Defendant for either their express or implied breach of warranty claims. (*See* FAC ¶ 221 (alleging written notice for the CLRA claims, but failing to provide details of this notice or a copy of the letter for the Court's review).) Thus, the Court must also dismiss Plaintiffs' breach of warranty claims for failing to plead that they provided proper notice for these claims

Accordingly, the Court **GRANTS WITH LEAVE TO AMEND** Defendant's motion to dismiss Plaintiff's breach of express warranty and breach of implied warranty of merchantability claims. Plaintiffs may amend the FAC to allege which specific statements create the warranties they alleged were breached, as well as notice of these claims.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss. (ECF No. 15.) Specifically, the Court:

1. **GRANTS WITHOUT LEAVE TO AMEND** the motion to dismiss Plaintiff's claims relying on the following advertising statements: "a nutritious, convenient breakfast choice that contains slow-release carbs from wholesome grains to help fuel your body for 4 hours" "Power up People," "Enjoy belVita Breakfast Biscuits

17cv2327

as part of a balanced breakfast with a serving of low-fat dairy and fruit," "specifically baked to release energy regularly and continuously to fuel your body throughout the morning," and "satisfying morning energy to start your day off right."

2. **GRANTS WITH LEAVE TO AMEND** the motion to dismiss Plaintiffs' claims for breach of express and implied warranties; and

3. **DENIES** the motion to dismiss as to the remaining advertising statements.

Accordingly, Plaintiffs may file a Second Amended Complaint that only provides additional factual allegations relating to the breach of express and implied warranty claims **no later than August 31, 2018**. If Plaintiffs do not file a Second Amended Complaint, Defendant must answer the First Amended Complaint **no later than September 14, 2018**.

**IT IS SO ORDERED.**

**DATED: August 17, 2018**

Hon. Cynthia Bashant
United States District Judge

17cv2327