**THE LAW OFFICE OF**
**PAUL K. JOSEPH, PC**
PAUL K. JOSEPH (SBN 287057)
*paul@pauljosephlaw.com*
4125 W. Point Loma Blvd. No. 309
San Diego, California 92110
Phone: (619) 767-0356
Fax: (619) 331-2943

**THE LAW OFFICE OF**
**JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK MCMORROW, MARCO OHLIN, and MELODY DIGREGORIO, on behalf of themselves, all others similarly situated, and the general public,<br><br>    Plaintiffs,<br><br>              v.<br><br>MONDELEZ INTERNATIONAL, INC.,<br><br>    Defendant. | Case No. 3:17-cv-2327-BAS-JLB<br><br>**PLAINTIFFS' MOTION TO STRIKE THE TESTIMONY OF DRS. DANIEL MCFADDEN & RONALD WILCOX**<br><br>Judge:          Hon. Cynthia A. Bashant<br>Hearing Date:  January 27, 2020<br>Location:       Courtroom 4B<br><br>NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT<br><br>**[REDACTED FOR PUBLIC FILING]** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION ............................................................................................... 1

BACKGROUND .................................................................................................. 3

    I.     PLAINTIFFS' CONJOINT ANALYSIS DAMAGES MODEL ...................... 3

    II.    DR. DANIEL MCFADDEN .................................................................. 3

    III.   DR. RONALD WILCOX ..................................................................... 4

SUMMARY OF THE PARTIES' LEGAL DISPUTE ....................................... 5

    I.     RELEVANT LAW ............................................................................... 6

        A.   California's Consumer Protection Statutes ............................. 6

        B.   Measuring Damages ................................................................ 7

            1.   A Clear Statement of What Occurred ......................... 8

            2.   Mondelez's Proper Actions in Place of its Unlawful Actions: the But-For Scenario ...................................... 8

            3.   The Economic Situation Absent Mondelez's Wrongdoing .......... 9

    II.    MONDELEZ'S PROPOSED BUT-FOR SCENARIO ................................. 10

        A.   As Described in Mondelez's Motion to Exclude Colin Weir ............... 10

        B.   As Described by Dr. McFadden ............................................ 11

        C.   As Described by Dr. Wilcox .................................................. 13

    III.   PLAINTIFFS' PROPOSED BUT-FOR SCENARIO .................................. 14

ARGUMENT ..................................................................................................... 17

    I.     DRS. WILCOX AND MCFADDEN'S SUPPLY-SIDE OPINIONS SHOULD BE EXCLUDED BECAUSE THEY ARE LEGALLY ERRONEOUS ................................................................................ 17

i

*McMorrow v. Mondelez Intl. Inc.*, Case No. 17-cv-02327-BAS-JLB
MOTION TO STRIKE DRS. DANIEL MCFADDEN & RONALD WILCOX

II.    DR. MCFADDEN'S LAW360 OPINION SHOULD BE STRICKEN BECAUSE IT IS (SELF-SERVING) PERCIPIENT, NOT EXPERT TESTIMONY ............................................................... 22

CONCLUSION ............................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allen v. ConAgra Foods, Inc.*,
   --- F.R.D. ----, ----, 2019 WL 3302821 (N.D. Cal. July 22, 2019) ...................................17

*Alvarez v. NBTY, Inc.*,
   331 F.R.D. 416 (S.D. Cal. 2019) ...................................21

*Astiana v. Ben & Jerry's Homemade, Inc.*,
   2014 WL 60097 (N.D. Cal. Jan. 7, 2014) ...................................5

*Brazil v. Dole Packaged Foods, LLC*,
   660 Fed. App'x 531 (9th Cir. 2016) ...................................5

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) ...................................1, 2, 7

*Cortez v. Purolator Air Filtration Prods. Co.*,
   23 Cal. 4th 163 (2000) ...................................6

*Davidson v. Apple, Inc.*,
   2018 WL 2325426 (N.D. Cal. May 8, 2018) ...................................17

*Dean Witter Reynolds, Inc. v. Super. Ct.*,
   211 Cal. App. 3d 758 (1989) ...................................6

*Fitzhenry-Russell v. Dr. Pepper Snapple Group, Inc.*,
   2018 WL 3126385 (N.D. Cal. June 26, 2018) ...................................17

*Fletcher v. Sec. Pac. Nat'l Bank*,
   23 Cal. 3d 442 (1979) ...................................6, 9

*Forcellati v. Hyland's, Inc.*,
   2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ...................................21

*Hadley v. Kellogg Sales Co.*,
   324 F. Supp. 3d 1084 (N.D. Cal. 2018) ...................................17

iii

*McMorrow v. Mondelez Intl. Inc.*, Case No. 17-cv-02327-BAS-JLB
MOTION TO STRIKE DRS. DANIEL MCFADDEN & RONALD WILCOX

*In re Dial Complete Mktg. Sales Pract. Litig.*,
320 F.R.D. 326 (D.N.H. 2017) ...................................................................2, 18

*In re Gen. Motors LLC Ignition Switch Litig.*,
--- F. Supp. 3d ----, ----, 2019 WL 3564698 (S.D.N.Y. Aug. 6, 2019) ...........24

*In re Lenovo Adware Litigation*,
2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) ...............................................17

*In re MyFord Touch Consumer Litig.*,
291 F.Supp.3d 936 (N.D. Cal. 2018) ...................................................17, 18

*In re Rezulin Prods. Liab. Litig.*,
309 F. Supp. 2d 531 (S.D.N.Y. 2004) .......................................................25

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) ....................................................................6, 7

*In re Vioxx Class Cases*,
180 Cal. App. 4th 116 (2009) ...............................................................10

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (2011) ...................................................................9, 10

*Lambert v. Nutraceutical Corp.*,
870 F.3d 1170 (9th Cir. 2017) ...............................................................7

*McMorrow v. Mondelez Int'l, Inc.*,
2018 WL 3956022 (S.D. Cal. Aug. 17, 2018) ..................................................8

*Miller v. Fuhu Inc.*,
2015 WL 7776794 (C.D. Cal. Dec. 1, 2015) ...................................................17

*Nguyen v. Nissan N. Am., Inc.*,
932 F.3d 811 (9th Cir. 2019) ...............................................................22

*Ortega v. Natural Balance, Inc.*,
300 F.R.D. 422 (C.D. Cal. 2014) ............................................................21

*Pulaski & Middleman, LLC v. Google, Inc.*,
802 F.3d 979 (9th Cir. 2015) ................................................................7

iv

*Secs. & Exchg. Comm'n v. Sablok,*
    2010 WL 2944255 (N.D. Cal. July 23, 2010)..................................................25

*United Food & Commercial Workers Local 1776 & Participating Employers Health &*
    *Welfare Fund v. Teikoku Pharma USA,*
    296 F. Supp. 3d 1142 (N.D. Cal. 2017) ............................................................3

*United States v. Dukagjini,*
    326 F.3d 45 (2d Cir. 2003).................................................................................25

*United States v. Figueroa-Lopez,*
    125 F3d 1241 (9th Cir. 1997) ............................................................................25

*Werdebaugh v. Blue Diamond Growers,*
    2014 WL 2191901 (N.D. Cal. May 23, 2014) .....................................................5


**Statutes**

Cal. Bus. & Prof. Code § 17200 ..............................................................................6

Cal. Bus. & Prof. Code § 17203 .......................................................................6, 7, 9

Cal. Bus. & Prof. Code § 17500 ..............................................................................6

Cal. Bus. & Prof. Code § 17535 ...........................................................................6, 7

Cal. Civ. Code § 1770(a)..........................................................................................6

Cal. Civ. Code § 1780(a)(3) .....................................................................................6

Cal. Comm. Code § 2714(2) ...................................................................................10


**Rules**

Fed. R. Evid. 702............................................................................... 1, 5, 24, 25

**Regulations**

21 C.F.R. § 1.21 .................................................................................................8

*McMorrow v. Mondelez Intl. Inc.,* Case No. 17-cv-02327-BAS-JLB
MOTION TO STRIKE DRS. DANIEL MCFADDEN & RONALD WILCOX

Plaintiffs submit that this motion boils down to a single fundamental dispute between the parties on a purely legal issue: the proper construction of the "but-for" world for purposes of measuring damages. The parties take diametrically opposed views, then rely on their experts to support their substantive positions based on those views. Because one party is wrong on the law, the substantive views of that party's experts are irrelevant and subject to exclusion under Rule 702. Plaintiffs view this as a binary choice that must result in the exclusion of one set of experts. Below, Plaintiffs demonstrate why their view is correct.[1]

## **INTRODUCTION**

In *Comcast Corp. v. Behrend*, the United States Supreme Court quoted the Reference Manual on Scientific Evidence to explain that "[t]he first step in a damages study is the translation of the *legal theory of the harmful event* into an analysis of the economic impact *of that event*." 569 U.S. 27, 38 (2013) (quoting Federal Judicial Center, Reference Manual on Scientific Evidence at 432 (3d ed. 2011) (the "Reference Manual")).

In the same section the U.S. Supreme Court quoted in *Comcast*, the Reference Manual explains that damages analyses must proceed "on the hypothesis that the defendant committed the harmful act and that the act was unlawful," then measure economic loss by comparing the plaintiff's present position to his or her position in the "but-for scenario," which "differs from what actually happened *only* with respect to the harmful act," Omnibus Joseph Decl. Ex. 10, Reference Manual at 432. "[D]amages measured in this way isolate the value caused by the harmful act and exclude any change in the plaintiff's value arising from other sources." *Id.*

Here, the act alleged to be harmful was Mondelez making specific statements about its belVita products. Plaintiffs do not allege that Mondelez merely selling the products (*i.e.*, without misrepresenting them) was harmful. Accordingly, the proper "but-for scenario" seeks to determine the value of the belVita products with the offending claims removed, while

---

[1] Mondelez raises the same argument in moving to exclude Plaintiffs' experts. *See* Dkt. No. 90-1, MTE Weir at 1 n.2. As set forth herein, Dr. Dennis's and Mr. Weir's opinions are admissible because they propose to measure damages properly, whereas the traditional economic approach Drs. McFadden and Wilcox advocate is inappropriate in this setting.

1

*McMorrow v. Mondelez Intl. Inc.*, Case No. 17-cv-02327-BAS-JLB
MOTION TO STRIKE DRS. DANIEL MCFADDEN & RONALD WILCOX

keeping everything else the same, including the sale of the products, that is, the quantity sold.

In criticizing the Class's conjoint analyses for supposedly failing to incorporate supply-side factors, Mondelez's experts, Drs. McFadden and Wilcox, posit the wrong but-for world. Rather than changing *only* the harmful event and holding everything else constant, *including quantity sold*, as the Reference Manual dictates, they posit a world in which Mondelez and its competitors may *react* in endless ways to Mondelez's inability to use the challenged claim, including replacing it with different (better!) claims. Drs. McFadden and Wilcox opine these reactions mean the supply-side factors that were baked into the quantity *actually sold* to Class Members during the *actual* Class Period would have been different in the but-for world, such that the removal of the challenged claims would manifest, not just in *price* differences, but also *volume* differences, which in turn might result in different price differences.

The approach Mondelez's experts suggest may be economically valid to forecast or predict certain future outcomes. But it is not the proper approach to measure false advertising damages, where the operative question is the difference between the value the Class was promised, and the value the Class received, in the world in which the Class's transactions actually took place: as one court put it, "the highest price in the actual market at which [Mondelez] could have sold the same number of products without the challenged claim," *In re Dial Complete Mktg. Sales Pract. Litig.*, 320 F.R.D. 326, 336 (D.N.H. 2017) ["*Dial*"].

Crucially, Plaintiffs ask how the *price* would have been different in the actual market where the offending sales took place; Mondelez and its experts ask how the *entire market would have been different* if Mondelez had not used the challenged claims. As shown below, only Plaintiffs' question aligns with *Comcast*, the Reference Guide, and California law.

Tellingly, Dr. McFadden was unfamiliar with the Reference Guide, and rejected its key premise, that to "isolate the loss of value caused by the harmful act," the "but-for scenario" must "differ[] from what actually happened *only* with respect to the harmful act," Reference Guide at 432; *compare* Omnibus Joseph Decl. Ex. 3, McFadden Dep. Tr. at 81:2-11 ("Q. ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"); *see also id.* at 117:16-120:1.

Dr. McFadden's rejection of the damages treatise on which the *Comcast* Court relied

2

demonstrates that his point of view, which Dr. Wilcox parrots, is wrong as a matter of law. Indeed, virtually every court to consider this issue has found that, in a mislabeling case such as this, conjoint analysis reliably measures the price premium attributable to a challenged misrepresentation when holding fixed the quantity sold, which is a matter of historical fact.

"[E]xclusion of opinions that are irrelevant as a matter of law or contrary to the law is appropriate through the *Daubert* process." *United Food & Commercial Workers Local 1776 & Participating Employers Health & Welfare Fund v. Teikoku Pharma USA*, 296 F. Supp. 3d 1142, 1183 (N.D. Cal. 2017). Because Drs. Wilcox and McFadden base their opinions on a legally erroneous construct of the but-for world, their opinions regarding the economic suitability of Plaintiffs' proposed conjoint analysis, and Dr. Dennis and Mr. Weir's consideration of supply-side factors are irrelevant, and should be excluded.

The Court should also exclude Dr. McFadden's self-serving opinion that Dr. Dennis "misinterprets" a 2013 article he wrote, as it is percipient witness, not expert, testimony.

## BACKGROUND

## I.   PLAINTIFFS' CONJOINT ANALYSIS DAMAGES MODEL

Plaintiffs, on behalf of the Class, propose to measure damages through conjoint analysis. *See* Dkt. No. 70-1, Class Cert. Mot. at 21-23; Dkt. No. 70-6, Joseph Decl. Ex. 2, Dennis Decl. ¶¶ 18-112; *Id.* at Ex. 3, Weir Decl. ¶¶ 19-64. *See also* Opp. to Mot. to Exclude Dennis & Weir at 5-6 (describing proposed conjoint analysis).

## II.   DR. DANIEL MCFADDEN

With its opposition to class certification, Mondelez submitted an October 30, 2019 Expert Report of Professor Daniel McFadden. *See* Dkt. No. 91-14 ("McFadden Report"). Dr. McFadden was "asked by counsel for Mondelez to review . . . issues addressed in the Dennis Report and the Weir Report (and elaborated upon in their respective depositions)[.]" *Id.* ¶ 10.

Dr. McFadden was asked, first, to "evaluate whether Dr. Dennis' proposed conjoint 'market simulation' that assumes supply to be fixed 'as a matter of history' can be used to determine whether there would have been a change in the market prices of the belVita products at issue, if Mondelez had not made the challenged claims." *Id.* ¶ 10(a). Second, Dr.

3

McFadden was asked to "explain whether [Dr. Dennis and Mr. Weir] correctly interpreted a *Law360* article that [he] co-authored . . . regarding the application of conjoint analysis in determining economic damages." *Id.* ¶ 10(b) (citation omitted).

Dr. McFadden's opinion with respect to the first question is that "Dr. Dennis' proposed conjoint 'market simulation' cannot—on its own—be used to calculate any difference (if any) between (i) the actual world price paid for the belVita breakfast products at issue and (ii) the 'but for' world price that allegedly would have been paid in the absence of the challenged claims." *Id.* ¶ 11(a). Dr. McFadden's opinion with respect to the second question is that Dr. Dennis "fundamentally misinterpreted my statements in" the *Law360* article, and "[c]ontrary to Dr. Dennis' assertions, my article does not support the claim that his proposed conjoint 'market simulation' can be used to '[]calculate the price premium attributable to each of the challenged claims for the marginal consumer,'" *id.* ¶ 11b (quoting Dennis Report ¶ 104).

In his deposition, it became clear that ███████████████████████████████
████████████████████████████████████████████████████████████████████
███████████████████████████. *See* McFadden Dep. Tr. at 6:21-7:8, 48:6-49:13, 50:19-52:8. ██████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
██████████████████████ *See id.* at 49:23-50:6. Moreover, ██████████████
████████████████████████████████████████████████████████████████████
████████████████████████████. *See id.* at 52:18-53:16.

## III.   DR. RONALD WILCOX

Mondelez also submitted the Expert Report of Ronald Wilcox, Ph.D. *See* Dkt. No. 91-15 ("Wilcox Report"). Dr. Wilcox states that he was "instructed by counsel to assess whether Plaintiffs' Experts' proposed methodologies can be used to reliably calculate the alleged economic damages suffered by the Proposed Class members due to the Claims." *Id.* ¶ 11.

***First***, Dr. Wilcox opines that "the conjoint survey proposed by Dr. Dennis does not appropriately account for supply side considerations, and is therefore incapable of estimating a market price premium." *Id.* ¶ 15.

4

*McMorrow v. Mondelez Intl. Inc.*, Case No. 17-cv-02327-BAS-JLB
MOTION TO STRIKE DRS. DANIEL MCFADDEN & RONALD WILCOX

**Second**, Dr. Wilcox opines that "Plaintiffs' Experts' assumption that quantities do not change in response to price changes is flawed and inconsistent with basic economic principles," which "holds even when considering past hypothetical transactions." *Id.* ¶ 16.

**Third**, Dr. Wilcox opines that "Dr. Dennis' proposed conjoint survey will not produce reliable estimates of the alleged price premium because of several flaws (in addition to the fundamental flaws discussed above)[.]"[2] *Id.* ¶ 17.

**Fourth**, Dr. Wilcox opines that "Mr. Weir's proposed approach for calculating the alleged class-wide damages is also flawed because it: (i) relies upon results from Dr. Dennis' proposed conjoint survey, which is flawed; and (ii) fails to account for supply side considerations." *Id.* ¶ 18. This opinion effectively parrots Dr. Wilcox's first two opinions, applying them to Mr. Weir's testimony.

**Fifth**, Dr. Wilcox opines that Dr. Dennis and Mr. Weir "simply assume[] . . . that the same price premium can be applied to all the Products at issue, irrespective of the time and location of their sales," and thus "fail to demonstrate that individual inquiry is not necessary for assessing economic damages suffered by a member of the Proposed Class." *Id.* ¶ 19.

## SUMMARY OF THE PARTIES' LEGAL DISPUTE

The parties agree that a "price premium" is a correct measure of damages and restitution in this case. *See* Class Cert. Mot. at 22; MTE Weir at 5. This has been articulated in various ways: for example, "the difference between the prices consumers paid and the value of [what] they bought," *Brazil v. Dole Packaged Foods, LLC*, 660 Fed. App'x 531, 534-35 (9th Cir. 2016), or "the amount necessary to compensate the purchaser for the difference between a product as labeled and the product as received," *Werdebaugh v. Blue Diamond Growers*, 2014 WL 2191901, at *22 (N.D. Cal. May 23, 2014).

In its Motion to Exclude Weir, Mondelez quotes *Astiana v. Ben & Jerry's Homemade, Inc.*, 2014 WL 60097, at *12 (N.D. Cal. Jan. 7, 2014), in asserting that "[a] price premium is

---

[2] Although Plaintiffs and their experts disagree with Dr. Wilcox's criticism in this regard, which are addressed in Plaintiffs' opposition to Mondelez's Motions to Exclude Dr. Dennis and Mr. Weir, they do not currently move to strike this particular opinion under Rule 702.

5

*McMorrow v. Mondelez Intl. Inc.*, Case No. 17-cv-02327-BAS-JLB
MOTION TO STRIKE DRS. DANIEL MCFADDEN & RONALD WILCOX

calculated by measuring 'the difference between the market price actually paid by consumers and the true market price that reflects the impact of the unlawful, unfair, or fraudulent business practices.'" MTE Weir at 5. But that only begs the question of *how* "the true market price" should be measured. This is where the parties' disagreement lies.

## I.     RELEVANT LAW

### A.     California's Consumer Protection Statutes

California's Unfair Competition Law ("UCL") prohibits "any . . . fraudulent business act," Cal. Bus. & Prof. Code § 17200. The False Advertising Law ("FAL") prohibits "untrue or misleading" statements. *Id.* § 17500. The Consumers Legal Remedies Act ("CLRA") similarly prohibits certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction . . . that results in the sale or lease of goods or services to any consumer," Cal. Civ. Code § 1770(a), such as "[r]epresenting that goods or services are of a particular standard[ ]. . . if they are of another," *id.* § 1770(a)(7).

"The substantive right extended to the public" by these statutes "is the right to protection from fraud, deceit, and unlawful conduct," *see In re Tobacco II Cases*, 46 Cal. 4th 298, 324 (2009) (internal quotation marks and citation omitted). They accordingly "focus on the defendant's conduct, rather than the plaintiff's damages, in service of the[ir] larger purpose of protecting the general public against unscrupulous business practices," *see id.* at 312 (citation omitted). Each "authorize[s] a trial court to grant restitution to private litigants . . . ." *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 694 (2006) (citations omitted); *see also* Cal. Bus. & Prof. Code §§ 17203, 17535; Cal. Civ. Code § 1780(a)(3).

The "overarching legislative concern" underlying these laws is "to provide a *streamlined* procedure for the prevention of ongoing or threatened acts of unfair competition." *See Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 173-74 (2000) (quoting *Dean Witter Reynolds, Inc. v. Super. Ct.*, 211 Cal. App. 3d 758, 774 (1989)). "To achieve its goal of deterring unfair business practices in an *expeditious* manner, the Legislature limited the scope of remedies available under the UCL" to injunctive relief and restitution. *Tobacco II Cases*, 46 Cal. 4th at 312 (emphasis added).

6

*McMorrow v. Mondelez Intl. Inc.*, Case No. 17-cv-02327-BAS-JLB
MOTION TO STRIKE DRS. DANIEL MCFADDEN & RONALD WILCOX

"[A] trial court has broad discretion under those statutes to grant equitable relief," *id.*, and "[c]lass wide damages calculations under the UCL, FAL, and CLRA are particularly forgiving. California law 'requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation.'" *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1183 (9th Cir. 2017) (quotation omitted), *rev'd on other grounds*, 139 S. Ct. 710 (2019).

Accordingly, it is not just these statutes' *liability* elements that are defendant-focused, and consumer-protective—so too are their remedial provisions. The UCL empowers a court to "prevent . . . any practice which constitutes unfair competition" and "restore to any person in interest any money or property . . . which *may have been acquired* by means of such unfair competition." Cal. Bus. & Prof. Code § 17203 (emphasis added). The FAL is similar. *See id.* § 17535. This "may have been acquired" language is "patently less stringent than the standing requirement for the class representative," *Tobacco II Cases*, 46 Cal. 4th at 320. Thus, where "*some* purchasers" had been injured "the 'money or property' *of the entire class* of purchasers 'may have [been] acquired by means' of an unfair practice, thus entitling them to restitution . . . ." *Id.* at 323 (emphasis added) (quoting Cal. Bus. & Prof. Code § 17203).

## B.   Measuring Damages

In *Comcast*, the U.S. Supreme Court quoted the Reference Manual in explaining that "a damages study" starts with "the translation of the legal theory of the harmful event into an analysis of the economic impact of that event." 569 U.S. 27, 38 (2013) (emphasis omitted) (quoting Reference Manual at 432). A longer excerpt appears below.

> The first step in a damages study is the translation of the legal theory of the harmful event into an analysis of the economic impact of that event. In most cases, the analysis considers the difference between the plaintiff's economic position if the harmful event had not occurred and the plaintiff's actual economic position.
>
> In almost all cases, the damages expert proceeds on the hypothesis that the defendant committed the harmful act and that the act was unlawful. The characterization of the harmful event begins with a clear statement of what occurred. The characterization also will include a description of the defendant's

7

proper actions in place of its unlawful actions and a statement about the economic situation absent the wrongdoing, with the defendant's proper actions replacing the unlawful ones (the but-for scenario). Damages measurement then determines the plaintiff's hypothetical value in the but-for scenario. Economic damages are the difference between that value and the actual value that the plaintiff achieved.

Because the but-for scenario differs from what actually happened only with respect to the harmful act, damages measured in this way isolate the loss of value caused by the harmful act and exclude any change in the plaintiff's value arising from other sources. Thus, a proper construction of the but-for scenario and measurement of the hypothetical but-for plaintiff's value by definition includes in damages only the loss *caused* by the harmful act.

Ex. 10, Reference Manual at 432 (emphasis added).

Because the parties' dispute regards the legally proper construction of the "but-for scenario," *id.*, undertaking the exercise the Reference Manual suggests is instructive.

### 1.    A Clear Statement of What Occurred

Relevant to damages here,[3] Plaintiffs allege the "harmful event" was Mondelez making affirmative misrepresentations. *See* SAC ¶¶ 2, 118, 128-29, 133-34, 138-39, 143-44, 152, 154-76. In particular, the challenged belVita labeling claims "state, suggest, or imply that the Products are healthy," *see id.* ¶ 152; *see also* Omnibus Weir Decl. ¶ 13. *Compare McMorrow v. Mondelez Int'l, Inc.*, 2018 WL 3956022, at *1-2 (S.D. Cal. Aug. 17, 2018) (Bashant, J.) (describing Plaintiffs' claims). Importantly, Plaintiffs do *not* allege that the mere *sale* of the belVita products was unlawful. *See* McFadden Tr. at 83:23-84:4 (███████████).

### 2.    Mondelez's Proper Actions in Place of its Unlawful Actions: the But-For Scenario

The non-monetary remedies available under California's consumer protection statutes are informative as to "defendant's proper actions in place of its unlawful actions," *see*

---

[3] Plaintiffs allege another "harmful event" occurred inasmuch as Mondelez "fails to reveal facts that are material in light of other representations," in violation of 21 C.F.R. § 1.21. *See* SAC ¶ 153 (quoting 21 C.F.R. § 1.21). Plaintiffs have not offered a model to measure damages for this theory of liability (though their claims for related injunctive relief remain).

8

Reference Manual at 432. Courts have "'broad authority' . . . to fashion a remedy to deter defendant from engaging in future unfair trade practices." *Colgan*, 135 Cal. App. 4th at 696 (quoting *Fletcher*, 23 Cal. 3d at 450). Here, Plaintiffs seek on behalf of the Class, *inter alia*, "[a]n Order enjoining Mondelez from using any challenged labeling or marketing claim that is found to be false, misleading, or unlawful," SAC ¶ 267(C).

In order to isolate "the plaintiff's economic position if the harmful event had not occurred," Reference Manual at 432, *everything* in the but-for world must be held constant *except* the unlawful act: "the but-for scenario differs from what actually happened *only* with respect to the harmful act." *Id.* (emphasis added). Thus, the but-for world here is one in which *everything* is held constant *other than* Mondelez's making the challenged statements, which are absent. Because Plaintiffs do not allege that the mere *sale* of the products was unlawful, Mondelez's *sales*, that is, the quantity sold, *cannot* change in the but-for world.

### 3.   The Economic Situation Absent Mondelez's Wrongdoing

California law recognizes that consumers are injured by losing "money or property" when unfair competition distorts the market. *See* Cal. Bus. & Prof. Code § 17203. In the context of mislabeling, the California Supreme Court has explained that:

> For each consumer who relies on the truth and accuracy of a label and is deceived by misrepresentations into making a purchase, the economic harm is the same: the consumer has purchased a product [and] *paid more for* than he or she might otherwise have been ***willing to pay*** if the product had been labeled accurately.

*Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 329 (2011) (bolded emphasis added). Consistent with this, Plaintiffs allege Mondelez misrepresented belVita's healthfulness, and they "would only have been willing to pay less . . . absent the false and misleading labeling," SAC ¶ 171.

In *Kwikset*, the California Supreme Court further detailed the economic nature of this injury, explaining why an allegation the plaintiff would not have purchased the product is

> sufficient to allege economic injury. From the original purchasing decision we know the consumer valued the product as labeled more than the money he or she parted with; from the complaint's allegations we know the consumer valued the money he or she parted with more than the product as it actually is; and from the combination we know that because of the misrepresentation the consumer

(allegedly) was made to part with more money than he or she otherwise would have been willing to expend, i.e., that the consumer paid more than he or she actually valued the product. That increment, the extra money paid, is economic injury and affords the consumer standing to sue.

51 Cal. 4th at 330. In sum, *Kwikset* teaches that "economic injury" or "extra money paid" in a false advertising case is the difference between what the consumer spent, and what she "otherwise would have been willing to expend" absent the false claim, with the focus on the difference between the *value* promised and *value* received. *Id.*; *see also In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009) ("The difference between what the plaintiff paid and the value of what the plaintiff received is a proper measure of restitution"). This measure looks to how swindled consumers would have *valued* the product differently in the actual market in which the sales took place; it does not look to how the *market* would have *priced* the products differently if the defendant had not swindled the Class.

Similarly, "the measure of damages for breach of warranty" under California law "is the difference *at the time and place of acceptance* between the value of the goods accepted and the value they would have had if they had been as warranted," Cal. Comm. Code § 2714(2) (emphasis added). The proper measure is not how that time and place would have been different if Mondelez had never made a warranty in the first place.

## II. MONDELEZ'S PROPOSED BUT-FOR SCENARIO

### A. As Described in Mondelez's Motion to Exclude Colin Weir

Relying on Drs. McFadden and Wilcox's opinions, Mondelez has moved to exclude Dr. Dennis, and Mr. Weir, arguing that the conjoint analysis they propose is "economic[ally] deficien[t]," MTE Weir at 1 n.2. In particular, Mondelez asserts that:

> For a conjoint analysis to assess price premium damages accurately, Mr. Weir must establish that it can determine that the "equilibrium price" of the belVita products in the counterfactual world – *i.e.*, the market price that the belVita products would have commanded in the hypothetical world in which the products were sold with different labels.

*Id.* at 7. It argues that Mr. Weir "assumes – without evidence and contrary to common sense – that the competitive landscape would have looked *exactly the same*" in the counterfactual

10

world as it did in the real world," thereby "fail[ing] to account for the relevant supply-side and competitive factors necessary to determine the equilibrium price in the counterfactual world, which . . . renders his proposed conjoint analysis 'inconsistent with basic economic reasoning' and incapable of measuring the price premium . . . ." *Id.* at 7-8 (quoting McFadden Report ¶ 11a); *see also id.* at 8-9 (discussing Dr. Wilcox's correlating opinion (quoting Wilcox Report ¶¶ 26-27)).

**B.    As Described by Dr. McFadden**

Dr. McFadden defined " ███████████████████████████████████████████████████████████████████████████████████████████████████████ ," McFadden Dep. Tr. at 77:6-12. He explained that " ███████████████████
███████████████████████████████████████
███████████████████████████████████████
█████████████████████████████████████████████████
*Id.* at 84:6-19; *See id.* at 138:17-139:3. For Dr. McFadden, to account for fact that " ███████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████ " *Id.* at 84:23-85:5.

Dr. McFadden ████████████████████████████████████████████
██████████████████ *Id.* at 78:1-14. Asked whether he agreed with the manual that "the but-for scenario differs from what actually happened only with respect to the harmful act," ██
████████ *see id.* at 81:2-11, stating that █████████████████████████████████████
███████████████████████████████████ ," *id.* at 81:14-20.

Given his ██████████████████████████████████████████████
██████████████████████████████████████████████ :

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████

*McMorrow v. Mondelez Intl. Inc.*, Case No. 17-cv-02327-BAS-JLB
MOTION TO STRIKE DRS. DANIEL MCFADDEN & RONALD WILCOX

1  ████████████████████████████████████████████████

2  ████████████████████████████████████████

3  *Id.* at 86:3-23. *See also id.* at 81:23-93:13. For McFadden, the but-for world must:

4  ████████████████████████████████████████████████

5  ████████████████████████████████████████████████

6  ████████████████████████████████████████████████

7  ████████████

8  *Id.* at 86:24-87:8; *see also id.* at 162:23-25.

9      Indeed, in Dr. McFaddens's counter-factual world ████████████████

10  ████████████████████████████████████████████████████

11  ████████ *id.* at 134:23-136:15. *See also id.* 136:9-137:18; McFadden Report ¶ 18 n.23. Asked

12  ████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████ Dr.

14  McFadden responded that "████████████████████████████████████

15  ████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████

17  ████████████ " *See* McFadden Dep. Tr. at 112:16-114:13.

18      According to Dr. McFadden, ████████████████████████████

19  ████████████████████████ *See id.* at 114:14-115:2.

20  Asked what the class's damages would be in that case, Dr. McFadden responded, "████████

21  ████████████████████████████████████████████████████

22  ████████████████████████ " *Id.* at 115:16-20. Similarly, given a hypothetical in

23  which "████████████████████████████████████████████████

24  ████████████████████████████████████████████████████," he

25  responded that "████████████████████████████████████████

26  ████████████████████████ " *id.* at 145:11-146:2; *but see id.* at 146:4-149:2

27  (████████████████████████████████████████████████████).

28      It seems that the Reference Manual's but-for world—wherein the only change is the

12

alleged unlawful conduct—is, in Dr. McFadden's view, the one thing that Mondelez *cannot* do in his proposed but-for world. When asked if ███████████████████ ████████████████████████████ and ███████████████ Dr. McFadden testified ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████ *Id.* at 134:3-20.

    Dr. McFadden described a ████████████████████████████████████ ███████████████████████████████████████████████ *see id.* at 128:9-129:16. Despite agreeing that ████████████████████████████ ███████████████████████ *id.* at 129:20-22, Dr. McFadden nevertheless stated that ████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████ *id.* at 129:23-130:11. Because the people buying products in his but-for scenario would be different than the people who bought the products in the actual world— the Class Members—McFadden even testified that, ███████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████ *See id.* at 154:21-156:17.

    Dr. McFadden testified █████████████████████████████████████████ ████████████████ s*ee id.* at 131:8-133:25. He ██████████████████████████████

██████████████████████████████████████████████," *id.* at 140:24-141:5, ██████████████████████████████████ *id.* at 142:20-143:18.

## C.    As Described by Dr. Wilcox

    Similar to Dr. McFadden, Dr. Wilcox testified he " ████████████████████

████████████████████████████████████████████████████████████████

██████████████ Wilcox Dep. Tr. at 93:9-19, ██████████████████████████████



*Id.*
at 82:4-7; *id.* at 137:15-23. Dr. Wilcox explained

*Id.* at 82:8-20.

Dr. Wilcox's proposed but-for world allows Mondelez to

*See id.* at 82:21-83:1; *see also id.* at 83:10-16, 83:22-84:17, 93:9-19, 94:15-21 (Dr. Wilcox "

). Presented a second scenario, whether Mondelez could have reformulated the products in his proposed but-for world, Dr. Wilcox

*Id.* at 84:18-85:5.

## III.   PLAINTIFFS' PROPOSED BUT-FOR SCENARIO

Unlike Mondelez and Drs. McFadden and Wilcox, Plaintiffs and their experts propose to measure damages based on a "but-for scenario" of the type described in the Reference Manual: one that "differs from what actually happened *only* with respect to the harmful act[.]" *See* Reference Manual at 432 (emphasis added). In this way, Plaintiffs' proposal "isolate[s] the loss of value caused by the harmful act and exclude[s] any change in the plaintiff's value arising from other sources," like the reactions of Mondelez or its competitors. *See id.*

For example, Mr. Weir testified that "the but-for world is . . . a *ceteris paribus* analysis, where the only thing that we are changing is Defendant's harmful conduct—*ceteris paribus*," meaning "all else equal." Omnibus Joseph Decl. Ex. 4, Weir Dep. Tr. at 122:11-15; *see also id.* at 135:17-20, 140:4-7. Here, the change in the harmful conduct is "the presence or removal of one of the challenged claims." *Id.* at 140:7-9, 129:21-24. In Mr. Weir's but-for scenario:

the competitive forces are whatever they were in history and are reflected by the real-world market-based prices. We're not having a scenario where the class

14

members can undo their transaction. That does not make any sense. These people bought these products. And what we are trying to measure is what is the value of those products that they received.

*Id.* at 129:25-130:25. Mr. Weir testified this model sufficiently "accounts for supply-side considerations," because "the but-for world that we're measuring . . . . look[s] at a historic scenario and evaluat[es] value for sales that have already taken place, so we can hold the quantity of supply fixed as a matter of history" and "deal[s] with a situation where we have historic retail market-based prices that show the impacts, if any, of supply-side considerations on market price, and we can use that in the conjoint model in order to correctly . . . re-simulate those supply-side conditions." *Id.* at 131:13-132:4. In other words, the model "us[es] real world market base prices that reflect[ ] the competitive response over the course of the class period," and thus is " separately controlling" for "how, to the extent it ever has mattered, competitors respond, and how that can impact the price." *See id.* at 136:23-138:3. At the same time, the model is "not allowing . . . consumers to undo their transaction and instead buy a competitive product" because "[w]e are dealing with products that have actually been purchased, and we are modeling the change in value for those transactions that actually took place." *Id.* at 138:4-13; *see also id.* at 121:21-122:10, 128:17-22, 129:25-130:25, 131:13-132:4, 138:14-139:16, 140:10-13, 162:5-21, 184:6-186:1 (explaining how proposed conjoint survey accounts for supply-side factors and is premised on the correct but-for world).[4]

Any assertion that Plaintiffs' experts ignore supply-side considerations is thus wrong. *See* Omnibus Weir Decl. ¶¶ 30-36; Omnibus Dennis Decl. ¶¶ 13-17. Consistent with the Reference Guide and common sense, Plaintiffs' experts simply hold constant in the but-for scenario the supply-side considerations that prevailed in the real world. Both McFadden and Wilcox agreed all relevant supply-side factors are effectively "baked in" to the historical

---

[4] Moreover, despite asserting that the quantity sold in the but-for world could be "lower than the actual number of units sold the Class," McFadden and Wilcox "fundamentally fail to account for the value (or lack thereof) of such hypothetically unsold units," *see* Omibus Weir Decl. ¶ 49; *see also id.* at ¶¶ 50-53.

*McMorrow v. Mondelez Intl. Inc.*, Case No. 17-cv-02327-BAS-JLB
MOTION TO STRIKE DRS. DANIEL MCFADDEN & RONALD WILCOX

sales. *See* McFadden Dep. Tr. at 102:11-103:5 (████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████; Wilcox Dep.

Tr. at 68:23-69:13 ("██████████████████████████████████████████

████████████████████████████████████████████████████████████);

Omnibus Joseph Decl. Ex. 9, Wilcox Hadley Dep. Tr. at 81:4-20 (similar).

Drs. McFadden and Wilcox's criticism, fairly characterized, is that they do not believe how Dr. Dennis and Mr. Weir address the supply side (holding it constant to the actual market in which class members' transactions took place) is proper. Neither they nor Mondelez has any basis to claim that Plaintiffs' experts do not address the supply side at all.

In sum, Drs. Wilcox and McFadden advocate an analysis in which the *entire market* changes in innumerable hypothetical ways as a result of the change in Mondelez's labeling behavior. *See* Omnibus Weir Decl. ¶¶ 37-43. Mondelez thus advocates a damages analysis that encompasses three steps. First, Mondelez ceases making the challenged labeling claims. Second, Mondelez and the rest of the market react, creating a market that looks wholly different than the actual market in which the products were sold. Third, Mondelez measures the difference between the price class members actually paid, and a prediction of what the price would have been in the wholly different market where all the actors behaved differently.

Plaintiffs, by contrast, advocate an analysis in which they ask what the difference in *value*, and therefore *price* would have been in the *actual market* in which the offending sales took place, where the *only* difference is that Mondelez did not make the misleading labeling claims. This encompasses a two-step process. First, Mondelez ceases making the challenged labeling claims. Second, Plaintiffs measure the difference between the price class members actually paid, and what they would have paid in that but-for scenario, where all the same supply-side conditions prevailed that prevailed in the actual market in which they purchased the products, by holding everything about the market constant—including the quantity sold— and changing *only* Mondelez's offending behavior. Plaintiffs' experts do this by determining through conjoint analysis what value the labeling claims had to class members within the

actual market in which they purchased the belVita products. As demonstrated below, Plaintiffs' is the correct measure of restitution and damages in this case.

## **ARGUMENT**

## I.  DRS. WILCOX AND MCFADDEN'S SUPPLY-SIDE OPINIONS SHOULD BE EXCLUDED BECAUSE THEY ARE LEGALLY ERRONEOUS

"[C]onjoint analysis is widely-accepted as a reliable economic tool for isolating price premia," *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1110 (N.D. Cal. 2018), and thus "numerous courts have accepted . . . CBC [choice-based conjoint] . . . as [a] reliable methodolog[y] for calculating price premiums on a classwide basis in consumer class actions," *Miller v. Fuhu Inc.*, 2015 WL 7776794, at \*21 (C.D. Cal. Dec. 1, 2015) (citations omitted). As one court recently explained in quoting *Hadley*:

> [I]n cases where price premia are the relevant measure of damages . . . conjoint analyses can adequately account for supply-side factors—and can therefore be utilized to estimate price premia without running afoul of *Comcast*—when (1) the prices used in the surveys underlying the analyses reflect actual market prices that prevailed during the class period; and (2) the quantities used (or assumed) in the statistical calculations reflect the actual quantities of products sold during the class period.

*Allen v. ConAgra Foods, Inc.*, 331 F.R.D. 641, 673 (N.D. Cal. July 22, 2019) (quoting *Hadley*, 324 F. Supp. 3d at 1105); *see also Hilsley v. Ocean Spray Cranberries, Inc.*, 2019 WL 3006465, at \*3-6 (S.D. Cal. July 10, 2019) (certifying class based on contingent valuation damages model because "a review of the relevant case law," including *Hadley* and other cases involving conjoint analysis, led the court to conclude that the proposed model "could account for supply-side factors," and "saistisfy[ ] *Comcast*" by "using a [ ] standard retail price and Ocean Spray's actual wholesale unit sales in California"); *Hadley*, 324 F. Supp. 3d at 1105-106 (discussing *Dial*, 320 F.R.D. at 334-36; *In re MyFord Touch Consumer Litig.* ["*MyFord Touch II*"], 291 F. Supp. 3d 936, 969-71 (N.D. Cal. 2018); *Davidson v. Apple, Inc.*, 2018 WL 2325426, at \*22 (N.D. Cal. May 8, 2018); *Fitzhenry-Russell v. Dr. Pepper Snapple Group, Inc.*, 2018 WL 3126385, at \*8 (N.D. Cal. June 26, 2018); *In re Lenovo Adware Litig.*, 2016 WL 6277245, at \*21 (N.D. Cal. Oct. 27, 2016)); *Brookfield v. Craft Brew Alliance, Inc.*, 2018

17

1   WL 4952519, at *18-19 (N.D. Cal. Sept. 25, 2018).

2     Facing similar arguments, *Dial* explained the error Mondelez and its experts make:

3     Dial's experts seem to argue that the market price of the product absent the
4   allegedly false claims is best calculated by determining the demand curve, and
    then analyzing supply side forces to arrive at an intersection between demand
5   and supply in a theoretical market. One apparent problem with that traditional
6   approach (at least in this context) is that both supply and demand with respect to
    the product without the claimed feature can be expected to decline. Therefore,
7   that approach can be expected to describe a price for the product at a point on
8   the quantity sold axis below (perhaps significantly) the point that represents the
    actual number of offending products sold to class consumers in the actual
9   market.

10  [Plaintiffs'] model is one in which quantity (the number of products with the
    offending claims actually sold) is held constant on the demand/supply graph in
11  determining the likely market price of the product without the offending claim
12  if sold in the actual market. His model seeks to calculate the highest price in the
    actual market at which Dial could have sold the same number of products
13  without the challenged claim. The difference in price as calculated, then, would
14  seem to capture the full measure of damages suffered by consumers who actually
15  bought the allegedly misrepresented product.

16  *Dial*, 320 F.R.D. at 336. Another court explicitly noted that "modifying the supply curve," as

17  in "a traditional economic model" "could mean that a projection will assume that fewer

18  vehicles were sold than were in fact sold, thereby failing to account for the fixed number of

19  defective vehicles that *were* sold," which is problematic because "[a]ssuming that fewer

20  consumers were injured in the hypothetical world . . . runs the risk of undercompensating the

21  real-world injured consumers." *MyFord Touch II*, 291 F. Supp. 3d at 971.

22    Regarding Dr. Dennis's approach, Dr. McFadden ████████████████████

23  ████████████████. McFadden Dep. Tr. at 166:20-168:19; *id.* at 170:13-22 (Q. ██

24  ████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████

27  ████████████████████████████ Like Dial's experts, Dr. McFadden complains

28  that, "[i]n failing to calculate a 'but for' market equilibrium price, Mr. Weir and Dr. Dennis

18

eschew the standard economic approach," McFadden Report ¶ 25. He testified that the:

███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
██████████████████████

McFadden Dep. Tr. at 159:12-24.

Asked to provide examples of when economists do *not* use the standard economic approach, however, Dr. McFadden testified ████████████████████████
███████████████████████████████████████████████████████ *Id.* at 161:4-11. He stated that ███████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████ *See id.* at 161:16-24.

That is exactly the case here: the "but-for scenario" *is* being restricted, as described in the Reference Manual: in order to "isolate the loss of value caused by the harmful act and exclude any change in plaintiff's value arising from other sources," the "but-for scenario" must "differ[] from what actually happened *only* with respect to the harmful act[.]" *See* Reference Manual at 432 (emphasis added). Indeed, although he ██████████████████
███████████████████████████████████████████████████████
████████████████████. *See* McFadden Dep. Tr. at 163:1-21.

As many courts have recognized, Plaintiffs' approach comports with California law. Restitution depends on the difference in value promised and delivered, with value defined from the perspective of the consumers in the actual market in which they bought. *See Kwikset*, 51 Cal. 4th at 330. Warranty damages also depend on the value "at the time and location" the good was received, not on a hypothetical world in which the market differed entirely.

This is the only reasonable way to calculate damages, because this is the only analytical method that *isolates* the plaintiff's economic position if the harmful event had not occurred. The traditional method Mondelez and its experts advocate, by contrast, would include in the

19

purported measure of the class's damages amounts attributable to things *other than* Mondelez's harmful behavior, such as the reaction of a competitor. Plaintiffs' method thus *controls* for confounding factors, while Mondelez's method *introduces* confounding factors.

For example, suppose if Mondelez had been enjoined from using the "4 Hours of Nutritious Steady Energy Claim," and General Mills saw an opportunity to gain market share for its Nature Valley bars by doubling its advertising budget and slashing prices in the short-term. Those decisions would likely affect the price of belVita products in the hypothetical market, but any such price changes would reflect General Mills' behavior, rather than the difference between the value class members were promised and what they received.

Not only is the traditional approach *economically* inappropriate to measure damages here, as a matter of policy it would effectively excuse Mondelez's misconduct, creating perverse incentives to cheat consumers by allowing Mondelez to postulate that it would never have sold the products if it could not have deceived its victims. An example Dr. Wilcox provides illustrates why *Plaintiffs* are correct:

> If the Energy Claims were responsible for a price premium of 99%, the market price of belVita biscuits would be approximately two to four cents a package, as opposed to the [real world range of] $2.29 to $4.29. If that were the case, it would have made no sense for MDLZ to sell *any* belVita biscuits at that price—let alone an equivalent quantity to the amount it sold in real life. *Id.* But by holding supply constant, Mr. Weir reaches the implausible conclusion that MDLZ would sell the *exact same amount* . . . no matter the price the market would bear.

MTE Weir at 10 (citing Wilcox Report ¶ 32; McFadden Report ¶ 28). Mondelez points out that it would not have sold *any* belVita products for $0.02 if that was its only option if barred from using the challenged claims, but it does not say what the Class's damages would be in such a case, though it at least suggests that the Class's damages would be zero, since in this "but-for" world where Mondelez refused to sell belVita products at $0.02, no one would have purchased them. *See id.* Likewise, despite providing the example himself, Dr. Wilcox ████████. *See* Wilcox Dep. Tr. at 90:24-91:9.

Dr. McFadden, by ████████████████████████████████████

████████████████████████████████████████████

*McMorrow v. Mondelez Intl. Inc.*, Case No. 17-cv-02327-BAS-JLB
MOTION TO STRIKE DRS. DANIEL MCFADDEN & RONALD WILCOX

1 █████████████████████████████████████████████████████████████

2 ██████████████████████████████████████████ *See* McFadden Dep. Tr. 112:16-116:8.

3        Dr. Wilcox's example exposes the error in Mondelez and its experts' logic. Situations

4 arise all the time in which a product's full value is attributable to a false claim, such as a

5 "misrepresent[ation] that [ ] homeopathic products provide fast, safe, and effective relief from

6 cold and flu symptoms," when the "products are actually 'nothing more than sweetened,

7 flavored water,'"" *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *1 (C.D. Cal. Apr. 9,

8 2014) (record citation omitted), or that "a dietary supplement," is "scientifically formulated

9 to improve virility," *Ortega v. Natural Balance, Inc.*, 300 F.R.D. 422, 425 (C.D. Cal. 2014).

10 Where a product's full value is attributable to a false claim, California law dictates, not that

11 the Class's damages are *zero*, or a refund of only an amount that allows the defendant to still

12 make a profit on each unit, but that the Class is entitled to a *full refund*.[5] *See Alvarez v. NBTY,*

13 *Inc.*, 331 F.R.D. 416, 426 (S.D. Cal. 2019) (Bashant, J.) ("If a product is proven to be

14 completely worthless and provides no value . . ., 'the putative class will be entitled to

15 restitution of the full amount they paid for the product.'" (citation)). *See also* Omnibus Weir

16 Decl. ¶¶ 44-48 (explaining why McFadden and Wilcox's "willingness to sell" opinions would

17 result in "a perversion of economics" and "deserve little weight").

18        Tellingly, Dr. McFadden was very confused about the proper construction of the but-

19 for world. When asked, as the Reference Manual suggests, to "give [his] best description of

20 the Defendant's proper actions in place of its unlawful actions in this case," Dr. McFadden

21 stated that, "████████████████████████████████████████████████████

22 ███████████████████ McFadden Tr. at 87:9-15; *see also* Omnibus Weir Decl. ¶ 20 ("McFadden

23 admits that he has not any empirical work in this case."); *id.* at ¶ 21 (explaining how

24 ████████████████████████████████████████████████████████████████

25 ███████████████████████████████████████ (quoting McFadden Dep. Tr. at 144:2-3)).

26

27 ─────────────────────────

28 [5] Plaintiffs do not argue that is the case here, and it is very unlikely that such a high premium
will be observed for the challenged claims when Dr. Dennis implements his survey.

21

*McMorrow v. Mondelez Intl. Inc.*, Case No. 17-cv-02327-BAS-JLB
MOTION TO STRIKE DRS. DANIEL MCFADDEN & RONALD WILCOX

1    Nevertheless, he said he ███████████████████████████████████

2    ███████████████████████████████████████████ *See id.* at 87:17-19.

3        When asked about what *rules* govern his but-for world, however, Dr. McFadden ████

4    ████████████████████████████████████████████████████████████

5    █████████████████████████. at 88:7-18 (objection omitted). Nevertheless, he

6    testified "██████████████████████████████████████████

7    ████████████████████████████████████████████████████████████

8    ███████████████████████████████ *Id.* at 88:19-89:1.

9        To demonstrate the illogic in Dr. McFadden's position, Plaintiffs' counsel asked, if

10   before measuring the class's damages, Mondelez is allowed to postulate that it would have

11   replaced the offending label with a *more compelling* one, causing the price to *increase*,

12   ████████████████████████████████████████████████████████████

13   █████████████ *See id.* at 89:2-15, 19. Dr. McFadden responded ██████████████

14   █████████████████ *Id.* at 89:21-90:1 (emphasis added). *See also* Omnibus

15   Dennis Decl. ¶ 18 (allowing alternative claims in the but-for world "misses the mark").

16       It simply cannot be the correct legal construct of a but-for world where a defendant

17   who defrauded a class of consumers can avoid damages by postulating a better labeling claim.

18   Moreover, even if Mondelez could improve its labeling by replacing challenged false claims

19   with better true claims, "no damages" does not describe the difference between the value the

20   class was promised through the challenged claim, and the lesser value it received because the

21   claim was false. *Compare Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 817-19 (9th Cir. 2019)

22   (California permits "benefit of the bargain" damages under CLRA and for breach of warranty).

23       In short, because Drs. Wilcox and McFadden "do not know how to" "calculate

24   damages in this case," *see* Omnibus Weir Decl. at 6 (emphasis omitted); *see also id.* ¶¶ 19-

25   25, they should not be permitted to opine on the proper methodology for doing so.

26   **II.   DR. MCFADDEN'S LAW360 OPINION SHOULD BE STRICKEN BECAUSE**

27   **IT IS (SELF-SERVING) PERCIPIENT, NOT EXPERT TESTIMONY**

28       Dr. McFadden's opinions concerning the supposedly proper reading of his *Law360*

22

article, McFadden Report ¶¶ 10b, 11b, 29-39, should be stricken because this is the testimony of a percipient witness masquerading as expert testimony, and in any event is irrelevant.

In 2013, Dr. McFadden and two of his colleagues, including Dr. Lisa Cameron, published an article in Law360 titled "The Role of Conjoint Surveys in Reasonable Royalty Cases." *See* Omnibus Spelman Decl. Ex. 60, Dkt. No. 91-42. In a section titled "Relevance of WTP Results," they wrote:

> Defendants have argued that WTP results emerging from the conjoint analysis do not directly address the value of the patents in question. However, it is important to note that different research questions require different information about WTP. For example, if the researcher seeks qualitative information about how much consumers value the infringing level(s) of the attribute at issue, he can develop a conjoint survey that provides that average or median consumer WTP, as Apple's expert did in Apple v. Samsung.

> On the other hand, if the researcher wants to assess the price premium associated with the infringing feature, then he will need to develop a conjoint survey that assesses the WTP of the marginal consumer — i.e., the consumer who is indifferent between buying and not buying the infringing product. It is the WTP of the marginal consumer that is equivalent to the price premium associated with the infringing level of the attribute; this marginal consumer can be identified by offering respondents a "no buy" option.

*Id.* at 6 (emphasis added). At that time, ██████████████████████████ ██████████████████████████████. *See* McFadden Dep. Tr. at 60:12-68:14. ███████████████████████████████ *see id.* at 177:2-3, ██████████████████ *id.* at 177:4-22. █ *Id.* at 177:24-178:16. █████████████████ █████████████ *See id.* at 178:23-179:4. ████████████████ *Id.* at 179:11-12. ████ ████████████████████████ *Id.* at 179:14-18. ███████████████ *see id.* at 179:19-180:4.

In 2017, the *Dial* court quoted the full passage replicated above relying, in part, on the analysis to approve of the use of conjoint analysis in a mislabeling case. *See* 320 F.R.D. at 335-36. In 2018, another court relied on this passage to approve a conjoint analysis damages

23

model set forth by Dr. Dennis. *See Fitzhenry-Russell*, 2018 WL 3126385, at *7-8. Dr. Dennis thus cited the article in his report. *See* Dennis Report ¶ 104; *see also* McFadden Dep. Tr. at 201:2-16 (Dr. McFadden ███████████████████████████████).

This year, General Motors found itself opposing class certification in a case in which plaintiffs again proposed the use of conjoint analysis (which was being proposed by the same expert in *Dial*). Wisely, it hired Dr. McFadden—at a cost of $1,100 an hour—to, ████████ ████████████████████████████████, *see* McFadden Dep. Tr. at 197:6-16, and his testimony carried the day for General Motors. *See In re Gen. Motors LLC Ignition Switch Litig.*, --- F. Supp. 3d ----, ----, 2019 WL 3564698, at *15-16 (S.D.N.Y. Aug. 6, 2019) ["*General Motors*"].[6]

Mondelez has now followed suit, with a section of Dr. McFadden's Report dedicated to arguing that "Dr. Dennis and Mr. Weir fundamentally misinterpret my *Law360* article." McFadden Report at 17 (header formatting disregarded). According to Dr. McFadden, Dr. Dennis—and multiple federal courts—were "misled" by the article because they failed to glean from it a statement Dr. McFadden simply did not make. *See id.* ¶ 30; McFadden Dep. Tr. at 196:9-197:5, 199:11-200:12, 206:10-207:16. When asked when was "████████ ████████████████████████████████████████████████████████ ████████████████████████████████████ McFadden Dep. Tr. at 195:23-196:12.

Dr. McFadden's testimony in this regard is not expert testimony because it is not based on his "skill, experience, training, or education" as an economist, *see* Fed. R. Evid. 702; McFadden Dep. Tr. at 12:9-13:6,14:1-23, 15:24-16:6, but on his *personal* experience as a co-author of the paper. Permitting this testimony under the guise of "expert" evidence would be especially unfair here because it is entirely self-serving—supporting the actual expert opinion

---

[6] Importantly, *General Motors*, in dealing with a "defective ignition switch," specifically distinguished the proposed conjoint with the one approved in *Hadley*, which is materially identical to Plaintiffs', because "*[i]n a classic mislabeling case . . . that makes sense*," 2019 WL 3564698, at *1, 15 (emphasis added) (S.D.N.Y. Aug. 6, 2019) (quoting *Hadley*, 324 F. Supp. 3d at 1105). Mondelez's other cases addressing conjoint analysis are also easily distinguished. *See* Opp. to Mot. to Exclude Dennis & Weir at 10-12.

1    Dr. McFadden is being paid $1,100 to render—and is contradicted by the record. Dr.

2    McFadden testified █████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████████████████████████

4    ████████████████████████████   *See* McFadden Dep. Tr. 179:19-181:17; *see also id.* at 60:23-

5    61:21 (█████████████   █████████████).

6        Indeed, ███████████████████████████████████████████████████████████████

7    █████████████████████████████████████████████. *See id.* at 182:8-17; *see*

8    *also id.* at 60:12-68:14 (████████████████████████████████████████████████████

9    ██████████). Dr. McFadden has made no public retraction or clarification of his published

10   statements, and has no present intention to do so, yet if allowed to opine, would be permitted

11   to modify his own writings in virtually any way he sees fit to support his client, even to the

12   extent of testifying that he meant something other than what he published. "[A]llowing an

13   expert like" Dr. McFadden "to double as a percipient witness would raise a host of concerns

14   under Rule 702 and 403," especially inasmuch as "factual testimony of witnesses offered in

15   dual role[s]" are "likely to 'attain[ ] unmerited credibility,' . . . and 'stray from [the] scope of

16   . . . expertise.'" *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 553 n.75 (S.D.N.Y.

17   2004) (citing and quoting *United States v. Dukagjini*, 326 F.3d 45, 53-56 (2d Cir. 2003)).

18       In addition, Dr. McFadden's *Law360* article speaks for itself. "[W]here a witness with

19   specialized knowledge provides percipient testimony about '"common enough" [matters that]

20   require . . . a limited amount of expertise,' then the testimony constitutes lay testimony and

21   not expert." *Secs. & Exchg. Comm'n v. Sabhlok*, 2010 WL 2944255, at *4 (N.D. Cal. July

22   23, 2010) (quoting *United States v. Figueroa-Lopez*, 125 F3d 1241, 1246 (9th Cir. 1997)).

23       In all events, Dr. McFadden's opinion regarding the proper interpretation of his

24   *Law360* article is irrelevant because it will not "help the trier of fact to understand the

25   evidence or determine a fact in issue[.]" Fed. R. Evid. 702. Instead, this Court can determine

26   the proper construct of the but-for scenario without any reference to the *Law360* article at all.

## CONCLUSION

27

28   The Court should grant the motion.

25

*McMorrow v. Mondelez Intl. Inc.*, Case No. 17-cv-02327-BAS-JLB
MOTION TO STRIKE DRS. DANIEL MCFADDEN & RONALD WILCOX

Dated: December 9, 2019                    Respectfully Submitted,

                                           /s/ Jack Fitzgerald

                                           **THE LAW OFFICE OF**
                                           **JACK FITZGERALD, PC**
                                           JACK FITZGERALD
                                           *jack@jackfitzgeraldlaw.com*
                                           TREVOR M. FLYNN
                                           *trevor@jackfitzgeraldlaw.com*
                                           MELANIE PERSINGER
                                           *melanie@jackfitzgeraldlaw.com*
                                           Hillcrest Professional Building
                                           3636 Fourth Avenue, Suite 202
                                           San Diego, CA 92103
                                           Phone: (619) 692-3840
                                           Fax: (619) 362-9555


                                           **THE LAW OFFICE OF**
                                           **PAUL K. JOSEPH, PC**
                                           PAUL K. JOSEPH
                                           *paul@pauljosephlaw.com*
                                           4125 W. Pt. Loma Blvd. No. 309
                                           San Diego, California 92110
                                           Phone: (619) 767-0356
                                           Fax: (619) 331-2943

                                           ***Counsel for Plaintiffs***

*McMorrow v. Mondelez Intl. Inc.*, Case No. 17-cv-02327-BAS-JLB
MOTION TO STRIKE DRS. DANIEL MCFADDEN & RONALD WILCOX