# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK MCMORROW, *et al.*, | Case No. 17-cv-2327-BAS-JLB |
| Plaintiffs, | **ORDER:** |
| v. | **(1) DENYING DEFENDANT'S MOTION TO EXCLUDE THE EXPERT TESTIMONY OF MICHAEL GREGER** |
| MONDELĒZ INTERNATIONAL, INC., | **(2) DENYING DEFENDANT'S MOTION TO EXCLUDE THE EXPERT TESTIMONY OF ROBERT H. LUSTIG** |
| Defendant. | **[ECF Nos. 88, 89]** |

Presently before the Court is a tangled web of documents that collectively forms the briefing for six different *Daubert* motions. Plaintiffs Patrick McMorrow, Marco Ohlin, and Melody DiGregorio and Defendant Mondelēz Global LLC[1] seek to exclude the others' expert witnesses. All motions are opposed, all have reply briefs filed in support of them, and many of them are supported by exhibits attached to "omnibus" declarations filed by both parties. The Court previously granted Defendant's motions to exclude the expert testimonies of J. Michael Dennis and of

---

[1] Mondelēz Global LLC was incorrectly sued as Mondelēz International, Inc.

Colin Weir. (ECF Nos. 87, 90.) The reasoning for this decision is explained in the Court's order denying without prejudice Plaintiff's motion for class certification. (ECF No. 126.) Four motions remain pending. The Court does not address at this time two of the pending motions: the motion to exclude the expert testimonies of Drs. Daniel McFadden and Ronald Wilcox (ECF No. 96) and motion to exclude the expert testimony of Dr. Itamar Simonson (ECF No. 97). Because these experts' reports are predicated or partially predicated on responding to the opinions of the experts that the Court has already struck (Dennis and Weir),[2] the Court defers ruling on the admissibility of the three experts until after the parties' case management conference where the parties are to discuss the status of the pending motions. (*See* ECF No. 127.)

The Court will address herein the motions to strike the expert testimonies of Michael Greger and of Robert H. Lustig. (ECF Nos. 88, 89.)

## I. BACKGROUND

Mondelēz Global LLC ("MDLZ") sells belVita Breakfast Products (hereinafter, "the Products"). The Products come in four varieties: belVita "Crunchy" Biscuits, belVita "Soft Baked" Biscuits, belVita "Bites," and belVita "Sandwiches." (Second Amended Complaint, "SAC," ECF No. 24, ¶ 114.) Plaintiffs allege the claims on the Products' packaging is misleading, namely:

- "NUTRITIOUS SUSTAINED ENERGY"
- "NUTRITIOUS STEADY ENERGY ALL MORNING"
- "4 HOURS OF NUTRITIOUS STEADY ENERGY"
- "We worked closely with nutritionists to design a new kind of breakfast biscuit with energy for the morning. Energy that is nutritious and sustained."

---

[2] Defendant retained McFadden to review issues addressed in Dennis' and Weir's reports. (ECF No. 91-14.) Defendant retained Wilcox to address the propriety of the conjoint "market simulation" proposed by Dennis and endorsed by Weir. (ECF No. 91-15, at ¶ 13.) Simonson conducted a survey to assess the impact of the word "nutritious" on the Products' labels and also evaluated Dennis' report. (ECF No. 91-13.)

- "We worked closely with nutritionists to design belVita Breakfast Biscuits"
- "We all need energy to start the morning. We also need a delicious, wholesome breakfast. Baked with hearty whole grains, belVita Soft Baked Breakfast biscuits are delicious, nutritious . . . ."

(*Id.* ¶¶ 128, 133.) Plaintiffs believe these claims are misleading because the Products are not healthy and in fact "increase the risk of serious diseases." (*Id.* ¶ 129.) Plaintiffs mainly take issue with the word "nutritious" due to the amount of added sugar in the Products. (*See id.* ¶ 124.) Plaintiffs allege that consumption of the products "causes increased risk of CHD, stroke, and other morbidity." (*Id.* ¶ 174.) Plaintiffs allege the Products' labeling violates California, New York, and federal law. Plaintiffs theory of damages is based on their contention that Defendant was able to charge a higher price for the Products due to the allegedly misleading labels.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 provides certain prerequisites to the admission of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

## III. ANALYSIS

### A. <u>Motion to Exclude the Expert Testimony of Michael Greger</u>

Plaintiffs retained Dr. Michael Greger to identify and analyze literature

regarding the general health effects of added sugar consumption and of belVita's Products. Greger's "task was to perform as exhaustive a review of the literature as reasonably possible, first to identify the relevant scientific and medical literature regarding the physiological effects of added sugar consumption in general, and belVita Breakfast Biscuit consumption in particular, then to analyze and summarize it." ("Greger Report," ECF No. 91-19, at 4.) In light of this evidence, Dr. Greger was asked to opine whether the Products are generally healthy or nutritious. (*Id.* at 4.) Greger found that the Products contain approximately 7g and 12g of added sugar per serving. He opines that the "modest benefits" provided by the other nutrients in the Products are "significantly outweighed by the detrimental health effects of their substantial added sugar." (*Id.*) Therefore, the Products are not healthy. (*Id.*)

### 1. Qualifications

Defendant's first argument is that Greger is not qualified to opine on the health effects of added sugar. ("Greger Mot.," ECF No. 88-1, at 4.) In making this argument, Defendant picks apart details of Gregor's experiences, rather than looking at his qualifications as a whole. Defendant points out that Gregor did not complete a "full residency[,]" does not list a mailing address of a doctor's office, does not treat patients, is not certified by various credentialing organizations, and focused his career on "animal medicine" and "lifestyle medicine." (Mot. at 4–5.)

In the Ninth Circuit, an expert may be qualified to offer a particular opinion either as a result of practical training or academic experience. *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994) ("[T]he advisory committee notes emphasize that Rule 702 is broadly phrased and intended to embrace more than a narrow definition of qualified expert"); *Rogers v. Raymark Indus. Inc.*, 922 F.2d 1426, 1429 (9th Cir. 1991) ("A witness can qualify as an expert through practical experience in a particular field, not just through academic training."). "The threshold for qualification is low for purposes of admissibility; minimal foundation of knowledge, skill, and experience suffices." *PixArt Imaging, Inc. v. Avago Tech. Gen.*

*IP (Singapore) Pte. Ltd.*, No. C 10–00544 JW, 2011 WL 5417090, at *4 (N.D. Cal. Oct. 27, 2011).

Dr. Greger is a physician licensed as a general practitioner specializing in clinical nutrition. (Greger Report at 4.) He speaks and writes on nutrition, food safety, and public health issues. (*Id.* at 5.) As Chief Science Officer for a company called NutritionFacts.org, Greger performs "comprehensive medical literature searches" on many nutrition-related topics. (*Id.*) Upon review, the Court finds that Greger's education and professional experience satisfy the requirements of Rule 702. Defendant's objection to the depth of Greger's experience specifically in the relevant area goes to the weight of testimony, not the admissibility. *See Lister v. Hyatt Corp.*, No. C18-961JLR, 2019 WL 6701407, at *11 (W.D. Wash. Dec. 9, 2019) (finding same).

### 2. Opinion

Defendant next argues that Greger's opinion improperly relies on "a selective and unreliable literature review." (Greger Mot. at 6.) Defendant argues Greger has no articulated methodology for how he chose the sources he read and analyzed. (*Id.* at 7.)

Greger explained how he conducted his search. First, he created and performed a broad Boolean search regarding sugar. (Greger Report at 6.) Greger testified as to how he compiled the key words for the search. ("Greger Depo.," ECF No. 91-28, at 152:6–24.) The search netted over 50,000 results, which he narrowed down based on recency to about 13,000 articles. He then determined "based on title and abstract scrutiny" that 508 articles were relevant. (*Id.*) In narrowing down the articles, he considered the "type of study, whether the study had anything to do with [] human health effects of added sugars, [and] whether it was in the English language." (*Id.* at 149:22–25.) He also conducted a second search more specifically related to the Breakfast Biscuits, which ultimately led to 35 articles which he found relevant. (*Id.*)

In sum, Greger ran a search which he believed would generate relevant, broad results, and chose articles based on stated criteria. Greger testified that he did not ignore articles simply because he did not agree with the conclusions. (Greger Depo. at 161:9–20.) He testified he did consider articles "that came to conclusions other than those that [he was] reaching in his report" but considered only the studies showing "the preponderance of data." (*Id.*) He attempted to compile a report that reflects "the preponderance of evidence" of "the peer-reviewed scientific literature." (*Id.* at 161:21–162:8.)

Greger has articulated his methodology. *Contra Perez v. State Farm Mut. Auto. Ins. Co.*, No. C 06-1962 JW, 2012 WL 3116355, at *5 (N.D. Cal. July 31, 2012) (excluding an expert's report because the expert had failed "to identify any methodology for choosing which surveys and reports to include in his analysis"). To the extent Defendant disagrees with Greger's methods or conclusions, or to the extent Defendant believes that Gregor should have considered other studies, it may ask Greger about this on cross examination. The Court finds Greger's opinions appropriately relevant and reliable under Rule 702. Accordingly, the Court **DENIES** Defendant's Motion to Exclude the Expert Testimony of Michael Greger.

**B.** **Motion to Exclude the Expert Testimony of Robert H. Lustig**

Plaintiffs engaged Robert Lustig to summarize relevant literature regarding the physiological metabolism and effects of added sugar consumption on the human body and, in light of this literature, opine on the Products' labeling statements. ("Lustig Report," ECF No. 91-18, at ¶ 2.) Lustig generally opines that added sugar is the "primary driver" of various diseases such as diabetes and heart disease, and therefore, "regularly and/or excessively consuming Mondelez breakfast products" is not healthy and "the excess added sugar is detrimental to health." (*Id.* ¶ 5.) Defendant moves to exclude Lustig's opinion because it is "not generally accepted in the medical community" and is "unreliable and not supported by the science he cites." ("Lustig Mot.," ECF No. 89-1.) Under Ninth Circuit precedent, these two

arguments are related.

The Ninth Circuit in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1319 n.11 (9th Cir. 1995) ("*Daubert II*") noted that the focus in evaluating the admissibility of an expert's report

> is on the reliability of the methodology, and in addressing that question the court and the parties are not limited to what is generally accepted; methods accepted by a minority in the scientific community may well be sufficient. However, the party proffering the evidence must explain the expert's methodology and demonstrate in some objectively verifiable way that the expert has both chosen a reliable scientific method and followed it faithfully.

Therefore, even if Lustig's opinions reflects a minority view, his opinions are admissible if they are reliable.

In determining reliability, court consider "whether the theory or technique employed by the expert is generally accepted in the scientific community; whether it's been subjected to peer review and publication; whether it can be and has been tested; and whether the known or potential rate of error is acceptable." *Id.* at 1316. Courts also consider whether experts are testifying "about matters growing naturally" out of their own independent research, or if "they have developed their opinions expressly for purposes of testifying." *Id.* at 1317. These factors are illustrative, and they are not all applicable in each case. *Id*. The inquiry is "flexible," *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588 (1993), and "Rule 702 should be applied with a 'liberal thrust' favoring admission," *Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014)). The trial court has "considerable leeway" in deciding how to determine the reliability of an expert's testimony and whether the testimony is in fact reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

Dr. Lustig's opinions have been published in peer-reviewed papers, scientific society consensus statements, and books. (Lustig Report ¶¶ 10, 11.). His opinions in this case are based on his experience and research on relevant literature. The court

in *Hadley v. Kellogg Sales Co.*, No. 16-cv-4955-LHK, 2019 WL 3804661, at *24 (N.D. Cal. Aug. 13, 2019) denied a motion to strike Dr. Lustig's testimony on the basis of reliability. Judge Koh reasoned, "Dr. Lustig's opinions are based on his medical training, his experience treating obese children, his academic research, and his review of the scientific record. Kellogg's arguments as to why Dr. Lustig should be excluded go to weight and not admissibility." *Id.* (citing *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010), *as amended* (Apr. 27, 2010) ("When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony.")). The same conclusion applies here because Dr. Lustig's opinions in this case are also based on his review of materials, his research, the studies he has conducted, and his education and training. To the extent Defendant argues Lustig's methodology is "accepted by only a minority of scientists[,]" this may "be a proper basis for impeachment at trial." *Daubert II*, 43 F.3d at 1319 n.11. The Court therefore **DENIES** the Motion to Strike the Expert Testimony of Lustig.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Strike the Expert Testimony of Greger and Motion to Strike the Expert Testimony of Lustig. (ECF Nos. 88, 89.)

**IT IS SO ORDERED.**

DATED: March 13, 2020

Hon. Cynthia Bashant
United States District Judge