**FITZGERALD JOSEPH LLP**
JACK FITZGERALD (SBN 257370)
*jack@fitzgeraldjoseph.com*
PAUL K. JOSEPH (SBN 287057)
*paul@pauljosephlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

***Counsel for Plaintiffs***

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK MCMORROW, MARCO OHLIN, and MELODY DIGREGORIO, on behalf of themselves, all others similarly situated, and the general public,<br><br>    Plaintiffs,<br><br>        v.<br><br>MONDELEZ INTERNATIONAL, INC.,<br><br>    Defendant. | Case No. 3:17-cv-2327-BAS-JLB<br><br>**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**<br><br>Judge:        Hon. Cynthia A. Bashant<br>Hearing Date:   January 3, 2022<br><br>NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

NOTICE OF MOTION ...................................................................................................... 1

MEMORANDUM OF POINTS & AUTHORITIES ...................................................... 1

    I.        INTRODUCTION ............................................................................................ 1

    II.      PROCEDURAL HISTORY & SETTLEMENT NEGOTIATIONS ................ 1

    III.     THE SETTLEMENT ........................................................................................ 4

          A.    The Settlement Class ................................................................................ 4

          B.    Benefits for the Settlement Class ............................................................ 4

                1.    $8 Million Non-Reversionary Settlement Fund .......................... 4

                2.    Changes to belVita's Labeling ...................................................... 5

          C.    Class Notice and Claims Administration ................................................ 6

          D.    The Settlement's Release ......................................................................... 6

          E.    Opting Out ................................................................................................ 7

          F.    Objecting ................................................................................................... 7

          G.    Attorneys' Fees, Costs, and Service Awards ........................................ 7

          H.    Timeline ................................................................................................... 9

    IV.    ARGUMENT .................................................................................................... 9

          A.    The Court Should Certify the Settlement Class ..................................... 9

          B.    The Court Should Approve the Proposed Settlement ........................... 10

i

1.    The Settlement is the Product of Serious, Informed, Non-Collusive Negotiations ................................................................. 11

2.    The Settlement Does Not Grant Preferential Treatment Improperly ....................................................................................... 12

3.    The Settlement Falls within the Range of Possible Approval ........................................................................................ 13

    a.    The *Churchill Village* Factors Favor Preliminary Approval ......................................................................... 13

    b.    The Monetary Relief is Fair in Relation to Potential Damages ............................................................ 17

    c.    The Injunctive Relief is Appropriate and Meaningful ...................................................................... 18

C.    The Court Should Approve the Class Notice and Notice Plan ............ 18

V.    CONCLUSION ........................................................................... 19

*McMorrow et al. v. Mondelez Intl. Inc.*, Case No. 17-cv-02327-BAS-JLB
MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Hyland's, Inc.*,
No. 12-cv-1150 DMG (MANx) (C.D. Cal.) ...................................................14

*Allen v. Similasan Corp.*,
2017 WL 1346404 (S.D. Cal. Apr. 12, 2017).............................9, 16, 17, 18

*Boyd v. Bechtel Corp.*,
485 F. Supp. 610 (N.D. Cal. 1979) .............................................................16

*Bruno v. Quten Research Inst., LLC*,
2013 WL 990495 (C.D. Cal. Mar. 13, 2013) .............................................18

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ....................................................................11

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004)........................................................................10

*Churchill Village v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004)........................................................................13

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992)......................................................................10

*Edwards v. Andrews*,
846 Fed. App'x 538 (9th Cir. 2021) .............................................................19

*Edwards v. Nat'l Milk Producers Fed'n*,
2017 WL 3623734 (N.D. Cal. June 26, 2017) ............................................19

*Farar v. Bayer AG*,
No. 14-cv-4601 (N.D. Cal.) ........................................................................14

*Hale v. Manna Pro Prod., LLC*,
2020 WL 3642490 (E.D. Cal. July 6, 2020) ...............................................11

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998).......................................................................10

*McMorrow et al. v. Mondelez Intl. Inc.*, Case No. 17-cv-02327-BAS-JLB
MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

*Harris v. Vector Mktg. Corp.*,
  2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ................................................. 13

*Hesse v. Sprint Corp.*,
  598 F.3d 581 (9th Cir. 2010) ......................................................................... 6

*Hilsley v. Ocean Spray Cranberries, Inc.*,
  2020 WL 520616 (S.D. Cal. Jan. 31, 2020) .................................................. 17

*In re Bluetooth Headset Prods. Liability Litig.*,
  654 F.3d 935 (9th Cir. 2011) ......................................................................... 12

*In re Chinese-Manufactured Drywall Prods. Liability Litig.*,
  424 F. Supp. 3d 456 (E.D. La. 2020) ....................................................... 11, 12

*In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales
  Practices & Prod. Liab. Litig.*, 952 F.3d 471 (4th Cir. 2020) ........................... 8

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ......................................................................... 17

*In re Mercury Interactive Corp. Secs. Litig.*,
  618 F.3d 988 (9th Cir. 2010) ......................................................................... 9

*In re Nissan Motor Corp. Antitrust Litig.*,
  552 F.2d 1088 (5th Cir. 1977) ....................................................................... 19

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir.1995) ............................................................................ 16

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  252 F.R.D. 83 (D. Mass. 2008) ..................................................................... 14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  2011 WL 7575004 (N.D. Cal. Dec. 27, 2011) ................................................. 8

*In re Zynga Inc. Secs. Litig.*,
  2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ................................................. 11

*Linner v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ....................................................................... 16

*Makaeff v. Trump Univ., LLC*,
   309 F.RD. 631 (S.D. Cal. 2015)...........................................................................15

*Manner v. Gucci Am., Inc.*,
   2016 WL 1045961 (S.D. Cal. Mar. 16, 2016) .................................10, 11, 16, 17

*Mazza v. Am. Honda Motor Co., Inc.*,
   666 F.3d 581 (9th Cir. 2012).............................................................................14

*McMorrow v. Mondelez Int'l, Inc.*,
   2018 WL 3956022 (S.D. Cal. Aug. 17, 2018) ...................................................2

*McMorrow v. Mondelez Int'l, Inc.*,
   2020 WL 1157191 (S.D. Cal. Mar. 9, 2020) ...............................................2, 18

*McMorrow v. Mondelez Int'l, Inc.*,
   2021 WL 1263957 (S.D. Cal. Apr. 5, 2021)......................................................3

*McMorrow v. Mondelez Int'l, Inc.*,
   2021 WL 859137 (S.D. Cal. Mar. 8, 2021) ......................................................3

*Medellin v. Ikea U.S.A. W., Inc.*,
   672 Fed. App'x 782 (9th Cir. 2017)..................................................................15

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates, Inc.*,
   2016 WL 2610107 (S.D. Cal. May 6, 2016)......................................................15

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates, Inc.*,
   926 F.3d 528 (9th Cir. 2019).............................................................................15

*Pelzer v. Vassalle*,
   655 Fed. App'x 352 (6th Cir. 2016)....................................................................8

*Racies v. Quincy Bioscience, LLC*,
   No. 15-cv-292 (N.D. Cal.) ................................................................................14

*Rodriguez v. Bumble Bee Foods, LLC*,
   2018 WL 1920256 (S.D. Cal. Apr. 24, 2018)...................................................14

*Rodriguez v. W. Pub'g Corp.*,
   563 F.3d 948 (9th Cir. 2009)...............................................................12, 15, 16

v

*McMorrow et al. v. Mondelez Intl. Inc.*, Case No. 17-cv-02327-BAS-JLB
MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

*Shannon v. Sherwood Mgmt. Co.*,
  2020 WL 2394932 (S.D. Cal. May 12, 2020) ............................................................. 7, 9

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ....................................................................................... 13

*Stull v. Baker*,
  410 F. Supp. 1326 (S.D.N.Y. 1976) ............................................................................. 16

*Tschudy v. J.C. Penney Corp., Inc.*,
  2015 WL 8484530 (S.D. Cal. Dec. 9, 2015) ................................................................ 15

*Vasquez v. Coast Valley Roofing, Inc.*,
  670 F. Supp. 2d 1114 (E.D. Cal. 2009) ........................................................................ 13

*Warner v. Toyota Motor Sales, U.S.A., Inc.*,
  2016 WL 8578913 (C.D. Cal. Dec. 2, 2016) ................................................................ 14

*Watkins v. Hireright, Inc.*,
  2016 WL 1732652 (S.D. Cal. May 2, 2016) ....................................................... 10, 14, 15

*Winters v. Two Towns Ciderhouse, Inc.*,
  2020 WL 5642754 (S.D. Cal. Sept. 22, 2020) ................................................... 6, 13, 15, 17

*Winters v. Two Towns Ciderhouse, Inc.*,
  2021 WL 1889734 (S.D. Cal. May 11, 2021) ................................................................. 8

*Yeoman v. Ikea U.S.A. W., Inc.*,
  2014 WL 7176401 (S.D. Cal. Dec. 4, 2014) ................................................................. 15

**Statutes**

28 U.S.C. § 1715(b) ........................................................................................................ 6

**Rules**

Fed. R. Civ. P. 23(h) ....................................................................................................... 7

**Other Authorities**

Fed. R. Civ. P. 23(e), advisory committee note (2003 amendment) .................................... 12

vi

*McMorrow et al. v. Mondelez Intl. Inc.*, Case No. 17-cv-02327-BAS-JLB
MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

## NOTICE OF MOTION

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE THAT, pursuant to Fed. R. Civ. P. 23(e), Plaintiffs hereby move the Court, the Honorable Cynthia A. Bashant presiding, for an Order preliminarily approving a proposed settlement on behalf of a Nationwide class (the "Settlement"), certifying the Settlement Class, approving the proposed Notice Plan, and setting schedules for notice, claims, opting out, objecting, and for the Court to conduct a Final Approval hearing. The Motion is based upon this Notice of Motion, the below Memorandum, the concurrently-filed Declarations of Jack Fitzgerald ("Fitzgerald Decl.") and Brandon Schwartz ("Schwartz Decl.") and all exhibits thereto, including the Settlement Agreement attached to the Fitzgerald Declaration as Exhibit 1 ("Settlement Agreement" or "SA"), all prior pleadings and proceedings in this action, and any additional evidence and argument submitted in support of the Motion.

This Motion is made following the conference of counsel that took place on November 5, 2021. Mondelez has indicated it does not oppose the Motion.

## MEMORANDUM OF POINTS & AUTHORITIES

## I.    INTRODUCTION

Filed on November 16, 2017, this action has been litigated for four years. During that time, there was significant motion practice and substantial discovery. Only after Plaintiffs obtained class certification—and with summary judgment motions due shortly—were they able to secure the sizable relief embodied in the present settlement: an $8,000,000 all-cash, non-reversionary common fund, and Mondelez's agreement to stop using "nutritious" (and certain synonyms) to describe its belVita products if more than 10% of their calories come from added sugar. *See* SA ¶¶ 2, 5. Given this relief, and especially in light of some key risks the California and New York Classes faced at trial, the Court should find that the proposed Settlement falls within the range of reasonableness and grant preliminary approval.

## II.   PROCEDURAL HISTORY & SETTLEMENT NEGOTIATIONS

Plaintiffs filed this action alleging Mondelez "breached warranties and violated other California and New York consumer protection laws," because its "belVita branded breakfast

1

products are designed to appeal to health conscious consumers" but "such advertising is deceptive and misleading because these products contain 'high levels of added sugar,'" meaning the products are actually "unhealthy." *McMorrow v. Mondelez Int'l, Inc.*, 2018 WL 3956022, at *1 (S.D. Cal. Aug. 17, 2018) (Bashant, J.) (record citations omitted). In December 2017, Mondelez moved to dismiss the Complaint, *see* Dkt. 7, and in January 2018, Plaintiffs filed a First Amended Complaint ("FAC"). *See* Dkt. 13. Mondelez moved to dismiss the FAC, Dkt. No. 15, and the Court granted in part and denied in part the motion, *see McMorrow*, 2018 WL 3956022 at *14.

Pursuant to the Court's Order, on September 4, 2018, Plaintiffs filed a Second Amended Complaint ("SAC"). Dkt. No. 24. They shortly thereafter sought leave to file a Third Amended Complaint to include allegations that belVita's "high fiber" claim violated applicable food labeling regulations, Dkt. No. 25, but the Court denied the request, finding such an amendment would be futile, Dkt. No. 30. On October 31, 2018, Mondelez filed its Answer. Dkt. No. 31. Discovery ensued with the parties serving multiple sets of written discovery requests and dozens of subpoenas; and taking 14 depositions, including relating to the parties' 8 total expert witnesses (each with multiple reports). *See* Fitzgerald Decl. ¶¶ 3-9.

In September 2019, Plaintiffs moved for class certification, Dkt. No. 70, and the parties filed several related *Daubert* motions, *see* Dkt. Nos. 87-90, 96-97. On January 30, 2020, the Court issued a tentative ruling denying certification but ordering oral argument. Dkt. No. 122. Following oral argument, the Court found that although most of Rule 23's requirements were met, Plaintiffs' proposed conjoint analysis was "not consistent with their damages model as required by *Comcast*," and denied class certification without prejudice. *McMorrow v. Mondelez Int'l, Inc.*, 2020 WL 1157191, at *9 (S.D. Cal. Mar. 9, 2020) (Bashant, J.).

The Court's decision was based, primarily, on its view that Plaintiffs' liability theory centered only on the "nutritious" representation and that Plaintiffs could not challenge the remainder of the relevant labeling statements, especially "4 HOURS OF NUTRITIOUS STEADY ENERGY." *See id.*, at *6-9. Plaintiffs considered this a significant blow to their case, Fitzgerald Decl. ¶ 13, and argued vehemently at the hearing, and later in their renewed

2

motion, that they should be allowed to challenge the full labeling claims. *See* Dkt. No. 133, Tr. of March 9, 2020 Hrg. at 4-15; Dkt. No. 137-1, Ren. Mot. for Class Cert. at 3-7. The Court, however, maintained its holding. *McMorrow v. Mondelez Int'l, Inc.*, 2021 WL 859137, at *14 (S.D. Cal. Mar. 8, 2021) (Bashant, J.) ["*McMorrow II*"] ("The Court finds no reason to revisit that finding . . . .").

Plaintiffs filed their renewed class certification motion in May 2020, Dkt. No. 137, and the Court held they had adequately revised their damages model, certifying California and New York Classes, *see McMorrow II*, 2021 WL 859137, at *10-17. In connection with the motion, the parties filed several *Daubert* motions. Dkt. Nos. 147-48, 151-52. The Court denied Mondelez's motions to strike Plaintiffs' damages experts, Dr. J. Michael Dennis and Mr. Colin Weir; and denied without prejudice Plaintiffs' motions to strike Mondelez's damages experts, Drs. Daniel McFadden and Ronald Wilcox, holding "Plaintiffs may re-raise their *Daubert* challenge *in limine* or at trial, if necessary," *McMorrow II*, 2021 WL 859137, at *10 (citation omitted). Following the certification order, on March 16, 2021, the Magistrate Judge on this matter, Hon. Jill L. Burkhardt, ordered the parties to, on or before August 18, participate in a Mandatory Settlement Conference. *See* Dkt. No. 177.

On March 22, 2021, Mondelez filed a Rule 23(f) Petition for Permission to Appeal the class certification decision, Ninth Cir. Appeal No. 21-80019, and concurrently moved to stay these proceedings pending its outcome, Dkt. No. 178. Plaintiffs opposed the stay, arguing "Mondelez's Petition raises no serious legal issues and is unlikely to succeed," *see* Dkt. No. 180, Opp. at 1. The Court agreed, denying Mondelez's motion and "find[ing] that these issues" raised in Mondelez's Petition "do not qualify as a serious legal question required of a stay pending appeal," and explaining it was "not persuaded that the balance of harm tips sharply in [Mondelez's] favor." *McMorrow v. Mondelez Int'l, Inc.*, 2021 WL 1263957, at *2, *3 (S.D. Cal. Apr. 5, 2021) (Bashant, J.).

A few days later, Plaintiffs reached out to Mondelez to gauge its interest in revisiting a possible resolution. Fitzgerald Decl. ¶ 11. Following some written exchanges and conferences of counsel, the parties agreed to mediation with Hon. Charles W. McCoy, Jr.

3

(Ret.), of JAMS. *Id.* They obtained a continuance of the deadline to participate in the Mandatory Settlement Conference and scheduled mediation for September 7, 2021. Dkt. No. 185. In the interim, on May 12, 2021, the Ninth Circuit denied Mondelez's Petition. *See* Dkt. No. 183. Although the case did not settle during the September 7 mediation session, it was productive and the parties continued to negotiate after. On September 15, 2021, they reached and agreed to the material terms of the Settlement. Fitzgerald Decl. ¶ 12.

## III. THE SETTLEMENT

### A. The Settlement Class

The Settlement Class is comprised of all persons who, between November 16, 2013 and the date the Court grants preliminary approval (the "Class Period"), purchased in the United States, for household use and not for resale or distribution, one of the Class Products, that is, Mondelez's belVita (i) Crunchy Biscuits, (ii) Soft Baked Biscuits, (iii) Bites, and (iv) Sandwiches products bearing the phrase "NUTRITIOUS STEADY ENERGY," "NUTRITIOUS SUSTAINED ENERGY" or "NUTRITIOUS MORNING ENERGY." *See* SA ¶¶ 1.6, 1.11, 1.12, 1.27 (defining Class, Class Products, and Class Period).

### B. Benefits for the Settlement Class

#### 1. $8 Million Non-Reversionary Settlement Fund

As consideration for Class Members' release, Mondelez will establish an $8,000,000 non-reversionary common fund (the "Settlement Fund") to pay Class Notice and Claims Administration; Court-approved attorneys' fees, expenses, and service awards; and Class Member claims. *See* SA ¶ 2.1.

To obtain monetary relief, a Class Member must submit an online or hard copy Claim Form. SA ¶ 4.1. After providing identifying information, the Claimant will be asked to identify which of the four Class Products he or she purchased since November 2013, and for each product, asked to state his or her approximate number of purchases over a typical three-month period and the year he or she began purchasing it. *Id.* ¶¶ 4.1(a)-(b). An equation running behind the scenes will then extrapolate the estimated number of units of each Class Product the Claimant purchased during the Class Period, subject to a product cap of two boxes

4

per month, based on a reasonable average use for the products, though Claimants with proof of purchase will have no cap in a given month if proven purchases for that month exceed the two-box-per-month cap. *Id.* ¶ 4.1(c). The equation will then calculate the Claimant's "Base Damages" by multiplying the number of units of each Class Product purchased by a standardized refund of $0.21 per unit, an amount derived from the Class's price premium damages model. *Id.* Based on the distribution of Base Damages amounts calculated for all Claimants, each Claimant will be placed into one of five quintiles, each of which will be assigned a standardized Cash Award, calculated by taking the average Base Damages amount for that quintile. *Id.* Cash Awards are subject to *pro rata* adjustments (reductions or increases) if claims exceed or are less than the money remaining in the Settlement Fund after all expenses. *Id.* ¶ 4.1(d), 4.5. Any amounts remaining uncleared after 180 days will be provided to Class Member Claimants in a supplemental distribution, or donated *cy pres* in equal shares to the American Heart Association and UCLA Resnick Center for Food Law & Policy, subject to the Court's approval of those recipients. *See id.* ¶ 4.7.

This is the same claims process employed for the *Krommenhock* and *Hadley* matters, and for good reason: The settlements in all three cases involve several varieties of low-price, low-salience packaged foods that Class Members have purchased for nearly a decade, and this claims process presents a fair way of differentiating degrees of Class Membership use (and thus alleged harm). *See* Fitzgerald Decl. ¶ 20. Moreover, the AHA and Resnick Center were the designated *cy pres* recipients in the *Krommenhock* and *Hadley* settlements, which have been given final and preliminary approval, respectively.

### 2.    Changes to belVita's Labeling

As further consideration for the Class's release, Mondelez has agreed to refrain, for at least 36 months, from using several challenged claims if more than 10% of a belVita product's calories come from added sugar. *See* SA ¶ 5.1. Specifically, Mondelez will not:

- Use "nutritious" in the "Steady Energy Claims" on belVita's labeling, namely (i) "<u>NUTRITIOUS</u> SUSTAINED ENERGY," (ii) "<u>NUTRITIOUS</u> STEADY ENERGY ALL MORNING," (iii) "4 HOURS OF <u>NUTRITIOUS</u> STEADY ENERGY," and (iv) "Energy that is <u>nutritious</u> and sustained." *Id.* ¶ 5.1.1.

5

- Substitute "healthy," "balanced," or "wholesome" for "nutritious" in the Steady Energy Claims." *Id.* ¶ 5.1.2.

- Use "nutritious" to describe belVita products' uses (i.e., "nutritious bar," "nutritious snack," or "nutritious breakfast"). *Id.* ¶ 5.1.3.

- Use "nutritious" to describe the Class Products as a whole (as opposed to using the word to describe individual product components). *Id.* ¶ 5.1.4.

## C.    Class Notice and Claims Administration

Subject to the Court's approval, the parties have retained Postlethwaite & Netterville ("P&N") as the Class Administrator to effect Class Notice and Claims Administration. *See* SA ¶ 6.1 (listing duties of Class Administrator); Fitzgerald Decl. ¶ 21. P&N has been administering class action notice and claims since 1999 and has extensive experience in state and federal courts. *See* Schwartz Decl. ¶¶ 2-5 & Ex. B. This Court recently approved P&N as a class administrator in another consumer fraud class action settlement. *See Winters v. Two Towns Ciderhouse, Inc.*, 2020 WL 5642754, at *5-6 (S.D. Cal. Sept. 22, 2020) (Bashant, J.) ["*Winters I*"].

The Settlement provides that Class Notice will be effectuated through a Notice Plan designed by the Class Administrator to comply with the requirements of Rule 23 and approved by the Parties and Court. SA ¶ 6.3. P&N has offered a Notice Plan that meets these requirements. *See* Schwartz Decl. ¶¶ 9-27; *see also infra* Point IV(C). On behalf of Mondelez, P&N will also serve CAFA notice upon the appropriate officials within 10 days after the filing of this motion, as required by 28 U.S.C. § 1715(b). *See* SA ¶ 6.5.

## D.    The Settlement's Release

Upon the Effective Date, each Class Member who has not opted out will be deemed to have released Mondelez and related entities from past, present, and future claims the Class Member has or may have against Mondelez that, as set forth in *Hesse v. Sprint Corp.*, 598 F.3d 581 (9th Cir. 2010), arise out of or relate to the facts alleged or the claims asserted in the Action. *See* SA ¶ 8.1.

6

*McMorrow et al. v. Mondelez Intl. Inc.*, Case No. 17-cv-02327-BAS-JLB
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

### E.    Opting Out

Class Members who wish to be excluded must submit a Request for Exclusion (or "Opt-Out Form") to the Class Administrator, postmarked no later than the Opt-Out Deadline. "Mass" or "class" opt-outs are not permitted. All Class Members who submit a timely, valid Request for Exclusion will not be bound by the terms of the Agreement, whereas all Class Members who do not submit a timely, valid Request for Exclusion will be bound by the Agreement and any Judgment. *Id.* ¶ 6.6.

### F.    Objecting

Settlement Class Members wishing to object must, by the Objection Deadline, file or mail their written objections to the Court. *Id.* ¶ 6.7.1. An objection must contain (i) a caption or title that clearly identifies this action, and that the document is an objection; (ii) information sufficient to identify and contact the objecting Class Member or his or her attorney, if represented; (iii) information sufficient to establish the person's standing as a Settlement Class Member; (iv) a clear and concise statement of the Class Member's objection, as well as any facts and law supporting the objection; (v) the objector's signature; and (vi) the signature of the objector's counsel, if any. *Id.* ¶ 6.7.2. Class Members who object through an attorney must sign either the Objection themselves or execute a separate declaration authorizing the Objection. *Id.* ¶ 6.7.3. Class Members who both object and opt out will be deemed to have opted out, and thus be ineligible to object. *Id.* ¶ 6.7.4. Objectors are permitted to appear at the final approval hearing and are requested, but not required, in advance of the Final Approval Hearing, to file with the Court a Notice of Intent to Appear. *Id.* ¶ 6.7.5. The parties have the right, but not the obligation to respond to any objections. *See id.* ¶ 6.7.7.

### G.    Attorneys' Fees, Costs, and Service Awards

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." *Shannon v. Sherwood Mgmt. Co.*, 2020 WL 2394932, at *10 (S.D. Cal. May 12, 2020) (Bashant, J.) (quoting Fed. R. Civ. P. 23(h)). The Settlement Agreement provides that Plaintiffs and their

7

*McMorrow et al. v. Mondelez Intl. Inc.*, Case No. 17-cv-02327-BAS-JLB
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

counsel will seek Court approval for service awards and attorneys' fees and costs, to be paid from the Settlement Fund. SA ¶ 3.[1]

Here, Plaintiffs will likely request service awards of $5,000 each, and Plaintiffs' counsel will request fees of no more than one-third (33.3%) of the Settlement Fund, or up to $2.67 million.[2] Based on a preliminary tally of counsel's raw billing records (*i.e.*, before making cuts), counsel presently has over 2,865 hours into the case for a lodestar of approximately $1.73 million, such that the fee request would represent a 1.54 multiplier, which Plaintiffs' counsel will show in its fee motion is justified in this case. *See* Fitzgerald Decl. ¶ 29; *compare Winters v. Two Towns Ciderhouse, Inc.*, 2021 WL 1889734, at *3 (S.D. Cal. May 11, 2021) (Bashant, J.) (Approving fees representing 1.675 lodestar multiplier "because of the contingent nature of the litigation and the fact that counsel assumed the risk, including fronting the costs, of the litigation," and "achieved the ultimate goal of getting Defendant to omit artificial DL-Malic Acid from its drink products as well as getting Defendant to change the packaging labels, which the Court finds to be a superior result.").

The Settlement, however "is not dependent or conditioned upon the Court's approving Class Counsel's and Class Representatives' requests . . . or awarding the particular amounts sought," and if the "Court declines Class Counsel's or Class Representatives' requests or awards less than the amounts sought, this Settlement will continue to be effective and

---

[1] The Settlement Agreement includes a "quick pay" provision for attorneys' fees. SA ¶ 3.2. These help deter meritless objections and are routinely approved in the Ninth and other Circuits. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 7575004, at *1 (N.D. Cal. Dec. 27, 2011) (collecting cases); *Pelzer v. Vassalle*, 655 Fed. App'x 352, 365 (6th Cir. 2016) ("over one-third of federal class action settlement agreements in 2006 included quick-pay provisions" and they do "not harm the class members in any discernible way, as the size of the settlement fund available to the class will be the same regardless of when the attorneys get paid."); *In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471, 487 (4th Cir. 2020) ("we observe that quick-pay provisions have generally been approved by other federal courts.").

[2] Plaintiffs will also seek reimbursement of $288,177.73 in costs. *See* Fitzgerald Decl. ¶ 30.

8

enforceable," *see* SA ¶ 3.4. *Cf. Shannon* 2020 WL 2394932, at \*11 (the Court may "further scrutinize the reasonableness of the fee award at the final approval stage.").

### H.    Timeline

Assuming the Court grants preliminary approval, the schedule proposed below gives Class Members sufficient time to receive Notice, and to make a claim, opt out, or object after reviewing Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards. *See In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 993-94 (9th Cir. 2010).

| Event | Day | Weeks After Preliminary Approval | Example Assuming PA Granted Dec. 20, 2021 |
|---|---|---|---|
| Date Court grants preliminary approval | 0 | - | December 20, 2021 |
| Deadline to commence 63-day notice period | 21 | 3 weeks | January 10, 2022 |
| Deadline for Plaintiffs to file Motion for Attorneys' Fees, Costs, and Service Awards | 49 | 7 weeks | February 7, 2022 |
| Notice completion date, and deadline to make a claim, opt out, and object | 63 | 9 weeks | February 21, 2022 |
| Deadline for Plaintiffs to file Motion for Final Approval | 77 | 11 weeks | March 7, 2022 |
| Final Approval Hearing | 98 | 14 weeks | March 28, 2022 |

## IV.    ARGUMENT

### A.    The Court Should Certify the Settlement Class

Here, the Court has already found the requirements of Rules 23(a) and (b)(3) satisfied as to California and New York Classes. *Compare Allen v. Similasan Corp.*, 2017 WL 1346404, at \*3 (S.D. Cal. Apr. 12, 2017) (Bashant, J.) (noting same in deciding preliminary approval motion). The Settlement Class differs from the certified litigation Classes only in that it is a single nationwide class. That the class definitions results in an "[e]xpansion of the class to include all purchasers nationwide . . . does not change [the Court's previous]

9

analysis." *Id*. Where, as here, the conduct—belVita's labeling—is uniform across the United States, the "new class still presents common questions of fact and law, the claims and defenses of the representative parties are equally typical and the common questions of law or fact predominate." *Id*. Further, "[g]iven the small cost of each product and the large number of purchasers, a class action is superior to other available methods of adjudication" and, as a result, "the Court [should] find[] certification of the proposed class is appropriate." *Id*.

### B.    The Court Should Approve the Proposed Settlement

"The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class actions." *Watkins v. Hireright, Inc.*, 2016 WL 1732652, at *3 (S.D. Cal. May 2, 2016) (Bashant, J.) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). Because the Court has previously certified the Class, it now must make "a preliminary determination of whether the class-action settlement is 'fair, reasonable, and adequate' pursuant to Rule 23(e)(2)." *Id*., at *6. "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Factors relevant to this determination include, among others, "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Id.* at 1026; *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

"Preliminary approval of a settlement and notice to the proposed class is appropriate if 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'" *Manner v. Gucci Am., Inc.*, 2016 WL 1045961, at *6 (S.D. Cal. Mar. 16, 2016) (Bashant, J.) ["*Gucci*"] (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citations omitted)).

10

### 1.    The Settlement is the Product of Serious, Informed, Non-Collusive Negotiations

That the Settlement was reached only after significant discovery and class certification, on the eve of summary judgment, and with trial scheduled to begin only months away, shows that it resulted from arms'-length negotiations. *See Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1122, 1127 (9th Cir. 2020) (case being "nearly [at] the close of discovery" indicated "the settlement's substantive fairness"); *In re Chinese-Manufactured Drywall Prods. Liability Litig.*, 424 F. Supp. 3d 456, 486 (E.D. La. 2020) (

> Counsel on both sides have zealously advocated for their clients for . . . years, as evidenced by the extensive discovery, motions practice, and significant resources expended in this case. The parties entered the negotiation with the experience and institutional knowledge necessary to successfully negotiate on behalf of their clients, and the settlement was accordingly achieved as a result of the adversarial process.).

In addition, the Settlement was negotiated during a full-day mediation and in subsequent communications with the assistance of an experienced neutral. *See* Fitzgerald Decl. ¶ 12; *compare Gucci* 2016 WL 1045961, at *7 (Finding a "proposed Settlement was the result of 'serious, informed, and non-collusive arm's-length negotiations'" where the parties engaged in "mediation efforts overseen by retired United States Magistrate Judge Edward Infante, who conducted a full-day mediation session."); *Hale v. Manna Pro Prod., LLC*, 2020 WL 3642490, at *11 (E.D. Cal. July 6, 2020) ("extensive discovery and arms-length, mediator-guided negotiations all suggest the settlement agreement is not the product of collusion"); *In re Zynga Inc. Secs. Litig.*, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015) (The "use of a mediator and the presence of discovery 'support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement.'" (citation omitted)).

Also, none of the "subtle signs" of collusion that the Ninth Circuit identified in *In re Bluetooth Headset Prods. Liability Litig.* are present here. *See* 654 F.3d 935, 947 (9th Cir.

11

2011). Nothing in the Agreement purports to entitle counsel to "a disproportionate distribution of the settlement" (and Class Members *are* to "receive[] [a] monetary distribution"); nothing returns unawarded fees to Mondelez; and the Settlement Agreement includes no "clear sailing" agreement, instead providing only that counsel will apply to the Court for fees, imposing no conditions on Mondelez's response, and making the fee determination independent of the Settlement's other provisions. *See* SA ¶ 3.4 ("Settlement Independent of Award of Fees, Costs, and Service Awards").

"[T]he prospect of fraud or collusion is substantially lessened where, as here, the settlement agreement leaves the determination and allocation of attorney fees to the sole discretion of the trial court." *Chinese Drywall*, 424 F. Supp. 3d at 486. Here, "[b]ecause the parties have not agreed to an amount of attorney fees and instead [will] merely petition[] the Court for an award they believe is appropriate, there is no threat of the issue tainting the fairness of the settlement negotiations." *See id.*[3]

Finally, the excellent nature of the Settlement, especially in the face of significant risks the Classes faced, *see* Fitzgerald Decl. ¶¶ 13-19, demonstrates it was achieved through vigorous litigation, rather than collusion, since "cash . . . is a good indicator of a beneficial settlement," *Rodriguez v. W. Pub'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009), and a sign that Class Counsel did not subvert the Class's interests to Mondelez "in exchange for red-carpet treatment on fees," *see Bluetooth*, 654 F.3d at 947 (quotation omitted).

### 2. The Settlement Does Not Grant Preferential Treatment

The Settlement does not treat the Class Representatives or any Class Members preferentially, since every Class Member who makes a claim, including the Class Representatives, will be subject to the same claims process that provides the same remedy based on the claimant's purchase history. That the Class Representatives will move for

---

[3] Similarly, no other agreements have been made in connection with the settlement, Fitzgerald Decl. ¶ 2, so there is no possibility such an agreement "may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others." Fed. R. Civ. P. 23(e), advisory committee note (2003 amendment).

12

*McMorrow et al. v. Mondelez Intl. Inc.*, Case No. 17-cv-02327-BAS-JLB
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

service awards does not change this analysis. *See Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *9 (N.D. Cal. Apr. 29, 2011) (no preferential treatment where settlement "provides equal relief to all class members" and "distributions to each class member— including Plaintiff—are calculated in the same way.")

### 3.    The Settlement Falls within the Range of Possible Approval

"To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Harris*, 2011 WL 1627973, at *9 (quoting *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009) (citation omitted)).

> Additionally, to determine whether a settlement is fundamentally fair, adequate, and reasonable, the Court may preview the factors that ultimately inform final approval: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.

*Id.* (citing *Churchill Village*, 361 F.3d at 575 (citation omitted)); *accord Winters I*, 2020 WL 5642754, at *3 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003)).

### a.    The *Churchill Village* Factors Favor Preliminary Approval

An initial analysis of the *Churchill Village* factors favors preliminary approval.

***The Strength of Plaintiffs' Case*** and ***the Risk, Expense, Complexity, and Duration of Further Litigation.*** Plaintiffs and their counsel believe the theory underlying this case was and is strong on the merits, but despite that, this particular case faced significant challenges to Plaintiffs establishing both liability and damages, especially in light of their case being limited to challenging only "nutritious." *See generally* Fitzgerald Decl. ¶¶ 13-15. In addition, Mondelez's defense relied heavily on numerous clinical studies of the specific products at

13

issue in this lawsuit, which purported to show that, because of their slowly-digestible carbohydrate content, the belVita products are low glycemic index and thus dole out their energy over a long period of time. Plaintiffs had challenges to the studies, but there was a risk Mondelez could use these belVita product specific studies to undermine Plaintiffs' case by arguing that the bars are not as unhealthy as they claim.

Moreover, there was a risk the Class could lose at trial and recover nothing—as has happened in several seemingly meritorious consumer fraud class actions that have recently gone to trial in California with judgments returned for defendants. *See Farar v. Bayer AG*, No. 14-cv-4601 (N.D. Cal.); *Allen v. Hyland's, Inc.*, No. 12-cv-1150 DMG (MANx) (C.D. Cal.); *cf. Racies v. Quincy Bioscience, LLC*, No. 15-cv-292 (N.D. Cal.) (declaring mistrial and decertifying class). And, especially because of the need for expert scientific testimony from both sides, trial would have been complex and expensive. "[C]ontinued litigation of this matter would include motions for summary judgment, trial and appeal" and "further litigation would have significantly delayed any relief to Class Members." *Watkins*, 2016 WL 1732652, at *7 (record citations and internal quotation marks omitted).

Further, even complete success at trial would leave Class Members outside California and New York uncompensated. For even the possibility of obtaining the nationwide relief conferred by the Settlement, Class Counsel or other attorneys would have to file and prosecute actions in all other states since—given existing precedent—it is virtually impossible that the claims of the nationwide Settlement Class could ever be adjudicated in a single forum and trial. *See, e.g., Warner v. Toyota Motor Sales, U.S.A., Inc.*, 2016 WL 8578913, at *12 (C.D. Cal. Dec. 2, 2016) ("Nationwide class certification under the laws of multiple states can be very difficult for plaintiffs' counsel." (citing *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 590-94 (9th Cir. 2012); *In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83, 94 (D. Mass. 2008) (noting that "[w]hile numerous courts have talked-the-talk that grouping of multiple state laws is lawful and possible, very few courts have walked the grouping walk."))); *Rodriguez v. Bumble Bee Foods, LLC*, 2018 WL 1920256, at *3 (S.D. Cal. Apr. 24, 2018) (That "[t]he parties acknowledge[d] that

14

obtaining a nationwide class may be difficult in light of recent case law . . . . weigh[ed] in favor of settlement."). Such litigation would cost the respective state classes millions of dollars to prosecute, be inherently risky, and continue for years, not including any appeals. *See* Fitzgerald Decl. ¶ 16.

Finally, even if successful at trial, Plaintiffs faced risk on appeal, especially given the unfavorable outcomes of two similar cases that were dismissed on the pleadings and had unsuccessful appeals. *See* Fitzgerald Decl. ¶ 18. These factors thus weigh in favor of preliminary approval. *See Watkins*, 2016 WL 1732652, at *7 ("The Court agrees with the parties that the proposed Settlement eliminates the litigation risks and ensures that the Class Members receive some compensation for their claims. Therefore, on balance, the strength of Plaintiff's case and risk of further litigation favor approving the proposed Settlement."); *Allen*, 2017 WL 1346404, at *4 (holding the same where, like here, "the litigation involves complex issues requiring extensive resources, expert testimony and a likely appeal, if the case goes to trial."); *Winters I*, 2020 WL 5642754, at *3.

***The Risk of Maintaining Class Action Status Through Trial.*** A "district court may decertify a class at any time." *Rodriguez*, 563 F.3d at 966. Decertification happens with some regularity, including by this Court. *See NEI Contracting & Eng'g, Inc. v. Hanson Aggregates, Inc.*, 2016 WL 2610107, at *5-8 (S.D. Cal. May 6, 2016) (Bashant, J.), *aff'd* 926 F.3d 528 (9th Cir. 2019); *Yeoman v. Ikea U.S.A. W., Inc.*, 2014 WL 7176401, at *7 (S.D. Cal. Dec. 4, 2014) (Bahsant, J.), *vacated and remanded sub nom.* on other grounds in *Medellin v. Ikea U.S.A. W., Inc.*, 672 Fed. App'x 782 (9th Cir. 2017); *see also Tschudy v. J.C. Penney Corp., Inc.*, 2015 WL 8484530, at *6 (S.D. Cal. Dec. 9, 2015); *Makaeff v. Trump Univ., LLC*, 309 F.RD. 631, 643 (S.D. Cal. 2015) (partially granting "motion to decertify the subclasses on the issue of damages."). *See also* Fitzgerald Decl. ¶ 15.

***The Settlement Amount.*** The settlement amount here is comparable to other recent settlements of similar cases. *See* Fitzgerald Decl. ¶ 17. For example, the settlement amount here falls in between *Krommenhock* and *Hadley* when viewed as a proportion of nationwide damages and is better than both when viewed as a proportion of sales at issue. *See id.* Given

15

the challenges Plaintiffs faced, this is a very reasonable, if not excellent result. As discussed

below, the amount is also reasonable in relation to the Settlement Class's potential recovery.

*See infra* Point IV(B)(3)(b).

*The Extent of Discovery Completed and Procedural Posture.* Because fact and expert

discovery were completed and only summary judgment and trial remained, "the parties ha[d]

sufficient information to make an informed decision about settlement." *See Linner v. Cellular*

*Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (citation omitted). This factor thus favors

preliminary approval. *See Allen*, 2017 WL 1346404 at *4 (factor favored approval where

"Plaintiffs engaged in substantial discovery and negotiations" and "briefed, and the Court has

ruled on, [] motions to dismiss . . . [and] a motion for class certification").

*The Experience and Views of Counsel.* The Ninth Circuit has "held that '[p]arties

represented by competent counsel are better positioned than courts to produce a settlement

that fairly reflects each party's expected outcome in litigation.'" *Rodriguez*, 563 F.3d at 967

(quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir.1995)). "Generally, '[t]he

recommendations of plaintiffs' counsel should be given a presumption of reasonableness.'"

*Allen*, 2017 WL 1346404 at *5 (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D.

Cal. 1979)); *cf. Stull v. Baker*, 410 F. Supp. 1326, 1332 (S.D.N.Y. 1976) (holding that the

court should consider the recommendation of counsel, and weight it according to counsel's

caliber and experience).

Class Counsel has considerable experience in consumer class actions, and particularly

those involving the false advertising of foods, especially foods with high added sugar touted

as healthy. Fitzgerald Decl. ¶ 20. Another court in this District recently stated that "the entire

firm" is "well-known and respected in the class action litigation field," *see id.* ¶ 19 & Ex. 3.

Moreover, given counsel's experience litigating several similar cases during the pendency of

this action, counsel has been exposed to a wide variety of information about the claims and

defenses, and ultimately the potential upside and risks attendant to this case, and endorse the

Settlement. *Id.* Accordingly, this factor favors preliminary approval. *See Gucci*, 2016 WL

1045961, at *7 ("[G]iving the appropriate weight to class counsel's recommendation, the

16

*McMorrow et al. v. Mondelez Intl. Inc.*, Case No. 17-cv-02327-BAS-JLB
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

Court concludes that this factor also weighs in favor of approval.").

*Governmental Participation.* "There is no governmental participant in this case, so this factor is neutral." *Allen*, 2017 WL 1346404, at *5.

*Class Member Reaction.* Because "Class Members will have an opportunity to object or opt out of the Settlement [,] at this time, this factor weighs in favor of approving the Settlement." *Gucci*, 2016 WL 1045961, at *7.

**b.    The Monetary Relief is Fair in Relation to Potential Damages**

Here, Plaintiffs and Class Counsel secured for the Settlement Class direct monetary benefits of $8 million, which is reasonable in relation to the Settlement Class's potential damages. More specifically, if the Court awards the full amount of attorneys' fees, costs, and service awards Plaintiffs may request, given the estimated class size and claims rate, the average cash refund for Class Member Claimants is estimated to be $34.10. *See* Fitzgerald Decl. ¶¶ 24-25. Since Plaintiffs' damages models suggested actual damages of no more than $0.21 per unit based on the price premium found applied to Class Products' average price, this represents a recovery of full damages for approximately 162 units, or about 20 units per year (or nearly 2 per month) over the 8-year Class Period. This likely exceeds most Class Members' actual damages, since most will not have purchased with that frequency for that length of time. *Id.* ¶ 25. Moreover, with an average price of about $3.05 per unit, the $34.10 average recovery anticipated represents a full refund for more than 11 units per Claimant. Thus, the monetary relief is fair in relation to potential damages. *See Winters I*, 2020 WL 5642754, at *4 (Where "Class Members who file for monetary relief are likely on average to receive approximately $17.70, which represents a 31% refund on the purchase price of the product," concluding that "monetary compensation and the stipulated injunctive relief offered in the Settlement Agreement is sufficient for approval.") *Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616, at *6 (S.D. Cal. Jan. 31, 2020) ($1.00 recovery per purchase "is an excellent result" considering the fraction of purchase price recoverable at trial and in light of expert opinion that price premium was 19%); *cf. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000) ("It is well-settled law that a cash

17

settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." (citation omitted)).

### c.    The Injunctive Relief is Appropriate and Meaningful

Plaintiffs and Class Counsel fought hard to obtain the Settlement's injunctive relief, which appropriately addresses Plaintiffs' allegations that "nutritious" is false and misleading on products containing excessive added sugar. *See* SAC ¶ 128; *McMorrow*, 2020 WL 1157191, at *8 ("Here, Plaintiffs' claim of liability is that the Products' labels are misleading due to the amount of added sugar and the use of the word 'nutritious.'"). "[T]here is a high value to the injunctive relief obtained" in consumer class actions resulting in labeling changes. *See Bruno v. Quten Research Inst., LLC*, 2013 WL 990495, at *4 (C.D. Cal. Mar. 13, 2013). It benefits not just Class Members, but also "the marketplace, and competitors who do not mislabel their products." *Id*. The injunctive relief obtained here is especially noteworthy because it effectively espouses Plaintiffs' case theory, prohibiting Mondelez from calling belVita "nutritious," *i.e.*, healthy, based on the contribution of added sugar to the products' calories. In effect, Plaintiffs have obtained through litigation Mondelez's agreement to modify its business practices in accordance with their allegations that it is misleading to advertise as "nutritious" products with more than 10% of calories coming from added sugar.

### C.    The Court Should Approve the Class Notice and Notice Plan

"Under Rule 23(c)(2)(B), 'the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" *Allen*, 2017 WL 1346404, at *5. "[T]he mechanics of the notice process are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Id*. (quotation and citation omitted). "In this case, individual class notice is not possible. [Defendant] does not sell its products directly to class members but only to third party retailers and distributors who sell the products on store shelves. Thus, notice by publication is the best possible notice under the circumstances," *id*.

18

*McMorrow et al. v. Mondelez Intl. Inc.*, Case No. 17-cv-02327-BAS-JLB
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

P&N's proposed Notice Plan is reasonable under the circumstances. It includes targeted print and online ads and will reach an estimated minimum 70% of Class Members, and more than twice each. *See* Schwartz Decl. ¶¶ 10-11; *see also Edwards v. Nat'l Milk Producers Fed'n*, 2017 WL 3623734, at *4 (N.D. Cal. June 26, 2017), *aff'd sub nom. Edwards v. Andrews*, 846 Fed. App'x 538 (9th Cir. 2021) ("[N]otice plans estimated to reach a minimum of 70 percent are constitutional and comply with Rule 23."). The proposed Notice itself is also appropriate, since it contains "information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment." *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977). The Notice sufficiently informs Class Members of (1) the nature of the litigation, the Settlement Class, and the identity of Class Counsel, (2) the essential terms of the Settlement, including the gross settlement award and net settlement payments class members can expect to receive, (3) how notice and administration costs, court-approved attorneys' fees, costs, and service awards will be paid from the Settlement Fund, (4) how to make a claim, opt out, or object to the Settlement, (5) procedures and schedules relating to final approval, and (6) how to obtain further information. *See* SA Ex. 1, Long Form Notice. The Notice also satisfies the Settlement Guidelines' requirements to advise Class Members of the Settlement Website, and instructions on how to access the case docket. *See id.*

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant preliminary approval to the settlement, authorize Class Notice, appoint Plaintiffs as Class Representatives and their counsel as Class Counsel, set deadlines for making claims, opting out, and objecting, and schedule a Final Approval Hearing and related deadlines.

Dated: November 15, 2021                Respectfully Submitted,

                                        /s/ Jack Fitzgerald

                                        **FITZGERALD JOSEPH LLP**
                                        JACK FITZGERALD
                                        *jack@fitzgeraldjoseph.com*
                                        PAUL K. JOSEPH
                                        *paul@pauljosephlaw.com*
                                        MELANIE PERSINGER
                                        *melanie@jackfitzgeraldlaw.com*
                                        TREVOR M. FLYNN
                                        *trevor@jackfitzgeraldlaw.com*
                                        2341 Jefferson Street, Suite 200
                                        San Diego, California 92110
                                        Phone: (619) 215-1741

                                        *Counsel for Plaintiffs*

*McMorrow et al. v. Mondelez Intl. Inc.*, Case No. 17-cv-02327-BAS-JLB
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT