**FITZGERALD JOSEPH LLP**
JACK FITZGERALD (SBN 257370)
*jack@fitzgeraldjoseph.com*
PAUL K. JOSEPH (SBN 287057)
*paul@ fitzgeraldjoseph.com*
MELANIE PERSINGER (SBN 275423)
*melanie@ fitzgeraldjoseph.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@ fitzgeraldjoseph.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

***Class Counsel***

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK MCMORROW, MARCO OHLIN, and MELODY DIGREGORIO, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>MONDELEZ INTERNATIONAL, INC.,<br><br>Defendant. | Case No. 3:17-cv-02327-BAS-JLB<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLMENT**<br><br>Judge:    Hon. Cynthia A. Bashant<br>Date:    April 4, 2022<br>Time:    3:00 p.m.<br>Location:  Courtroom 4B (4th Floor) |

## <u>**TABLE OF CONTENTS**</u>

TABLE OF AUTHORITIES ...................................................................................ii

NOTICE OF MOTION ........................................................................................1

MEMORANDUM OF POINTS & AUTHORITIES.............................................1

    I.     INTRODUCTION ...............................................................................1

    II.    LEGAL STANDARD .........................................................................5

    III.   THE COURT SHOULD GRANT FINAL APPROVAL BECAUSE THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE..............6

        A.    The Strength of the Case, and the Risk, Expense, Complexity, and Likely Duration of Further Litigation .................................6

        B.    The Amount of the Settlement ....................................................8

        C.    Extent of Discovery Completed and Stage of Proceedings ...................10

        D.    The Experience and Views of Class Counsel ........................................11

        E.    The Presence of a Governmental Participant...........................................12

        F.    The Reactions of Class Members............................................................12

        G.    The Risk of Maintaining Class Action Status Through Trial ................15

    IV.   CONCLUSION ..................................................................................15

# **TABLE OF AUTHORITIES**

**Cases**

*Arellano v. Kellermeyer Bldg. Servs., LLC*,
  2014 WL 7176463 (S.D. Cal. Dec. 5, 2014)..............................................6

*Beck-Ellman v. Kaz USA, Inc.*,
  2013 WL 10102326 (S.D. Cal. June 11, 2013)...........................................9

*Boyd v. Bechtel Corp.*,
  485 F. Supp. 610 (N.D. Cal. 1979) ...........................................................12

*Brazil v. Dole Packaged Foods, LLC*,
  660 F. App'x 531 (9th Cir. 2016) ...............................................................9

*Chun–Hoon v. McKee Foods Corp.*,
  716 F. Supp. 2d 848 (N.D. Cal.2010) .......................................................14

*Churchill Village LLC v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004).................................................................3, 5

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992).....................................................................5

*Custom LED LLC v. eBay, Inc.*,
  2013 WL 6114379 (N.D. Cal. Nov. 20, 2013) ..........................................14

*Custom LED, LLC v. eBay, Inc*,
  2014 WL 2916871 (N.D. Cal. June 24, 2014)..............................................3

*Donald v. Xanitos, Inc.*,
  2017 WL 1508675 (N.D. Cal. Apr. 27, 2017) .............................................8

*Edwards v. Andrews*,
  846 Fed. App'x 538 (9th Cir. 2021)..........................................................13

*Edwards v. Nat'l Milk Producers Fed'n*,
  2017 WL 3623734 (N.D. Cal. June 26, 2017)......................................13, 15

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
  2017 WL 4685536 (C.D. Cal. May 8, 2017) .............................................15

ii

*Gaudin v. Saxon Mortg. Servs., Inc.*,
   2015 WL 7454183 (N.D. Cal. Nov. 23, 2015) ................................................................11

*Hadley v. Kellogg Sales Co.*,
   2021 WL 5706967 (N.D. Cal. Nov. 23, 2021) ................................................................10

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)................................................................5, 13

*Hilsley v. Ocean Spray Cranberries, Inc.*,
   2020 WL 520616 (S.D. Cal. Jan. 31, 2020)................................................................9

*Hunter v. Nature's Way Prods., LLC*,
   2020 WL 71160 (S.D. Cal. Jan. 6, 2020) ................................................................6

*In re Beef Indus. Antitrust Litig.*,
   607 F.2d 167 (5th Cir. 1979)................................................................6

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011)................................................................5

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000)................................................................5, 8

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir.1995)................................................................11

*Kim v. Allison*,
   8 F.4th 1170 (9th Cir. 2021) ................................................................5

*Krommenhock v. Post Foods, LLC*,
   2020 WL 2322993 (N.D. Cal. May 11, 2020) ................................................................7

*Lane v. Brown*,
   166 F. Supp. 3d 1180 (D. Or. 2016) ................................................................10, 11

*Larsen v. Trader Joe's Co.*,
   2014 WL 3404531 (N.D. Cal. July 11, 2014)................................................................6

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998)................................................................8, 10

*Linney v. Cellular Alaska P'ship,*
   1997 WL 450064 (N.D. Cal. 1997) ...................................................................12

*Lloyd v. Navy Fed. Credit Union,*
   2019 WL 2269958 (S.D. Cal. May 28, 2019)............................................passim

*Loomis v. Slendertone Distribution, Inc.,*
   2021 WL 873340 (S.D. Cal. Mar. 9, 2021) ........................................................5

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.,*
   671 F. Supp. 819 (D. Mass 1987) ....................................................................12

*McMorrow v. Mondelez Int'l, Inc.,*
   2021 WL 5417183 (S.D. Cal. Nov. 19, 2021) ...............................................1, 2

*McMorrow v. Mondelez Int'l, Inc.,*
   2021 WL 859137 (S.D. Cal. Mar. 8, 2021) .......................................................7

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.,*
   221 F.R.D. 523 (C.D. Cal. 2004) ............................................................6, 8,14

*Nguyen v. Radient Pharms. Corp.,*
   2014 WL 1802293 (C.D. Cal. May 6, 2014) ....................................................8

*Noll v. eBay, Inc.,*
   309 F.R.D. 593 (N.D. Cal. 2015).............................................................12, 14

*Officers for Justice v. Civil Serv. Comm'n,*
   688 F.2d 615 (9th Cir. 1982)............................................................................5

*Pemberton v. Nationstar Mortg., LLC,* 2020 WL 230015
   (S.D. Cal. Jan. 15, 2020) ....................................................................8, 11, 14

*Perez v. Asurion Corp.,*
   501 F. Supp. 2d 1360 (S.D. Fla. 2007) ...........................................................13

*Rael v. Children's Place, Inc.,*
   2020 WL 434482 (S.D. Cal. Jan. 28, 2020).....................................................13

*Rodriguez v. Bumble Bee Foods, LLC,*
   2018 WL 1920256 (S.D. Cal. Apr. 24, 2018).....................................................8

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ............................................................................11

*Rojas v. Zaninovich*,
   2015 WL 3657172 (E.D. Cal. June 11, 2015) ...................................................6

*Schneider v. Chipotle Mexican Grill, Inc.*,
   2020 WL 6484833 (N.D. Cal. Nov. 4, 2020) ...................................................13

*Selk v. Pioneers Mem'l Healthcare Dist.*,
   159 F. Supp. 3d 1164 (S.D. Cal. 2016) .....................................................11, 12

*Shannon v. Sherwood Mgmt. Co.*,
   2020 WL 5968650 (S.D. Cal. Oct. 8, 2020) .......................................................5

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ................................................................................5

*Touhey v. United States*,
   2011 WL 3179036 (C.D. Cal. July 25, 2011) ..................................................13

*White v. Experian Info. Sols., Inc.*,
   2009 WL 10670553 (C.D. Cal. May 7, 2009) ..................................................12

*Yanez v. HL Welding, Inc.*,
   2021 WL 3054986 (S.D. Cal. July 20, 2021) ...................................................11

**Rules**

Fed. R. Civ. P. 23(c)(1)(C) .....................................................................................15

**Other Authorities**

87 Fed. Reg. 5063 (January 31, 2022) .....................................................................10

## NOTICE OF MOTION

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE THAT, on April 4, 2022, or as soon thereafter as may be heard, Plaintiffs will move the Court, the Honorable Cynthia A. Bashant presiding, for an Order: (1) finally certifying the Settlement Class; (2) finally approving the Settlement as fair, reasonable, and adequate to the Class; (3) directing the parties to undertake the obligations set forth in the Settlement Agreement that arise out of the Court's final approval; (4) entering Judgment;[1] and (5) maintaining jurisdiction over this matter for purpose of enforcing the Judgment.

The Motion is based upon this Notice of Motion, the below Memorandum, the Declaration of Brandon Schwartz ("Schwartz Decl.") and all exhibits thereto; Plaintiffs' Response to Objection (Dkt. No. 205); Plaintiffs' Motion for Preliminary Approval (Dkt. No. 196, "PA Mot."), including the Declaration of Jack Fitzgerald in Support of Plaintiffs' Motion for Preliminary Approval (Dkt. No. 196-1, "PA Fitzgerald Decl.") and the Settlement Agreement attached thereto as Exhibit 1 (Dkt. No. 196-2, "SA"); Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards (Dkt. No. 200), including the Declaration of Jack Fitzgerald in Support of Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards (Dkt. No. 200-1, "Award Request Fitzgerald Decl."); all pleadings and proceedings had to date; and any additional evidence and argument submitted in support of the Motion.

## MEMORANDUM OF POINTS & AUTHORITIES

## I.    INTRODUCTION

On November 17, 2021, the Court preliminarily approved a nationwide class settlement agreement between Class Representatives Patrick McMorrow, Marco Ohlin, and Melody DiGregorio, and Defendant Mondelez International, Inc. *See McMorrow v. Mondelez Int'l, Inc.*, 2021 WL 5417183, at *1 (S.D. Cal. Nov. 19, 2021) ["*McMorrow III*"]. The Court found the "[a]greement is fair, reasonable, adequate," is "the result of serious, informed, non-

---

[1] Plaintiffs have separately moved for an award of attorneys' fees, costs, and service awards, Dkt. No. 200, and request that the relief requested therein be made part of the final judgment.

collusive, arms-length negotiations, involving experienced counsel familiar with the legal and factual issues of this case," and "meets all applicable requirements of law," *id.*[2] The Settlement resolves allegations that Mondelez "breached warranties and violated other California and New York consumer protection laws," because its "belVita branded breakfast products are designed to appeal to health conscious consumers" but "such advertising is deceptive and misleading because these products contain 'high levels of added sugar,'" meaning the products are actually "unhealthy." *See McMorrow v. Mondelez Int'l, Inc.*, 2018 WL 3956022, at *1 (S.D. Cal. Aug. 17, 2018) (record citations omitted).

Following preliminary approval, the Class Administrator, Postlethwaite & Netterville, APAC ("P&N"), executed the Court-approved Notice Plan. *See* Schwartz Decl. ¶¶ 4-15. Regarding digital notice, P&N had "banner notices [] run across the Google Display Network and Verizon (Yahoo!) Ad Network on websites Class Members were likely to visit," and on the social media sites Facebook and Instagram, *id.* ¶ 5. This resulted in over 364 million impressions—30 million more than the notice plan anticipated delivering. *See id.* In addition, notice was given through more traditional print media such as in the *USA Today* – Los Angeles region for four consecutive weeks (fulfilling the CLRA requirement), *id.* ¶ 8, as well as *US Weekly* magazine, *id.* ¶ 6. P&N also distributed a press release across PR Newswire's US1 and National Hispanic Newsline, which "was picked up by 416 media outlets resulting in a total potential audience of 176,000,000," *id.* ¶ 7. In sum, the Notice Plan "delivered a 72.94% reach with an average frequency of 2.07 [per class member]." *Id.* ¶ 14. This "exceed[ed] the originally estimated 70% reach." *Id.*

---

[2] Having found that the proposed Settlement Class meets the requirements for class certification, the Court may finally certify the Settlement Class for the same reasons set forth in its Preliminary Approval Order. *See Lloyd v. Navy Fed. Credit Union*, 2019 WL 2269958, at *8 (S.D. Cal. May 28, 2019) (Bashant, J.) ("The Court previously certified the Settlement Class under Rule 23(a) and 23(b)(3) in its order granting Plaintiffs' unopposed motion for preliminary approval" and "[t]he Settlement Class remains the same for the purposes of the present motion for final approval. Accordingly, the Court affirms its prior determination that the Settlement Class satisfies Rule 23's class certification requirements." (citation omitted)).

2

In addition to these efforts, Notice was supported by the Settlement Website, which was taken live on December 7. *Id.* ¶ 9. There visitors could view and "download the Long Form Notice, the Claim Form, as well as Court Documents, such as the Class Action Complaint; Settlement Agreement; Motions filed by Class Counsel, including Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards; and Orders of the Court." *Id.* "As of February 25, 2022, the Settlement Website ha[d] received 357,335 unique visitors and 1,909,761 page views." *Id.* In addition, P&N provided both email support and a dedicated 24-hour toll free hotline. *Id.* ¶¶ 10, 13. Thus, the Notice Plan "was implemented to achieve the best practicable notice under the circumstances, has met the requirements of Federal Rule of Civil Procedure 23, and satisfies due process." *Id.* ¶ 15.

The Class's response has been overwhelmingly positive with a total of 250,573 claims being filed. After validation and deduplication, 222,207 of those claims were determined to be valid, *see* Schwartz Decl. ¶¶ 16-20 & Table 1. The 250,573 claims filed is 80% higher than the original estimate of 138,960 claims, *see* PA Fitzgerald Decl. ¶ 23.[3] Further, only 46 Class Members opted out, *Schwartz* Decl. ¶ 21, which is only 0.0008% of the estimated 5.7 million class members, *see* PA Fitzgerald Decl. ¶ 23, and only 0.018% of the number of total claims filed, *see* Schwartz Decl. ¶ 16 & Table 1. Only one objection was filed, and it only takes issue with the amount of fees and service awards requested—not any provision of the Settlement Agreement itself. *See* Dkt. No. 201. This favors granting final approval. *See Custom LED, LLC v. eBay, Inc*, 2014 WL 2916871, at *5 (N.D. Cal. June 24, 2014) (granting final approval and noting the 0.04% exclusion rate, with one objection, was an "overwhelming[ly] positive" reaction); *Churchill Village LLC v. Gen. Elec*., 361 F.3d 566, 577 (9th Cir. 2004) (affirming approval of settlement that received 45 objections (.05%) and

---

[3] While the number of claims is 80% higher than estimated, this increased the cost of administration by less than 50%, from $147,297, PA Fitzgerald Decl. ¶¶ 22, 23, to $219,827.13, Schwartz Decl. ¶ 23, Table 2. Per claim filed, the cost of administration went down from $1.06 to $0.87. *See id.* These "Settlement Administrator's costs were reasonably incurred for the benefit of the class," *see Brown v. 22nd Dist. Agric. Ass'n*, 2017 WL 3131557, at *8 (S.D. Cal. July 24, 2017).

500 opt-outs (.56%) out of 90,000 class members).

The positive response is for good reason. If the Court awards the full amount of attorneys' fees, costs, service awards, and Class Administrator fees requested, the $8,000,000 common fund will provide claimants between $3.81 and $52.98, depending on quintile, with an average refund of $20.96. *See* Schwartz Decl. ¶ 24, Tables 3 & 4.

The Settlement also provides meaningful injunctive relief that addresses Plaintiffs' allegations, mandating that, for at least three years from the date of final approval, Mondelez refrain from:

- Using "nutritious" in the "Steady Energy Claims" on belVita's labeling, namely (i) "NUTRITIOUS SUSTAINED ENERGY," (ii) "NUTRITIOUS STEADY ENERGY ALL MORNING," (iii) "4 HOURS OF NUTRITIOUS STEADY ENERGY," and (iv) "Energy that is nutritious and sustained." SA ¶ 5.1.1 (emphasis added).

- Substituting "healthy," "balanced," or "wholesome" for "nutritious" in the "Steady Energy Claims." *Id.* ¶ 5.1.2.

- Using "nutritious" to describe belVita products' uses (i.e., "nutritious bar," "nutritious snack," or "nutritious breakfast"). *Id.* ¶ 5.1.3.

- Using "nutritious" to describe the Class Products as a whole (as opposed to using the word to describe individual product components). *Id.* ¶ 5.1.4.

In sum, the Settlement—which was only reached after four years of hotly-contested litigation[4]—provides an excellent result for the Class. It simultaneously secures meaningful financial and injunctive relief, and eliminates the risks attendant to trial. Class Counsel and Class Representatives believe Settlement is fair, reasonable, and adequate. The strong claims rate, few exclusions, and single objection, further indicate the Class considers the Settlement fair, reasonable, and adequate. Accordingly, the Court should grant final approval.

---

[4] The full procedural, litigation, and settlement history is detailed in Plaintiffs' Motion for Preliminary Approval. *See* PA Mot. at 1-4.

4

## II.   LEGAL STANDARD

"The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class actions." *Shannon v. Sherwood Mgmt. Co.*, 2020 WL 5968650, at *2 (S.D. Cal. Oct. 8, 2020) (Bashant, J.) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). "Federal Rule of Civil Procedure 23(e) first 'require[s] the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable.'" *Id.* (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998))). "In this Circuit, a district court examining whether a proposed settlement comports with Rule 23(e)(2) is guided by the eight '*Churchill* factors'":

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, (9th Cir. 2004))). Courts need not weigh all factors, "and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). Further while considering all these interests:

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Loomis v. Slendertone Distribution, Inc.*, 2021 WL 873340, at *3 (S.D. Cal. Mar. 9, 2021) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)).

## III.  THE COURT SHOULD GRANT FINAL APPROVAL BECAUSE THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

Considered in light of the *Churchill* factors, the Court should conclude the Settlement is fair, reasonable, and adequate.

### A.    The Strength of the Case, and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

"To determine whether the proposed settlement is fair, reasonable, and adequate, the Court" first "must balance against the risks of continued litigation (including the strengths and weaknesses of Plaintiff's case)," *Hunter v. Nature's Way Prods., LLC*, 2020 WL 71160, at *5 (S.D. Cal. Jan. 6, 2020) (citations omitted); *see also Rojas v. Zaninovich*, 2015 WL 3657172, at *12 (E.D. Cal. June 11, 2015) (Courts consider, among other things, the "normal perils of litigation, including the merits of the affirmative defenses asserted by Defendant, the difficulties of complex litigation, [and] the lengthy process of establishing specific damages"). Given "all the normal perils of litigation as well as the additional uncertainties inherent in complex class action," *In re Beef Indus. Antitrust Litig*., 607 F.2d 167, 179-80 (5th Cir. 1979), "unless [a proposed] settlement is clearly inadequate," a court should normally find "'its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results,'" *Arellano v. Kellermeyer Bldg. Servs., LLC*, 2014 WL 7176463, at *9 (S.D. Cal. Dec. 5, 2014) (Bashant, J.) (quoting *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citation omitted)).

Here, "[w]hile [ ] [P]laintiffs . . . believe their claims are strong, they acknowledge," as detailed in their Motion for Preliminary Approval, "that they would face significant risks should the case proceed through litigation," *see Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014) (record citation omitted); *compare* PA Mot. at 13-15. For example, Mondelez argued that Plaintiffs' evidence the Class Products are unhealthy is fatally flawed because it "conflates the percentage of sugar in a single product with the percentage of sugar in the overall daily diet." Dkt. No. 146, Opp. to Renewed Class Cert. Mot. ["Class Cert. Opp."] at 24. "In other words," Mondelez argued, "none of the dietary

guidance Plaintiffs cite—or the science on which those guidelines are based—supports the claim that consuming 7 to 12 grams of added sugar in a single meal is detrimental to human health." *Id*. Mondelez further challenged Plaintiffs' science, arguing the opinions of Plaintiffs' expert, Dr. Lustig, "reflect a minority view," and supporting that assertion with the testimony of Dr. James Rippe, who has performed clinical studies involving sugar consumption. *See* Dkt. No. 89-1, Mot. to Exclude Lustig. While Plaintiffs disagree with Mondelez's characterization of Dr. Lustig's opinion, and do not believe Dr. Rippe would ultimately be a persuasive expert witness, a vital component of this case would nevertheless turn on an expensive and risky battle of the experts. *Cf. Krommenhock v. Post Foods, LLC*, 2020 WL 2322993, at *3 (N.D. Cal. May 11, 2020) (noting in a case involving Drs. Lustig and Rippe "that the expert work and trial in this case will be extensive and complex" (record citation omitted)). Mondelez's defense also relied heavily on clinical studies that specifically tested the products at issue, purporting to show they are low glycemic and thus dole out their energy over a long period of time because of their slowly-digestible starches. *See, e.g.*, Dkt. No. 86, Opp. to 1st Mot. for Class Cert. at 4-5 ("belVita biscuits contain slow-release carbohydrates that are scientifically proven to provide steady energy for four hours without spikes or crashes." (header capitalization disregarded)). Although Plaintiffs adduced evidence challenging those studies, there was a risk Mondelez could persuade a jury the studies demonstrate belVita products are healthier than Plaintiffs alleged.

Mondelez also vigorously opposed Plaintiffs' damages model, devoting nearly half its certification opposition to that issue. *See id.* at 19-29. Although the Court ultimately found Plaintiffs' amended conjoint damages model satisfied *Comcast*, *McMorrow v. Mondelez Int'l, Inc.*, 2021 WL 859137, at *15 (S.D. Cal. Mar. 8, 2021) ["*McMorrow II*"], actually running the conjoint model revealed risks that Mondelez could have leveraged to seek decertification and summary judgment regarding the New York Class, PA Fitzgerald Decl. ¶ 15. Even if Plaintiffs could fend off such arguments, Mondelez would still be free to argue to a jury that the model is unreliable, presenting another substantial trial risk.

The Settlement, in contrast to all these risk, "achieves a definite and certain result for

7

the benefit of the Settlement Class[],” making it “preferable to continuing litigation in which the Settlement Class would necessarily confront substantial risk, uncertainty, delay, and cost.” *See Donald v. Xanitos, Inc.*, 2017 WL 1508675, at *2 (N.D. Cal. Apr. 27, 2017). Thus, given “the significant risks that lie ahead . . . [at] trial, it is reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results.” *See Larsen*, 2014 WL 3404531, at *4. Because “[t]he settlement avoids the risks that the [P]laintiffs would not succeed in demonstrating that [Mondelez] failed to comply with state consumer protection laws,” “this factor weighs in favor of final approval of the settlement.” *See id.*; *see also Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) (first two *Churchill* factors met where, “although [the plaintiffs’] claims were quite strong,” there were factual challenges facing them at trial, including “challenges [with] [ ] damages”). “Against these considerations, ‘it is plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication.’” *Lloyd*, 2019 WL 2269958, at *11 (quoting *Dennis v. Kellogg Co.*, 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013)).

## B.    The Amount of the Settlement

“To assess whether the amount offered is fair, the Court may compare the settlement amount to the parties’ estimates of the maximum amount of damages recoverable in a successful litigation.” *Id.* (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)). “Although Plaintiffs recognize that they would have received greater compensation if they had been successful in trial, this does not mean that the settlement is inadequate.” *Pemberton v. Nationstar Mortg., LLC*, 2020 WL 230015, at *3 (S.D. Cal. Jan. 15, 2020) (Bashant, J.) (citing *Linney v. Cellular Alaska P’ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)). “‘It is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial.’” *Rodriguez v. Bumble Bee Foods, LLC*, 2018 WL 1920256, at *4 (S.D. Cal. Apr. 24, 2018) (brackets omitted) (quoting *Nat’l Rural Telecomms. Coop.*, 221 F.R.D.

8

Finally, that the "Settlement Agreement also provides for injunctive relief" is an important consideration in evaluating its benefit, since "class members that choose to continue doing business with [the defendant] will benefit from this aspect as well." *See Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 833 (N.D. Cal. 2017).

Here, Plaintiffs and Class Counsel secured for the Settlement Class direct monetary benefits of $8 million, which is reasonable in relation to the certified Classes' potential price premium damages of $21.9 million, and the Settlement Class's potential price premium damages of $127 million, *see* Award Request Fitzgerald Decl. ¶¶ 17-18; *cf. Lloyd*, 2019 WL 2269958, at *11 (approving a $24.5 million fund compared to potential damages of $60 million). This payout represents a significant recovery 37% in relation to potential trial damages (6.3% of hypothetical nationwide damages), where Plaintiffs would have to show "the difference between the prices customers paid and the value of the [products] they bought—in other words, the 'price premium' attributable to [Defendant's advertising misrepresentations]." *See Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016).

Assuming the Court approves or awards the full amount of notice and administration costs, attorneys' fees and costs, and service awards requested, even with the higher-than-expected number of approved claims (222,227), Class Members will receive between $3.81 and $52.98, depending on quintile, with an average refund of $20.96. While the higher claims rate means this is lower than the predicted $34.10 average refund that was based on the estimate of 138,960 claims, *see* PA Fitzgerald Decl. ¶ 25, Class Members' refunds are still substantial and an excellent result in a low-cost consumer goods false advertising case. *See* PA Mot. at 17; *see also Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616, at *6 (S.D. Cal. Jan. 31, 2020) (finding $1.00 recovery per bottled purchased to be "an excellent result" considering the fraction of purchase price recoverable at trial); *Beck-Ellman v. Kaz USA, Inc.*, 2013 WL 10102326, at *6 (S.D. Cal. June 11, 2013) (Factor weighed in favor of approval where "Class members may each recover up to $20 in reimbursements, although Kaz Heating Pads sold . . . for around $10 to $20 per pad") (record citations omitted).

9

The Class Representatives and Class Counsel also secured for the Class, and the public at large, valuable injunctive relief. The Settlement's injunctive relief which requires Mondelez to change its current business practices, is particularly meaningful considering that by reducing or eliminating the suggestion that the high-sugar products are healthy it "provides health benefits to all purchasers," *Hadley v. Kellogg Sales Co.*, 2021 WL 5706967, at *2 (N.D. Cal. Nov. 23, 2021). The FDA has even recognized that eliminating healthy claims on high-sugar foods provides a tangible economic benefit. Recently, the FDA proposed an update "to the existing nutrient content claim definition of 'healthy'" that would "require a food product to be limited in certain nutrients, including . . . added sugar, to ensure that foods bearing the claim can help consumers build more healthful diets to help reduce their risk of diet-related chronic disease." Nutrient Content Claims, Definition of Term: Healthy, 87 Fed. Reg. 5063 (January 31, 2022). The FDA referred to this proposed action as "Economically Significant," with a "present value" at about "$260 million, with a lower bound estimate of $17 million and an upper bound estimate of $700 million." *Id*. at 5063-64.

Given the benefits of the injunctive relief, and that "[t]he Court already determined in the preliminary approval order that the [$8,000,000 Mondelez] has agreed to provide is fair and reasonable," it should find "this factor weighs in favor of final approval." *Lloyd*, 2019 WL 2269958, at *11.

## C.    Extent of Discovery Completed and Stage of Proceedings

"This factor evaluates whether 'the parties have sufficient information to make an informed decision about settlement,'" *Knapp*, 283 F. Supp. 3d at 833 (quoting *Linney*, 151 F.3d at 1239). "The extent of discovery completed and the state of the proceedings at the time of settlement is a strong indicator of whether the parties have sufficient understanding of each other's cases to make an informed judgment about their likelihood of prevailing." *Lane v. Brown*, 166 F. Supp. 3d 1180, 1190 (D. Or. 2016). Thus, "[a] court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527 (internal quotation marks and

10

citation omitted).

Here, the parties litigated for four years, including extensive motion practice regarding the pleadings, class certification, and expert reports. Fact and expert discovery were both complete and extensive. *See* PA Fitzgerald Decl. ¶¶ 3-9. And the Settlement was only reached through negotiations between the parties and an arms-length mediation with Hon. Charles W. McCoy, Jr. (Ret.). *See id.* ¶¶ 10-12; *see also Yanez v. HL Welding, Inc.*, 2021 WL 3054986, at *7 (S.D. Cal. July 20, 2021) ("The use of an experienced private mediator and presence of discovery supports" final approval). Because of the "late stage of the litigation" at which the Settlement was reached, "both sides had a strong understanding of the strengths and weaknesses of each other's case," and therefore this factor "strongly favors approval." *See Lane*, 166 F. Supp. 3d at 1185, 1190 (granting final approval where "[a]fter almost four years of litigation, extensive fact and expert discovery, and prior unsuccessful efforts to resolve the dispute, the parties engaged in lengthy settlement negotiations a few months before trial and signed a Proposed Settlement Agreement"); *see also Gaudin v. Saxon Mortg. Servs., Inc.*, 2015 WL 7454183, at *6 (N.D. Cal. Nov. 23, 2015) (factor supported final approval where plaintiff "conduct[ed] extensive discovery and investigation (before and after class certification), reviewing approximately 25,000 pages of [Defendant's] documents, and participating in three separate rounds of settlement negotiations" (internal quotation marks and record citations omitted)); *Pemberton*, 2020 WL 230015, at *3 (finding this factor favored approval where "the proceedings are otherwise at an advanced stage," and settlement was reached with the assistance of neutral mediators).

## D.    The Experience and Views of Class Counsel

"As the Ninth Circuit has emphasized, '[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.'" *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1176 (S.D. Cal. 2016) (Bashant, J.) (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (citing *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir.1995)). In determining whether a settlement is fair and reasonable, "[t]he judgment of experienced

11

counsel regarding the settlement is [therefore] entitled to great weight." *White v. Experian Info. Sols., Inc.*, 2009 WL 10670553, at *12 (C.D. Cal. May 7, 2009) (citing *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass 1987); *Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997)). As a result, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Id.* (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)).

Class Counsel here has considerable experience in prosecuting consumer class actions, and particularly those involving the false advertising of foods, especially as healthy. PA Fitzgerald Decl. ¶ 19. Moreover, Class Counsel has been litigating several similar cases during the pendency of this action and has therefore been exposed to a wide variety of information about the claims and defenses, and ultimately the potential upside and risks attendant to this case. *Id.* ¶¶ 13-19. Because Class Counsel has substantial experience with complex class actions and is intimately familiar with the issues present here, its strong endorsement of the Settlement, *see id.*, favors granting final approval. *See Larsen*, 2014 WL 3404531, at *5 (factor favored final approval where "Plaintiffs' counsel ha[d] successfully represented consumers both as litigation class and settlement class counsel numerous times, including cases involving food mislabeling," and "believe[d] approval [wa]s in the best interests of the putative settlement class."); *Selk*, 159 F. Supp. 3d at 1176 (relying on *Larsen* and finding that the opinions of counsel should be given considerable weight).

### E.    The Presence of a Governmental Participant

Where, as here, the Class administrator "notified officials of the proposed settlement pursuant to CAFA . . . and no government entity has raised an objection," *see* Schwartz Decl. ¶ 4, this factor "favors settlement," *see Knapp*, 283 F. Supp. 3d at 833 (citations omitted).

### F.    The Reactions of Class Members

When there is a "favorable reaction from class members to the Settlement, [this] weighs in favor of final approval." *Lloyd*,  2019 WL 2269958, at *12 (citation omitted). Courts often look to the claims rate and the number opt-outs and objections to gauge the reaction of the Class. *See Noll v. eBay, Inc.*, 309 F.R.D. 593, 608 (N.D. Cal. 2015) ("A low

12

number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval." (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998))). A low number of opt-outs and "the absence of a large number of objections . . . raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Lloyd*, 2019 WL 2269958, at *12 (citing *Nat'l Rural Telecommc'ns*, 221 F.R.D. at 529 (internal quotations marks omitted)). Because Class Members submitted more than 250,000 claims,[5] while there were only 46 opt-outs and one objection, this factor "strongly favors final approval," *see Edwards v. Nat'l Milk Producers Fed'n*, 2017 WL 3623734, at *2, *8 (N.D. Cal. June 26, 2017) (Factor favored approval where "307,396 class members had submitted claims online" yet "only eight objections and one request for exclusion were received out of the millions of class members receiving notice."), *aff'd sub nom.*, *Edwards v. Andrews*, 846 Fed. App'x 538 (9th Cir. 2021).

First, the claims rate of 4.4%[6] is higher than many other consumer goods class actions. *See Schneider v. Chipotle Mexican Grill, Inc.*, 2020 WL 6484833, at *9 (N.D. Cal. Nov. 4, 2020) (approving settlement with 0.83% claims rate). Because "consumer class actions tend to result in claims rates in the low single digits," *Rael v. Children's Place, Inc.*, 2020 WL 434482, at *9 (S.D. Cal. Jan. 28, 2020), the Court should find that the 4.4% claims rate supports final approval here. *See Touhey v. United States*, 2011 WL 3179036, at *8 (C.D. Cal. July 25, 2011) (approving settlement with an "approximately 2%" claims rate); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377-78 (S.D. Fla. 2007) (approving settlement with claims rate of about 1.2%). The claims rate of 4.4% is higher that the projected claims rate of

---

[5] This represents a claims rate of approximately 4.4% of the estimated 5.7 million Class Members, which is almost double the 2.41% claims rate Plaintiffs estimated based on past experience, and which the Court approved. *See* PA Fitzgerald Decl. ¶ 23; *McMorrow III*, 2021 WL 5417183.

[6] The 250,573 claims represent 4.4% of the estimated 5.7 million class members (250,573 ÷ 5,700,000 = .044).

2.82%[7] and reflects the Class's enthusiasm and approval of the Settlement.

Second, the low opt-out rate and "absence of a large number of objections . . . raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Lloyd*, 2019 WL 2269958, at *12 (citing *Nat'l Rural Telecommc'ns*, 221 F.R.D. at 529 (internal quotations marks omitted)); *see also Pemberton*, 2020 WL 230015, at *4 (Factor weighed in favor of approval where notice was "sent to approximately 64,000 class members yet the Class Administrator received only 22 opt-out requests" and "only received two objections." (record citation omitted)). Moreover, the lone objection from a serial objector does not take issue with the fairness, adequacy, or reasonableness of the Settlement Agreement itself, but rather only quarrels with the fee and service award request. *See* Dkt. No. 201. Its contentions are misguided and should be overruled. *See* Dkt. No. 205, Pl. Response to Objection. More importantly, the Settlement Agreement specifies that the Court decide the amount of fees and service awards and provides that the "[s]ettlement is not dependent or conditioned upon the Court's approv[al]" of any particular amounts requested. SA ¶ 3.4. Therefore, the objection should not scuttle approval of the Settlement.

In sum, the strong claims rate, single fee-related objection, and low opt-out rate strongly favor final approval, since "[t]hese statistics indicate a favorable reaction by class members and their overall satisfaction with the Settlement." *See Noll*, 309 F.R.D. at 608 (factor favored approval where "of over 1,188,000 potential Class Members, only 97 [ ] opted out" and "only three objections were filed" (citing *Custom LED LLC v. eBay, Inc.*, 2013 WL 6114379, at *9 (N.D. Cal. Nov. 20, 2013) (granting final approval and characterizing 0.04% exclusion rate, with one objection, as "overwhelming[ly] positive" reaction); *Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (4.86% opt-out rate strongly supported approval))); *see also Knapp*, 283 F. Supp. 3d at 833 (N.D. Cal. 2017) (factor favored final approval where "[t]he settlement administrator received valid opt-outs from 452

---

[7] This estimate was reached by averaging claims rates in similar food and beverage false advertising class actions. *See* PA Fitzgerald Decl. ¶ 23.

class members, which amount[ed] to less than .03 percent of the class members who received notice," making "[i]t [ ] apparent that the 'overwhelming majority of the class' had nothing to say about the fairness of the settlement." (quotation omitted)). Accordingly, the "Court [should] conclude[] that this factor weighs in favor of approval." *Lloyd*, 2019 WL 2269958, at *12.

## G.    The Risk of Maintaining Class Action Status Through Trial

"This factor, which concerns the risk of maintaining class certification, also favors settlement." *Larsen*, 2014 WL 3404531, at *4. While "[t]he Court already granted class certification," "and conditionally certified a class for settlement purposes only in granting preliminary approval," "[u]nder Federal Rule of Civil Procedure 23(c)(1)(C), an 'order that grants . . . class certification may be altered or amended before the final judgment.'" *See Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2017 WL 4685536, at *4 (C.D. Cal. May 8, 2017) (quoting Fed. R. Civ. P. 23(c)(1)(C)). Thus, "[a]lthough Plaintiffs believe they would be successful in maintaining class action status through trial and appeal," because Mondelez "vigorously opposed class certification, previously filed a [23(f) petition to appeal certification], and indicated its intention to challenge certification again," "the risk that Defendant may prove successful in attacking class certification . . . favors final approval of the Settlement Agreement." *Flo & Eddie, Inc.*, 2017 WL 4685536, at *4.; *see also Edwards*, 2017 WL 3623734, at *7 ("Although plaintiffs are confident the class would remain certified through trial, the risk 'was not so minimal that this factor could not weigh in favor of the settlement.'" (quotation and citation omitted)).

## IV.    CONCLUSION

In sum, each of the relevant *Churchill* factors favors approval. The Settlement Agreement was reached only after years of hard fought litigation and with the assistance of an experienced mediator. It secures both monetary and injunctive relief while eliminating risks with continued litigation. That this is a strong result for the Class is demonstrated by the overwhelmingly positive response. Accordingly, the Court should grant the Settlement final approval and enter Judgment.

Dated: March 2, 2022

Respectfully Submitted,

/s/ Paul K. Joseph
**FITZGERALD JOSEPH LLP**
JACK FITZGERALD
*jack@fitzgeraldjoseph.com*
PAUL K. JOSEPH
*paul@fitzgeraldjoseph.com*
MELANIE PERSINGER
*melanie@ fitzgeraldjoseph.com*
TREVOR M. FLYNN
*trevor@ fitzgeraldjoseph.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

***Class Counsel***

*McMorrow et al. v. Mondelez Intl., Inc.*, Case No. 17-cv-02327-BAS-JLB
MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT