**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PATRICK MCMORROW, *et al.*, | Case No. 17-cv-02327-BAS-JLB |
| Plaintiffs, | **ORDER:** |
| v. | |
| MONDELEZ INTERNATIONAL, INC., | **(1) GRANTING MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT (ECF No. 206);** |
| Defendant. | |
| | **(2) GRANTING MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS (ECF No. 200); AND** |
| | **(3) OVERRULING OBJECTION TO MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS (ECF No. 201)** |

Patrick McMorrow, Marco Ohlin, and Melody DiGregorio (collectively, "Plaintiffs") commenced this class action against Defendant Mondelez International, Inc. ("Mondelez"), alleging that Mondelez labeled its belVita breakfast biscuits as "nutritious," despite the biscuits' high added sugar content. (Compl., ECF No. 1.) The parties

negotiated a settlement and on November 19, 2021, the Court granted preliminary approval.  (ECF No. 197.)

Now pending before the Court is Plaintiffs' Motion for Final Approval of Class Settlement.  (ECF No. 206, "Final Approval Motion.")  Plaintiffs also filed a Motion for Attorneys' Fees, Costs, and Service Awards (ECF. No. 200, "Fee Motion"), and Class Member Shiyang Huang filed an Objection to the Fee Motion[1] (ECF No. 201).  Plaintiffs responded to Mr. Huang's objection (ECF No. 205), and Mr. Huang submitted a supplemental statement (ECF No. 207). For the reasons stated below and having considered all arguments presented at the final approval hearing on April 4, 2022, the Court (1) **GRANTS** Plaintiffs' Motion for Final Approval (ECF No. 206), (2) **GRANTS** Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards (ECF No. 200), and (3) **OVERRULES** Shiyang Huang's Objection to Plaintiffs' Motion for Attorneys' Fees (ECF No. 201).

## I.    PROPOSED SETTLEMENT

After four years of litigation culminating in a successful mediation, Plaintiffs achieved a settlement with Defendant on behalf of the Proposed Settlement Class.[2] Although Defendant denies Plaintiffs' allegations, the parties "wish to resolve any and all past, present, and future claims the Class has or may have against [Defendant] on a nationwide basis as they relate to the allegations in the Action."  (Settlement Agreement 1, ECF No. 196-2.)  In consideration for the settlement, Defendant agreed to establish a non-reversionary common fund of $8,000,000, "which shall be used to pay all Settlement expenses, including Notice and Other Administrative Costs; Fee Award; Service Awards;

---

[1] Mr. Huang confirmed during the April 4, 2022 hearing that his objection is limited to the Fee Motion and that he does not object to final approval of the settlement.

[2] The Settlement Class is defined as: "all persons in the United States who, between November 16, 2013 and [November 17, 2021], purchased in the United States, for household use and not for resale or distribution, one of the Class Products."  (Settlement Agreement § 1.6.)  The "Class Products" include Defendant's belVita Crunchy Biscuits, Soft Baked Biscuits, Bites, and Sandwiches products bearing the phrase "nutritious steady energy," "nutritious sustained energy," or "nutritious morning energy."  (*Id.* § 1.12.)

and Class Members' Claims."  (*Id.* § 2.1.)   The Settlement Agreement allows Class Members to file claims identifying which of the Class Products they purchased since November 2013, and the approximate number of purchases they made over a typical three-month period.  (*Id.* § 4.1(b).)   Based on the information disclosed by each claimant, an equation is used to calculate a corresponding cash award.[3]  (*Id.* § 4.1(c).)

In support of the request for final approval, Claims Administrator Postlethwaite & Netterville submits that to notify potential Class Members of the action, it ran several "banner notices [ ] across the Google display network and Verizon (Yahoo!) Ad Network on websites Class Members were likely to visit . . . and on social media sites Facebook and Instagram."  (Schwartz Decl. ¶ 5, ECF No. 206-1.)   The notice advertising campaigns resulted in 364,287,821 impressions—tens of millions more than originally forecast at the preliminary approval stage.  (*Id.*)  In addition to the digital notice, the Claims Administrator distributed a press release across PR Newswire's US1 and National Hispanic Newsline and published notice in US Weekly Magazine.[4]  (*Id.* ¶¶ 6–7.)

By February 9, 2022—the claims submission deadline—the Claims Administrator had received 249,769 claims.  (*Id.* ¶¶ 16–17.)  After filtering out duplicate and otherwise invalid claims and providing an opportunity for claimants with invalid claims to "submit appropriate identification in order to validate their claims," the Claims Administrator confirms that 222,227 claims remain.  (*Id.* ¶¶ 17, 20.)  Of all the potential Class Members who interacted with the notice, the Claims Administrator received only 46 requests to be excluded from the class settlement.  (*Id.* ¶¶ 21–22.)

---

[3]  Based on the distribution of calculated damages, the claimants are placed into one of five quintiles and the quintile is assigned a standardized cash award. (*Id.* § 4.1(c).)  Thus, the claimants, except those with documented purchase records, recover one of five standardized cash awards based on the information disclosed about their product purchase history.  (*Id.*)

[4]  To satisfy legal notice requirements, the Claims Administrator also served notice on each state and territory Attorney General as well as the U.S. Attorney General, and received no response or objection to the settlement.  (*Id.* ¶ 4.)  The Claims Administrator also published notice once a week for four consecutive weeks in USA Today – Los Angeles region to satisfy California Consumer Legal Remedies Act requirements.  (*Id.* ¶ 8.)

The Claims Administrator incurred total administration costs of $219,827.13 and calculated the net settlement fund after anticipated attorneys' fees, service awards, and approved documented claims to be $4,656,746.25. (*Id.* ¶¶ 23, 24.) As a result, the available standardized cash awards for the claimants are $3.81, $9.43, $15.57, $24.76, or $52.98—depending on assigned quintile. (*Id.* ¶ 24.)

Upon final approval of the Settlement, all Class Members are deemed to have released and discharged Defendant from any and all claims that are known or unknown to the Class Members "based on the identical factual predicate, or depend[ing] on the same set of facts alleged in the action regarding the Class Products." (Settlement Agreement § 8.1.) The parties also agreed that Plaintiffs would seek fee and service awards from the Court. (Settlement Agreement § 3.1.) Plaintiffs have since filed a motion requesting a fee award of $2,666,667 (one third of the settlement fund), costs of $288,177,73, and service awards totaling $22,500. (Fee Mot. 3.)

## II.  OBJECTION

Shiyang Huang objected to Plaintiffs' Fee Motion arguing that Plaintiffs should receive 25% of the common fund in attorneys' fees instead of the requested 33% because no unusual circumstances justify departure from the 25% benchmark established in the Ninth Circuit. (Obj. 4–7.) Additionally, Mr. Huang argues that *stare decisis* requires that the named plaintiffs' service awards be denied. (*Id.* at 10).

## III.  PLAINTIFFS' MOTION FOR FINAL APPROVAL

Plaintiffs correctly note that the Ninth Circuit maintains "a strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Nevertheless, there are two issues that the Court must resolve before granting final approval of a settlement: class certification and fairness. Although this Court certified California and New York classes before the parties reached their Settlement (ECF No. 172), the parties defined a nationwide class in their Settlement Agreement, which the Court must now decide whether to certify for settlement purposes. Additionally, Federal Rule of Civil Procedure 23(e) "require[s] the district court to determine whether a proposed

settlement is fundamentally fair, adequate, and reasonable" prior to final approval.  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

### A.   Certification of the Settlement Class

This Court previously found that the requirements of Rules 23(a) and (b)(3) are satisfied as to California and New York classes.  (ECF. Nos 126, 172.)  Expansion of the class to include all purchasers nationwide as well as purchasers of additional products does not change the class certification analysis.  *See Allen v. Similasan Corp.*, No. 12-CV-00376-BAS-JLB, 2017 WL 1346404, at *3 (S.D. Cal. Apr. 12, 2017).  The nationwide class is more numerous than the originally certified classes, and the class representation is equally adequate.  *See id*.  Furthermore, Defendant's alleged misconduct—selling products bearing false and misleading representations about the nutritional value of its products— appears to be uniform across the United States as well as across the Class Products.  *See id*.  As compared to the previously certified classes, the nationwide class presents the same common questions of fact and law; the claims and defenses of the representative parties are equally typical; and the common questions of law or fact predominate.  *See id*.  Given the small cost of each product and the large number of purchasers, a class action is superior to other available methods of adjudication.  Therefore, the Court finds certification of the proposed nationwide class is appropriate.  *See id*.

### B.   Fairness, Reasonableness, and Adequacy of Proposed Settlement

The Court made an initial fairness determination in its Preliminary Approval Order, (ECF No. 197 ¶ 3), finding that:

> [T]he Settlement Agreement (a) is the result of serious, informed, non-collusive, arms-length negotiations, involving experienced counsel familiar with the legal and factual issues of this case and made with the assistance and mediation services [of], Hon. Charles W. McCoy, Jr. (Ret.); and (b) meets all applicable requirements of law, including Federal Rules of Civil Procedure 23 and the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715.

17cv2327

Prior to final approval, the Court must consider the following factors to ensure the fairness, reasonableness, and adequacy of the proposed settlement: "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the amount offered in settlement; the extent of discovery completed, and the stage of proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).

### 1.   Strength of Plaintiffs' Case, and Risk of Further Litigation

Plaintiffs admit there are "significant risks should the case proceed through litigation," including (1) disputed scientific evidence and expert testimony regarding the health of Defendant's products, (2) vigorous opposition by Defendant to Plaintiffs' damages model, (3) potential decertification of the New York subclass, and (4) potential defeat at summary judgment. (Final App. Mot. 6–8.) The Court agrees that Plaintiffs face significant risks proceeding with the litigation, and that the settlement instead achieves a definite and certain result for the class. Thus, the Court finds that the first two factors— strength of plaintiffs' case and litigation risk—weigh in favor of accepting the proposed settlement, which avoids the risk entirely and ensures tangible recovery for the class.

### 2.   Consideration Offered

In addition to injunctive relief, the parties have agreed to an $8,000,000 dollar common fund as consideration for the settlement. After costs of administration and attorneys' fees are deducted, Class Members with valid claims will recover between $3.81 and $52.96 with an average refund of $20.96. (Final App. Mot. 9.) Although Class Members might be entitled to greater compensation if their allegations were proven true, this does not mean that the settlement is inadequate. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998); *accord Officers for Justice v. Civil Serv. Comm'n of the City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) ("[The] very essence of a settlement is a compromise, 'a yielding of absolutes and an abandoning of highest hopes.'"). Here, the refunds available to the Class Members are substantial in comparison

with other low-cost consumer goods false advertising cases, and as such the Court believes the consideration offered is fair and reasonable. *See Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-CV-2335-GPC-MDD, 2020 WL 520616, at *6 (S.D. Cal. Jan. 31, 2020).

### 3. Extent of Discovery Completed and Stage of Proceedings

This litigation has been pending for four years, including extensive motion practice regarding the pleadings, class certification, and expert reports. (Final App. Mot. 11.) Fact and expert discovery were complete at the time of the settlement, and the settlement was reached after mediation with the Hon. Charles W. McCoy (Ret.). *See Yanez v. HL Welding, Inc.*, No. 20CV1789-MDD, 2021 WL 3054986, at *1 (S.D. Cal. July 20, 2021) (finding "[t]he use of an experienced private mediator and presence of discovery supports" final approval). The duration of this case prior to settlement suggests that "both sides had a strong understanding of the strengths and weaknesses of each other's case," and therefore this factor supports final approval. *See Lane v. Brown*, 166 F. Supp. 3d 1180, 1190 (D. Or. 2016).

### 4. Experience and Views of Counsel

Generally, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *cf. Stull v. Baker*, 410 F. Supp. 1326, 1332 (S.D.N.Y. 1976) (holding that the court should consider the recommendation of counsel, and weight it according to counsel's caliber and experience). Here, due especially to the experience and knowledge of Class Counsel, their recommendations are presumed to be reasonable, and this factor accordingly favors approval.

### 5. Governmental Participant

There is no governmental participant in this case, so this factor is neutral. *See Allen v. Similasan Corp.*, No. 12-CV-00376-BAS-JLB, 2017 WL 1346404, at *5 (S.D. Cal. Apr. 12, 2017).

### 6.    Reaction of the Class to the Proposed Settlement

Notice was administered nationwide and achieved an overwhelmingly positive outcome, surpassing estimates from the Claims Administrator both in the predicted reach of the notice (72.94% as compared to 70%) as well as in participation from the class (80% more claims submitted than expected).  (Schwartz Decl. ¶ 14, ECF No. 206-1; Final App. Mot. 3.)  Only 46 potential Class Members submitted exclusions (Schwartz Decl. ¶ 21), and only one submitted an objection—however the objection opposes the distribution of fees and costs rather than the settlement itself.  (Obj. 3.)  The Court agrees with Plaintiffs that the strong claims rate, single fee-related objection, and low opt-out rate weigh in favor of final approval.

Further, the Court previously approved the form and manner of notice to the Settlement Class Members.  (ECF No. 197 ¶ 10.)  The Court now finds the method for distributing class notice was executed as previously detailed in its Preliminary Approval Order.  (*See generally* Schwartz Decl.)  The notice advertising campaigns undertaken by the Claims Administrator resulted in 364,287,821 impressions and further notice was achieved by press release.  *Id*.  The Court finds the notice provided to Class Members satisfies due process.  *See* Fed. R. Civ. P. 23(e)(1).

Ultimately, the Court finds (1) that class certification is appropriate for settlement purposes; (2) that the settlement is fair, reasonable, and adequate; and (3) that the Claims Administrator executed the notice program previously approved by the Court.  Thus, final approval of the settlement is warranted.

## IV.   PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

Having determined that final approval of the settlement is warranted, the Court now considers the appropriate attorneys' fees, costs, and service awards for Plaintiffs.  Class Counsel seeks "an award of one-third of the common fund, or $2,666,667 in attorneys' fees, and $288,177.73 in costs" as well as $7,500 service awards to each of the three class representatives.  (Fee Mot. 25.)  Class Member Shiyang Huang objects to Plaintiffs'

requests on two grounds: (1) that Ninth Circuit law provides a 25% benchmark for fee awards absent unusual circumstances, and (2) that stare decisis requires the named plaintiffs' service awards be denied.  (Obj. 4, 10.)

## A.   Class Counsel's Fee Request is Reasonable

Courts have an independent obligation to ensure that the attorneys' fees and class representative awards, like the settlement itself, are reasonable.  *In re Bluetooth Headsets Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).  Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ a "percentage of recovery method."  *Id.* at 942.  The percentage of recovery method has become the "prevailing practice" in the Ninth Circuit for awarding attorneys' fees.  *In re Apple Inc. Device Performance Litig.*, No. 5:18-MD-02827-EJD, 2021 WL 1022866, at *2 (N.D. Cal. Mar. 17, 2021).  The Ninth Circuit has "established a 25 percent 'benchmark' in percentage-of-the-fund cases that can be 'adjusted upward or downward to account for any unusual circumstances involved in [the] case.'"  *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002).  It is not sufficient, however, for the court to arbitrarily apply a percentage, rather it must show why the percentage and ultimate award are appropriate based on the facts of the case.  *Vizcaino*, 290 F.3d at 1048.  District courts may consider the following factors in assessing requests for attorneys' fees calculated pursuant to the percentage of recovery method:

> (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases.

*In re Omnivision Techs., Inc., 559 F. Supp.* 2d 1036, 1046 (N.D. Cal. 2008) (citing *Vizcaino*, 290 F.3d at 1048–50.  The most important factor is the "overall result and benefit to the class from the litigation."  *Id.*

Courts are also encouraged to cross-check their percentage of recovery analysis with a "lodestar" calculation.  *In re Bluetooth*, 654 F.3d at 949.  In applying the lodestar method, the court multiplies the number of hours the prevailing party reasonably expended by a

reasonable hourly rate for the work. *Id.* at 941. The hourly rate may be adjusted for the experience of the attorney. *Id.* The resulting amount is "presumptively reasonable." *Id.* at 949. The court may then adjust this presumptively reasonable amount upward or downward by an appropriate positive or negative multiplier reflecting a whole host of reasonableness factors. *Id.* at 942.

Applying the percentage of recovery method, which is the prevailing approach, Plaintiffs request attorneys' fees equal to one third of the common fund. (Fee Mot. 3.) The amount requested represents an upward departure from Ninth Circuit's 25% benchmark fee award. *See Fischel*, 307 F.3d at 1006. Although Objector Huang is correct that this Court is bound by Ninth Circuit precedent, he misinterprets the impact of the 25% benchmark in arguing that Class Counsel has tried to "overrule circuit law" by asking for an increased fee award.[5] (Obj. 3.) The 25% benchmark is a "starting point for analysis," but it is by no means a binding figure. *See Vizcaino*, 290 F.3d at 1048. In fact, "in most common fund cases, the award exceeds that benchmark." *In re Omnivision*, 559 F. Supp. 2d at 1047. As. Mr. Huang points out, however, "[b]ecause the relationship between class counsel and class members turns adversarial at the fee-setting stage, district courts assume a fiduciary role that requires close scrutiny of class counsel's requests for fees and expenses from the common fund." (Obj. 4) (quoting *In re Optical Disk Drive Prod. Antitrust Litig.*, 959 F.3d 922, 930 (9th Cir. 2020)).) Thus, the Court closely reviews Plaintiffs' fee request according to the *Vizcaino* factors below. *See In re Omnivision*, 559 F. Supp. 2d at 1046 (citing *Vizcaino*, 290 F.3d at 1048–50).

### 1.   Results Achieved

The Court agrees with Plaintiffs that the final settlement in this case is an excellent result for the nationwide settlement class. (Mot. 6.) The settlement's monetary relief is an $8,000,000 all cash common fund with no reversionary interest to Defendant, meaning

---

[5] While Mr. Huang is also correct that this Court is not *bound* by much of the authority cited in Plaintiffs' motion (Obj. 8), the opinions of other district courts—especially those within the Ninth Circuit interpreting circuit precedent—are persuasive. Moreover, Mr. Huang fails to raise substantive arguments that challenge the reasoning in the cases Plaintiffs cite.

that the entire net settlement fund (after deductions for fees, costs, incentive awards and administration) will be fully paid to the Class Members.  (Mot. 6.)  As discussed above, the Claims Administrator's notice program achieved an overwhelmingly positive reaction from the class.  *See infra* Part III.B.6.  Only 46 exclusions and one objection were filed. (Schwartz Decl. ¶ 21.)  After deducting anticipated administration costs and fees, Plaintiffs contend that Class Members will receive an average refund of $20.96 (minimum $3.81, maximum $52.98), which is considered an "excellent result" in the context of low-cost consumer goods false advertising cases.  *See, e.g.*, *Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-CV-2335-GPC-MDD, 2020 WL 520616, at *6 (S.D. Cal. Jan. 31, 2020).

By settling the action, the class will avoid the inherent risk of proceeding through litigation, facing possible decertification, summary judgment, and trial.  As Plaintiffs admit, the New York subclass faced substantial risk of decertification given issues with Plaintiffs' damages model (Fee Mot. 11) and Plaintiffs were certainly not guaranteed success in certifying a nationwide class for trial as opposed to for settlement purposes.  *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019) ("A class that is certifiable for settlement may not be certifiable for litigation if the settlement obviates the need to litigate individualized issues that would make a trial unmanageable."), 2 William B. Rubenstein, Newberg on Class Actions § 4:63 (5th ed. 2018).  Further, as Plaintiffs explained—and contrary to Mr. Huang's arguments regarding the expanded settlement class—it is possible that absent settlement, many Class Members would be left without remedies.  (Fee Mot. 8–9; Obj. 5.)  The fact that some states preclude class actions and others require individual proof of reliance for consumer fraud claims makes them impossible to adjudicate on a class-wide basis, and weighs in favor of granting Plaintiffs' fee request, here.  *See Burnthorne-Martinez v. Sephora USA, Inc.*, No. 4:16-CV-02843-YGR, 2018 WL 5310833, at *3 (N.D. Cal. May 16, 2018) (awarding attorneys' fees of one third of the common fund in part because class counsel "negotiated direct payments for a class of individuals that in all likelihood may have never received any compensation or

redress for the conduct complained of, particularly in light of the evolving, and often conflicting, case law regarding FCRA class actions").

Not only does the settlement provide for monetary recovery, but Plaintiffs also managed to secure injunctive relief, which is a meaningful outcome in a nationwide false advertising lawsuit.[6]  An injunction precluding Defendant from using the term "nutritious" and other synonyms on Class Products' labels for three years following final approval is undoubtedly beneficial to class consumers, the marketplace, and even to competitors who do not mislabel their products.  *See Bruno v. Quten Rsch. Inst*., LLC, No. SACV 11-00173 DOC EX, 2013 WL 990495, at *4 (C.D. Cal. Mar. 13, 2013).  It is a mark of success that the class was able to secure the type of injunctive relief sought in its Complaint (FAC, ECF No. 13 ¶ 259), and while the injunctive relief is difficult to value monetarily, it supports this Court's conclusion that the settlement is an exceptional result for the class.

The first and "most important factor," therefore, weighs in favor of an upward departure from the benchmark.  *See In re Omnivision*, 559 F. Supp. 2d at 1046.

### 2.     Risk of Litigation

Plaintiffs took on significant risk pursuing this action, considering that similar claims have been dismissed for failure to state a claim.  *See, e.g.*, *Clark v. Perfect Bar, LLC*, No. C18-06006WHA, 2018 WL 7048788, at *1 (N.D. Cal. Dec. 21, 2018) ("Plaintiffs' grievance is that the packaging led them to believe that the bars would be 'healthy' when, in supposed point of fact, the added sugar rendered them unhealthy or, in the alternative, less healthy from what they otherwise had believed. *This is untenable*." (emphasis added)).  Additionally, Class Counsel invested time and expenses prosecuting the litigation despite the risk that subclasses would be decertified, or the action would be lost at summary

---

[6] Injunctive relief is generally excluded from the value of the common fund when calculating attorneys' fees because most often the value of the injunctive relief is not measurable. *Staton v. Boeing Co*., 327 F.3d 938, 945-46 (9th Cir. 2003). When the value of such relief is not readily ascertainable, "courts should consider the value of the injunctive relief as a 'relevant circumstance' in determining what percentage of the common fund class counsel should receive as attorneys' fees, rather than as part of the fund itself." *Good Morning to You Prods. Corp. v. Warner/Chappell Music, Inc.*, No. CV-13-4460-GHK(MRWX), 2016 WL 6156076, at *3 (C.D. Cal. Aug. 16, 2016).

judgment or trial.  Plaintiffs cite ample authority to demonstrate that food labeling cases are particularly risky class actions and a favorable outcome for the class was nowhere near guaranteed through litigation.  (*See* Mot. 11–12.); *see also infra* Part III.B.1.  Given the risks shouldered by Class Counsel, the second factor also weighs in favor of an upward departure from the 25% benchmark.

### 3.   Skill and Quality of Work

Despite the risks faced by the class—including substantial unfavorable authority—Class Counsel managed to secure an $8,000,000 settlement and injunctive relief.  Class Counsel's experience in consumer fraud class actions enabled them to evaluate the strengths and weaknesses of the case against Defendant and the reasonableness of the settlement.  *See de Mira v. Heartland Emp. Serv., LLC*, No. 12-CV-04092-LHK, 2014 WL 1026282, at *3 (N.D. Cal. Mar. 13, 2014).  Plaintiffs argue that "great skill was required by Class Counsel here, given the challenging theory, procedural hurdles, technical subject matter requiring expert testimony, and expertise of Mondelez's attorneys, who had firsthand experience defending against similar claims." (Fee Mot. 13.)  This Court tends to agree.  Counsel navigated substantial offensive, defensive, and expert discovery; briefed class certification multiple times and ultimately prevailed; and engaged in a successful mediation to resolve the case.  (*Id.* at 13–14.)  Again, this factor weighs in favor of the requested upward departure from the benchmark.

### 4.   Contingent Nature of Fee and Financial Burden

It is undisputed that Class Counsel's prosecution of this action involved significant financial risk since Class Counsel undertook the matter solely on a contingent basis with no guarantee of recovery and against a well-represented Defendant.  (Fee Mot. 2–3; Fitzgerald Decl., ECF 200-01 ¶ 10.)  Counsel also advanced all out-of-pocket costs amounting to more than $280,000 with no financing or other funding assistance. (Fitzgerald Decl. ¶ 10.)  Class Counsel's ability to file and prosecute other cases was substantially impacted by their involvement in this class action, given the small size of their firm and limited legal support.  (*Id.* ¶ 12.)  Thus, Class Counsel took on significant

- 13 -

financial risk in investing in this case with no guarantee that the time expended would result in any recovery of costs.  Accordingly, this factor weighs in favor of an upward departure from the benchmark.

### 5.    Awards Made in Similar Cases

With respect to similar fee awards, Class Counsel argue for an 8.3% upward departure from the 25% benchmark set forth by the Ninth Circuit.  (Fee Mot. 15.)  The Court agrees that an upward departure is warranted in this case, and finds that similar cases justify the requested award of 33.3%.  For instance, Plaintiffs cite *Larsen v. Trader Joe's Co.*, No. 11-CV-05188-WHO, 2014 WL 3404531, at *1 (N.D. Cal. July 11, 2014), a similar class action contesting product labeling practices wherein food products allegedly containing synthetic ingredients carried "All Natural" and "100% Natural" labels.  (Fee Mot. 14.)  The settlement agreement in *Larsen* resulted in a settlement fund of nearly $4 million, resulted in maximum refunds of $27-$39.90 per class member, and provided equitable relief precluding the disputed labeling practice in the future with no time limit. *Larsen*, 2014 WL 3404531, at *1.  In that case, the Court awarded 28% of the common fund as attorneys' fees, an upward departure from the benchmark.  *Id*.  Plaintiffs also discuss *Khoja v. Orexigen Therapeutics, Inc.*, No. 15-CV-00540-JLS-AGS, 2021 WL 5632673 (S.D. Cal. Nov. 30, 2021) in which the Court granted a 33.3% fee award.  (Fee Mot. 14.)  Additionally, both of the "sugar cases" that Class Counsel previously litigated, *Krommenhock* and *Hadley*, which are undoubtedly like the present case, returned fee awards of 30% of the common fund.  (*Id*. at 15.)  Class Counsel, however, explained that the outcome achieved in this case is better for the class than the outcomes achieved in *Krommenhock* and *Hadley*.  (*Id*.)

Accordingly, this Court finds that an award of attorneys' fees equal to 33.3% of the common fund is reasonable under the percentage of recovery method. *See, e.g., In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995); *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, at *7 (N.D. Cal. July 18, 1997).

### 6.    Lodestar Cross Check

Additionally, the Court is satisfied that Plaintiffs' lodestar cross check supports the requested 33.3% fee award.[7]  Plaintiffs calculated a lodestar of $1,732,355 based on 2,869 hours of work by the attorneys and legal support staff, excluding time spent on the present motion for fees.[8]  (*Id*. at 17.)  To reach the requested fee award, this Court would need to apply a multiplier of 1.54 to Plaintiffs' lodestar, which Plaintiffs argue is "modest in comparison to multipliers in the 3-4 range that are common in complex class actions." (*Id*.) (citing *Nitsch v. DreamWorks Animation SKG Inc*., 2017 WL 2423161, at *10 (N.D. Cal. June 5, 2017)).  The Court agrees that the quality of Class Counsel's representation and benefit obtained by the class, among other factors, support the modest 1.54 multiplier to Plaintiffs' lodestar and justify the fee award of 33.3%.  *See, e.g., Vizcaino*, 290 F.3d at 1051 (upholding a lodestar multiplier cross-check showing a multiplier of 3.65); *Kelly v. Wengler*, 822 F.3d 1085, 1093, 1105 (9th Cir. 2016) (affirming lodestar multipliers of 2.0 and 1.3).

Given that the percentage of recovery method as well as the lodestar cross check support Plaintiffs' fee request, the Court orders pursuant to Federal Rule of Civil Procedure 23(h) that  Class Counsel is entitled to reasonable attorneys' fees in connection with the action in the amount of $2,666,667, to be paid at the time and in the manner provided in the Settlement Agreement.

Class Counsel are also entitled to reimbursement of the out-of-pocket costs they reasonably incurred investigating and prosecuting this case.  *See In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1955) (citing *Mills v. Elec. Auto-Lite Co.*,

---

[7] While Class Counsel did not submit detailed billing records in support of their lodestar analysis, they did submit tables summarizing the amount of work each timekeeper performed. The Court finds "the submitted information to be sufficient *for purposes of performing a lodestar cross-check*, particularly when the resulting multiplier is so low." *See Thomas v. MagnaChip Semiconductor Corp*., No. 14-CV-01160-JST, 2018 WL 2234598, at *4 (N.D. Cal. May 15, 2018).

[8] "Time spent obtaining an attorneys' fee in common fund cases is not compensable because it does not benefit the Plaintiff class." *In re Wash. Public Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).

17cv2327

396 U.S. 375, 391–92 (1970)).  Based on the declaration submitted by Class Counsel in support of the Fee Motion, the Court finds that Class Counsel have incurred out-of-pocket litigation expenses (paid-and un-reimbursed) in the amount of $288,177.73. (Fitzgerald Decl. ¶ 35.)  Accordingly, the Court awards Class Counsel $288,177.73 in litigation costs, to be paid at the time and manner provided in the Settlement Agreement.

### B.     Plaintiffs' Request for Service Awards Is Justified

Plaintiffs also seek $7,500 for each of the three Class Representatives.  Mr. Huang objects based on *stare decisis*, but his objection lacks merit.  It is clear in the Ninth Circuit that "incentive awards that are intended to compensate class representatives for work undertaken on behalf of a class are fairly typical in class actions cases" and "do not, by themselves, create an impermissible conflict between class members and their representative[ ]."  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015).  Nonetheless, the Court has an obligation to assure that the amount requested is fair. *In re Bluetooth*, 654 F.3d at 941.  In deciding whether to approve an incentive award, courts consider factors including:

> (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995). The Class Representatives in this action have actively participated in and assisted Class Counsel with this litigation for the substantial benefit of the Class.  (Fitzgerald Decl. ¶¶ 36–38; McMorrow Decl. ¶¶ 8–16, ECF No. 70-2; Ohlin Decl. ¶¶ 6–11, ECF No. 70-3; DiGregorio Decl. ¶¶ 7–11, ECF No. 70-4.)  Each of the Class Representatives reviewed material filings, sat for depositions, communicated often with Class Counsel, reviewed and approved the Settlement Agreement, and committed to securing substantive relief on behalf of the Class. (Fitzgerald Decl. ¶¶ 36–38.)  Accordingly, the Court awards the requested $7,500 award to each Class Representative for a total of $22,500.

## V.   **CONLUSION**

For the reasons stated both in this order as well as the Court's Preliminary Approval Order, the Court (1) **GRANTS** Plaintiffs' Motion for Final Approval of Class Settlement (ECF No. 206), (2) **GRANTS** Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards (ECF No. 200), and (3) **OVERRULES** Shiyuang Huang's Objection to Plaintiffs' Motion for Attorneys' Fees (ECF No. 201).

Accordingly, the Court also **ORDERS** as follows:

1.   <u>Incorporation of Other Documents</u>. The Settlement Agreement dated November 15, 2021, including its exhibits, and the definitions of words and terms contained therein are incorporated by reference in this Order.  (ECF. No. 196-2.)  The terms of this Court's Preliminary Approval Order are also incorporated by reference in this Order. (ECF No. 197.)

2.   <u>Jurisdiction</u>.  This Court has jurisdiction over the subject matter of this Action and over the Parties, including all members of the following Settlement Class certified for settlement purposes in this Court's Preliminary Approval Order: All persons in the United States who, between November 16, 2013, and November 19, 2021 (the "Class Period"), purchased in the United States, for household use and not for resale or distribution, any of the Class Products identified in the Settlement Agreement.[9]  Excluded from the Settlement Class are all persons who validly excluded themselves from the Settlement Class according to the terms of this Court's Preliminary Approval Order.

3.   <u>Class Certification</u>.  For purposes of settlement only, the Settlement Class, as defined in the Settlement Agreement and above, meets the requirements of Federal Rule of Civil Procedure Rule 23(a) and 23(b).  Accordingly, for purposes of settlement, the Court finally certifies the Settlement Class.

4.   <u>Adequate Representation</u>.   The Class Representatives and Class Counsel have adequately represented the Settlement Class in accordance with Federal Rule of Civil

---

[9] The Class Products specifically include Mondelez's belVita Crunchy Biscuits, Soft Baked Biscuits, Bites, and Sandwiches Breakfast products.

Procedure 23(e)(2)(A).

5.   <u>Arms-Length Negotiations</u>.   The Settlement Agreement is the product of arms-length settlement negotiations between the Plaintiffs and Class Counsel, on the one hand, and Defendant and its counsel, on the other, in accordance with Federal Rule of Civil Procedure 23(e)(2)(B).

6.   <u>Class Notice</u>. The Class Notice and claims submission procedures set forth in Sections 4 and 6 of the Settlement Agreement, and the Notice Plan filed on November 15, 2021, fully satisfy Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process, were the best notice practicable under the circumstances, provided individual notice to all Settlement Class Members who could be identified through reasonable effort, and support the Court's exercise of jurisdiction over the Settlement Classes as contemplated in the Settlement Agreement and this Order. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii).

7.   <u>CAFA Notice</u>.   The notice provided by the Class Administrator to the appropriate State and federal officials pursuant to 28 U.S.C. § 1715 fully satisfied the requirements of that statute.

8.   <u>Settlement Class Response</u>.   A total of 46 Settlement Class Members submitted timely and proper Requests for Exclusion, as reported in the declaration of the Class Administrator submitted to this Court.   The Court hereby orders that each of the individuals listed by the Class Administrator as having submitted a valid Request for Exclusion is excluded from the Settlement Class.   Those individuals will not be bound by the Settlement Agreement, and neither will they be entitled to any of its benefits.

9.   <u>Objections</u>.   A total of one Settlement Class Member submitted a timely and proper Objection to the Settlement Agreement.   Having considered that Objection and the Parties' responses to them, the Court finds that the Objection is not well founded. Plaintiffs faced serious risks both on the merits of their claims and on the ability to maintain certification as a litigation class in this matter. The relief provided to the Settlement Class pursuant to the Settlement Agreement is adequate, given the costs, risks,

17cv2327

and delay of trial and appeal, and taking into consideration the attorneys' fees this Court has awarded.  *See* Fed. R. Civ. P. 23(e)(2)(C)(i), (iii).  The Settlement also treats Class Members equitably relative to each other.  *See* Fed. R. Civ. P. 23(e)(2)(D).

10.    <u>Final Settlement Approval</u>.  The Court hereby finally approves the Settlement Agreement, the exhibits, and the Settlement contemplated thereby ("Settlement"), and finds that the terms constitute, in all respects, a fair, reasonable, and adequate settlement as to all Settlement Class Members in accordance with Rule 23 of the Federal Rules of Civil Procedure, and directs its consummation pursuant to its terms and conditions.

11.    <u>Attorneys' Fees and Costs; Service Awards</u>.  The Court approves Class Counsel's application for attorneys' fees and costs in the amount of **$2,666,667** in fees and **$288,177.73** in costs; and approves service awards of **$7,500** for Plaintiffs Patrick McMorrow, Marco Ohlin, and Melody DiGregorio.  The Settlement Agreement provides for Class Counsel's Fee Award to be paid before the time to appeal this Order has expired. If the Fee Award is voided or reduced on appeal, either directly or as a result of the final approval of the Settlement as a whole being vacated, overturned, reversed, or rendered void as a result of an appeal, Class Counsel shall within thirty (30) days repay to the Settlement Fund the affected amount of the attorneys' fees and costs paid to Class Counsel, in an amount proportionate to the distribution among Class Counsel's firms, in accordance with the directions in the Settlement Agreement.  By receiving any payments pursuant to the Settlement Agreement, Fitzgerald Joseph LLP and their shareholders, members, and/or partners submit to the jurisdiction of this Court for the enforcement of the reimbursement obligation set forth herein and in the Settlement Agreement.  If Class Counsel fails to timely repay the attorneys' fees and costs that are owed under this provision, the Court shall be entitled, upon application of Mondelez and notice to Class Counsel, to summarily issue orders, including but not limited to judgments and attachment orders against each of Class Counsel.

12.    <u>Dismissal</u>. The Court hereby **DISMISSES WITH PREJUDICE**, without costs to any party, except as expressly provided for in the Settlement Agreement, the

17cv2327

Action, as defined in the Settlement Agreement.

13.   <u>Release</u>.  Upon the Effective Date as defined in the Settlement Agreement, the Plaintiffs and each one of the Settlement Class Members unconditionally, fully, and finally releases and forever discharges the Released Parties from the Released Claims.

14.   <u>Injunction Against Released Claims</u>.  Each and every Settlement Class Member, and any person actually or purportedly acting on behalf of any Settlement Class Member(s), is hereby permanently barred and enjoined from commencing, instituting, continuing, pursuing, maintaining, prosecuting, or enforcing any Released Claims (including, without limitation, in any individual, class or putative class, representative or other action or proceeding), directly or indirectly, in any judicial, administrative, arbitral, or other forum, against the Released Parties.  This permanent bar and injunction is necessary to protect and effectuate the Settlement Agreement, this Final Order of Dismissal, and this Court's authority to effectuate the Settlement Agreement, and is ordered in aid of this Court's jurisdiction and to protect its judgments.

15.   <u>No Admission of Liability</u>. The Settlement Agreement and any and all negotiations, documents, and discussions associated with it will not be deemed or construed to be an admission or evidence of any violation of any statute, law, rule, regulation, or principle of common law or equity, or of any liability or wrongdoing by Defendant, or the truth of any of the claims.  Evidence relating to the Agreement will not be discoverable or admissible, directly or indirectly, in any way, whether in this Action or in any other action or proceeding, except for purposes of demonstrating, describing, implementing, or enforcing the terms and conditions of the Agreement, the Preliminary Approval Order, or this Order.

16.   <u>Findings for Purposes of Settlement Only</u>. The findings and rulings in this Order are made for the purposes of settlement only and may not be cited or otherwise used to support the certification of any contested class or subclass in any other action.

17.   <u>Effect of Termination or Reversal</u>. If for any reason the Settlement terminates or Final Approval is reversed or vacated, the Settlement and all proceedings in connection

17cv2327

with the Settlement will be without prejudice to the right of Defendant or the Class Representatives to assert any right or position that could have been asserted if the Agreement had never been reached or proposed to the Court, except insofar as the Agreement expressly provides to the contrary.  In such an event, the certification of the Settlement Classes will be deemed vacated.  The certification of the Settlement Classes for settlement purposes will not be considered as a factor in connection with any subsequent class certification issues.

18.    <u>Injunctive Relief</u>.  By attaching the Settlement Agreement as an exhibit and incorporating its terms herein, the Court determines that this Final Order complies in all respects with Federal Rule of Civil Procedure 65(d)(1).

19.    <u>Retention of Jurisdiction</u>.  Without affecting the finality of the Judgment, the Court reserves jurisdiction over the implementation, administration, and enforcement of the Judgment and the Agreement and all matters ancillary to the same.

20.    <u>Entry of Judgment</u>. The Clerk of the Court is directed to enter Judgment.

**IT IS SO ORDERED.**

**DATED: April 8, 2022**

**Hon. Cynthia Bashant**
**United States District Judge**